UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRISHA WREN, ET AL., | No. C-06-5778 JCS |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS ACTION PURSUANT TO FRCP 12(b)(6) AND TRANSFER VENUE PURSUANT TO 28 USC § 1404(a) [Docket No. 17]** |
| v. | |
| RGIS INVENTORY SPECIALISTS, | |
| Defendant. | |

## I.   INTRODUCTION

On September 20, 2006, Plaintiffs filed this putative class action on behalf of employees of Defendant RGIS Inventory Specialists ("RGIS"), asserting wage and other claims under Oregon, Washington, and California law.  Defendant brings a Motion to Dismiss Action Pursuant to FRCP 12(b)(6) and Transfer Venue Pursuant to 28 USC § 1404(a) ("the Motion"), seeking dismissal of the claims asserted under Oregon and California law and transfer of the remaining claims to the United States District Court in the State of Washington.  A hearing on the Motion was held on Friday, January 12, 2007, at 9:30 a.m.  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

## II.   BACKGROUND

### A.   First Amended Complaint[1]

On October 20, 2006, Plaintiffs filed a First Amended Complaint.  In it, Plaintiffs sought to recover "wages, including minimum wage and overtime, statutory wages, punitive damages, and

---

[1] On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes the allegations in the complaint to be true.

liquidated damages for all current and former employees of RGIS, for its actions in failing to pay wages for all compensable time, including minimum wage and overtime, failing to provide rest and meal periods, and for failing to timely pay wages at the termination of employment." FAC, ¶ 1. Three individuals were named as Representative Plaintiffs: Trisha Wren, Kevin Barnes, and Brent Whitman.

The specific allegations concerning the Representative Plaintiffs' work history are as follows:

1. <u>Trisha Wren</u>: "Representative Trisha Wren was an hourly employee of RGIS who worked for RGIS in Medford, Oregon, from approximately November 1999 to September 2004. Ms. Wren was promoted to Associate Area Manager during this time, but remained an hourly employee. RGIS sent Ms. Wren to inventory job sites throughout Oregon and California." FAC, ¶ 4.[2]

2. <u>Kevin Barnes</u>: "Representative Kevin Barnes was an hourly employee of RGIS who worked for RGIS in Medford, Oregon, from approximately June 1996 to July 2001. Mr. Barnes was promoted to Area Manager, and continued working in Medford as a salaried employee to April 2005. Mr. Barnes was promoted to District Manager and relocated to Chico, California, where he continued working as a salaried employee to September 2005. During Mr. Barnes' employment in Oregon, RGIS caused him to travel to California approximately one to two times a month to perform work for RGIS in locations throughout California including stores in the Northern District of California. Every year, Mr. Barnes routinely worked double shifts during the months of January through March. RGIS did not compensate Mr. Barnes for all hours worked." FAC, ¶ 5.[3]

3. <u>Brent Whitman</u>: "Representative Brent Whitman was an hourly employee of RGIS who worked for RGIS as a Team Leader in Vancouver, Washington, from approximately May 1999 to September 1999. Mr. Whitman was promoted to Area Manager, and continued working in Vancouver as a salaried employee from approximately September 1999 to May 2002. Mr. Whitman was promoted to District Manager, and continued working as a salaried employee, first in Chico, California, from approximately May 2002 to November 2002 and then in Medford, Oregon, from approximately November 2002 to September 2003. Mr. Whitman returned to Vancouver, Washington, and worked as an hourly employee from approximately September 2003 to February 2004." FAC ¶ 6.[4]

---

[2] In the First Amended Complaint, Plaintiffs added the allegation in the second sentence regarding Wren's promotion to Associate Area Manager.

[3] In the First Amended Complaint, Plaintiffs added the allegations regarding Barnes' promotion and transfer to Chico, California, and expanded the allegations regarding Barnes' travel to California while still residing in Oregon.

[4] In the First Amended Complaint, Plaintiffs added the allegations regarding Whitman's promotion and his work in Chico, California.

Plaintiffs alleged in the original complaint that RGIS "did not provide rest and meal periods in compliance with the State's law, nor did RGIS pay the employees' wages for all compensable time, including minimum wage and overtime, nor did RGIS pay wages in a timely manner as required by the States' law." Complaint, ¶ 7. In the First Amended Complaint, Plaintiffs added the allegation that "RGIS wrongly classifies Area Managers and District Managers as salaried employees exempt from overtime wages and rest and meal periods in violation of the States' laws." FAC, ¶ 7.

Plaintiffs assert 27 claims in their First Amended Complaint. Under California law, they assert the following eleven claims: 1) failure to provide rest periods (Cal. Lab. Code §§ 226.7 and 516); 2) failure to provide meal periods (Cal. Lab. Code §§ 226.7, 512 and 516); 3) failure to pay wages (Cal. Lab. Code § 218); 4) late payment of wages (Cal. Lab. Code §§ 201, 202 and 203); 5) failure to pay minimum wage (Cal. Lab. Code §§ 512, 1194, 1194.2 and 1197); 6) failure to pay overtime (Cal. Lab. Code §§ 510, 512 and 1194); 7) failure to provide itemized wage statements (Cal. Lab. Code § 226); 8) breach of contract; 9) conversion of wages; 10) quantum meruit; and 11) unfair competition (Cal. Bus. & Prof. Code §§ 17200 *et seq.*).

Under Oregon law, Plaintiffs assert the following ten claims: 1) failure to pay rest breaks (ORS §§ 653.261 and 653.055 and OAR § 839-020-0050); 2) failure to pay meal periods (ORS §§ 653.261 and 653.055 and OAR § 839-020-0050); 3) unpaid wages (ORS §§ 652.120 and 653.010); 4) late payment of wages/statutory penalty wages (ORS §§ 652.140, 652.150 and 652.200(2)); 5) failure to pay minimum wage (ORS §§ 653.025, 653.055, 652.150 and 652.200(2)); 6) failure to pay overtime (ORS §§ 653.261, 653.055 and OAR § 839-020-0030); 7) breach of contract for failure to provide rest breaks; 8) breach of contract for failure to provide meal periods; 9) breach of duty of good faith and fair dealing; and 10) permanent injunction.

Under Washington law, Plaintiffs assert six claims: 1) failure to provide rest breaks; 2) failure to provide meal periods; 3) failure to provide duty free meal periods; 4) failure to pay all wages due upon termination; 5) unpaid overtime wages; and 6) permanent injunction.

**B.     The Rogers Action**

On June 22, 2005, counsel for Plaintiffs in this action filed an action in Oregon state court, *Rogers v. RGIS* ("the Rogers Action") – also styled as a class action – asserting claims under Oregon state law for unpaid wages and for meal and rest period violations. *See* Request for Judicial Notice in Support of Defendant RGIS Inventory Specialists' Motion to Dismiss Action Pursuant to FRCP 12(b)(6) and Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (" RJN in Support of Motion"), Ex. 1 (*Rogers* complaint).[5] The named plaintiff and all others similarly situated in the Rogers Action are "current or past employees of RGIS in the State of Oregon within the past six years and are subject to Oregon wage and hour provisions." *Id*., ¶ 8. While there is substantial overlap between the Oregon state law claims asserted in the Rogers Action and those asserted here, the Rogers Action does not include the allegation included in this action that RGIS misclassified employees as salaried employees.

On March 7, 2006, the Oregon court dismissed the meal and rest period claims in the Rogers Action for failure to state a claim. RJN in Support of Motion, Ex. 2 (Order Granting Defendant's Motion to Dismiss Amended Complaint for Failing to State a Claim). The order of dismissal does not state the specific reasons for dismissing these claims.

On November 2, 2006, the Oregon court denied Plaintiff's motion for class certification, finding, among other things, that the named plaintiff in the Rogers Action was not an adequate class representative. Request for Judicial Notice in Support of Defendant RGIS Inventory Specialists' Reply Brief Regarding Motion to Dismiss Action Pursuant to FRCP 12(b)(6) and Transfer Venue Pursuant to 28 USC § 1404(a) ("RJN in Support of Reply"), Ex. 1 (Opinion and Order Regarding Motion for Class Certification and Other Motions). In the same order, the court granted Defendant's motion for partial summary judgment as to some of the plaintiffs' claims.

---

[5] Plaintiffs have requested that the Court take judicial notice of various pleadings in *Rogers* and other official documents, pursuant to Rule 201 of the Federal Rules of Evidence. Defendant has not objected to Plaintiffs' request, which is granted.

### C. The Scheidt Settlement

On January 14, 2003, a putative class action, *Scheidt v. RGIS Inventory Specialists* ("the Scheidt Action"), was filed against RGIS in California, asserting claims on behalf of RGIS's current and former California employees for "rest period compensation, meal period compensation, unpaid overtime, unfair business practices, waiting time, declaratory relief and split shifts." RJN in Support of Reply, Ex. 4 (Settlement Agreement and Release of Claims). Similar claims were asserted in another class action, *Dodge v. RGIS Inventory Specialists* ("the Dodge Action"), filed in California on May 27, 2003. *Id.* These two actions were coordinated and on December 15, 2004, the parties executed a settlement agreement settling the claims asserted in both the Schiedt and Dodge Actions ("the Scheidt Settlement Agreement"). *Id.* The settlement agreement was entered in a final order dated March 2, 2005. RJN in Support of Reply, Ex. 5.

The Scheidt Settlement Agreement was binding on all class members who did not opt out of the class. RJN in Support of Motion, Ex. 4. The class, in turn, included two categories of RGIS employees: 1) "[a]ll individuals who worked as non-exempt Auditors in the State of California at any time from January 1, 1999 until December 31, 2004;" and 2) [a]ll individuals who worked as non-exempt Team Leaders in the State of California at any time from January 1, 1999 until December 31, 2004." *Id.*

### D. The Motion

RGIS asserts that the Court in this action should dismiss all of Plaintiffs' Oregon claims under the *Colorado River* doctrine, which allows a district court to decline jurisdiction over a federal action that is substantially similar to ongoing state court litigation to avoid duplication of judicial effort by two separate court systems. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-818 (1976); *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (holding that actions should be "substantially similar"). In support of its position, RGIS asserts that: 1) the two actions are parallel; 2) declining to exercise jurisdiction will avoid piecemeal litigation; 3) the Oregon court obtained jurisdiction first; 4) Oregon law rather than federal law applies; 5) the Oregon proceeding will adequately protect the parties' rights; and 6) Plaintiffs were forum shopping when they filed this action.

In the alternative, RGIS asserts that at least the Oregon meal and rest period claims – claims 12- 14 and 18-20 – should be dismissed for failure to state a claim because Oregon law does not create a private right of action for rest and meal period violations. According to Plaintiffs, it was on this basis that the court in the Rogers Action dismissed the meal and rest period claims in that action.

RGIS argues that all the California claims should be dismissed because the individual named Plaintiffs were not California hourly employees and therefore, California law does not regulate their employment. Similarly, RGIS asserts that the § 17200 claim fails because the Representative Plaintiffs are not California employees and therefore, they do not have standing to assert that claim under Proposition 64, which requires that a plaintiff suffer actual injury to assert a § 17200 claim. RGIS further asserts that Plaintiffs' California claims are barred to the extent that Plaintiffs seek to represent RGIS employees who participated in the Scheidt Settlement. Finally, RGIS argues that the conversion claim fails because California has set up a comprehensive remedial scheme to regulate wages and work condition and therefore there can be no common law claim to address these wrongs. Even if there were such a claim, though, RGIS asserts, Plaintiffs fail to establish the required elements of the claim because they have not alleged wrongful dominion over *specific* personal property.

RGIS argues that the remaining claims in the case  – only the Washington state law claims if the Court accepts the arguments described above – should be transferred to a United States district court in Washington state. RGIS points out that the remaining claims will have no connection to forum if the action is not transferred and argues that a transfer will be more convenient for the parties and the witnesses. RGIS also asserts that Plaintiffs' choice of this forum is entitled to no deference because they were forum shopping.

Plaintiffs argue in their Opposition that application of the *Colorado River* doctrine is disfavored and should not be applied here. They point out that this case includes claims based on alleged misclassification of employees as exempt, which were not asserted in the Rogers Action. They also argue that Plaintiffs' rights will not be adequately protected if this case is dismissed because class certification has been denied in the Rogers Action. Plaintiffs urge the Court, in

6

determining whether to dismiss the Oregon claims, to keep in mind the goals expressed by Congress when it enacted the Class Action Fairness Act ("CAFA") of 2005, on which Plaintiffs in this action base federal jurisdiction. Under CAFA, Congress expanded federal class action jurisdiction, as set forth in 28 U.S.C. § 1332(d), to include putative class actions where there is any diversity of citizenship and the aggregate amount in controversy exceeds $5 million. In support of CAFA, Congress stated its finding that "over the past decade there have been abuses of the class action device" and expressed the purpose of "restor[ing] the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." CAFA, Pub.L. 109-2, § 2. Plaintiffs assert that they are entitled to a federal forum, that they are not forum shopping, and that RGIS has not met the heavy burden of showing that abstention is warranted.

Plaintiffs also reject the assertion that their meal and rest break claims fail under Oregon law because there is no private right of action. Rather, they assert that meals and rest periods are "wages" under Oregon law and therefore, they have a private right of action as to these claims.

With respect to the California law claims, Plaintiffs assert that they can assert these claims because: 1) the Representative Plaintiffs were California residents when they were wrongfully classified as exempt salaried employees; 2) California can regulate the work conditions of out-of-state residents working within its borders; and 3) the Scheidt Settlement Agreement does not bar Plaintiffs' claims. Regarding the Scheidt Settlement Agreement, Plaintiffs note that that settlement agreement covered only hourly workers and not exempt salaried workers, that it covered work in California by California residents rather than work in California by out-of-state residents, and that the end date of the settlement, December 31, 2004, is almost a year earlier than some of the alleged conduct in this action. In particular, it is alleged that Representative Plaintiff Kevin Barnes was employed by RGIS until September 2005. Plaintiffs argue that they have standing to bring the § 17200 claim. They further assert that the claim for conversion is both viable under California law and adequately pled.

Finally, Plaintiffs note that RGIS has made no showing in support of its assertion that Washington will be a more convenient forum for Plaintiffs' claims.

## III. ANALYSIS

### A. Application of *Colorado River* Doctrine to Oregon Law Claims

RGIS asks the Court to dismiss Plaintiffs' Oregon law claims under the *Colorado River* doctrine. Having weighed the factors set forth by the Supreme Court, the Court concludes that application of that doctrine is not warranted here.

"Generally, as between state and Federal courts, the rule is, 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Colorado River*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). This rule is based on the principal that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id*. An exception, however, may be made in cases where a federal court determines that the exercise of concurrent jurisdiction is inconsistent with the principles of "'wise judicial administration, . . . conservation of judicial resources and comprehensive disposition of litigation.'" *Id*. (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). Thus, a district court may dismiss a federal action where it concludes that a "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 28 (1983). "If there is any substantial doubt about this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Id*.

In *Colorado River*, the Court set forth four factors that may be considered in determining whether a district court should decline to exercise jurisdiction on the basis of a concurrent action in state court: "1) whether either court has assumed jurisdiction over a *res*; 2) the relative convenience of the forums; 3) the desirability of avoiding piecemeal litigation; and 4) the order in which the forums obtained jurisdiction." *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989) (citing *Colorado River*, 424 U.S. at 818). In addition, the Court in *Moses H. Cone*, instructed courts to consider: "5) whether state or federal law controls and 6) whether the state proceeding is adequate to protect the parties' rights." *Id*. (citing *Moses H. Cone*, 460 U.S. at 25-26). "[T]he decision whether to dismiss a federal action because of a parallel state-court litigation does not rest on a mechanical

8

checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16.

Here, some of the factors listed above point in the direction of declining jurisdiction. In particular, the Rogers Action involves many of the same claims as are asserted here and is at a more advanced stage than this proceeding. Further, RGIS seeks dismissal of state law claims not federal claims. Nonetheless, the Court does not believe that the Rogers Action will adequately protect the interests of the Plaintiffs in this action. The court in the Rogers Action has already denied class certification. Therefore, even if Rogers herself is granted some relief, that remedy will not extend to Plaintiffs in this action (either the Representative Plaintiffs or, if certification is granted, the class they represent). Further, to the extent the court in the Rogers Action denied class certification based in part on its conclusion that the named plaintiff in that action was not an adequate class representative – a consideration that has nothing to do with the Plaintiffs' claims in this action – the Court cannot conclude that it would be reasonable to deny Plaintiffs any remedy under Oregon law simply because the plaintiff in the Rogers Action *attempted* to bring a class action on their behalf. Given that the Court must heavily weight the balance in favor of exercising jurisdiction, the Court concludes that application of the *Colorado River* doctrine to the Oregon claims is not appropriate.

**B.      Dismissal of Oregon Law Rest and Meal Break Claims**

RGIS argues that Plaintiffs' Oregon law claims based on failure to provide rest and meal breaks (claims 12 -14 and 18-20) should be dismissed because there is no private right of action for the alleged violations. The Court agrees as to Plaintiffs' statutory wage claims (claims 12-14) but not as to Plaintiffs' contract claims (claims 18-20), which survive the Motion.

Under ORS § 653.055, Oregon employees are authorized to assert wage claims against employers for "wages to which the employee is entitled under ORS 653.010 to 653.261." Section 653.261, in turn, authorizes the Oregon Commissioner of the Bureau of Labor and Industries to establish "minimum employment conditions," including "minimum meal periods and rest periods and maximum hours of work, but not less than eight hours per day or 40 hours per week." Section 653.261 also provides that "after 40 hours of work in one week overtime may be paid, but in no case at a rate higher than one and one-half times the regular rate of pay of such employees . . . ."

9

Pursuant to the authority created in ORS § 653.261, the Commissioner has adopted OAR § 839-020-0050, which establishes requirements governing meal and rest periods. With respect to meal periods, the section gives employers the option of offering a 30 minute, unpaid lunch period during which no work is performed. Alternatively, employers may, under some circumstances, provide a meal period during which the employee can eat while performing work duties, in which case, the time is "not deducted from the employee's hours worked." With respect to the rest periods, OAR § 839-020-0050 specifies that the rest periods must be provided "without deductions from the employee's pay."

Plaintiffs assert that because ORS § 653.055 creates an individual right to recover wages due under ORS § 653.261, and because ORS § 653.261 creates the authorization to establish meal and rest periods, they may assert their claims for rest and meal period violations as wage claims. In support of this interpretation of the statute, they point to the language in OAR § 839-020-0050 prohibiting deductions from an employee's wages for rest periods and, under some circumstances, meal periods. They also point to the statutory definition of wages under Oregon law, which provides that "wages" include "compensation due to an employee by reason of employment, payable in legal tender of the United States or check on banks . . . ." ORS § 653.010(10). Finally, Plaintiffs assert that the legislative history supports their interpretation. In particular, they point out that ORS §§ 653.055 and 653.261 were enacted together, as part of the 1967 Minimum Wage Law to give employees a private right of action to enforce the minimum conditions of work established by the Commissioner. Plaintiffs note that ORS § 653.256 – on which RGIS relies to support its argument that meal and rest violations can only give rise to civil penalties – was enacted thirty years later, in 1997. They also point out that that provision allows for the imposition of a $1,000 civil penalty "[*i*]*n addition* to any other penalty provided by law."

To determine whether the Oregon legislature intended to create a private right of action for claims based on failure to provide meal and rest periods, the Court looks first to the language of the statutes themselves, which provide the best evidence of the legislature's intent. *See Portland Gen. Elec. Co. v. Bureau of Labor and Indus.*, 317 Or. 606, 610 (1993). In interpreting that language, the

Court applies the rule of construction that it should "not insert what has been omitted or omit what has been inserted." ORS § 174.010.

As noted above, ORS § 653.055 gives Oregon employees a private right of action to recover "wages to which the employee is entitled under . . . 653.261." It is a reasonable inference that where an employer has *deducted* pay for meal and rest periods, the employee is entitled to recover those wages under ORS § 653.055 because OAR § 839-020-0050 expressly prohibits such deductions. There is no language in any of the statutes cited, however, that suggests the converse is true, that is, where an employer has paid the employee for his or her time worked but has failed to provide meal and rest breaks, the employee may recover wages *above and beyond* the employee's regular wages. Undoubtedly, the Oregon legislature could have provided such a remedy. The language of the statute, however, does not do so. Nor does the legislative history cited by Plaintiffs persuade the Court that the legislature intended to do so. This conclusion is consistent with Oregon case law as well. *See, e.g., Talarico v. Hoffman Structures, Inc.*, 1999 WL 1454859 (D. Or.) (holding that plaintiff had no statutory right to recover wages based on employer's failure to provide break periods because "[p]laintiff was paid for the hours he worked . . . [and was] not entitled to any additional compensation for missed rest periods"); *Olds v. Hogan Mfg., Inc.*, Case No. 9310-06720 (D. Or. March 29, 1995), RJN in Support of Motion, Ex. 7 (holding that employer violated OAR § 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 by failing to provide break periods and that employee could recover damages on contract and unjust enrichment theories but that employee could not maintain a wage claim on the basis of the violation). Therefore, the Court dismisses for failure to state a claim Plaintiffs' statutory claims under Oregon law for rest and meal violations, claims 12-14.

On the other hand, RGIS has cited no case law that holds, as a matter of law, that rest and meal break violations may not give rise to contract claims. To the contrary, in *Olds*, a case on which RGIS relies, the court found in favor of the plaintiffs on their contract claims based on rest break violations. Accordingly, the Court declines to dismiss claims 18-20, which are based on a contract theory.

11

**C.     Dismissal of California Law Claims**

   **1.     Standing**

RGIS argues that Plaintiffs do not have standing to assert claims under California law relating to requirements that apply only to hourly employees because they have alleged that at the time they were based in California they were salaried employees and therefore exempt from these requirements. RGIS further asserts that during the times when the Representative Plaintiffs were hourly employees, they were, according to their own allegations, not residents of California and only came to California to work occasionally and therefore were not covered by California labor law. To the extent Plaintiffs' claims are based on work performed when they resided in California, the Court concludes that Plaintiffs have standing to assert those claims. To the extent the claims are based on work performed while the Representative Plaintiffs were *non-residents* of California, the Court concludes that it is premature to resolve this issue, which will turn, in large part, on facts relating to Plaintiffs' contacts with California.

The California legislature "established the Department of Industrial Relations to 'foster, promote and develop the welfare of the *wage earners of California*.'" *Six Flags, Inc. v. W.C.A.B.*, 145 Cal. App. 4th 91, 51 Cal. Rptr. 3d 377, 387 (2006) (citing Cal. Lab. Code § 50.5) (emphasis added). RGIS does not dispute that Plaintiffs were California wage earnings during the period in which they resided in California. Rather, RGIS asserts that at the time the Representative Plaintiffs resided in California, they were already salaried employees and therefore exempt from the labor laws they assert were violated. Plaintiffs, however, have alleged that they were improperly classified as salaried employees to avoid these very laws. Under this theory, Plaintiffs were entitled to the protections afforded by California labor law to hourly employees, at least during the periods during which they were actually based in California. The Court cannot say at this early stage of the proceeding that Plaintiffs will be unable to prevail on this theory. Therefore, to the extent that Plaintiffs' California law claims are based on their work while residents of California, the Court declines to dismiss those claims on the basis of lack of standing.

A somewhat more difficult question is whether Plaintiffs should be permitted to proceed on their California law claims on the basis of the work they performed while non-residents of

California, when at least two of the Representative Plaintiffs – Trisha Wren and Kevin Barnes – allege they traveled to California to perform work assignments. *See* FAC, ¶¶ 4-5. RGIS has cited to an opinion letter issued by the Department of Labor Standards Enforcement ("DLSE")[6] and one case that addressed whether workers were "wage earners of California" under Cal. Labor Code § 50.5 (quoted above).

The opinion letter, although not binding authority,[7] addresses directly the question raised here, although without a great deal of discussion. RJN in Support of Motion, Ex. 12. The letter addresses whether California labor law applies to: 1) a worker who is based overseas and does no work in California; and 2) a worker who is based overseas and who performs "some" work in California. *Id*. The response was as follows:

> The answers, in fact, depend on the intent of the parties. Were a conflict to arise and no choice of law intent was evident in the contract between the parties, the question of the correct law to apply would depend, of course, on which state (foreign or domestic) has the greatest interest in the outcome of the matter.

*Id*.

RGIS also relies on *Tidewater Marine Western, Inc. v. Victoria Bradshaw*. 14 Cal. 4th 557 (1996). In that case, the court addressed whether California law could be applied to laborers working on oil drilling platforms in the Santa Barbara Channel, off the coast of California. *Id*. at 564. The Court looked to California Labor Code § 50.5, which requires the IWC to "foster, promote and develop the welfare of the wage earners of California." The court found, "[i]f an employee resides in California, receives pay in California, and works exclusively, or principally, in California, then that employee is a 'wage earner of California' and presumptively enjoys the protection of IWC regulations." *Id*. at 578. It went on to conclude that California state law rather than federal law

---

[6] Under the California Labor Code, the Department of Industrial Relations ("IWC") is empowered to formulate regulations governing employment in the State of California, while the Division of Labor Standards Enforcement ("DLSE") is the agency that enforces California's labor laws. *See Tidewater Marine Western, Inc.. v. Victoria L. Bradshaw*, 14 Cal. 4th 557, 561-562 (1996).

[7] In *Tidewater Marine Western, Inc.. v. Victoria L. Bradshaw*, 14 Cal. 4th 557, 571 (1996), the court noted that "[a] policy manual . . . would of course be no more binding on the agency in a subsequent agency proceeding or on the courts when reviewing agency proceedings than are the decisions and advice letters that it summarizes."

13

1 governed the determination of where the state boundary fell and on that basis concluded that
2 employees who worked on the oil drilling platforms in the Santa Barbara Chanel were "wage earners
3 of California." *Id*. In the course of its analysis, the court noted that "the Legislature may not have
4 intended IWC wage orders to govern out-of-state business employing non-residents, though the non-
5 resident employees enter California temporarily during the course of the workday." *Id*.

6 In light of the discussion in both *Tidewater* and the DLSE letter, the Court concludes that Plaintiffs' standing to assert claims based on work performed while non-residents of California will depend on specific facts that have not yet been developed relating to the Plaintiffs' contacts with California. The Court cannot conclude, based on Plaintiffs' allegations, that there is no set of facts that might support these claims. Therefore, the Court denies the Motion to the extent it seeks dismissal of the California law claims based on lack of standing.

### 2.     **The Scheidt Settlement Agreement**

RGIS asserts that the Scheidt Settlement Agreement bars Plaintiffs' claims under California law because Plaintiffs are members of the class who settled and therefore cannot assert the same claims again. Plaintiffs, on the other hand, argue that the Scheidt Settlement Agreement does not bar their claims because: 1) it does not address Plaintiffs' "non-resident California hourly claims;" 2) it does not address the claim that employees were misclassified as exempt; and 3) it covers claims only through December 31, 2004 and Plaintiffs allege violations after that date.

Under the doctrine of claim preclusion, where a claim has been adjudicated, there cannot be a second action on that claim. *Frank v. United Airlines, Inc.*, 216 F.3d 845, 850 (9th Cir. 2000). For this doctrine to apply, there must be: "1) an identity of claims in the two actions; 2) a final judgment on the merits; and 3) identity or privity between the parties in the two actions." *Id*. It is undisputed that there is a final judgment on the merits in the Scheidt Action. There may also be some overlap between the parties in this action and the Scheidt Action. Given that no class has yet been certified in this action, however, it is premature to determine the extent to which there is identity between the parties in the two action. Similarly, it is not clear the extent to which the claims in the two actions overlap, given that Plaintiffs rely on a misclassification theory *and* assert claims based on work performed by non-residents – theories that were not addressed in Scheidt.

Accordingly, the Court denies the Motion without prejudice on the question of whether the Scheidt Settlement Agreement bars Plaintiffs' claims. This issue may be raised later in the case, when the factual record and the legal theories supporting Plaintiffs' California claims are more developed.

### 3. Section 17200 Claim

RGIS asserts that Plaintiffs cannot proceed with their claim under Cal. Bus. & Prof. Code § 17200 because they did not reside in California when they were hourly employees and therefore, have shown no actual injury, as required under Proposition 64. This argument mirrors the standing argument addressed above, and the Court's conclusion is the same: Plaintiffs may proceed on this claim to the extent the claim is based on their work as exempt employees while based in California. To the extent the claim is based on violations that allegedly occurred while they were non-residents, it is premature to resolve this issue, which may be revisited when a factual record regarding Plaintiffs' ties to California when they were non-residents is developed.

### 4. Conversion

RGIS argues that Plaintiffs' conversion claim must be dismissed for two reasons: 1) California's statutory scheme addressing wage and labor conditions provides the exclusive remedy and therefore, there is no common law claim for conversion under the facts of this case; and 2) Plaintiffs fail to allege the basic elements of a conversion claim, and therefore, the claim fails. Because the Court agrees with the second argument, it does not reach the first question.

"Conversion is the wrongful exercise of dominion over the property of another." *Oakdale Village Group v. Fong*, 43 Cal. App. 4th 539, 543-544 (1996). To establish conversion, a plaintiff must show: 1) the plaintiff's ownership or right to possession to the property at the time of conversion; 2) the defendant's conversion by a wrongful act; and 3) damages. *Id*. Money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved. *Weiss v. Marcus*, 51 Cal. App. 3d 590, 599 (1975); *see also Baxter v. King*, 81 Cal. App. 192, 194 (1927) ("It is true that sometimes money can be treated as specific property, and where identified can form the basis of an action for conversion and might also be the subject of an action for the specific recovery of personal property. But where the money or fund is not identified as a specific

thing the action is to be considered as one upon contract or for debt and not for conversion."). Plaintiffs have not identified a specific sum that can be treated as property for the purposes of a conversion claim. Therefore, Plaintiffs' claim for conversion under California law fails.

### D. Section 1404(a) Convenience Transfer

RGIS asks that this action be transferred to a federal district court in Washington state pursuant to 28 U.S.C. § 1404(a). The Court rejects this request.

Section 1404(a) allows the court to transfer an action " [f]or the convenience of parties and witnesses [and] in the interest of justice . . . to any other district or division where it might have been brought." Section 1404(a) displaces the common law doctrine of forum non conveniens and differs from forum non conveniens in that it allows courts to transfer actions in the interest of justice rather than having to dismiss them. *Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). However, courts draw on forum non conveniens considerations when deciding whether a § 1404 transfer is appropriate. *Id*. In particular, courts considering this issue balance the preference that is traditionally accorded the plaintiff's choice of forum against the burden to the defendant of litigating in an inconvenient forum. *Id*.

The defendant must make a strong showing of inconvenience to upset the plaintiff's choice of forum. *Id*. In determining whether this burden has been met, courts look to private and public interest factors. *Id*. As the court in *Decker* explained,

> Private factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.". . . Public factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."

*Id*. (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

RGIS has not attempted to show that a transfer to Washington would be more convenient for the parties. Rather, it seeks transfer solely on the basis that California has no connection to the

claims that would remain if the Court accepted the arguments discussed above and dismissed the California claims in their entirety. Because the Court declines to dismiss the California claims, and in the absence of strong evidence showing that Washington will provide a more convenient forum, the Court denies RGIS's request to transfer the action.

**IV.   CONCLUSION**

For the reasons stated above, the Motion is GRANTED in part and DENIED in part. Claims 12-14 (Oregon statutory claims for rest and meal breaks) are dismissed in their entirety. Claim 9, for conversion under California law, is dismissed in its entirety. The Motion is DENIED as to Plaintiffs' request for a transfer of venue.

IT IS SO ORDERED.

Dated: January 30, 2007

JOSEPH C. SPERO
United States Magistrate Judge