1   Guy B. Wallace, Cal. Bar No. 176151
    Nancy J. Park, Cal. Bar No. 236750
2   Christian Schreiber, Cal. Bar No. 245597
    Andrew P. Lee, Cal. Bar No. 245903
3   SCHNEIDER & WALLACE
    180 Montgomery Street, Suite 2000
4   San Francisco, CA 94104
    Telephone: (415) 421-7100
5   Fax: (415) 421-7105

6   A.E. "Bud" Bailey, Pro Hac Vice, OSB No. 87157, WSB No. 33917
    J. Dana Pinney, Pro Hac Vice, OSB No. 75308, WSB No. 33919
7   BAILEY PINNEY PC
    1498 SE Tech Center Place, Suite 290
8   Vancouver, Washington 98683
    Telephone: (800) 882-8351
9   Fax: (360) 567-3331

10  Bonnie Mac Farlane, Cal. Bar No. 161526
    720 Howe Avenue, Suite 113
11  Sacramento, CA 95825
    Telephone: (800) 230-5528
12  Fax: (800) 230-5866

13  Attorneys for Plaintiffs

14

15                  UNITED STATES DISTRICT COURT

16                NORTHERN DISTRICT OF CALIFORNIA

17

18  TRISHA WREN and CYNTHIA PIPER,        Case Nos. 3:06-cv-05778 JCS; 3:07-cv-00032 JCS
    et al., individually and on behalf of others
19  similarly situated,                   CLASS AND COLLECTIVE ACTION

20                                         PLAINTIFFS' REPLY MEMORANDUM OF
21            Plaintiffs,                  POINTS AND AUTHORITIES IN SUPPORT OF
                                           MOTION TO FACILITATE NOTICE
22        vs.
                                           Date: December 14, 2007
23  RGIS Inventory Specialists, LLC, RGIS, Time: 9:30 a.m.
    LLC, and Does 1-25 Inclusive,         Place: Courtroom A, 15th Floor
24                                         The Honorable Magistrate Judge Spero
25            Defendants.

26

27

28

TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

    A.   The "Stage One" Standard Of Review Applies Until The Close Of Discovery....................4

    B.   Relatively Little Discovery Has Taken Place In This Case, And Substantial Discovery
         Remains To Be Completed ............................................................................8

    C.   Conditional Certification Is Proper In An Off-The-Clock Case.........................................9

    D.   Plaintiffs Have Proffered More Evidence In Support of Facilitating Notice Than Is Required
         Under Applicable Precedents To Meet The Stage One Standard .......................................10

II.     PLAINTIFFS CHALLENGE RGIS' UNIFORM WRITTEN POLICIES AND
        PROCEDURES REGARDING COMPENSATING ITS AUDITORS ..............................11

    A.   The FLSA And Its Accompanying Regulations Require That Employers Adopt and
         Implement Policies and Procedures That Are Reasonably Calculated To Ensure That
         Employees Are Paid For All Hours Worked ......................................................11

    B.   RGIS Is Highly Centralized And Has Uniform Policies And Procedures Regarding Paying
         Its Auditor Employees ..............................................................................14

    C.   RGIS Policy In The "Auditor Handbook-United States" And The "Field Policy Manual-
         United States" Does Not Require That Auditors Be Paid For Pre-Inventory Donning,
         Preparation And Waiting Time......................................................................16

    D.   RGIS Has No Specific Written Policy Against Off-The-Clock Work, And Has Failed To
         Take Reasonable Steps To Prevent Off-The-Clock Work....................................17

    E.   RGIS' Written Policy Against Paying Its Employees For Two Hours Of "Commute Time"
         Per Shift Is Unlawful Because It Arbitrarily Fails To Separate Compensable Work Time
         From Non-Compensable Commute Time..............................................................19

III.    PLAINTIFFS WILL BE ABLE TO PROVE THE AMOUNT OF TIME EMPLOYEES
        HAVE NOT BEEN PAID BY USING A STATISTICAL ANALYSIS OF
        DEFENDANT'S PAYROLL AND TIME RECORDS; IT WILL NOT BE NECESSARY
        FOR THIS COURT TO HEAR TESTIMONY FROM MORE THAN A
        REPRESENTATIVE SAMPLE OF EMPLOYEES............................................................22

    A.   The Company's Written Policies And Procedures Regarding Compensation, As Well As Its
         Centralized Payroll System, Also Apply To Team Leaders And Associate Area Managers24

IV.     PLAINTIFFS ARE NOT REQUIRED TO SHOW THAT THE AUDITORS ARE
        IDENTICALLY SITUATED, ONLY THAT THEY ARE SIMILARLY SITUATED.......24

    A.   It Is Undisputed That Auditors Perform The Same Job Duties At Each Work Site, And That
         They Are Subject To Uniform Written Policies And Procedures Regarding Compensation24

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                                    i

SCHNEIDER
& WALLACE

B.   It Is Well-Settled That Conditional Certification Does Not Require That All Members Of The Class Have Identical Claims Or That They Have Been Denied Compensation For The Exact Same Amount Of Hours Worked; Defendant's Evidence Of Minor Factual Variations Does Not Establish That The Putative Class Members Are Not "Similarly Situated".........25

C.   Evidence Regarding Different Amounts Of Unpaid Wages Does Not Preclude Conditional Certification; Such Differences Are Addressed At The Damages Stage.............................26

V.   DEFENDANT'S RELIANCE ON THE COURT'S DECERTIFICATION DECISION IN JOHNSON V. RGIS IS MISPLACED .............................................................................27

VI.  DEFENDANT'S "HAPPY CAMPER" DECLARATIONS ARE OF LITTLE PROBATIVE VALUE BECAUSE PLAINTIFFS' CHALLENGE THE COMPANY'S POLICIES, AND BECAUSE COURTS HAVE BEEN CHARY OF RELYING UPON EMPLOYEE DECLARATIONS SOLICITED BY THE EMPLOYER ............................29

A.   It Is Well-Settled That "Happy Camper" Declarations Are Of Little Probative Value In Determining The Propriety of Class Certification ................................................29

B.   Courts Have Disregarded "Happy Camper" Declarations Because Of The Potential For Coercion In The Employer-Employee Relationship ................................................31

C.   Most Of Defendant's Declarants Were Paid For Their Time Spent In Connection With Their Declarations .................................................................................................31

VII. PLAINTIFFS' PROPOSED FORM OF NOTICE IS SUFFICIENT ....................................32

VIII. CONCLUSION................................................................................................32

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

3

Adams v. Inter-Con Security Systems, 242 F.R.D. 530 (N.D. Cal. 2007)............................9, 10

Alba v. Papa John's USA, Inc., No. CV 05-7487 GAF (CTx) 2007 WL 953849, at *1 (C.D. Cal.
   Feb. 7, 2007).................................................................................................. 29

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946)...............................................23

Austin v. CUNA Mut. Ins. Soc'y, 232 F.R.D. 601 (W.D. Wis. 2006)..................................... 6

Avila v. Turlock Irrigation Dist., No. 2006 WL 3201083, at *3 (E.D. Cal. Nov. 6, 2006.............5

Ballaris v. Wacker Siltronic Corp., 370 F.3d 901 (9th Cir. 2004)....................................... 11

Ballaris v. Wacker Silttronic Corp., 2001 WL 1335809, at **1-3 (D. Or. Aug. 24, 2001).......... 10

Basco v. Wal-Mart Stores, Inc., 2004 WL 1497709 (E.D. La. July 2, 2004)........................... 7

Bremiller v. Cleveland Psychiatric Inst., 898 F. Supp. 572 (N.D. Ohio 1995)........................ 30

Brooks v. BellSouth Telecomm., Inc., 164 F.R.D. 561 (N.D. Ala. 1995).............................. 7

Bublitz v E. I. DuPont de Nemours and Co., 196 F.R.D. 545 (S.D. Iowa 2000)..................... 32

Burch v. Qwest Communications, 500 F. Supp. 2d 1181 (D. Minn. 2007)...........................26

Chao v. Pacific Stucco, Inc., 2006 WL 2432862, *6 (D. Nev. Aug. 21, 2006)....................... 18

Clarke v. Convergys Customer Mgmt. Group, Inc., 370 F.Supp.2d 601 (S.D. Tex. 2005)......... 6, 9

Cunningham v. Gibson Elec. Co., 43 F.Supp.2d 965 (N.D. Ill. 1995)................................. 18

Dege v. Hutchinson Tech., Inc., 2007 WL 586787, at *1 (D.Minn. Feb. 22, 2007)....................5

Delgado v. Ortho-McNeil, Inc., 2007 WL 2847238, at *2 (C.D. Cal. Aug. 7, 2007)................... 3

Dietrich v. Liberty Square, LLC, 230 F.R.D. 574 (N.D. Iowa 2005)................................... 10

Dole v. Enduro Plumbing, Inc., 1990 WL 252270 (C.D. Cal. Oct. 16, 1990)..........................21

Dominquez v. Minnesota Beef Indus., 2007 WL 2422837, at *3 (D. Minn. Aug. 21, 2007)...........9

Donovan v. Bel-Loc Diner, Inc., 780 F.2d 1113 (4th Cir. 1985)....................................... 23

Frank v. Eastman Kodak Co., 228 F.R.D. 174 (W.D.N.Y. 2005)..................................... 27

Frank v. Gold'n Plump Poultry, Inc., 2005 WL 2240336, at *3 (D. Minn. Sept. 14, 2005)............ 9

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                    iii

SCHNEIDER
& WALLACE

Gerlach v. Wells Fargo and Co. 2006 WL 824652, at *3 (N.D. Cal. March 28, 2006)................7

Gieseke v. First Horizon Home Loan Corp., 408 F. Supp. 2d 1164 (D. Kan. 2006)................27

Gjurovich v. Emmanuel's Marketplace Inc., 282 F.Supp.2d 101 (S.D.N.Y. 2003)................6

Grochowski v. Phoenix Constr., 318 F.3d, 80 (2d Cir. 2003)................23

Guzman v. Varco Int'l, Inc., 2002 WL 32639237, at * 3 (S.D.Tex. 2002)................10

Hayes v. Laroy Thomas, Inc., 2006 WL 1004991, at *6 n.3 (E.D. Tex. Apr. 18, 2006)...........26

Hipp v. Liberty National Life Ins., 252 F.3d 1208 (11th Cir. 2001)................26

Jackson v. City of San Antonio, 220 F.R.D. 55 (W.D. Tex. 2003)................2

Jenson v. Eveleth Taconite Co., 139 F.R.D. 657 (D. Minn. 1991)................30, 31

Kurihara v. BestBuy Co., 2007 WL 250169 (N.D. Cal. Aug. 31, 2006)................29, 31

Leuthold v. Destination America, 224 F.R.D. 462 (N.D. Cal. 2004)................7

Lindow v. U.S., 738 F.2d 1057 (9th Cir. 1984)................12

Martin v. Funtime, Inc., 792 F.Supp. 539 (N.D. Ohio 1991)................18

Mazur v. Olek Lejbzon & Co., 2005 WL 3240472, at *5 (S.D.N.Y. Nov. 30, 2005)................26

McLaughlin v. DialAmerica Mktg., Inc., 716 F. Supp 812 (D.N.J. 1989)................23

Mooney v. Aramco Servs. Co., 54 F.3d 1207 (5th Cir. 1995)................5

Morden v. T-Mobile USA, Inc., 2006 WL 2620320, at *3 (W.D. Wash. Sept. 12, 2006)...........31

Neagley v. Atascosa County EMS  2005 WL 354085, at *4 (W.D. Tex. 2005)................10

Pendlebury v. Starbucks Coffee Co., 2005 WL 84500, at *3 (S.D. Fla. Jan. 3, 2005)................6

Pfohl v. Farmers Ins. Group, 2004 WL 554834, *3 (C.D. Cal. Mar. 1, 2004)................6, 8

Piper v. RGIS Inventory Specialists, Inc., 2007 WL 1690887, at *4 (N.D. Cal. June 11, 2007)......4

Reeves v. Alliant Techsys., Inc., 77 F. Supp.2d 242 (D.R.I. 1999)................10

Reich v. Dept. of Conservation And Natural Res. State of Alabama, 28 F.3d 1076 (11th Cir.
   1994)................12

Reich v. S. New England Telecomms. Corp., 121 F.3d 58 (2d Cir. 1997)................23

Reich v. Stewart, 121 F.3d 400 (8th Cir. 1997)................23

Reich v. Waldbaum, Inc., 833 F. Supp. 1037 (S.D.N.Y. 1993)................23

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D. Cal. 2006)...........................5

*Sherrill v. Sutherland Global Servs., Inc.*, 487 F.Supp.2d 344 (W.D.N.Y 2007)....................6, 9

*Shores v. Publix Super Markets, Inc.*, 1996 WL 859985, at *1 (M.D. Fla. Nov. 25, 1996)..........32

*Stanfield v. First NLC Fin. Servs.*, 2006 WL 3190527, at *2 (N.D. Cal. Nov. 1, 2006)...............5

*Tennessee Coal, Iron & R. Co. v. Muscoda Local*, 321 U.S. 590 (1944)..........................11, 12

*Thiebes v. Wal-Mart Stores, Inc.*1999 WL 1081357....................................................10, 25

*Thiessen v. Gen. Elec. Capital Co.*, 267 F.3d 1095 (10th Cir. 2001)..................................5

*Tierno v. Rite Aid Corp.*, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006)..............................29

*Trotter v. Perdue Farms, Inc.*, 2001 WL 1002448 (D. Del. Aug. 16, 2001)...................26, 27, 29

*Tyler v. Payless Shoe Source, Inc.*, 2005 WL 3133763 (M.D. Ala. Nov. 23, 2005)....................7

*U.S. Dept. of Labor v. Cole Enters.*, 62 F.3d 775 (6th Cir. 1995)......................................12

*Villatoro v. Kim Son Rest. L.P.*, 286 F.Supp.2d 807.....................................................10

*Webster v. Public School Employees of Washington*, 247 F.3d 910 (9th Cir. 2001).............13, 16

*Wilder v. Bernstein*, 499 F. Supp. 980 (S.D.N.Y. 1980)...................................................30

*Wilks v. Pep Boys*, 2006 WL 2821700 (M.D. Tenn. Sept. 26, 2006)..........................18, 23, 26

*Williams v. Tri-County Growers, Inc.*, 747 F.2d 121 (3d Cir. 1984)..................................21

*Wirtz v. Williams*, 369 F.2d 783 (5th Cir. 1966).........................................................21

**State Cases**

*Bell v. Farmers Ins. Exch.*, 115 Cal.App.4th 715 (2004)................................................24

**Federal Statutes**

29 U.S.C. § 203(g)......................................................................................12

29 U.S.C. § 254(a)......................................................................................22

F.R.C.P. Rule 23........................................................................................26

Fed.R.Civ.P. 23(b)(3)...................................................................................25

FLSA, 29 U.S.C. § 211(c)...............................................................................21

**Federal Regulations**

29 C.F.R. § 778.223............................................................................................. 11

29 C.F.R. § 785.11 (2007)................................................................................... 12

29 C.F.R. § 785.13................................................................................... 12, 18, 30

# I.  INTRODUCTION

Defendant's opposition misstates Plaintiffs' claims and erroneously contends that Plaintiffs are not challenging any of the written policies and procedures of RGIS.  Because Plaintiffs rely upon Defendant's written policies and procedures to support conditional certification, in addition to the evidence contained in Plaintiffs' declarations regarding off-the-clock work, Defendant's reliance on alleged variations in the declaration testimony is insufficient to defeat conditional certification.  As discussed below, Plaintiffs' claims are based on defects that appear on the face of RGIS' uniform written policies and procedures.  It is undisputed that these policies and procedures apply to all auditors throughout the United States, and that RGIS has a centralized payroll system operated from corporate headquarters.  Plaintiffs' evidence shows that RGIS has failed to adopt and enforce policies and procedures that are sufficient to ensure that RGIS auditors do not perform unpaid off-the-clock work in violation of the Fair Labor Standards Act ("FLSA") and its accompanying regulations.

Defendant's argument that this Court should skip straight to the more stringent "second stage" review traditionally applied at the decertification stage, and that it should not apply the more lenient standard that has been used by the overwhelming majority of courts at the notice stage of an FLSA collective action, is wrong on the law.  There are no special circumstances that would warrant a departure from applying the "first stage" standard in this case. As discussed below, Defendant has grossly exaggerated the scope of discovery that has been completed.  To date, Plaintiffs have taken eight depositions, and Defendant has taken five—very modest numbers for a multi-party case, let alone a putative national class action.  Neither side has propounded any interrogatories, nor has there been any expert discovery regarding Defendant's payroll and timekeeping records.  In fact, Defendant has stonewalled the majority of discovery that Plaintiffs have attempted to undertake in this case, including any discovery regarding documents relating to Plaintiffs' overtime claims. *See* Reply Declaration of Guy Wallace ("Wallace Reply Decl.") ¶¶8-11.  Similarly, to the extent that Defendant relies upon discovery that was conducted previously in the *Johnson* or *Davidson* cases, a review of the record shows that discovery in those cases did not extend beyond the two Texas districts at issue. Wallace Reply Decl. ¶¶21-24.  Finally, the only

courts in this District to consider such proposals to proceed directly to the "second stage" review in cases involving a similar level of discovery to that completed in this case have rejected them. *See* discussion *infra* at II.A.

Numerous courts have granted conditional certification of cases involving off-the-clock violations, including cases dealing with the types of donning time and waiting time claims raised herein.[1]  Plaintiffs have submitted far more evidence in support of conditional certification than is usually required at the notice stage.  Many courts have granted conditional certification based solely upon the allegations of the complaint and a small number of declarations.

Moreover, it is clear that conditional certification is the best approach to managing this case. As of the date of this filing, there are 540 opt-ins to this case.[2]  Over 280 of these opt-ins are from California employees of RGIS.  Wallace Reply Decl. ¶3.  As discussed, Plaintiffs challenge the legality of written policies and procedures.  It will be possible to determine whether Defendant has violated the FLSA by conducting a statistical analysis of payroll and timekeeping records.  *See* discussions *infra* at IV.C.  If this case is certified, it is well settled that this Court will not have to hear testimony from more than a representative sample of employees.  Defendant's alternative approach—that this Court only permit individual joinder of California employees to create a massive multi-party case—would be totally unworkable as a practical matter, and unnecessary given that the claims herein can be adjudicated on a class-wide basis.

Defendant argues that Plaintiffs' declarations show wide variations in claims and factual circumstances that preclude certification.  In this regard, it is significant that Defendant has not and cannot make any serious contention that its auditors do not perform identical job duties throughout the United States.  In essence, all they do is count inventory.  This fact alone weighs heavily in favor of conditional certification because it is well settled that employees need not be identically

---

[1] Based upon the evidence to date, which has evolved since the filing of Plaintiffs' opening papers on conditional certification, Plaintiffs do not seek Court approval to proceed on a class basis for claims regarding doffing time, post-inventory waiting time, or time spent loading or unloading vehicles.

[2] Several courts have held that a high number of opt-ins supports the grant of conditional certification. *See, e.g.*, *Jackson v. City of San Antonio*, 220 F.R.D. 55, 62-63 (W.D. Tex. 2003).

situated, but that they need only be similarly situated.[3]  Moreover, the type of "variation" that Defendant points to largely consists of minor differences, such as the fact that one declarant testifies to spending 15 minutes of unpaid time waiting, while another spends 30 minutes waiting. Under applicable precedents, these are not the types of differences that make a difference.  As discussed in the accompanying Reply Declaration of Andrew Lee ("Lee Reply Decl."), which cites applicable evidence in the declaration testimony, all of Plaintiffs' declarants testify to working a significant amount of unpaid off-the-clock time.  Given Defendant's uniform written policies, and given the fact that auditors have the same job duties, Plaintiffs' evidence is more than sufficient to show that the auditors are "similarly situated."

Determined to avoid conditional certification at any cost, Defendant's counsel have submitted the declarations of 131 "happy campers," of whom 85 have worked as auditors.  (*See* Sunshine Reply Declaration, ¶4).  Defendant's boilerplate declarations amply demonstrate why courts have been chary of declarations solicited from low-level employees by their employer. None of the declarants who appeared for deposition had any understanding of the claims in this case.  (*See* Park Reply Declaration which provides a summary and analysis of the testimony from Defendant's employee declarants.)  Worse, Defendant has admitted that most of these declarants were paid for the time spent in the preparation of this testimony.  Seven declarants out of the sample of twenty that were made available for discovery either withdrew their declarations, opted-in to the case, modified their prior declaration testimony in favor of Plaintiffs in significant respects, or did not even appear for deposition.  Finally, to the extent that Defendant has proffered these declarations as proof that it should win this case on the merits, such considerations are premature and improper during the current proceedings anyway.

---

[3]  *See, e.g., Delgado v. Ortho-McNeil, Inc.*, No. SACV07-263, 2007 WL 2847238, at *2 (C.D. Cal. Aug. 7, 2007) ("Here, the allegations of the complaint and the evidence submitted by both Plaintiffs and Defendants establish that the job duties of sales representatives are sufficiently similar to warrant conditional certification at the notice stage."); *Gerlach v. Wells Fargo & Co.*, No. C 05-0585, 2006 WL 824652, at *3 (N.D. Cal. Mar. 28, 2006) ("As noted above, the standard for certification at the notice stage is a lenient one. Plaintiffs meet their burden of showing that all BSEs are similarly situated with respect to their FLSA claim: all BSEs share a job description, were uniformly classified as exempt from overtime pay by Defendants and perform similar job duties.").

SCHNEIDER & WALLACE

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                          3

1    In summary, Plaintiffs have satisfied the "lenient" standard for conditional certification.

2    Other auditor employees should be given the opportunity to receive notice and choose whether

3    they wish to opt in. At the close of discovery, RGIS will get its opportunity to move for

4    decertification, in accordance with the traditional approach.  With the benefit of complete

5    discovery, this Court can then determine the best approach to adjudicating this case.

6    II.    UNDER APPLICABLE PRECEDENTS THIS COURT SHOULD APPLY THE MORE
            LENIENT "STAGE ONE" STANDARD OF REVIEW

7          **A. The "Stage One" Standard Of Review Applies Until The Close Of Discovery**

8          In their opposition brief, Defendant contends that this Court should not apply the more

9    lenient first stage standard of review in evaluating Plaintiffs' Motion to Facilitate Notice because

10   the parties have conducted a limited amount of discovery in this case, and because some discovery

11   was conducted in the *Johnson v. RGIS* case regarding a single Texas district, District 166.

12         The overwhelming majority of courts have held the more lenient stage one standard applies

13   until *the close of discovery*, at which point the defendant may make a motion to decertify.  After

14   the close of discovery, the more rigorous "stage two" standard of review is applied.  As this Court

15   correctly explained in its Order Denying Motion For An Order Declaring "Opt-Ins" Invalid:

16         District courts in the Ninth Circuit have generally applied an "ad hoc two tiered approach"
17         in determining whether the plaintiffs are similarly situated. Under this approach, the district
           court makes two determinations. First, the court determines whether a collective action
18         should be certified for the purpose of sending notice to potential class members ("the notice
           stage").  At this stage, the standard is lenient, requiring "little more than substantial
19         allegations, supported by declarations or discovery, that 'the putative class members were
           together victims of a single decision, policy, or plan.  Second, after discovery has concluded,
20         the court revisits the question of whether the class meets the "similarly situated"
           requirement, this time applying a stricter standard.
21

22   *Piper v. RGIS Inventory Specialists, Inc.*, No. C-07-00032, 2007 WL 1690887, at *4 (N.D. Cal.

23   June 11, 2007).

24         The vast majority of courts have reached the same conclusion. To Plaintiffs' knowledge,

25   there is no published decision from within this district in which a court applies the stage two

26

27

28

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                    4

SCHNEIDER
& WALLACE

standard prior to the close of discovery.[4]  Numerous other district courts within the Ninth Circuit

have reached the same conclusion.[5]  Moreover, the only Circuit Courts that have addressed the

parties' burdens at each of the two stages of the conditional certification process under the FLSA

have held that the second stage review takes place after the completion of discovery.[6]  In fact,

district courts throughout the nation have specifically held that the second stage review of the

propriety of an FLSA collective action takes place *after* the completion of discovery when the

defendant files a motion for decertification.[7]

---

[4] *See, e.g., Adams v. Inter-Con Sec. Sys. Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007) ("In the second step, the party opposing the certification may move to decertify the class once discovery is complete and the case is ready to be tried."); *Stanfield v. First NLC Fin. Servs.*, No. C 06-3892, 2006 WL 3190527, at *2 (N.D. Cal. Nov. 1, 2006) ("Courts in this district have used a two-tiered approach: the court makes an initial determination of whether the plaintiffs are similarly situated based on the pleadings and any affidavits submitted by the parties. The standard is lenient, and conditional collective action certification is usually granted.  The second step occurs when discovery is complete.") (citations omitted); *Gerlach v. Wells Fargo & Co.*, No. C 05-0585, 2006 WL 824652, at *3 (N.D. Cal. March 28, 2006) ("This Court, too, will conditionally certify the collective action for the purpose of sending notice of the action to potentially similarly situated employees.  After discovery is complete, Defendants can move for decertification, and the Court will then apply the heightened second-tier review."); *Leuthold v. Destination America*, 224 F.R.D. 462, 467 (N.D. Cal. 2004) ("Because the court generally has a limited amount of evidence before it, the initial determination is usually made under a fairly lenient standard and typically results in conditional class certification. Once discovery is complete and the case is ready to be tried, the party opposing class certification may move to decertify the class.") (citations omitted).

[5] *See, e.g., Morden v. T-Mobile USA*, No. C05-2112RSM, 2006 WL 2620320, at * 4 (W.D. Wash. Sept. 12, 2006) (rejecting defendant's proposal to proceed to second stage review because some discovery had been completed as "contrary to the broad remedial policies underlying the FLSA" and holding "After discovery is complete, defendant may move for decertification, and the Court will then apply the heightened second-tier review."); *Avila v. Turlock Irrigation Dist.*, No. 1:06-CV-00050, 2006 WL 3201083, at *3 (E.D. Cal. Nov. 6, 2006) ("Due to the minimal evidence at the court's disposal, this determination is based on a fairly lenient standard, and typically results in a 'conditional certification' of a representative class. The second determination is made after discovery is largely complete, usually on a motion for decertification by defendant.") (citations omitted); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 482 (E.D. Cal. 2006) ("The second tier of analysis occurs once discovery is complete and the case is ready to be tried, generally triggered by defendant's motion to decertify the class.") (citations omitted).

[6] *See, e.g., Thiessen v. Gen. Elec. Capital Co.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001) ("At the conclusion of discovery (often prompted by a motion to decertify), the court then makes a second determination, utilizing a stricter standard of 'similarly situated'."); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995) ("The second determination is typically precipitated by a motion for 'decertification' by the defendant after discovery is largely complete and the matter is ready for trial.").

[7] *See, e.g., Dege v. Hutchinson Tech., Inc.*, Civ. No. 06-3754, 2007 WL 586787, at *1 (D.Minn. Feb. 22, 2007) ("At this stage, the plaintiffs need only establish a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan.  In the second stage, which occurs after

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                                                 5

SCHNEIDER
& WALLACE

1     The only published decisions in the Northern District to address similar proposals to proceed

2 directly to stage-two review have rejected this unorthodox approach for sound reasons.  For

3 example, Judge Wilken addressed a similar situation in *Gerlach v. Wells Fargo*.  In that case, the

4 parties had taken over 16 depositions, and the Defendant had produced more than 40,000 pages of

5 documents.  This is far more discovery than has been completed to date in the case at bar.  Wallace

6 Reply Decl. ¶¶10, 26.  Defendant Wells Fargo argued that because a substantial amount of

7 discovery had already been completed, the court should apply the second stage standard of review.

8 Judge Wilken rejected defendants' argument, holding:

> Defendants argue that this motion should be decided under the stricter second stage
> analysis.  According to Defendants, extensive discovery has been conducted: Plaintiffs
> have received over 40,000 pages of discovery in response to 116 requests and have
> deposed sixteen witnesses.  Defendants contend that the evidence shows that [the
> employees] are not similarly situated: they are more than 2,500 white-collar
> employees who work in widely varying jobs in thirty-eight States and in multiple lines
> of businesses…Defendants cite *Pfohl v. Farmers Ins. Group*, 2004 WL 554834, *3
> (C.D. Cal. Mar. 1, 2004), to support their argument that the Court can, and should,
> proceed to the second stage of the two-tiered analysis.  In *Pfohl*, the court proceeded
> directly to the second step and weighed relevant factors to determine whether the
> plaintiffs there were similarly situated.  But, before proceeding to the second stage, the
> court noted that "the parties did not dispute that discovery has been undertaken
> relating to the issues of certification of this action as a collective action." [citation
> omitted]  Here, although volumes of paper have been produced and over a dozen
> witnesses deposed, Plaintiffs state that discovery is nowhere near complete.  After

discovery is completed, the court conducts an inquiry into several factors, including the extent and
consequences of disparate factual and employment settings of the individual plaintiffs, the various
defenses available to the defendant that appear to be individual to each plaintiff, and other fairness
and procedural considerations."); *Sherrill v. Sutherland Global Servs., Inc.*, 487 F.Supp.2d 344, 349
(W.D.N.Y 2007) ("The second step of a collective action inquiry occurs at the close of discovery."); *Austin
v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006) ("At the close of discovery, the defendant
may make a motion for decertification, at which point the court examines all the evidence and
arguments submitted by the parties on the question of similar situation."); *Clarke v. Convergys Customer
Mgmt. Group, Inc.*, 370 F.Supp.2d 601, 604-05 (S.D. Tex. 2005) ("The second stage is typically
precipitated by a motion for 'decertification' by the defendant after discovery is largely complete.");
*Pendlebury v. Starbucks Coffee Co.*, No. 04-CV-805212005, 2005 WL 84500, at *3 (S.D. Fla. Jan. 3, 2005)
("The second stage of the two-tiered procedure usually occurs at the end of discovery upon the defendant's
motion for decertification of the class. At the second stage, the court has much more information on which
to base its decision and makes a factual determination on the similarly situated question."); *Gjurovich v.
Emmanuel's Marketplace Inc.*, 282 F.Supp.2d 101, 105 (S.D.N.Y. 2003) ("Again, the Plaintiff's burden for
proving that he is similarly situated to these potential plaintiffs is minimal for this preliminary
determination –a determination that can be modified or reversed after discovery is complete.").

SCHNEIDER
& WALLACE

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS     6

filing their reply, Plaintiffs submitted additional relevant information, which Defendants had only recently produced. Even Defendants do not contend that discovery on the issue of certification is complete; Defendants only contend that discovery has been extensive and that additional discovery will not change the facts or analysis that [the employees] are not similarly situated.

To apply the second-tier heightened review at this stage would be contrary to the broad remedial purposes underlying the FLSA…This Court, too, will conditionally certify the collective action for the purpose of sending notice of the action to potentially similarly situated employees. After discovery is complete, Defendants can move for decertification, and the Court will then apply the heightened second-tier review.

No. C 05-0585, 2006 WL 824652, at *3 (N.D. Cal. March 28, 2006).

Chief Judge Walker reached the same conclusion in *Leuthold v. Destination* America, 224 F.R.D. 462, 467-68 (N.D. Cal. 2004). In that case, Judge Walker rejected defendant's argument that it was permissible to skip over the notice stage and proceed directly to the second stage because extensive discovery had been completed. The court held, in pertinent part:

Although it is a close question, give that extensive discovery has already taken place, the court agrees with plaintiffs that the court ought to begin the FLSA class certification analysis with the question whether notice should be sent to the prospective class. Several considerations support this conclusion. First, the discovery phase of his lawsuit, though apparently drawing to a close, is still in something of a state of flux…Second, the two-tier approach contemplates progression through the notice stage before reaching the more rigorous inquiry required to maintain the class…As described above, it is unclear whether the factual record of this case is complete. The relevant facts have not been presented with clarity, and the court cannot be certain whether any of the ongoing discovery disputes would inform the court's second tier analysis.
…
Finally, beginning with the tier one analysis is the most equitable means of proceeding. As noted above, should the court bypass tier one entirely, some potential plaintiffs might not become aware of the lawsuit and would not have an opportunity to join the suit. And should the court proceed to tier two on an unsettled factual record, the court might be deprived of crucial facts that would support plaintiffs' arguments for class treatment. The potential prejudice to plaintiffs of bypassing tier one thus is significant. On the other hand, the consequences to defendants of beginning with tier one are not unduly burdensome. Should the court conditionally certify the class, defendants will be free to move for decertification once the factual record has been finalized and the time period for opting in has expired.[8]

---

[8]   Defendant cites four cases in which the court applied the stage two standard after the completion of "substantial" discovery [*Brooks v. BellSouth Telecomm., Inc.*, 164 F.R.D. 561 (N.D. Ala. 1995); *Tyler v. Payless Shoe Source, Inc.*, 2:05-CV-33F, 2005 WL 3133763 (M.D. Ala. Nov. 23, 2005); *Basco v. Wal-Mart Stores, Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709 (E.D. La. July 2, 2004); *Pfohl v. Farmers Ins. Group*,

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                              7

SCHNEIDER
& WALLACE

**B.  Relatively Little Discovery Has Taken Place In This Case, And Substantial Discovery Remains To Be Completed**

Plaintiffs have taken one and half days of Rule 30(b)(6) depositions on topics pertinent to this motion.  Plaintiffs have also deposed seven of Defendant's employee declarants.  Park Reply Decl. ¶10.  Defendant has deposed only five of the named Plaintiffs.  Wallace Reply Decl. ¶¶38-42.  Plaintiffs have served three sets of Requests for Production of Documents.  Defendant has stonewalled the bulk of Plaintiffs' requests, claiming that nationwide discovery is overbroad, and limiting its responses to the geographic areas pertaining to the named Plaintiffs–just as it did in the *Johnson* case.  Wallace Reply Decl. ¶¶7, 22.  Neither party has engaged in any expert discovery.  Both the merits discovery and the expert discovery cut offs are still months away, even under the ambitious case schedule that has been adopted herein.  This case has been on file for less than one year, and is in its initial stages.

Moreover, Defendant has also blocked Plaintiffs' discovery on numerous issues that are directly relevant to Plaintiffs' donning time, waiting time, travel time and overtime claims.  For example, Defendant has refused to produce payroll and timekeeping records for any of its employees other than the named Plaintiffs.  Wallace Reply Decl. ¶11.  These records are relevant to determining the nature and extent of overtime worked by RGIS auditors.  The payroll records of the named Plaintiffs, however, show that RGIS auditors do work overtime.  Lee Reply Decl. ¶10.  It is doubtful that Defendant would seriously dispute that its auditors work substantial amounts of overtime when the Company conducts quarterly inventories for its clients.

---

No. CV03-3080 DT, 2004 WL 554834 (C.D. Cal. March 1, 2004)].  None of those cases have any application to the instant case.  For instance, in *Basco v. Wal-Mart Stores, Inc.*, the court applied the "stage two" standard where parties completed briefing on the motion to facilitate notice almost four years after the case was filed, plaintiffs had amended the complaint six times, and portions of the action had already been decided by the appellate court.  In *Brooks*, an ADEA case, the court applied "second stage" review only after the plaintiff had deposed seven management employees and had access to "numerous discovery documents," including detailed information about pay grade, years of service, job description, geographic location, and the reasons for dismissal of the putative class members.  Here, Plaintiffs have deposed only two RGIS management employees and have no payroll or timekeeping data for the putative class.  *Tyler* fails to support Defendant's position because the *Tyler* court did not adopt the two-step approach used in this Circuit, and the amount of discovery conducted by the parties was unclear.  Lastly, *Pfohl* does not support Defendant's position because discovery in this case is far from complete.

---

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS

SCHNEIDER & WALLACE

8

1    Given the size of the company at issue, the status of this case as a putative national class, the

2    complex and numerous issues raised in the Consolidated Complaint, and the limited discovery that

3    has been undertaken by both sides, Defendant's contention that substantial discovery has been

4    completed such that this Court is in a position to apply stage two review is insupportable.

5    **C. Conditional Certification Is Proper In An Off-The-Clock Case**

6        Courts across the county have routinely granted collective action status to off-the-clock

7    cases. Many of these have involved challenges to policies and payroll systems that failed to ensure

8    that employees were compensated for all hours worked as required by the FLSA. Recently, in

9    *Adams v. Inter-Con Security Systems*, 242 F.R.D. 530 (N.D. Cal. 2007), Judge Patel granted

10   conditional certification of a national class of security guards who contended that they had been

11   forced to do pre-shift work off-the-clock. Judge Patel held that conditional certification of the

12   plaintiffs' off-the-clock claims was appropriate because they challenged off-the-clock work

13   resulting from defects in an employer's written policies and procedures. *Id*. at 537. Numerous

14   other courts have concluded that donning and doffing cases, pre- and post-shift activity cases, and

15   other off-the-clock cases were suitable for collective action treatment.[9]

16

17

[9] *See e.g., Dominquez v. Minnesota Beef Indus.*, Civ. No. 06-1002, 2007 WL 2422837, at *3 (D. Minn. Aug. 21, 2007) (granting conditional certification of off-the-clock donning claim, and rejecting defendant's argument that individual differences in the amount of time spent donning and doffing as irrelevant to conditional certification); *Burch v. Qwest Communications Int'l, Inc.*, 500 F.Supp.2d 1181, 1190 (D.Minn. 2007) (granting conditional certification of nationwide class of employees challenging off-the-clock pre-shift and post-shift work); *Sherrill v. Sutherland Global Servs., Inc.*, 487 F.Supp.2d 344, 349-50 (W.D.N.Y. 2007) (conditionally certifying off-the-clock FLSA class of telemarketers from various states who were allegedly required to arrive early to sign into the computer and review e-mails before their official work time started because affidavits described uniform policies at ten of eleven call centers and a company-wide time system); *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, at * 5 (M.D. Tenn. Sept. 26, 2006) (denying defendant's decertification motion of nationwide class in off-the-clock overtime case because "Given the plaintiffs' proffer of significant evidence supporting their contention that the defendant, despite its written policies, subjected them to impermissible time-keeping and overtime practices, the court finds that the plaintiffs have demonstrated their subjection to a common, impermissible practice in a manner that suffices to meet their burden at this decertification stage of the proceedings."); *Clarke v. Convergys Customer Mgmt. Group*, 370 F.Supp.2d 601, 606 (S.D. Tex. 2005) ("Most importantly, all of the workers in the potential class are alleged to have been subjected to the same unlawful practices (*i.e.*, the TKS policy) and to have performed the same type of pre-and post-shift, off-the-clock tasks. Accordingly, the Court finds that the class should be conditionally certified, that court approved notice is appropriate, and that the discovery sought by Plaintiffs is appropriate."); *Frank v. Gold'n Plump Poultry, Inc.*, No. Civ. 041018, 2005 WL 2240336, at *3 (D. Minn. Sept. 14, 2005) (granting conditional certification of off-the-clock

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                          9

SCHNEIDER
& WALLACE

**D. Plaintiffs Have Proffered More Evidence In Support of Facilitating Notice Than Is Required Under Applicable Precedents To Meet The Stage One Standard**

It is well settled that the plaintiffs in an action pursuant to the FLSA are not required to proffer a great deal of evidence to meet the stage one standard of review. *See, e.g., Adams v. Inter-Con Security Systems, Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007) ("Courts have held that conditional certification requires only that "plaintiffs make substantial allegations that the putative class members were subject to a single illegal policy, plan or decision. Under this lenient standard, the plaintiffs must show that there is some factual basis beyond the mere averments in their complaint for the class allegations") (citations and quotations omitted).[10]

Plaintiffs have more than met their burden. While the case law merely requires a "modest factual showing" that "the putative class members were together victims of a single decision,

claims re donning, and stating, "As Plaintiffs have indicated, even those employees who are paid according to their actual punch may, in fact, punch in before donning and punch out before doffing their equipment. Discovery will reveal whether this is the case. The Court concludes that Plaintiffs have satisfied their burden of demonstrating that they are similarly situated for purposes of conditional certification, notice and discovery."); *Ballaris v. Wacker Silltronic Corp.*, No. 00-1627, 2001 WL 1335809, at **1-3 (D. Or. Aug. 24, 2001) (granting motion to allow FLSA notice to all hourly employees assigned to work in clean rooms in Portland Oregon over three year period; detailed allegations of complaint, along with two affidavits, sufficient to meet the "less stringent" and "modest factual showing" standards); *Thiebes v. Wal-Mart Stores, Inc.*, No. 98-802, 1999 WL 1081357, at *2 (D. Or. Dec. 1, 1999) (granting conditional certification of off-the-clock claims based on allegations in the complaint and two supporting declarations, and stating that Wal-Mart's "policy prohibiting employees from working overtime, in conjunction with its policy of requiring employees to finish their job duties, creates an atmosphere in which working off the clock is essentially mandatory.").

[10] *See also, Thiebes v. Wal-Mart Stores, Inc.*, No. 98-802, 1999 WL 1081357, at *3 (certifying FLSA collective action based on allegations contained in the Amended Complaint and two affidavits); *Ballaris v. Whacker Silttronic Corp.*, No. 00-1627, 2001 WL 1335809, at *3 (finding that two affidavits alone were sufficient to certify FLSA collective action); *Dietrich v. Liberty Square, LLC*, 230 F.R.D. 574, 577-78 (N.D. Iowa 2005) (notice granted based on allegations in two affidavits); *Neagley v. Atascosa County EMS*, No. Civ.A.SA04CA0893, 2005 WL 354085, at *4 (W. Tex. 2005) (notice granted based on allegations in complaint alone.); *Reeves v. Alliant Techsys., Inc.*, 77 F. Supp.2d 242, 247 (D.R.I. 1999) (notice granted based solely on plaintiffs "alleging that the putative class members were together the victims of a single decision, policy or plan" without any opt-in forms); *Guzman v. Varco Int'l, Inc., et al.*, No. Civ.A. H-01-4000, 2002 WL 32639237, at * 3 (S.D.Tex. 2002) (conditional notice granted based on allegations in complaint, three opt-in forms, and three affidavits); *Villatoro v. Kim Son Rest. L.P.*, 286 F.Supp.2d 807, 810-811 (conditional certification granted where plaintiff made the "minimal preliminary showing" necessary to an initial determination of similarly situated employees by plaintiff's own testimony as to a common policy and practice, and plaintiff's production of her own pay stubs).

1  policy, or plan," Plaintiffs have identified and submitted specific written policies and procedures of

2  general application to all RGIS auditors.  The Company's Rule 30(b)(6) designee on the topic of

3  policies and procedures regarding compensation for auditors testified at deposition that the

4  Auditors Handbook-United States and the Field Policy Manual United States apply to all auditors

5  in the United States.  *See* discussion *infra* at IV.A.

6          Plaintiffs have also submitted the declaration testimony of 13 named Plaintiffs and a total of

7  42 declarations in support of their claims that RGIS does not compensate its employees for hours

8  worked off-the-clock, including donning time, waiting time, pre-shift tasks and work-related travel

9  time.  As discussed in the accompanying Reply Declaration of Andrew Lee, which cites supporting

10  evidence in the Declarations, all of Plaintiffs' declarants have experienced non-payment of wages

11  in the areas of donning time, waiting time and travel time.  Plaintiffs have submitted Declarations

12  from employees who worked in 47 districts in 20 states.  In addition, 540 current and former

13  employees have opted-in to this case already.  Further, 40 of Defendant's employee declarants

14  testify to working off the clock.  Sunshine Reply Decl. ¶13 (citing declarations). This substantial

15  body of evidence is more than sufficient to support conditional certification.

16  **II.     PLAINTIFFS CHALLENGE RGIS' UNIFORM WRITTEN POLICIES AND**
17  **          PROCEDURES REGARDING COMPENSATING ITS AUDITORS**

18          **A.  The FLSA And Its Accompanying Regulations Require That Employers Adopt and**
            **      Implement Policies and Procedures That Are Reasonably Calculated To Ensure**
19          **      That Employees Are Paid For All Hours Worked**

20          It is well settled that the purpose of the FLSA is to ensure that employees are accurately paid

21  for all hours worked for the benefit of their employer.  *See, e.g., Tennessee Coal, Iron & R. Co. v.*

22  *Muscoda Local*, 321 U.S. 590, 602 (1944); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 913

23  (9th Cir. 2004) ("One of the principal purposes of the FLSA is to ensure that employees are

24  provided appropriate compensation for *all* hours worked.") (citing 29 C.F.R. § 778.223 ("Under

25  the Act an employee must be compensated for all hours worked.").  It is equally well settled that

26  the FLSA is to be broadly construed to effectuate its remedial purposes. *Tennessee Coal, Iron &*

27  *R. Co.*, 321 U.S. at 597 ("But these provisions, like the other portions of the Fair Labor Standards

SCHNEIDER
& WALLACE

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                              11

Act, are remedial and humanitarian in purpose ... Such a statute must not be interpreted or applied in a narrow, grudging manner.").

The FLSA defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA's regulations provide that "Work not requested but suffered or permitted is still work time." 29 C.F.R. § 785.11 (2007). To ensure that employees are paid for all time worked, the FLSA and its accompanying regulations impose a duty on employers to take all reasonable steps to ensure either that (a) off-the-clock work is prohibited and does not take place, or (b) that all hours actually worked get fully compensated as required by the FLSA. As the Eleventh Circuit held in *Reich v. Dept. of Conservation and Natural Resources, State of Alabama*:

> The reason an employee continues to work beyond his shift is immaterial; if the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted.
>
>> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so. 29 C.F.R. § 785.13.
>
> This Court's predecessor recognized that 'an employer's knowledge is measured in accordance with his duty ... to inquire into the conditions prevailing in his business. An employer does not rid himself of that duty because the extent of the business may preclude his personal supervision, and compel reliance on subordinates .... The cases must be rare where prohibited work can be done ... and knowledge or the consequences of knowledge avoided. In reviewing the extent of an employer's awareness, a court need only inquire whether the *circumstances* ... were such that the employer either had knowledge [of overtime hours being worked] or else had 'the opportunity through reasonable diligence to acquire knowledge. [citations and quotations omitted].

28 F.3d 1076, 1082 (11th Cir. 1994). Under applicable law, an employer violates the FLSA if it has, or should have, knowledge that off-the-clock work is being performed by its employees, and it fails to ensure that its employees are accurately paid for that off-the-clock work.[11] The Ninth

---

[11] *See, e.g., U.S. Dept. of Labor v. Cole Enters.*, 62 F.3d 775, 779-80 (6th Cir. 1995) (holding employer liable for failing to ensure that employees were accurately compensated for pre-shift and post-shift activities, and for failing to enforce its policy against off-the-clock work); *Lindow v. U.S.*, 738 F.2d 1057, 1060-61 (9th Cir. 1984) ("[W]e have more recently held that 'an employer who knows or should have known that an employee is or was working overtime' is obligated to pay the overtime. [citation omitted] An

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS     12

SCHNEIDER & WALLACE

Circuit has repeatedly held that the FLSA regulations promulgated by the Department of Labor are entitled to deference as to the meaning of the Act's requirements. *See, e.g.*, *Webster v. Public School Employees of Washington*, 247 F.3d 910, 914 (9th Cir. 2001) (citing cases).

### 1) RGIS Has Long Been On Notice That Its Employees Were Not Being Paid For All Hours Worked, But It Has Failed To Rectify The Problem

There can be no reasonable dispute that RGIS has known that its employees perform substantial amounts of off-the-clock work, including donning time, pre-inventory preparatory activities, waiting time spent engaged to work, and work related travel time. As Defendant's counsel point out in their opposition papers, RGIS has faced multiple suits for its off-the-clock violations, as well as other violations of federal and state wage and hours laws. However, Defendant's counsel has been quite misleading about the results of those cases. While Defendant states in its opposition that the Company prevailed in *Johnson v. RGIS*, a review of the court's summary judgment decision shows that it found triable issues of fact with respect to Ms. Johnson's donning time claims, pre and post-inventory waiting time claims, travel time claims after March 2004, and her overtime claims. *Johnson v. RGIS*, Memorandum And Order of May 29, 2007 at 40; Wallace Reply. Decl. ¶23.

Moreover, in 2004 RGIS entered into a substantial class monetary settlement regarding its failure to compensate its auditors for all hours worked. In a California case known as "RGIS Inventory Specialists Cases," Judicial Council Coordination Proceeding No. 4328, RGIS agreed to pay a California class of auditors and team leaders who worked at RGIS between January 1, 1999 and December 31, 2004 the sum of $20 million. The settled claims included failure to accurately pay daily or weekly overtime, failure to pay for all hours worked, failure to pay full compensation for travel time, and failure to keep accurate records and to provide proper itemized statements of earnings and work hours to employees. (Wallace Reply Decl. ¶16 Ex. H).

---

employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation.").

SCHNEIDER
& WALLACE

Because RGIS has known that many employees perform significant amounts of unpaid off-the-clock work, under federal law RGIS was required to make "every effort" to prevent such unpaid work from taking place. As Plaintiffs now show, RGIS has failed to adopt and implement policies and procedures reasonably calculated to ensure that auditors, team leaders, and associate area managers are accurately paid for all time worked.

## B. RGIS Is Highly Centralized And Has Uniform Policies And Procedures Regarding Paying Its Auditor Employees

In its opposition brief, Defendant asserts that RGIS is a decentralized company in which local supervisors determine policies and procedures regarding auditor pay. Any such contention is false. A review of the Company's policy documents confirms that all RGIS districts in the United States must comply with the policies and procedures stated in the "Auditor's Handbook-United States" and the "Field Policy Manual-United States." The RGIS Field Policy Handbook-United States expressly states that all local districts must follow the policies contained therein, and that any local policies or decisions that deviate from the Field Policy Manual-United States are unauthorized. The Auditor's Handbook-United States (March 2004) states:

RGIS has developed this handbook for two reasons:

- To set forth certain policies, rules, standards, and procedures which the newly-hired RGIS auditor should be aware of

- To help clarify terminology as it applies to our business

The Field Policy Manual states:

The RGIS Field Policy Manual sets forth the Company's policies for the following categories of employees: … Division Vice Presidents, Operations Managers, Regional Managers, District Managers … Area Managers, Crew Managers, Associate Area Managers, Assistant Crew Managers.

The function of this Manual is … to guide you in the performance of your duties, and to provide you with insight into your role in the overall organization.

This Manual sets forth current Company policy and supersedes all previously issued policies and policy manuals.

Decision making which deviates from these policies will be considered unauthorized and may lead to disciplinary action unless prior approval has been obtained from Headquarters.

SCHNEIDER
& WALLACE

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                    14

For these reasons, every employee to whom this Policy Manual applies must be familiar with its contents.

Employees governed by the policies of this Manual must fill out and sign the appropriate Acknowledgement form for this RGIS Field Policy Manual.

Field Policy Manual at p.1, RGIS WRN 03400; Wallace Reply Decl. Ex. E.

Under the November 2005 Field Policy Manual –United States, District Managers, Area Managers and other RGIS employees who supervise inventories must sign an "acknowledgement" of the following RGIS policy:

I acknowledge that I have read the November, 2005 version of the United States Field Policy Manual and am bound to the policies contained in this Manual and any revisions, <u>and that my continued employment is contingent upon following those policies.</u>[12]

The foregoing statement did not appear in prior RGIS versions of the Field Policy Manual.

Defendant's Rule 30(b)(6) designee on the topic of auditor compensation policies, Ms. Cynthia Myers, testified that the Auditor's Handbook and the Field Policy Manual apply to all RGIS employees throughout the United States, and to all RGIS districts in the United States. Myers Depo. at 24:21-23; 108:25-109:14; Wallace Reply Decl. ¶10. Ms. Myers also testified that the Auditor's Handbook applied to all RGIS auditors in the United States, and that it contains RGIS' policies and procedures with respect to auditor employees. Myers Depo. 109:18-25. Finally, Ms. Myers testified that all of RGIS' policies regarding the recording of compensation for auditors would be contained in the Auditor's Handbook, Field Policy Manual, or the "time sheet guideline."[13]

In addition to relying upon uniform written policies regarding auditor pay, RGIS utilizes a centralized computer payroll system that tracks all time records and which generates pay stubs for

---

[12] RGIS Inventory Specialists Field Policy Manual-November 2005, Page 89, RGIS WRN 03488 (emphasis added); Wallace Reply Decl. ¶10 Ex. E.

[13] Myers Depo. 58:19-61:4; 64:23-65:5 ("Q: Other than e-mails or statements that might be made in response to a specific question, are there any instructions or guidance or policies or procedures regarding the kind of work that's compensable or how time is to be recorded that is not contained in the time sheet guideline or the Field Policy Manual or the Auditor's Handbook?  A: Not that I'm aware of.")

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                    15

SCHNEIDER
& WALLACE

1  the individual auditors.  As Ms. May, the Payroll Manager for RGIS, testified at deposition, the

2  Company's Oracle system processes time records from all RGIS districts, and generates payroll

3  based on those records according to the system's programming.  May Depo. at 6:20-7:17; 14:19-

4  15:5; 48:19-49:9; Wallace Reply Decl. ¶27, Ex. V.  Further, the form of the statement of earnings

5  that is generated by the Company for auditors, as well as the type of information contained on the

6  form, is the same throughout the United States.  May Depo. at 20:24-21:18.

7         **C.  RGIS Policy In The "Auditor Handbook-United States" And The "Field Policy**
           **Manual-United States" Does Not Require That Auditors Be Paid For Pre-**

8             **Inventory Donning, Preparation And Waiting Time**

9        As discussed in Plaintiffs' opening brief, RGIS written policy, as stated in the Auditor's

10  Handbook, does not require that auditors be paid for performing necessary pre-inventory tasks

11  such as donning specialized equipment, attending mandatory pre-inventory meetings and any time

12  spent waiting for an inventory to begin.  The Auditor's Handbook contains the following

13  information about how auditors are to be paid for their work at inventories:

14       **STORE STARTING TIME**-An inventory scheduled for a 6:00 PM start means just

15       that.  Pulling into the parking lot at 6:00 PM is not being punctual –you must be ready
     to start work at 6:00 PM.  While the pre-inventory instructions and assignments are

16       being given out, your attention and cooperation is expected.

17       **TIME SHEETS**-A Time Sheet is a form listing all RGIS personnel working a particular
     inventory and is the document from which your pay is prepared.  It is your responsibility

18       to make sure that your name and your correct Badge ID Number are legibly recorded on
     a Time Sheet at every inventory, and that you are listed as a driver if you transport

19       people (at the request of RGIS) to a "travel inventory." Time In is the scheduled
     inventory start time and Time Out is when you have completed you responsibility in an

20       inventory.  **Please use dark blue or black ink only on time sheet;** do not use pencil.

21  Auditors Handbook-United States at 16, 18.  Wallace Decl. ¶10 Ex. F.

22        Thus, "Time In" —when the clock starts running at the "scheduled inventory start time"—

23  happens *after* the "pre-inventory instructions and assignments" are given out.  Also, auditors are

24  required to be "ready to start work" at the "Store Starting Time."  This requires them to have

25  donned their counting gear (the Audit, belt and laser), and to have already received the "pre-

26  inventory instructions and assignments."  The inevitable result of this policy is that employees are

27  <u>not</u> clocked in while they don their equipment or while they attend mandatory pre-inventory

28

---

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS

1   meetings.  Plaintiffs' allegations that this policy results in employees working off-the-clock hours

2   are supported by Plaintiffs' Declarations filed in support of this motion.  *See* Lee Reply Decl. ¶¶6-

3   8 (collecting and citing declaration testimony).

4         The Field Policy Manual does not contain any written policies or procedures that would

5   function to cure this defect in the Auditors Handbook.  The Field Policy Manual United States

6   contains no policy or procedure that requires supervisors to sign-in auditors prior to donning their

7   equipment and attending mandatory meetings.  Nor does the Field Policy Manual expressly and

8   specifically require that auditors be signed in prior to performing any work-related tasks for local

9   or travel inventories.  In fact, the Field Policy Manual does not address the subject of donning

10  RGIS equipment or the subject of time spent engaged to wait prior to the start of an inventory.

11  Similarly, the Auditor's Handbook-United States does not contain any policies or procedures that

12  specifically require that auditors be signed in prior to performing these work tasks for the benefit

13  of RGIS.  Finally, the "time sheet guidelines" referenced by Ms. Myers at her deposition as

14  providing information to supervisors on how to complete time records also do not specifically

15  address donning time, waiting time, or the procedure to be followed at inventories when auditor

16  employees are to be signed in to work. Wallace Reply Decl. ¶28, Ex. W.

17        In summary, the terms of the Auditors Handbook with respect to the start of inventory and

18  time-in procedures are inadequate because they may fairly be read by a reasonable person to

19  permit —if not require—auditors and other employees to complete work activities necessary to the

20  inventory prior to being signed-in and on the clock. Moreover, as Ms. Myers testified at

21  deposition, RGIS does have any monitoring instruments that specifically address whether

22  employees are being paid for donning time or waiting time.  Myers Depo. at 44:7-45:22.  In brief,

23  RGIS policies and procedures in the area of donning time and waiting time fall well short of the

24  FLSA requirement that the Company must make "every effort" to ensure that employees do not

25  work off the clock.

26        **D.  RGIS Has No Specific Written Policy Against Off-The-Clock Work, And Has
            Failed To Take Reasonable Steps To Prevent Off-The-Clock Work**

27

28

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                    17

SCHNEIDER
& WALLACE

1    A review of the Auditors Handbook-United States and the Field Policy Manual-United

2  States shows that neither of them contain any written policy against auditors being asked to

3  perform off-the-clock work, or any specific prohibition against the passive acceptance by

4  supervisors of off-the-clock work by their subordinates.  As discussed, the language of the FLSA's

5  regulations makes clear that the promulgation of such a policy is an elemental first step that all

6  employers must take to ensure that low-level employees do not do work that goes unpaid.  The

7  regulations stress that "The mere promulgation of a rule against such work is not enough.

8  Management has the power to enforce the rule and must make every effort to do so."  29 C.F.R. §

9  785.13 (emphasis added).  *See also Chao v. Pacific Stucco, Inc.*, No. 2:04-CV-0891, 2006 WL

10  2432862, *6 (D. Nev. Aug. 21, 2006) ("While actual or constructive knowledge is required,

11  Defendants fail to point out that an employer has constructive knowledge if he fails to make efforts

12  to enforce company policies in such a way as to prevent FLSA violations.  Merely promulgating

13  company policies without further enforcement is insufficient .... [quoting 29 C.F.R. § 785.13]");

14  *Wilks*, 2006 WL 2821700, at *5; *Cunningham v. Gibson Elec. Co.*, 43 F.Supp.2d 965, 975 (N.D.

15  Ill. 1995); *Martin v. Funtime, Inc.*, 792 F.Supp. 539, 542 (N.D. Ohio 1991).

16    However, Defendant's Rule 30(b)(6) designee on policies and procedures regarding auditor

17  compensation testified that RGIS does not specifically address donning time or waiting time in its

18  annual audits and sample employee surveys about auditor compensation.  Myers Depo., 44:7-

19  45:22.  In addition, RGIS does not monitor the accuracy of time records regarding travel.  *See*

20  Myers Depo., 87:17 – 88:5.  In at least these respects, the Company has failed to take obvious and

21  necessary steps to ensure that off-the-clock work is not taking place.[14]

22

23  _____

[14] The Field Policy Manual-United States does contain the general statement that "RGIS pays hourly

24  employees for all time worked.  All work time must be recorded on the Time Sheet."  Field Policy Manual-
United States §4.04 at p. 15 (RGIS WRN 03414).  This amounts to a generic statement that RGIS complies

25  with the FLSA's requirement that employees are paid for all hours worked.  As discussed above, however,
"The mere promulgation of a rule against such work is not enough.  Management has the power to enforce

26  the rule and must make every effort to do so."  RGIS's generic statement of compliance is inadequate to
ensure that supervisors accurately track employee work time because, *inter alia*:

27

28    a)    The Manual does not provide supervisors with any definition of the term "work."
For this reason, the policy is unclear as to whether donning time, time spent waiting for an inventory to

SCHNEIDER
& WALLACE

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                    18

1    In summary, RGIS is a large and sophisticated company with worldwide operations. Its

2  failure to adopt an express written policy prohibiting off-the-clock work, and its failure to use any

3  of the monitoring mechanisms available to a company with a modern human resources department

4  to make sure that low-level employees are paid for all time worked, falls short of making "every

5  effort" to ensure that its employees are paid for all time worked.

6    **E. RGIS' Written Policy Against Paying Its Employees For Two Hours Of "Commute**
      **Time" Per Shift Is Unlawful Because It Arbitrarily Fails To Separate Compensable**
7    **Work Time From Non-Compensable Commute Time**

8    As discussed, the FLSA mandates that employees must be accurately paid for all time

9  worked. Pursuant to RGIS' Travel Time policy, the Company admits that at least some of the time

10 that employees spend traveling to and from the so-called "travel inventories" is compensable

11 "work time" that must be paid by the Company. The Company's concession in this regard is

12 unsurprising given that RGIS' ability to provide its services to its customers at various locations is

13 essential to its business. Of course, to count inventory the Company must bring its workforce to

14

15 begin, or time spent by auditors in pre-inventory meetings is considered "work time" that must be recorded.
   A reasonable supervisor may well read this language in the Field Policy Manual as <u>not</u> including donning
16 time, pre-inventory meetings or waiting time.

17    b)    This policy does not pro-actively and clearly instruct supervisors that they are to
   count donning time, time spent waiting for an inventory to begin, or time spent in pre-inventory meetings as
18 "work time" that must be recorded on the Company's time sheets.

19    c)    The policy does not instruct supervisors that donning time, time spent waiting for an
   inventory to begin, or time spent by auditors in pre-inventory meetings is "work time" even if auditors
20 perform these tasks prior to the start of any inventory without being asked to do so by their supervisors. In
   this regard, it is significant that the Manual does not give managers any guidance on <u>how</u> to ensure that
21 auditors and other employees are paid for donning time or waiting time if they perform such activities
22 without being asked to do so by their supervisors.

23    d)    The policy does not expressly instruct supervisors that auditors are not to perform any work
   tasks, including donning their equipment or participating in pre-inventory meetings, prior to being signed-in
24 on the clock.

25 In short, the Company's general policy regarding complying with the FLSA is not specific enough to ensure
   that supervisors understand what specific steps that they are required to take in order to make sure that
26 donning time, "engaged to wait" time, and pre-inventory meetings take place on the clock. Moreover, even
   if the Company's policy were specific enough, Plaintiffs' Declaration testimony shows that the Company
27 does not make reasonable efforts –let alone "every effort"—to ensure that its general policy regarding
   compensation is actually followed in the field.

28

SCHNEIDER
& WALLACE

distant locations so that non-local clients can be served, and a profit can be made. For this reason, there can be little doubt that traveling to inventories primarily benefits RGIS. Because many low-income employees do not own vehicles, or do not own reliable (or insured) vehicles that would enable them to travel on their own to travel stores, it makes sense for RGIS to arrange Company vehicles to transport its workforce in order to serve the Company's clients. RGIS's own declarants acknowledge this. *See Sunshine Reply Decl.* ¶16. In addition, organizing transportation enables RGIS to ensure adequate and timely staffing at far-flung locations. *See, e.g.,* Park Reply Decl., Ex. G, Depo. of Natal, 65:23 – 66:8; Ex. D, Depo. of Hayes, 63:19 – 64:1.

The RGIS travel policy differentiates between "commute time," which is not compensated, and "Travel Time," which is compensated. The 2005 Field Policy Manual, "Commute Time and Travel Time," states:

> **Definitions:**
>
> <u>Commute Time:</u> Time that is not considered to be time worked. RGIS hourly employees will not be compensated for "Commute Time".
> <u>Travel Time:</u> Time that is considered to be time worked. RGIS hourly employees will be compensated for "Travel Time" at the prevailing minimum wage.
> …
>
> **Travel Pay "To & From" Inventories: Hourly Employees**
>
> "Commute Time" is the first 1 hour of transportation for the employees from the "Meet Site" to the inventory and the first 1 hour of transportation from the inventory back to the "Meet Site". "Commute Time" is unpaid.
>
> "Travel Time" commences following the first unpaid 1 hour of "Commute Time" from the "Meet Site" and is paid to the employee for the remainder of the trip to the inventory. The same method applies to the return trip from the inventory back to the "Meet Site." "Travel Time" is paid at the prevailing minimum wage.

Thus, RGIS admits that "Travel Time" is "time worked." Accordingly, under the FLSA, the Company has a duty to ensure that it accurately measures and records "Travel Time." RGIS policy, however, arbitrarily establishes that at least two hours per shift are "commute time" instead of "travel time." Defendant has not and cannot cite any authority that would permit it to adopt an arbitrary, across-the-board national standard of two hours of unpaid "commute time" per day for all districts in the United States. The reason for this is simple: the average or normal commute

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                                    20

SCHNEIDER
& WALLACE

1    time in each district will vary based on local traffic conditions and distances. Under the FLSA, the

2    Company is under an obligation to make reasonable efforts to determine the average commute time

3    in its various districts, or at least to utilize some other rational approach to estimating the amount

4    of commute time in each of its Districts, rather than just adopting a blanket two-hour standard that

5    applies equally to areas as different in terms of traffic and travel conditions as Los Angeles and

6    Iowa, or metropolitan New York and rural upstate New York.

7            At best, the RGIS Travel Time policy constitutes an arbitrary and blunderbuss effort at

8    estimating hours worked, a practice that is prohibited by the FLSA and its accompanying

9    regulations. Under applicable law, RGIS cannot "estimate" hours worked, but must instead

10   accurately record and calculate the compensable "work time" that auditors incur while traveling.

11   *See, e.g., Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 128 (3d Cir. 1984) ("Estimating

12   hours worked, however, violates section 11(c) of the FLSA, 29 U.S.C. § 211(c), which requires

13   employers to maintain accurate records to ensure that all workers are paid minimum wage for

14   every hour worked."); *Wirtz v. Williams*, 369 F.2d 783, 785 (5th Cir. 1966) ("The evidence is thus

15   clear that the appellee has not kept records of the actual time consumed by the truck drivers on the

16   various trips but has recorded only an assigned estimated number of hours that the trips were

17   supposed to consume. Clearly, appellee has not fulfilled his duty to keep accurate daily and

18   weekly records of the hours actually worked by each employee."); *Dole v. Enduro Plumbing, Inc.*,

19   1990 WL 252270, No. 88-7041-RMT (KX), at * 6 (C.D. Cal. Oct. 16, 1990) ("[T]he

20   uncompensated time is measured in the same way that hours worked are determined for any

21   purpose under the FLSA, *i.e.* all time during which the employee was 'suffer(ed) or permit(ted) to

22   work' is included (see Section 3(g) of the FLSA); an employer cannot substitute his own estimate

23   of the time that he believes the employee should have spent.").

24           Because RGIS determines compensable "travel time" by arbitrarily subtracting two hours of

25   "commute time" from the total time an employee spends in transit, RGIS is merely estimating the

26   amount of compensable travel time it should pay to its employees. This violates the FLSA.

27           Defendant's reliance on the Portal-to-Portal Act, and case law decided under that Act, is

28   misplaced because neither the Portal-to-Portal Act, nor the precedents that interpret it, address the

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                    21

SCHNEIDER
& WALLACE

1   circumstance presented here in which a Company admits in its own policies that at least some

2   portion of "travel time" is "work time" that must be paid for under the FLSA.   Thus, while it is

3   true that the FLSA and the Portal-to-Portal Act except travel that is preliminary or postliminary to

4   the actual place of performance of an employee's principal activity, *see* 29 U.S.C. § 254(a),

5   because RGIS itself defines "travel time" to be "time worked," at least some portion of the travel

6   time to the travel inventory is not preliminary or postliminary within the meaning of the Portal-to-

7   Portal Act.  This is logical: inventories are conducted where the stores are located, so traveling to

8   each store to conduct an inventory is an "indispensable and integral" part of the employees' jobs.

9        In summary, RGIS has no policy, definition, or explanation of why the first 60 minutes of

10  travel to and from a travel store is considered non-compensable "Commute Time." This "first 1-

11  hour" rule is arbitrary because it fails to consider what portion of travel is part of the employees'

12  normal commute, and it imposes the standard nationally.  For RGIS employees who travel to travel

13  stores and then return home, ordinary commute time is not necessarily one hour.  RGIS has no

14  policy or procedure for establishing accurate "travel times" and "commute times" for its districts,

15  and no policy of paying employees for actual "travel time" as opposed to estimated "travel time."

16  **III.   PLAINTIFFS WILL BE ABLE TO PROVE THE AMOUNT OF TIME
        EMPLOYEES HAVE NOT BEEN PAID BY USING A STATISTICAL ANALYSIS**

17  **OF DEFENDANT'S PAYROLLAND TIME RECORDS; IT WILL NOT BE
        NECESSARY FOR THIS COURT TO HEAR TESTIMONY FROM MORE THAN**

18  **A REPRESENTATIVE SAMPLE OF EMPLOYEES**

19       RGIS' common policies and procedures far outweigh any individual issues in this case, and

20  any individual variables are fairly limited and easily manageable by this Court.  Should it be

21  determined that Defendant is liable for unpaid compensation to Plaintiffs, a formula can be used

22  inserting rate of pay, number of regular shifts, and other necessary information to determine the

23  amount of the Company's liability.  *See, e.g.*, *Wilks*, 2006 WL 2821700 at *7 (noting that the court

24  could bifurcate "the case into a liability stage, where the parties could address the alleged existence

25  of an impermissible policy or practice, and a damages one, where they could, if necessary, debate

26  the impact of that policy or practice on individual plaintiffs.").

27       Indeed, there are numerous well-established pragmatic approaches approved by many courts

28  permitting Plaintiffs to satisfy their burden of proof at trial in an efficient manner by showing the

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                    22

SCHNEIDER
& WALLACE

1  extent of work performed by class members through the use of representative testimony, class

2  surveys, sampling, or mini-trials in FLSA class actions.[15]  The use of such representative testimony

3  to show damages is a common practice in FLSA off-the-clock class actions.  *See, e.g., Reich v. S.*

4  *New England Telecomms. Corp.*, 121 F.3d at 67 ("[Plaintiffs] need not present testimony from

5  each underpaid employee; rather, it is well-established that [they] may present the testimony of a

6  representative sample of employees as part of [their] proof of the prima facie case under the

7  FLSA.").

8       In addition to representative testimony, Plaintiffs may also rely upon expert analysis or

9  statistical evidence of hours worked to prove individual losses.[16]  In this case, Ms. Myers testified

10  at deposition that records maintained by the Company's Oracle computer system could be used

11  (with some exceptions) to determine actual hours worked by individual employees, thus permitting

12  an accurate determination of what a particular employee's wages should have been. For example,

13  Ms. Myers testified that it should be possible to calculate an employee's hours by determining the

---

[15] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) ("[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference"); *Grochowski v. Phoenix Constr.*, 318 F.3d, 80, 88 (2d Cir. 2003) (noting that plaintiffs do not need every employee to testify in order to prove FLSA violations or recoup back-wages, but must "present sufficient evidence for the jury to make a reasonable inference as to the number of hours worked by the non-testifying employees."); *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66-68 (2d Cir. 1997) (holding that plaintiffs satisfied their burden by providing representative testimony concerning 2.5% of the entire class of employees owed back wages); *Reich v. Stewart*, 121 F.3d 400, 406 (8th Cir. 1997) (holding plaintiff testimony and documentary evidence of the number of hours worked to support an award of back wages); *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985) ("There is no requirement that to establish a *Mt. Clemens* pattern or practice, testimony must refer to all nontestifying employees. Such a requirement would thwart the purposes of the sort of representational testimony clearly contemplated by *Mt. Clemens.*").

[16] *See, e.g., Reich v. Waldbaum, Inc.*, 833 F. Supp. 1037, 1048-49 (S.D.N.Y. 1993) (the court concluded that a computer specialist's method of calculating actual hours worked by non-testifying employees through process of "within-store averaging" or "across-store-averaging" was a reasonable method to show class damages); *McLaughlin v. DialAmerica Mktg., Inc.*, 716 F. Supp 812, 816-17 (D.N.J. 1989) (the court awarded back wages to both testifying and non-testifying employees based on a compliance specialist's calculations derived from a computerized summary of the available data and using formulas to reconstruct actual hours worked from the records of units of production); *Bell v. Farmers Ins. Exch.*, 115 Cal.App.4th 715, 746-751 (2004).

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                23

SCHNEIDER
& WALLACE

1 | number of hours that elapsed between the "meet time" and the "return time," and then subtracting

2 | two hours of "commute time" plus any off-duty meal period.  Myers Depo., 97:12-98:9.

3 | **A. The Company's Written Policies And Procedures Regarding Compensation, As Well As Its Centralized Payroll System, Also Apply To Team Leaders And Associate Area Managers**

4

5 | RGIS employees who have worked as Assistant Team Leaders, Team Leaders, and

6 | Associate Area Managers are also "similarly situated" because they are subject to the defective

7 | compensation and timekeeping policies and procedures discussed above.  Each RGIS employee

8 | carrying these titles must sign an "acknowledgement" stating that they have read the Field Policy

9 | Manual and that their employment is contingent upon following the policies that it contains.  *See*

10 | RGIS Inventory Specialists Field Policy Manual-November 2005, pg. 92 (Associate Area Manager

11 | Acknowledgment), pg. 94 (Crew Managers Acknowledgment), pg. 95 (Assistant Crew Managers

12 | Acknowledgment); Wallace Reply Decl. ¶10, Ex. E.  Moreover, all of these RGIS employees

13 | perform the same primary duty of counting merchandise.[17]  As with the Auditors, Assistant Team

14 | Leaders, Team Leaders, and Associate Area Managers have not been compensated for all hours

15 | worked off the clock, including donning time, waiting time and pre-shift tasks and work-related

16 | travel time.  Thus, Plaintiffs have satisfied the lenient burden for conditional certification.

17 | **IV.   PLAINTIFFS ARE NOT REQUIRED TO SHOW THAT THE AUDITORS ARE IDENTICALLY SITUATED, ONLY THAT THEY ARE SIMILARLY SITUATED**

18

19 | **A. It Is Undisputed That Auditors Perform The Same Job Duties At Each Work Site, And That They Are Subject To Uniform Written Policies And Procedures Regarding Compensation**

20

21

22

23 | [17] *See, e.g.*, Declaration of Claudia Adams at ¶8; Declaration of Tiffany Bechere at ¶6 (Auditor and Team Leader); Declaration of Renee Blake at ¶7 (Auditor and Team Leader); Declaration of Anna Marie Butler at

24 | ¶7 (Auditor, Team Leader and Assistant Team Leader); Declaration of Sally Chandler at ¶7 (Auditor and Team Leader); Declaration of Lori Griffith at ¶5 (Auditor and Team Leader); Declaration of Connie

25 | Harman at ¶6 (Auditor, Team Leader and Associate Area Manager); Declaration of Carol Holmgren at ¶7 (Auditor and Team Leader); Declaration of Melani Manos at ¶8 (Assistant Team Leader and Team Leader);

26 | Declaration of Bo Paulsen at ¶6 (Assistant Team Leader and Team Leader); Declaration of Rachel Perez at ¶6 (Auditor and Team Leader); Declaration of Pierson at ¶7 (Auditor and Team Leader); Declaration of

27 | Cynthia Piper at ¶11 (Auditor and Team Leader); Declaration of Jennifer Saalsaa at ¶6 (Auditor and Assistant Team Leader); Declaration of Linda Tebay at ¶8 (Auditor and Assistant Team Leader).

28

1    The duties of all RGIS auditors throughout the United States are laid out in the Auditors

2  Handbook-United States.  Wallace Reply Decl. ¶10 Ex. F.  At deposition, Ms. Myers conceded

3  that auditors essentially perform the same job duties throughout the United States. Myers Depo. at

4  65:17 – 67:3.  Similarly, Ms. Myers testified that all auditors are subject to the written policies and

5  procedures stated in the Auditors Handbook-United States and the Field Policy Manual-United

6  States, which include all RGIS policies regarding compensation.  *Id.* at 108:25 – 109:25.

7      **B.  It Is Well-Settled That Conditional Certification Does Not Require That All
        Members Of The Class Have Identical Claims Or That They Have Been Denied**
8      **Compensation For The Exact Same Amount Of Hours Worked; Defendant's
        Evidence Of Minor Factual Variations Does Not Establish That The Putative Class**
9      **Members Are Not "Similarly Situated"**

10    Numerous courts have held that the "similarly situated" standard of § 216(b) does not

11  require that either the claims or injuries of the putative class members be identical, as Defendant

12  erroneously contends in its opposition.  In its decision granting conditional certification of an off-

13  the-clock claim, the court in *Thiebes* held that the similarly situated requirement is "less stringent

14  that the requirement under Fed.R.Civ.P. 23(b)(3) that common questions of law or fact

15  predominate," and "[a]s such, the claims and positions of employees need not be identical in order

16  to meet the lower standards of § 216(b)."  1999 WL 1081357, at *2 (citations omitted).  The

17  Eleventh Circuit reached the same conclusion in *Hipp v. Liberty National Life Insurance*, where it

18  held that under § 216(b) "[p]laintiffs need show only that their positions are similar, not identical,

19  to the positions held by the putative class members." *Hipp*, 252 F.3d 1208, 1217 (11th Cir. 2001)

20  (citation omitted).[18]

---

[18] *See also Wilks*, 2006 WL 2821700, at *3 ("Notably, even at the decertification stage, *similarly* situated does not mean *identically* situated.") (emphasis in original); *Hayes v. Laroy Thomas, Inc.*, No. 5:05CV227, 2006 WL 1004991, at *6 n.3 (E.D. Tex. Apr. 18, 2006) ("[P]laintiffs need only show that their positions are similar, not identical."); *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194(RMB)DF, 2005 WL 3240472, at *5 (S.D.N.Y. Nov. 30, 2005) (granting conditional certification of broad class of employees in off-the-clock overtime case and holding, "Contrary to Defendants' implication, Plaintiffs need not show that they are 'identically situated to potential class members' for approval of a collective action; rather, Plaintiffs need only provide evidence that a 'demonstrated similarity' exists among individual situations. Plaintiffs have done this. Each of the declarations submitted by Plaintiffs establishes a likelihood that at least some of Defendants' other employees, who are alleged to have performed the same or similar work as Plaintiffs, for the same or similar amount of hours per week, were also not paid overtime as required under the FLSA." (citation omitted)).

1    Indeed, in *Burch v. Qwest Communications*, one district court recently rejected the same

2    argument that Defendant makes here: that differing amounts of unpaid work time between putative

3    class member shows that employees are not similarly situated. *See Burch*, 500 F. Supp. 2d 1181,

4    1189 (D. Minn. 2007). The court reached this conclusion even though the differences between

5    class members were far greater than those Defendant points to in this case. The court held:

6        Defendants also argue that Plaintiffs and opt-in Plaintiffs are not similarly situated because
         their affidavits allege widely varying amounts of time worked off the clock, from 15-20
7        minutes per week to 10-20 hours per week. However, most affidavits alleged between 2 and
         4 hours of off-the-clock work per week. The Amended Complaint alleges that Plaintiffs and
8        similarly situated individual work, on average, 30 minutes per day off-the-clock per person,
         which is consistent with the majority of the affidavits. The variation in off-the-clock time is
9        "more appropriately addressed after the completion of discovery and during the second
         stage of the certification determination." *Id.* (citation omitted)
10

11   Indeed, courts have rejected the argument that differences between class members in the

12   amount of unpaid work hours defeats commonality or typicality even under the higher standard for

13   class certification set by Rule 23. As the district court explained in *Trotter v. Perdue Farms, Inc.*,

14   No. CIV.A.99x-893-RRM, 2001 WL 1002448 (D. Del. Aug. 16, 2001) in its order granting

15   F.R.C.P. Rule 23 class certification of an off-the-clock case involving donning and doffing claims:

16       [D]efendants contend that differences in the physical layout of the plants means [sic] that
         some workers take more time to obtain and sanitize equipment than others … There are
17       often small variables between plaintiffs' claims in a class action. These differences should
         not necessarily derail a class action. In this case, if plaintiffs can succeed on the merits, they
18       will have to justify a damage figure for each member of the class. That work will take into
         account the average time lost by each class member that is required to obtain, don, doff, and
19       sanitize equipment . . .
20

21   *Trotter*, 2001 WL 1002448, at *1-2.

22   **C. Evidence Regarding Different Amounts Of Unpaid Wages Does Not Preclude
        Conditional Certification; Such Differences Are Addressed At The Damages Stage**

23   In *Adams v. Inter-Con Security Systems*, Judge Patel held that variation in damages between

24   class members stemming from differences in the amount of off-the-clock work was irrelevant to

25   determining the question of conditional certification. As Judge Patel explained:

26       [D]efendant claims that an action for off-the-clock pay violations is not generally
         suitable for collective action certification and that conditional certification should be
27       denied "where an off-the-clock claim requires significant individual considerations . . ."
28

SCHNEIDER
& WALLACE

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                    26

…

[T]he policies alleged by plaintiffs are not just instructed verbally by supervisors, but are also described in employee handbooks and job applications . . . [D]efendant's concern about the potentially individualized nature of determining damages is irrelevant in considering conditional certification. The threshold inquiry does not require that the extent of the potential plaintiffs' damages be identical or even similar. Whether each plaintiff is due a different amount in damages does not affect whether they were "together the victims of a single decision, policy or plan." Therefore, actions with off-the-clock allegations are suitable for collective action certification.

*Id.* at 536-7 (citations omitted). Numerous other courts have held that variations in individual damages are not relevant at the conditional certification stage.[19]

## V. DEFENDANT'S RELIANCE ON THE COURT'S DECERTIFICATION DECISION IN *JOHNSON v. RGIS* IS MISPLACED

Defendant's reliance on the court's decertification decision in *Johnson v. RGIS* is misplaced. This case presents different challenges to Defendant's written policies than those raised in the *Johnson* case, and presents new authorities in support of Plaintiffs' position, including applicable case law supporting conditional certification of off-the-clock claims. Moreover, the instant motion also presents significant new evidence regarding the centralization and uniformity of Defendant's compensation policies and payroll system. In contrast, the court's decision in *Johnson* was based solely on evidence regarding a single Texas district, District 166.

A review of Judge Crone's decertification decision reveals that it did not address any of the arguments, evidence or authorities proffered herein. Judge Crone did not address Plaintiffs' challenges to the written terms of either the Auditor's Handbook-United States or the Field Policy Manual-United States. In fact, Judge Crone sidestepped any consideration of the lawfulness of RGIS' written policies on the basis that the District 166 manager, Ron Eckerle, testified at deposition that he had discretion not to follow those policies. Memorandum and Order of March

[19] *See, e.g., Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1168 (D. Kan. 2006) ("Individual differences in damages are not to be considered when ruling on conditional certification and "will not defeat [conditional] class certification . . ."); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 183 (W.D.N.Y. 2005) (finding that individual class damages issues did not preclude certification and noting that although "the question of how many hours of overtime each plaintiff worked is particular to each plaintiff, nonetheless, the methodology utilized presumably will be similar or identical: ascertain the appropriate time recording procedures utilized, review the applicable time records and determine the applicable rate of pay from the hourly wage paid each employee.")

26, 2007 at 12 ("The former manager of District 166. Ronald Eckerle, exercised significant discretion in implementing RGIS's corporate policies, including pay provisions."). Defendant has presented no such evidence here. More importantly, Plaintiffs proffer evidence on this point that was not presented to Judge Crone: that, by RGIS policy, District managers are required to sign an agreement stating that they must follow the compensation policies and procedures stated in the Auditor's Handbook-United States and the Field Policy Manual-United States or risk termination. Under the Field Policy Manual-United States, District Managers, Area Managers and other RGIS employees who supervise inventories must sign an "acknowledgement" of RGIS policy:

> I acknowledge that I have read the November, 2005 version of the United States Field Policy Manual and am bound to the policies contained in this Manual and any revisions, and that my continued employment is contingent upon following those policies.

RGIS Field Policy Manual, RGIS WRN 03488; Wallace Reply Decl. ¶10, Ex. E.

Had this evidence been presented to Judge Crone for consideration, there is every reason to believe that she would have reached a different conclusion about the existence and nature of the Company's written policies and procedures about compensating its auditors. However, because Judge Crone believed that district managers had unfettered discretion to depart from the Company's written policies, she did not consider Plaintiffs' policy-based challenges in her decertification opinion. *Id.* ("Thus, regardless of the legality of the policies themselves, each of the plaintiff's claims would still require an individualized inquiry into whether and how the policies were implemented by the district manager and the particular supervisor in charge."). Instead, her decertification decision was based on a detailed analysis of the deposition testimony of the eleven opt-ins from District 166 who appeared for deposition in that case, and an analysis of their individual workplace experiences.

Similarly, to the extent that Defendant relies upon Judge Crone's initial decision to certify a class of auditors within District 166 as opposed to a national class, it must be emphasized that both the evidentiary record and written policy challenges presented in the case at bar are far different from those presented in *Johnson*. Plaintiffs' motion for conditional certification in the *Johnson* case, filed almost two years ago, was skeletal. At that point, Plaintiffs were only able to present

1    the allegations of the complaint, and the declaration testimony of <u>one</u> employee, Ms. Johnson, who

2    worked in District 166. Wallace Reply Decl. ¶23. Because of Plaintiffs' minimal presentation,

3    the court declined to certify a national class, and limited conditional certification to District 166.

4         Finally, the Texas court's decision in *Johnson* conflicts with applicable precedent in this

5    Circuit. Both the Ninth Circuit and this district court have rejected the argument that a company's

6    failure to ensure that its local supervisors follow company policies provides a basis for the denial

7    of class certification.[20] Indeed, permitting companies to avoid class certification because they fail

8    to ensure that their supervisors comply with company policies against off-the-clock work would

9    fly in the face of FLSA regulation 29 C.F.R. § 785.13, which requires "every effort" be made to

10    enforce such policies. Unfortunately, the Texas district court did not consider the application of 29

11    C.F.R. § 785.13 in its opinion. In summary, given the new arguments and evidence presented here

12    that were not ruled upon by the Texas district court, the decertification decision in *Johnson* does

13    not offer much guidance in deciding the motion now before this Court.

14 **VI. DEFENDANT'S "HAPPY CAMPER" DECLARATIONS ARE OF LITTLE**
     **PROBATIVE VALUE BECAUSE PLAINTIFFS' CHALLENGE THE COMPANY'S**

15      **POLICIES, AND BECAUSE COURTS HAVE BEEN CHARY OF RELYING UPON**
     **EMPLOYEE DECLARATIONS SOLICITED BY THE EMPLOYER**

16

17      **A. It Is Well-Settled That "Happy Camper" Declarations Are Of Little Probative**
       **Value In Determining The Propriety of Class Certification**

18

---

19   [20]   *See, e.g., Kurihara v. BestBuy Co.*, No. C 06-01184 MHP, 2007 WL 2501698, at *10 (N.D. Cal.

20 Aug. 30, 2007) (granting class certification in FLSA action for unpaid wages and holding "Furthermore, defendant's assertions regarding the failure of its employees to properly implement the company's standard

21 policies do not convince the court that substantial variations exist. Where a plaintiff challenges a well-established company policy, a defendant cannot cite poor management to defend against class

22 certification."); *Alba v. Papa John's USA, Inc.*, No. CV 05-7487 GAF (CTx) 2007 WL 953849, at *1 (C.D. Cal. Feb. 7, 2007) (granting class certification of misclassification, meal and rest period and overtime

23 claims, and stating "Defendants also initially ignored, and now attempt to downplay, the impact of their written, company-wide policy effectively stripping the store managers of discretionary authority in the

24 performance of their duties. Defendants' policies place the case within the scope of the court's analysis in *Tierno v. Rite Aid Corp.*, No. C 05-02520 THE, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006), where

25 common questions of law and fact were found to predominate in large part because of the presence of standardized practices enforced from a central authority . . ."); *see also Staton v. Boeing Co.*, 327 F.3d 939,

26 956 (9th Cir. 2003) (affirming propriety of class certification in Title VII pattern and practice case, and holding, "Boeing is responsible for the employment practices of all its units. Class counsel introduced

27 evidence of centralized decisionmaking. The unsurprising fact that some employment decisions are made locally does not allow a company to evade responsibility for its policies.").

28

---

1    Courts have consistently held that the existence of potential class members who do not

2    support the plaintiffs' claims does not defeat class certification. *See, e.g., Bremiller v. Cleveland*

3    *Psychiatric Inst.,* 898 F. Supp. 572, 577 (N.D. Ohio 1995) (that some "potential class members

4    may not want to come forward or are satisfied with the status quo. . . . does not defeat class

5    certification."); *Jenson v. Eveleth Taconite Co.,* 139 F.R.D. 657, 664 (D. Minn. 1991) ("The Court

6    observes further that differing levels of interest among prospective class members will not, alone,

7    defeat the requirements of Rule 23(a).") (citing *Hedge v. Lyng,* 689 F.Supp. 884, 890

8    (D.Minn.1987)).  Given the number of Auditors that RGIS has employed (more than 20,000

9    nationally), that some of them "may be personally satisfied with the existing system and may

10   prefer to leave the violation of their rights unremedied" is not surprising. *Wilder v. Bernstein,* 499

11   F. Supp. 980, 993 (S.D.N.Y. 1980).

12          Defendant's employee declarations also have little probative value because they do not

13   address the RGIS written policies upon which Plaintiffs' claims are based.  Courts have

14   disregarded "happy camper" declarations where the underlying claims were based on challenges to

15   the impact of written policies and procedures on compensation.  As Judge Patel held in *Kurihara*:

16          Defendant's efforts to undercut BestBuy's inspection policy by peeking at the merits
            are unpersuasive.  First, Defendant's "litigation driven" selective sampling of
17          employees and other data are insufficient to inject fatal uncertainty into the question of
            liability.  Reviewing the employee declarations, there are striking similarities in the
18          way they are worded.  Indeed, the assertions are practically boilerplate.  The court does
            not doubt that substantial legal and factual issues exist as to the nature and
19          implementation of BestBuy's inspection policies and practices.  The overarching
            question of whether this policy results in unlawful undercompensation, however, is
20          common and predominant."

21

22   2007 WL 2501698, at * 10 (emphasis added) (citation omitted).

23          Finally, as with the declarations in *Kurihara*, the Declarations submitted by RGIS are

24   suspect because they contain a large amount of boilerplate language.  Sunshine Reply Decl. ¶¶6-7,

25   9, 11, 12 (analyzing language of declarations).  Thus, it is unsurprising that in numerous instances

26   the employee declarants who were deposed or contacted by Plaintiffs' counsel stated that (a) the

27   declarations did not accurately reflect their experiences at RGIS or their views about this case,

28

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                          30

SCHNEIDER
& WALLACE

and/or (b) that they would not have submitted a declaration on behalf of the Company if they had known the facts regarding Plaintiffs' claims in this case.  Park Reply Decl. ¶38.

## B. Courts Have Disregarded "Happy Camper" Declarations Because Of The Potential For Coercion In The Employer-Employee Relationship

Two-thirds of the declarations submitted by Defendant were from current employees. Sunshine Reply Decl. ¶5.  Courts have long recognized that employer-solicited declarations are of little probative value because of the nature of the employer-employee relationship. ·See, e.g., *Morden v. T-Mobile USA, Inc.*, No. C05-2112RSM, 2006 WL 2620320, at *3 (W.D. Wash. Sept. 12, 2006) ("Defendant also argues that certain exemption defenses may apply that will require the court to make individual assessments of all the plaintiffs.  In support of its arguments, defendant relies in part on 99 declarations from current employees, all of whom are potential collective action members.  However, the Court will discount those declarations because of the risk of bias and coercion inherent in that testimony."); *Jenson*, 139 F.R.D. at 664 ("It is, of course, unlikely that potential class members would be unanimously supportive when most potential class members have an interest in maintaining amicable relationships at work.").   As the court in *Shores v. Publix Super Markets, Inc.* recognized, "there is no marketplace of ideas in the workplace." *Shores*, No. 95-1162-CIV-T-25(E), 1996 WL 859985, at *1 (M.D. Fla. Nov. 25, 1996).  Ideas are not exchanged, but rather relayed from supervisor to subordinate.  *See Bublitz v. E.I. DuPont de Nemours and Co.*, 196 F.R.D. 545, 547 (S.D. Iowa 2000) ("the at-will employer-employee relationship between Defendants and the putative class members produces a strong potential for coercion.").  Because of this imbalance of influence and the risk of coercion, courts have been leery of employee declarations gathered at the workplace.  *Shores*, 1996 WL 859985, at *4 (court was "highly suspicious" of class member declarations taken by employer via *ex parte* communication that occurred in workplace).

## C. Most Of Defendant's Declarants Were Paid For Their Time Spent In Connection With Their Declarations

The Court need not look for insinuated promises of promotion or timely raises for evidence of coercion.  This Court need look no further than Defendant's own statements in its opposition to

1   Plaintiffs' recent motion to compel, in which Defendant's counsel admitted that employees who

2   submitted declarations were paid for their efforts because they were doing so "for the company's

3   benefit." *See October 4, 2007 Joint Letter Brief re: Motion to Compel, p. 16*, attached as Exhibit

4   K to the Park Reply Declaration.

5   **VII.   PLAINTIFFS' PROPOSED FORM OF NOTICE IS SUFFICIENT**

6           Defendant makes various objections to the content of Plaintiffs' proposed notice.  Plaintiffs

7   continue to believe that their proposed notice is adequate and fair for the reasons stated in their

8   opening papers.  However, Plaintiffs do agree with Defendant's proposal that the parties meet and

9   confer regarding the substance of the notice to narrow their differences on this issue.

10  **VIII.   CONCLUSION**

11
            For the reasons stated in their papers, Plaintiffs respectfully request that this Court grant
12
    their motion for conditional certification.
13
                                                   Respectfully submitted,
14
    Dated: November 6, 2007                        SCHNEIDER & WALLACE
15
                                          By:   _____/s/_____
16                                              Guy B. Wallace
                                                Counsel for Plaintiffs
17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY MPA IN SUPPORT OF MOTION TO FACILITATE NOTICE
Case No. 3:06-cv-05778 JCS & Case No. 3:07-cv-00032 JCS                                   32

SCHNEIDER
& WALLACE