UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRISHA WREN, ET AL., | Case No. C-06-05778 JCS (CONSOLIDATED) |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(b)** |
| RGIS INVENTORY SPECIALISTS, | |
| Defendant. | |

This Order Relates to:

ALL CASES
_____/

## I. INTRODUCTION

In this consolidated action, Plaintiffs assert claims on behalf of employees of Defendant RGIS Inventory Specialists ("RGIS") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Before the Court is Plaintiffs' Motion to Facilitate Notice Pursuant to 29 U.S.C. § 216(b) ("Motion"), in which Plaintiffs seek conditional certification of two classes of RGIS employees so that they can obtain discovery regarding the identities of potential class members and send out a court-approved notice of the action to those individuals. A hearing on the Motion was held on December 14, 2007, at 9:30 a.m. For the reasons stated below, the Motion is GRANTED.

//

## II. BACKGROUND[1]

### A. First Amended Consolidated Complaint

This consolidated action began as two separate actions: 1) *Wren v. RGIS Inventory Specialists*, Case No. C-06-05778, initiated on September 20, 2006 ("the *Wren* Case"); and 2) *Piper v. RGIS Inventory Specialists,* Case No. C-07-00032, filed January 4, 2007 ("the *Piper* Case"). On June 6, 2007, the Court consolidated the two actions, and a consolidated complaint was filed on June 26, 2007 ("Consolidated Complaint"). In the Consolidated Complaint, nineteen named plaintiffs have asserted claims under the FLSA on behalf of a nationwide class. In addition, state law claims are asserted under California, Oregon, Illinois, and Washington law on behalf of individuals working in those states.

Plaintiffs are employees of RGIS, alleged by Plaintiffs to be "the world's largest inventory company," with over 400 offices worldwide and over 400,000 employees. Consolidated Complaint, ¶ 4. In the United States, RGIS has 258 offices, including 24 in California, 3 in Oregon, and 5 in Washington. *Id*. The named plaintiffs are "current and former employees of RGIS who have been employed as hourly employees in the positions of inventory 'auditors,' 'product specialists,' 'merchandising specialists,' 'assistant team leaders,' 'team leaders,' and/or 'associate' or 'assistant area managers,'" referred to by Plaintiffs as "Auditor Employees." *Id*., ¶ 2.[2]

According to Plaintiffs, the "vast majority of RGIS' employees are 'auditors,' whom RGIS employs to measure and record the inventories of retail establishments." *Id*., ¶ 42. These inventories are performed at the retail stores and are classified as either "local inventories" or "travel/meet" inventories. *Id*., ¶ 33. With respect to the former, RGIS does not provide transportation for its employees. *Id*. For the latter, RGIS establishes a "meet site," where employees

---

[1] Additional background information about this action, as well as similar actions filed in Oregon and Texas by Plaintiffs' counsel, can be found in the Court's January 30, 2007 Order addressing Defendants' motion to dismiss in the *Wren* action and the Court's June 11, 2007 Order Denying Motion for an Order Declaring "Opt-ins" Invalid.

[2] The Consolidated Complaint also alleges that Plaintiffs include certain salaried employees. Consolidated Complaint, ¶¶ 2-3. However, those Plaintiffs are not included in the classes for whom conditional certification is sought. *See* Notice of Motion at 1 (setting forth class definitions for proposed classes).

assemble at a specific time to be transported to the inventory site, either in an RGIS-owned vehicle or in car-pools arranged by RGIS. *Id*.

Plaintiffs allege that RGIS has a policy and practice of not compensating Plaintiffs for "the time spent waiting for employer-provided transportation to or from a job site, time spent traveling in company transportation, time spent waiting for an inventory to begin at a job site, time spent meeting with managers and other employees before the start of work on a job site, and time spent donning and doffing the equipment that RGIS requires Plaintiffs and putative class members to wear and that is essential to the performance of their duties." *Id*., ¶ 50.

### B. The Motion

In the Motion, Plaintiffs seek conditional certification of two classes:

> All non-exempt hourly employees of RGIS Inventory Specialists, now operating as RGIS, LLC, who were, are, or will be employed as auditors during the period of three years prior to the commencement of this action through the date of judgment of this action.

> All non-exempt hourly employees of RGIS Inventory Specialists, now operating as RGIS, LLC, who were, are, or will be employed as assistant [ ] team leaders, team leaders, and assistant or associate area managers of RGIS during the period of three years prior to the commencement of this action though the date of judgment of this action.

Notice of Motion at 1. In addition, Plaintiffs seek appointment of the following individuals as class representatives: Cynthia Piper, Tephine Saites, Kimberly Cassara, Rabecka Sheldranti, Victoria Thompson, Melanie Manos, Norma Garcia, Cheryl Pierson, Sally Rosenthal, Nicole Verbick, and Margaret Martinez. *Id*. Plaintiffs further request leave to mail a court-approved notice to potential class members, as well as an order compelling RGIS to produce computer-readable data-files containing the addresses and telephone numbers for the potential class members. *Id*. In addition to mailing the notices, Plaintiffs request authorization to post the notice on their website, www.rgisovertime.com. *Id*. Plaintiffs propose that putative class members should be given 90 days to file consents to join this action with a third-party administrator. *Id*. at 2.

In support of the request for conditional certification, Plaintiffs point to evidence they assert is sufficient to show – at least under the lenient standard that is applied at the conditional certification stage of a case – that the putative plaintiffs have been subjected to uniform RGIS

policies and procedures that violate their rights under the FLSA and therefore are similarly situated. In particular, Plaintiffs argue that RGIS has violated the rights of the putative class members by failing to compensate them for: 1) time spent donning required RGIS equipment; 2) time spent "engaged to wait" for inventories to begin; 3) time spent waiting for transportation to an inventory even after the workday has begun; and 4) time spent in work-related transportation to and from inventory sites in a single work day.[3] In support of these allegations, Plaintiffs have filed forty-two declarations by current and past employees of RGIS describing their experiences as auditors with respect to RGIS' compensation policies. *See* Case No. C-07-00032 JCS, Docket No. 125, Appendix of Declarations.

Plaintiffs assert that the experiences of these auditors reflect uniform policies and practices of RGIS nationwide. Plaintiffs point not only to the similar experiences reflected in the employee declarations but also to: 1) evidence that RGIS uses a centralized computer payroll system that processes time records from all of the RGIS districts in the United States and generates payroll based on those records according to the system's programming; and 2) RGIS documents that establish uniform policies for the compensation of auditors, namely, RGIS's November 2005 Field Policy Manual – United States ("Field Policy Manual"), the Auditors' Handbook – United States ("Auditor's Handbook"), and time-sheet guidelines. *See* Reply Declaration of Guy B. Wallace in Support of Plaintiffs' Motion to Facilitate Notice ("Wallace Reply Decl."), Exs. E (Field Policy Manual) & F (Auditor's Handbook). The Field Policy Manual expressly states that "[d]ecision making which deviates from these policies will be considered unauthorized and may lead to disciplinary action unless prior approval has been obtained from Headquarters." *Id*., Ex. E at 1.

With respect to the allegation that RGIS has a policy of failing to compensate auditors for pre-inventory donning of equipment and wait-time, Plaintiffs point to two provisions in the Auditor's Handbook that state as follows:

---

[3] In the Motion, Plaintiffs also sought conditional certification based on alleged violations relating to doffing time, but Plaintiffs dropped this request in their Reply brief. Reply at 2, n. 1 ("Based on the evidence to date, which has evolved since the filing of Plaintiffs' opening papers on conditional certification, Plaintiffs do not seek Court approval to proceed on a class basis for claims regarding doffing time, post-inventory waiting time, or time spent loading or unloading vehicles.")

> **STORE STARTING TIMES** – An inventory scheduled for a 6:00 PM start means just that. Pulling into the parking lot at 6:00 PM is not being punctual – you must be ready to start work at 6:00 PM. While the pre-inventory instructions and assignments are being given out, your attention and cooperation is expected.
>
> **TIME SHEETS** – A Time Sheet is a form listing all RGIS personnel working a particular inventory and is the document from which your pay is prepared. It is your responsibility to make sure that your name and your correct badge ID Number are legibly recorded on a Time Sheet at every inventory, and that you are listed as a driver if you transport people (at the request of RGIS) to a "travel inventory." **Time IN is the scheduled inventory start time and Time Out is when you have completed your responsibility in an inventory**. . . .

*Id*., Ex. F at 16, 18 (emphasis added). Plaintiffs further assert that the Field Policy Manual does not contain any provision that specifically requires that auditors be paid for time spent donning equipment or waiting prior to the inventory start-time.

As to travel time, Plaintiffs point to the following provisions of the Field Policy Manual that they say reflect a policy that violates the FLSA:

> **Definitions:**
>
> Commute Time: Time that is not considered to be time worked. RGIS hourly employees will not be compensated for "Commute Time."
>
> Travel Time: Time that is considered to be time worked. RGIS hourly employees will be compensated for "Travel Time" at the prevailing minimum wage.
>
> . . .
>
> **Travel Pay "To & From" Inventories: Hourly Employees**
>
> "Commute Time" is the first 1 hour of transportation for the employees from the "Meet Site" to the inventory and the first 1 hour of transportation from the inventory back to the "Meet Site." "Commute Time" is unpaid.
>
> "Travel Time" commences following the first unpaid 1 hour of "Commute Time" from the "Meet Site" and is paid to the employees for the remainder of the trip to the inventory. The same method applies to the return trip from the inventory back to the "Meet Site." "Travel Time is paid at the prevailing minimum wage.

*Id*., Ex. E at 16-17. Plaintiffs assert that the designation of the first hour to and from a travel inventory as unpaid "commute time" is arbitrary and amounts to a policy of "estimating" time worked in violation of the FLSA.

5

In response, RGIS seeks to establish, also through declarations of RGIS employees, that conditional certification should be denied because there is no uniform policy or practice nationwide as to the alleged wage violations and, therefore, the named plaintiffs cannot be considered "similarly situated" to the classes for which conditional certification is sought. In particular, RGIS points to its own employee declarations that show that: 1) wait time and time spent donning equipment is often paid and compensation policies as to such time vary from district to district and by supervisor; and 2) travel pay and commute practices vary widely from district to district and are subject to the discretion of each district's management team. RGIS further asserts that in light of the extensive discovery that has been conducted – in this case as well as in two cases pending in Texas district court, *Johnson v. RGIS Inventory Specialists* and *Davidson v. RGIS Inventory Specialists*[4] – the Court should apply the more stringent standard that is normally applied at the decertification stage in determining whether conditional certification is appropriate.

With respect to Plaintiffs' proposed notice, RGIS asserts that there are several problems with the text and requests that the parties be given a chance to meet and confer to address the content of any notice that might issue. RGIS further asserts that the three-year period set forth in the proposed class definitions is inappropriate because this time period applies only for willful violations of the FLSA and there is no evidence of willfulness. Rather, RGIS asserts, the class period should be based on the two-year statute of limitations that applies to FLSA violations that are not willful. RGIS objects to the posting of any court-approved notice on Plaintiffs' website because, it asserts, this will permit Plaintiffs "to, in effect, insert into the notice wording that is not court-approved." Opposition at 25, n.55. It also argues that Plaintiffs should be required to retain a third-party administrator, at their own expense, to mail notice to potential plaintiffs, and that any names, addresses and telephone numbers should be provided only to the third-party administrators and not to Plaintiffs' counsel. Finally, RGIS asserts that the opt-in period should be limited to 60 days from the date the notices are sent to potential class members, not the 90 days requested by Plaintiffs.

---

[4] An overview of these actions is provided in the Court's June 11, 2007 Order Denying Motion for an Order Declaring "Opt-ins" Invalid. After the Court issued that order, the plaintiffs withdrew their motion for conditional certification in *Davidson*.

# III. ANALYSIS

## A. Conditional Certification

### 1. Applicable Standard

As the Court explained in its June 11, 2007 Order, § 16 of the FLSA permits workers to sue their employers for unpaid wages on their own behalf and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Any employee who wishes to participate in such a collective action is required to give consent in writing and file that consent in the court in which the action is brought. *Id*. District courts in the Ninth Circuit have generally applied an "ad hoc two- tiered approach" in determining whether the plaintiffs are similarly situated. *Gerlach v. Wells Fargo & Co.*, 2006 WL 824652 (N.D. Cal. March 28, 2006) at * 2 (citing *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002) (noting that majority of courts prefer this approach)). Under this approach, the district court makes two determinations. *Id*. First, the court determines whether a collective action should be certified for the purpose of sending notice to potential class members ("the notice stage"). *Id*. At this stage, the standard is lenient, requiring "little more than substantial allegations, supported by declarations or discovery, that 'the putative class members were together victims of a single decision, policy, or plan.'" *Id*. (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). Second, after discovery has concluded, the court revisits the question of whether the class meets the "similarly situated" requirement, this time applying a stricter standard. *Id*. This second determination involves a review of several factors, including "the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit." *Id*. If the court finds that the standard is not met, the class will be decertified. *Id*.

Some courts have deviated from this two-tiered approach, applying the more stringent decertification standard in determining whether to grant conditional certification where it is undisputed that discovery has been undertaken on the issues relevant to certification. *See, e.g., Pfohl v. Farmers Ins. Group*, 2004 WL 554834 *3 (C.D. Cal. March 1, 2004) (holding that decertification standard was appropriate where parties did not dispute that discovery had occurred); *Basco v. Wal-*

*Mart Stores, Inc.*, 2004 WL 1497709 * 4 (E.D. La. July 2, 2004) (holding that decertification standard was appropriate where "substantial discovery" had occurred). These courts reason that the lenient standard that is applied to conditional certification is justified by the fact that, ordinarily, there is "minimal" evidence in the record when the conditional certification decision is made. *See Basco,* 2004 WL 1497709 at *3. Thus, where the evidence in the record is more than minimal, the higher standard should be applied.

In this district, at least one court has declined to apply this heightened standard, however, even where substantial discovery had occurred, on the basis that discovery had not yet closed in the case. *See Gerlach v. Wells Fargo & Co.*, 2006 WL 824652 (N.D. Cal. March 28, 2006). In *Gerlach*, the defendants argued that the decertification standard should be applied because even though the discovery period had not yet ended, "extensive discovery" had been conducted, including the production to the plaintiffs of over 40,000 documents in response to 116 requests and the deposition of sixteen witnesses. *Id*. at * 3. Like RGIS, the defendants in that case cited to *Pfohl*. *Id*. The court rejected the defendants' position, pointing to the plaintiffs' statement that discovery was "nowhere near complete." *Id*. Under those circumstances, the court concluded, application of the decertification standard or review would be "contrary to the broad remedial policies underlying the FLSA." *Id*.

Here, RGIS argues that there has already been substantial discovery. Yet Plaintiffs assert that the amount of discovery that has occurred thus far is "modest" for a nationwide class action. Wallace Reply Decl., ¶ 4. Plaintiffs further identify numerous categories of documents relevant to the certification question that RGIS has refused to produce in response to Plaintiffs' requests and which Plaintiffs continue to seek. *Id*., ¶¶ 6-19. Given that discovery has not yet closed and Plaintiffs are far from completing the discovery they seek with respect to certification issues, this Court, like the court in *Gerlach*, concludes that the appropriate standard for resolving Plaintiffs' conditional certification motion is the more lenient standard that is applied by the majority of courts in addressing this question.

To meet their burden under this standard, Plaintiffs must "make substantial allegations that the putative class members were subject to a single illegal policy, plan, or decision." *Adams v.*

*Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007) (quoting *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 468 (N.D. Cal. 2004)). The "substantial allegations" requirement is met where the plaintiffs "show that there is some factual basis beyond the mere averments in their complaint for the class allegations." *Id*. (quoting *West v. Border Foods, Inc.*, 2006 WL 1892527 *2 (D. Minn. July 10, 2006). It is well-established that the "similarly-situated" standard does not require that all of the class-members' claims must be identical. *See, e.g., Thiebes v. Wal-Mart Stores, Inc.*, 1999 WL 1081357 * 2 (D. Or. Dec. 1, 1999) (noting that "similarly situated" requirement under § 216(b) is less stringent than the requirement under Fed. R. Civ. P. 23(b)(3) requiring that common questions of law and fact predominate over individual issues and is more flexible than the requirement for joinder under Fed. R. Civ. P. 20 and severance under Fed. R. Civ. P. 42). Further, "the potentially individualized nature of determining damages is irrelevant in considering conditional certification [because] [t]he threshold inquiry does not require that the extent of the potential plaintiffs' damages be identical or even similar." *Id*. at 537.

### 2. Whether the Proposed Classes Should be Conditionally Certified

Plaintiffs' request for conditional certification is based on the allegation that all of the members of the proposed classes are subjected to uniform compensation policies on the party of RGIS that violate the FLSA. In particular, Plaintiffs assert that RGIS has violated the rights of the putative class members by failing to compensate them for: 1) time spent donning required RGIS equipment; 2) time spent "engaged to wait" for inventories to begin; 3) time spent waiting for transportation to an inventory even after the workday has begun; and 4) time spent in work-related transportation to and from inventory sites in a single work day. Having considered the evidence presented by the parties, the Court finds that Plaintiffs have made "substantial" allegations that they are similarly situated with respect to all four categories of alleged violations.

#### a. Donning Time

Plaintiffs have provided over thirty declarations by RGIS auditors, from numerous different districts, offering similar descriptions of their experiences with respect to RGIS' donning time compensation policy. *See* Appendix of Declarations. They state that almost every inventory requires the use of a hand-held computer called an Audit machine ("Audit"), a belt and pouch (to

9

hold the Audit and other equipment), inventory tags, an ink pen, a laser scanning device, and a cable to connect to the audit machine. *See, e.g.,* Declaration of Anna Marie Butler in Support of Plaintiffs' Motion to Facilitate Notice ("Butler Decl."), ¶ 10. This equipment is provided at the inventory site, and the time it takes to obtain and don the equipment varies somewhat, depending on how many individuals are waiting in line to obtain equipment and whether the equipment is working. *See, e.g.,* Declaration of Claudia Adams in Support of Plaintiffs' Motion to Facilitate Notice ("Adams Decl."), ¶ 12 (time spent donning equipment at inventory site ranged from fifteen to thirty minutes); Declaration of Tiffany Bechere in Support of Plaintiffs' Motion to Facilitate Notice ("Bechere Decl."), ¶ 10 (time spent donning equipment at inventory site took about ten minutes); Declaration of Ya Vonda Benson in Support of Plaintiffs' Motion to Facilitate Notice (" Benson Decl."), ¶ 10 (time spent donning equipment at inventory site took between five to twenty minutes); Declaration of Sue Bixby in Support of Plaintiffs' Motion to Facilitate Notice ("Bixby Decl."), ¶ 10 (time spent donning equipment at inventory site took between five and thirty minutes); Declaration of Linda Tebay in Support of Plaintiffs' Motion to Facilitate Notice ("Tebay Decl."), ¶ 12 ("if there are over fifty auditors working on an inventory it can take up to 15 minutes to get my equipment").

Most of the declarants who addressed donning time stated that either they were not permitted to sign in until they had donned their equipment or, even if they were permitted to sign in before donning the equipment, they were clocked in for the start-time of the inventory rather than the time when they began the donning process. *See, e.g.,* Adams Decl., ("I was not paid for the time it took me to put on my equipment"); Benson Decl. (I have not been paid for the time it takes me to put on my equipment. . . . Most of the time, RGIS supervisors tell me that they will clock me in, but they are clocking me in at the inventory start time and not for the time before start time when I put on my equipment"); Declaration of Susan Budden in Support of Plaintiffs' Motion to Facilitate Notice ("Budden Decl."), ¶ 11 ("I am not paid for the time it takes me to put on my equipment. I know this because it is not reflected on my pay stubs. I am not signed in until after putting on the equipment. I can sign in whenever I want after arriving at the inventory site but I won't be on the clock until the inventory begins"); Butler Decl., ¶ 12; ("RGIS has a policy that auditors cannot sign in until they

have put on their equipment, and this policy was enforced until April 2007"); Tebay Decl., ¶ 13 ("[b]efore March of 2007 I was not paid for the time it took for me to put on my equipment").

These declarations are consistent with the policy that is expressly stated in the Field Manual, that is, that auditors are only paid from the inventory start time, even though they must arrive before the start time to don equipment. Based on this evidence, the Court concludes that the allegation that RGIS fails to compensate auditor employees for time spent donning equipment is sufficiently substantial to warrant conditional certification.

The Court rejects Defendants' argument that conditional certification should be denied because the time spent donning varies from district-to-district. This variation goes to damages and, as the court in *Adams* explained, such variations are not relevant to the threshold determination of whether the putative class members were subjected to a uniform policy. Nor is the Court persuaded by Defendants' assertion that some of Plaintiffs' declarants essentially concede that they were paid for donning time by using phrases such as "I am routinely not paid," *see* Bechere Decl., ¶ 11, rather than more categorical statements that they have *always* been denied compensation for this time. Even if these phrase leave open the possibility that there might have been deviations from the policy, the clear import of the declarations submitted by Plaintiffs, taken as a whole, is that these individuals have been subjected to a uniform policy on the part of RGIS of denying compensation for time spent donning required equipment. This is sufficient to meet the standard for conditional certification.

### b. Time Spent Waiting for Inventory to Begin at Local Inventories

Plaintiffs also allege that auditor employees are subjected to a uniform policy on the part of RGIS of denying compensation for compensable wait time prior to the start time for local inventories. As evidence that this policy applies to auditor employees nationwide, Plaintiffs point to the provisions in the Auditors Handbook that are quoted above, requiring that employees arrive *prior* to the inventory start time in order to receive "pre-inventory instructions and assignments" even though they are paid only from the start-time. *See* Wallace Reply Dec., Ex. F at 16, 18. Plaintiffs also present numerous declarations from RGIS employees stating that they have been instructed to arrive prior to the inventory start time and have not been paid for this time. *See, e.g.,* Adams Decl., ¶ 18 ("RGIS management required me to arrive at the inventory store 15 minutes

before the inventory was scheduled to begin. . . . We were not paid for the time spent waiting"); Bixby Decl., ¶ 13 ("I was told by my supervisor to arrive at the inventory store 15 minutes or more before the inventory was scheduled to begin. The other auditors and I were regularly required to wait 15 minutes without pay after arriving at an inventory site"). Many of these employees stated that during this wait time, they were asked to help set up for the inventory, also unpaid. *See, e.g.,* Bechere Decl., ¶ 16 ("During this time, RGIS supervisors asked auditors to assist in getting ready for the inventory by downloading store-specific information onto the Audits, by organizing tags, and by unloading equipment from the van").

Based on its review of the evidence, the Court concludes that the allegation that RGIS fails to compensate auditor employees for wait time prior to inventories is sufficiently substantial to warrant conditional certification.

### c. Time Spent Waiting for Transportation

Plaintiffs also allege that auditor employees are subjected to a uniform policy on the part of RGIS of denying compensation for two types of compensable wait time associated with travel inventories: 1) time prior to the scheduled "leave time," resulting from RGIS' policy of requiring employees to arrive ten to fifteen minutes prior to the "leave time"; and 2) time that occurs after the RGIS transport arrives at the inventory site (at which point travel pay stops) but before the start time for the inventory, when employees are once again clocked in.

Plaintiffs have provided numerous declarations of RGIS employees in districts across the country who state that they were instructed to arrive at the meet site ten to fifteen minutes early and were not compensated for that time. *See , e.g.,* Diazgonzales Decl., ¶¶ 16-17 ("For travel stores . . . I was told to arrive 15 to 30 minutes before the scheduled meet time . . . . I was not paid for my time waiting before the scheduled leave time"); Goe Decl., ¶¶ 15-16 ("For travel stores . . . we are expected to arrive earlier than the leave time in order to be ready to go at the leave time. I usually wait at least 15 minutes at the meet site prior to leaving. This time is unpaid"); Manos Decl., ¶ 14 ("I was told to arrive 10 minutes before the scheduled meet time . . . . I was not paid for the extra time I spent waiting to leave at the meet site"). These declarations are sufficient to support conditional certification.

12

Plaintiffs have also provided numerous declarations by RGIS employees who state that they are not paid for time between the arrival of the RGIS transport and the start time of the inventory. *See, e.g.,* Blake Decl., ¶ 15 ("the van/carpool would sometimes arrive at the destination inventory site earlier than expected. The other auditors and I were often required to wait 15 to 30 minutes without pay after arriving early at a travel inventory . . ."); Cassara Decl., ¶ 16 ("The other auditors and I were often required to wait 30 minutes without any pay after arriving early at a travel inventory site as instructed, before the inventory began"). These are sufficient to support conditional certification of the proposed classes on this issue.[5]

### d. Time Spent Engaged in Work-Related Transportation

Plaintiffs also allege that auditor employees are subjected to a uniform policy on the part of RGIS of denying compensation for the first hour of travel to and from travel inventories. This assertion is supported not only by the statements of Plaintiffs' declarants but also by the Field Policy Manual, which expressly states that this is RGIS's compensation policy. Wallace Reply Decl., Ex. E at 16-17. This evidence is sufficient to support conditional certification of the proposed classes on this issue.

### B. Production of Contact Information and Notice

In *Hoffman-La Roche, Inc. v Sperling*, 493 U.S. 165 (1989), the Supreme Court held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." 493 U.S. at 169. In support of this conclusion, the Court pointed to the "substantial interest [of the trial court] in communications mailed for single actions involving multiple parties." *Id*. at 171. In particular, it noted, court-authorized communications may be used to counter the "potential for misuse of the class device, as by misleading communications." *Id*. The Court further held that "it lies within the discretion of the district court to

---

[5] The Court is somewhat troubled by a discrepancy on this question in Plaintiffs' declarations: at least two of the declarants suggest that when they arrived early at travel sites they were paid for the time between their arrival time and the inventory start time at the travel rate, rather than being denied compensation altogether. *See* Budden Decl., ¶ 17; Driver Decl., ¶ 24. Nonetheless, all of the declarants state that RGIS failed to pay them their regular wage between the arrival time and the start time. In light of the lenient standard applicable to conditional certification, the Court concludes this discrepancy is not sufficient to justify denial of class certification on this issue.

begin its involvement early, at the point of initial notice, rather than at some later time. . . . This procedure may avoid the need to cancel consents obtained in an improper manner." *Id*. at 171-72.

Based on its determination that Plaintiffs have met the requirements of conditional certification, the Court concludes that it should exercise its discretion, under *Hoffman-La Roche*, to facilitate notice to potential plaintiffs in this action.

### 1. Form of Notice

Plaintiffs have filed a proposed notice to potential plaintiffs for the Court's approval. *See* Declaration of Camilla Roberson in Support of Plaintiffs' Motion to Facilitate Notice ("Roberson Decl."), Ex. A. Defendants have asserted that the notice is deficient, but have requested that the parties be permitted to meet and confer to address these problems before the Court rules on this issue. In their reply brief, Plaintiffs agree that the parties should meet and confer to narrow their differences.

Accordingly, the Court defers ruling on the adequacy of the proposed notice to permit the parties to meet and confer in order to resolve their differences on this issue.

### 2. Posting of Notice on Plaintiffs' Website

RGIS asserts that the Court should not permit Plaintiffs to post the notice that is ultimately approved on their web site because Plaintiffs will be able to "insert" into the notice language that is not court-approved. The Court rejects this argument. Any concerns RGIS may have in this respect can be adequately addressed by an agreement between the parties as to the specific format of the notice as it will appear on the web site. Nor does the Court have any reason to believe at this point that Plaintiffs will present the court-authorized notice in a manner that will be misleading to potential plaintiffs.

### 3. Production of Contact Information to Third-Party Administrator

Defendant asserts that any information provided regarding potential class members should be produced to a third-party administrator only, to protect the privacy of RGIS employees. It further asserts that Plaintiffs should be responsible for the cost of providing notice to potential class members. Plaintiffs do not challenge these assertions. Therefore, Plaintiffs shall be required to bear the cost of providing notice, and contact information shall be provided only to a third-party

14

administrator. The parties shall meet and confer to develop procedures for the provision of contact information and sending of notice in a manner that will protect the privacy of potential class members.

### 4. Class Period

Defendant asserts that the class period should be reduced from three years to two years on the basis that there is no evidence of willfulness on the part of RGIS. This argument has no merit. RGIS is a nationwide company and has been engaged in litigation over alleged FLSA violations for several years in a number of courts. Some of the policies challenged by Plaintiffs are expressly stated in RGIS' written policies. To limit the class period to two years would amount to a holding that Plaintiffs, *as a matter of law*, will be unable to establish willfulness on the part of RGIS. Such a holding would be entirely inappropriate under the circumstances. Therefore, the Court declines to limit the class period to two years.

### 5. Opt-In Period

Plaintiffs request that potential class members be given ninety (90) days to opt in, whereas Defendant states that a more appropriate period is sixty (60) days. Courts have adopted both sixty and ninety-day opt-in periods. *See Adams*, 2007 WL 1089694 at *10 (ninety-day opt-in period); *Belcher v. Shoney's Inc.*, 927 F. Supp. 249, 252-254 (M.D. Tenn. 1996) (sixty-day opt-in period). The Court declines to rule on this question at this time. Rather, the parties are instructed to meet and confer on the opt-in period to attempt to reach agreement on this question.

## IV. CONCLUSION

The Motion is GRANTED. The Court conditionally certifies the classes proposed by Plaintiffs in the Motion. The parties are ORDERED to meet and confer to develop: 1) a proposed notice to be sent to potential class members and posted on Plaintiffs' web site; 2) procedures for the

production of contact information; 3) the sending of notice; and 4) the length of the opt-in period. The parties shall submit the notice and a stipulation to the Court, including any stipulation reached as to the scheduling for the remainder of the case, by **January 11, 2008**.

A Further Case Management Conference is set for **January 18, 2008, at 1:30 p.m.**

IT IS SO ORDERED.

Dated: December 19, 2007

JOSEPH C. SPERO
United States Magistrate Judge