1

2

3

4                     UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7   TRISHA WREN, ET AL.,                    Case No. C-06-5778 JCS (CONSOLIDATED)

8              Plaintiff(s),               **ORDER RE PLAINTIFFS' MOTION FOR**
                                           **CLASS CERTIFICATION [Docket No.**
9        v.                                **403]; DEFENDANT RGIS, LLC'S**
                                           **MOTION TO DECERTIFY**
10  RGIS INVENTORY SPECIALISTS,            **COLLECTIVE ACTION [Docket No. 569];**
                                           **PLAINTIFFS' MOTION TO BIFURCATE**
11             Defendant(s).               **ISSUES AT TRIAL [Docket No. 413];**
                                           **DEFENDANT'S MOTION TO DISMISS**
12  This Order Relates to:                 **INVALID-OPT-IN PLAINTIFFS [Docket**
                                           **No. 586]; AND RELATED MOTIONS TO**
13  ALL CASES                              **STRIKE [Docket Nos. 481, 528, 570, 614**
    _____/   **and 664].**

14

15  **I.     INTRODUCTION**

16          In this consolidated action, Plaintiffs assert claims on behalf of employees of Defendant

17  RGIS Inventory Specialists ("RGIS") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§

18  201 *et seq.*, as well as state law.  The parties have consented to the jurisdiction of a United States

19  Magistrate Judge pursuant to 28 U.S.C. § 636(c).  In an order filed December 20, 2007, the Court

20  granted conditional certification of two opt-in classes under the FLSA ("the Opt-in classes").

21  Plaintiffs now seek certification under Rule 23 of the Federal Rules of Civil Procedure of at least

22  four classes asserting state law claims ("the Rule 23 classes").  Defendant opposes certification of

23  the Rule 23 classes and further, asks the Court to decertify the classes that were previously certified

24  under the FLSA.

25          Currently before the Court are the following motions: 1) Plaintiffs' Motion for Class

26  Certification [Docket No. 403] ("Rule 23 Motion");  2) Defendant RGIS, LLC's Motion to Decertify

27  Collective Action [Docket No. 569] ("Decertification Motion"); 3) Plaintiffs' Motion to Bifurcate

28  Issues at Trial [Docket No. 413] ("Motion to Bifurcate"); and 4) Defendant's Motion to Dismiss

**United States District Court**
For the Northern District of California

1  Invalid-Opt-In Plaintiffs [Docket No.586] ("Motion to Dismiss").  In addition, in connection with

2  these motions, the parties have filed numerous motions to strike and evidentiary objections.[1]  A

3  hearing on the Motions was held on Friday, January 9, 2009 at 9:30 a.m.

4  ## II.     BACKGROUND

5       This consolidated action began as two separate purported class actions: 1) *Wren v. RGIS*

6  *Inventory Specialists*, Case No. C-06-05778, initiated on September 20, 2006; and 2) *Piper v. RGIS*

7  *Inventory Specialists,* Case No. C-07-00032, filed January 4, 2007.  On June 6, 2007, the Court

8  consolidated the two actions, and a consolidated complaint was filed on June 26, 2007

9  ("Consolidated Complaint").

10       Plaintiffs allege that Defendant RGIS is "the world's largest inventory company," with over

11  400 offices worldwide and over 400,000 employees.  Consolidated Complaint, ¶ 4.  In the United

12  States, RGIS has 258 offices, including 24 in California, 3 in Oregon, and 5 in Washington.  *Id.*

13  Plaintiffs are "current and former employees of RGIS who have been employed as hourly employees

14  in the positions of inventory 'auditors,' 'product specialists,' 'merchandising specialists,' 'assistant

15  team leaders,' 'team leaders,' and/or 'associate' or 'assistant area managers,'" referred to by

16  Plaintiffs as "Auditor Employees."  *Id.*, ¶ 2.[2]

17       The following individuals are named as representative plaintiffs in the Consolidated

18  Complaint:

19  _____

20  [1]Defendants have filed the following objections and motions to strike: 1) Defendant RGIS, LLC's Objections to Evidence Submitted in Support of Plaintiffs' Motion for Class Certification Pursuant to F.R.C.P. Rule 23 [Docket No. 452]; 2) Defendant RGIS, LLC's Motion to Strike Plaintiffs' Reply Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification [Docket No. 528]; 3) Defendant RGIS, LLC's Objections to Evidence in Support of Plaintiffs' Reply Memorandum in Support of Motion for Class Certification [Docket No. 540]; 4)  Defendant RGIS, LLC's Objections to Evidence Submitted in Support of Plaintiffs' Opposition to RGIS' Motion to Decertify Class Action [Docket No. 633].  Plaintiffs have filed the following motions to strike: 1) Motion to Strike Defendant's Evidence Pursuant to Federal Rule of Civil Procedure 37 [Docket No. 481]; 2) Motion to Strike Portions of the Slottje Rebuttal Report and Documents Submitted in Opposition to Plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 37 [Docket No. 570]; 3) Motion to Strike Defendant's Evidence Pursuant to Federal Rule of Civil Procedure 37 [Docket No. 614]; 4) Motion to Strike Defendant's Evidence Pursuant to Federal Rule of Civil Procedure 37 [Docket No. 664].

27  [2] The Consolidated Complaint also alleges that Plaintiffs include certain salaried employees who should have been classified as hourly employees and that due to the misclassification, they have been improperly denied overtime pay and rest and meal breaks.  Consolidated Complaint, ¶¶ 2-3.

1.      Trisha Wren (allegedly worked for RGIS in Oregon and California as an hourly employee between November 1999 and September 2004);

2.      Kevin Barnes (allegedly worked for RGIS in Oregon as an hourly employee between June 1996 and July 2001 and thereafter as a salaried employee until April, 2005);

3.      Brent Whitman  (allegedly worked for RGIS in Oregon as an hourly employee between May 1999 and September 1999 and in Washington as an hourly employee between September 2003 and February 2004);

4.      Kathlene Feige (allegedly worked for RGIS in California as an hourly employee between 1998 and 2003);

5.      Lisa Cunningham-Gibson (allegedly worked for RGIS in California as an hourly employee between 2001 and 2004);

6.      Cynthia Piper  (allegedly has worked for RGIS in California as an hourly employee since 1995 and is a current employee);

7.      Tephine Saites (allegedly is a current employee of RGIS in California and formerly worked in Oregon);

8.      Margaret Cruz Boze (allegedly is a current employee of RGIS  in California);

9.      Michelle Pease (allegedly is a current employee of RGIS in California);

10.     Kimberly Cassara (allegedly worked for RGIS in Florida from 2001 to 2006 and in Mississippi between January 2006 and September 2006);

11.     Rabecka Sheldranti (allegedly is a current employee of RGIS in Florida);

12.     Victoria Thompson (allegedly worked for RGIS in Georgia and North Carolina);

13.     Melanie Manos (allegedly worked for RGIS in Pennsylvania until November 2006 and during that time also worked at inventory sites in New York and Ohio);

14.     Norma Garcia (allegedly is a current employee of RGIS  in California);

15.     Cheryl Pierson (allegedly is a current employee of RGIS  in California);

16.     Sally Rosenthal (allegedly is a current employee of RGIS  in California);

17.     Nicole Verbick (allegedly is a former employee of RGIS  in Illinois);

**United States District Court**
For the Northern District of California

18.    Tammy Schnars (allegedly is a current employee of RGIS in Pennsylvania and has worked at inventory sites in Pennsylvania, New York and Ohio);

19.    Margaret Martinez  (allegedly is a current employee of RGIS in Colorado and has worked at inventory sites in Colorado, Kansas, Nebraska, South Dakota, Wyoming, New Mexico, Utah, and Hawaii).

Consolidated Complaint, ¶¶ 14-32.

According to Plaintiffs, the "vast majority of RGIS' employees are 'auditors,' whom RGIS employs to measure and record the inventories of retail establishments." *Id*., ¶ 42.  These inventories are performed at the retail stores and are classified as either "local inventories" or "travel/meet" inventories.  *Id*., ¶ 33.  With respect to the former, RGIS does not provide transportation for its employees.  *Id*.  For the latter, RGIS establishes a "meet site," where employees assemble at a specific time to be transported to the inventory site, either in an RGIS-owned vehicle or in car-pools arranged by RGIS.  *Id*.

Plaintiffs allege that RGIS' compensation policies violate both the FLSA and various state laws with respect to travel time, waiting and donning time and rest and meal breaks.  In particular, Plaintiffs assert the following claims:

**California Law**

- •    Failure to provide rest periods: Cal. Lab. Code §§ 226.7 and 516 (Claim One)
- •    Failure to provide meal periods: Cal. Lab. Code §§ 226.7, 512 and 516 (Claim Two)
- •    Failure to pay wages: Cal. Lab. Code § 218 (Claim Three)
- •    Late payment of wages: Cal. Lab. Code §§ 201, 202 and 203 (Claim Four)
- •    Failure to pay minimum wage: Cal. Lab. Code §§ 512, 1194, 1194.2 and 1197 (Claim Five)
- •    Failure to pay overtime: Cal. Lab. Code §§ 510, 512 and 1194 (Claim Six)
- •    Failure to provide itemized wage statements: Cal. Lab. Code § 226 (Claim Seven)
- •    Unfair Competition: Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Claim Eight)
- •    Private Attorneys General Act of 2004, Cal. Lab. Code §§  2698 *et seq.* (Claim Nine)

**Illinois Law**

United States District Court
For the Northern District of California

- • Failure to pay overtime and straight time wages:  Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, Illinois Administrative Code, 56 Ill. Admin. Code § 210.110 *et seq.* and Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* (Claim Ten)

**Oregon Law**

- • Unpaid wage claim and statutory penalty wages: ORS §§ 652.120, 653.010 and 653.055 (Claim Eleven)
- • Late payment statutory penalty wages: ORS  § 652.140 (Claim Twelve)
- • State minimum wage claim and statutory penalty wages: ORS §§ 653.025 and 653.055 (Claim Thirteen)
- • State overtime claim under ORS §§ 653.261 and 653.055; OAR § 839-020-0030 (Claim Fourteen)
- • Contract claim for rest breaks (Claim Fifteen)
- • Contract claim for meal periods (Claim Sixteen)
- • Breach of duty of good faith and fair dealing (Claim Seventeen)
- • Permanent Injunction (Claim Eighteen)

**Washington Law**

- • Failure to provide rest breaks: RCW §§ 49.52.050, 49.52.070 (Claim Nineteen)
- • Failure to provide meal breaks:  RCW §§ 49.52.050, 49.52.070   (Claim Twenty)
- • Failure to provide duty free meal periods: RCW §§ 49.52.050, 49.52.070  (Claim Twenty-One)
- • Failure to pay all wages when due upon termination: RCW § 49.48.010 (Claim Twenty-Two)
- • Unpaid overtime wages (Claim Twenty-Three)
- • Permanent injunction (Claim Twenty-Four)

**FLSA**

- • Failure to pay minimum wage under 29 U.S.C. §§ 206 and 215(a) (Claim Twenty-Five)

United States District Court

For the Northern District of California

1    •      Failure to pay overtime wages under 29 U.S.C. §§ 206 and 215(a) (Claim Twenty-

2    Six)

3    Plaintiffs seek to recover unpaid wages, liquidated and punitive damages, attorneys' fees and

4    costs.   Consolidated Complaint at 46-48. They also request injunctive relief prohibiting further

5    violations of state and federal law. *Id.*

6    **III.   THE MOTIONS**

7        **A.   Rule 23 Motion**

8            **1.   Plaintiffs' Motion**

9    In their Rule 23 Motion, Plaintiffs seek certification of the following four classes of auditor

10   employees employed by RGIS:

11       1.   All hourly Auditors, Assistant Team Leaders, Team Leaders and Associate area

12            managers employed by RGIS in California on or after January 1, 2005;

13       2.   All hourly Auditors, Assistant Team Leaders, Team Leaders and Associate area

14            managers employed by RGIS in Oregon on or after September 20, 2000;

15       3.   All  hourly Auditors, Assistant Team Leaders, Team Leaders and Associate area

16            managers employed by RGIS in Washington on or after September 20, 2003;

17       4.   All  hourly Auditors, Assistant Team Leaders, Team Leaders and Associate area

18            managers employed by RGIS in Illinois on or after January 4, 2000.

19   Plaintiffs also seek appointment of the following class representatives:[3]

20

21   _____

22       [3]Carol Molmen, Joan Johnson and Latonia Williams were not named as plaintiffs in the
     Consolidated Complaint but have opted in to the FLSA class in the last four months. *See* Rule 23

23   Motion at 38.  Plaintiffs will seek leave to amend to add these plaintiffs if the Court finds that they are
     appropriate class representatives. The declarations of all the proposed class members are exhibits to the

24   Appendix of Auditor Declarations [docket no. 418].   The declarations of Joan Johnson, Latonia
     Williams and Carol Molmen are found at exhibits 81, 99 and 127, respectively. Joan Johnson states that

25   she is a current employee of RGIS in Illinois and has worked as an auditor since 2002.  Latonia
     Williams states that she worked as an auditor for RGIS in Illinois between March 2005 and October

26   2006. Carol Molmen states that she worked as an RGIS auditor in Washington between June 2001 and
     October 2007.  In addition, as noted below, in their Reply brief, Plaintiffs state that Jewel Gatlin and

27   Michael Zustak are willing to serve as class representatives. Gatlin is a current RGIS employee who has
     worked as an auditor in Washington since October 2002. *See* Appendix of Declarations [docket no.

28   491], Ex. N. Zustak is a current RGIS employee who has worked as an auditor in Oregon for 13 years.
     *Id*., Ex. S.

**United States District Court**
For the Northern District of California

1.   **California class**:   Cynthia Piper, Sally Rosenthal, Norma Garcia, Michele Pease, Lisa Cunningham-Gibson and Cheryl Pierson.

2.   **Oregon class**:   Kevin Barnes, Tephine Saites.

3.   **Washington class**:   Carol Molmen.

4.   **Illinois Class**: Nicole Verbick, Joan Johnson and Latonia Williams.

Finally, Plaintiffs seek an order appointing the following firms as class counsel:

1.   Schneider Wallace Cottrell Bayton Konecky LLP.

2.   Grady Schneider & Newman LLP.

3.   Bailey Pinney PC.

4.   Goldstein Demchak Baller Borgen & Dardarian.

Plaintiffs argue that class certification should be granted as to the four proposed classes because all of the requirements of Rule 23(a) are met – numerosity, common questions, typicality and adequacy of representation – and the requirements of Rule 23(b)(2) and/or (3) are also met.

Plaintiffs assert that the numerosity requirement is met based on evidence that there are at least 1,500 auditor employees in each of the states for which Rule 23 class certification is sought (the "Rule 23 States"). *See* Declaration of Richard Drogin ("Drogin Decl."), Docket No. 406, ¶ 4 (stating that there are inventory shifts for 17,167 RGIS employees in California, 10,123 RGIS employees in Illinois, 1,548 employees in Oregon and 3,033 employees in Washington during the relevant class periods).

Plaintiffs argue further that there are common questions of law and fact that satisfy the requirements of Rule 23(a).  According to Plaintiffs, these include the following issues:

1.   **Whether RGIS has violated the laws of the Rule 23 States by failing to adopt a policy that prohibits off-the-clock work and, in particular, failing to ensure that RGIS auditors are paid for donning time and waiting time**.  According to Plaintiffs, all four states require employers to pay for work that the employer "suffers" or "permits," including any time that employees spend donning equipment or periods during which employees are engaged to wait prior to performing other job duties.  Under these laws, employers must promulgate a rule against off-the-clock work and take sufficient steps to ensure that

7

United States District Court

For the Northern District of California

employees are paid for all hours worked.  Plaintiffs argue that RGIS violates these laws, citing the following evidence:

- Neither the Auditor's Handbook nor the Field Policy Manual – both of which apply to all RGIS employees throughout the United States and all districts in the United States –  has a written policy against off-the-clock work and there are no local written policies regarding wage and hour compliance.  *See* Declaration of Andrew P. Lee in Support of Plaintiff's Motion for Class Certification ("Lee Rule 23 Decl."), Ex. 1 (June 2002 Auditor's Handbook);[4] Ex. 2 (March 2004 Auditor's Handbook); Ex. 4 (December 2001 Field Policy Manual); Ex. 5 (November 2005 Field Policy Manual);[5] Ex. 26 (Deposition of Cynthia Myers, September 26, 2007 ("Meyers 9/07 Depo.")) at 24, 109 (30(b)(6) witness testifying that Auditor's Handbook and November 2005 Field Policy Manual are applicable to the entire United States); Ex. 28 (Deposition of John L. Seiss, Jr., March 25, 2008 ("Seiss Depo.")) at 124 (30(b)(6) witness testifying that local districts are not permitted to make their own pay and timekeeping policies but rather must follow the Field Policy Manual).

- RGIS managers are all trained using training manuals that are generated by corporate headquarters.  Lee Rule 23 Decl., Ex. 39 (Deposition of Paul C. Landry, March 26, 2008 ("Landry Depo.")) at 29, 51, 61.  These training manuals expressly state that auditors must "arrive at the inventory in time to be prepared to start counting at the designated start time."  Lee Rule 23 Decl., Ex. 6 (Team Leader Training – Trainer

---

[4]RGIS objects to Plaintiff's reliance on the 2002 version of the Auditor's Handbook on the grounds that it was superseded by later versions in 2003, 2004 and 2007 and thus was no longer in force when the class periods for California, Illinois and Washington commenced.  Defendant does not object to the March 2004 version, however.  *See* Lee Motion Decl, Ex. 2.  The Court also notes that the 2002 version *is* relevant for the Oregon class, which RGIS implicitly concedes in its objections.

[5]RGIS objects to Plaintiffs' reliance on the Field Policy Manual – both the 2001 and 2005 versions – because it does not expressly state that it applies to Auditors, Assistant Team Leaders and Team Leaders.  Docket # 452 at 2-3; *see also* Lee Rule 23 Decl., Ex. 4 (2001 Field Policy Manual) & Ex. 5 (2005 Field Policy Manual).

United States District Court

For the Northern District of California

Reference Manual) at RGIS WRN 02727.[6]  According to 30(b)(6) witness Cynthia Myers, RGIS auditors are expected to have donned their equipment by the inventory start time.  Lee Rule 23 Decl., Ex. 26 (9/07 Meyers Depo.) at 66.  Yet the training materials do not state anywhere, according to Plaintiffs, that auditors should be signed in *before* they don their equipment rather than at the inventory start time.

- • The Auditor's Handbook specifies that the "time-in" for the purpose completing time sheets is the inventory start time, even though the Handbook also specifies that auditors must have already donned equipment and received instructions *prior* to the inventory start time.  Lee Rule 23 Decl., Ex. 2 (March 2004 Auditor's Handbook) at 16, 18; *see also* Ex. 23 (miscellaneous policy directives reminding auditors that they are expected to be ready to count at start time).[7]

- • As a practical matter, auditors are not being paid for donning and waiting time, Plaintiff's assert.  In support of this assertion, Plaintiffs cite to deposition testimony and declarations of current and former and district and area managers, interrogatory responses and declarations of auditors, and Pay Inquiry Forms filed by auditors regarding unpaid work time.  *See* Lee Declaration, Exs. 30-41 (manager deposition transcripts); Appendix of Salaried Manager Declarations;  Declaration of Camilla Roberson in Support of Plaintiffs' Motion for Class Certification ("Roberson Rule 23 Motion Decl."), ¶ 5 (summarizing interrogatory responses of opt-in plaintiffs and stating that of the 234 individuals who provided opt-in responses to interrogatories, 178 signed in using paper time sheets and 165 of these, that is, 92.7 %, stated that

---

[6]RGIS objects to Plaintiffs' reliance on RGIS WRN 02727 on the basis that it addresses situations where employees arrive *after* the start-time of an inventory and therefore is not relevant to RGIS' policies regarding donning and wait-time *prior* to the inventory start time.  *See* Docket No. 452 at 6.  RGIS is incorrect.  This document contains the following statement under the subheading "Auditors:" "Arrive at the inventory in time to be prepared to start counting at the designated start time." There is no indication this statement addresses arrival after the start time, as RGIS asserts.

[7]RGIS objects to many of the documents contained in Exhibit 23.  In addition, in their Opposition to the Rule 23 Motion they assert that only 4 of the 28 documents come from districts that are at issue in this case – 3 from California and 1 from Illinois.  The remaining 24 documents, they assert, come from states not at issue in this case.  *See* Sager Opposition Decl., Exs. A-U.

United States District Court

For the Northern District of California

they had signed in or been signed in after donning their equipment); Appendix of Opt-In Interrogatory Responses [docket no. 412]; Declaration of Nancy Park in Support of Plaintiffs' Motion for Class Certification ("Park Rule 23 Motion Decl."), ¶¶ 9-10 (summarizing declarations of 139 auditors from California, Washington, Oregon and Illinois and quoting declarations indicating that auditors in all four states were not permitted to clock in until after they had donned equipment); [8] Lee Rule 23 Decl., Ex. 8 (Pay Inquiry Forms).[9]

•   The expert testimony of Plaintiffs' Industrial Organizational Psychologist, Dr. Richard Martell indicates that RGIS has created and maintained common corporate policies regarding compensation of RGIS auditors throughout the United States, as well as a common culture, both of which are deficient with respect to ensuring that auditors are paid for all time worked.  *See* Expert Report of Richard Martell, Ph.D.[10]

In light of this evidence, Plaintiffs assert, the claims of the plaintiffs in the proposed classes turn on a number of common questions of law and/or fact, including whether donning time or wait time prior to the inventory should be considered "work" under applicable law, whether RGIS' policies and procedures are adequate to ensure that auditors are paid for all donning and wait time, whether RGIS knew or should have known its auditors were doing work off the clock, whether the failure to pay donning and wait time also resulted in failure to pay overtime compensation, and the pay rate applicable to donning time.

2.   **Whether inaccurate time and payroll records shows a pattern and practice of violating state wage and hour requirements**.  Plaintiffs cite to a statistical analysis by their expert, Dr. Drogin, in which Dr. Drogin concludes that RGIS' time and payroll records reveal patterns of inaccurate record-keeping that support Plaintiffs' claims.  *See* Declaration of

---

[8]RGIS objects to Plaintiffs' reliance on the auditor declarations on numerous grounds.  *See* Docket No. 452 at 17-36.

[9]RGIS objects to Plaintiffs' reliance on the Pay Inquiry Forms.  *See* Docket No. 452 at 3.

[10]RGIS objects to Dr. Martell's expert report under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Richard Drogin ("Drogin Decl."). Dr. Drogin's finds that 32.7% of employee sign-out times and 53% of vehicle return times are exactly on the hour, half-our and quarter-hour. *Id.*, ¶¶ 7, 9. These patterns in RGIS time-keeping, Plaintiffs assert, are implausible on their face and support Plaintiffs' claims that RGIS managers do not record auditor time accurately. Dr. Drogin also finds that the time records of 4,645 auditors is missing from the time and payroll records produced by RGIS, supporting the conclusion that there is a widespread pattern on the part of RGIS of altering or falsifying auditor time records.[11] Finally, Plaintiffs assert that there is a common issue under the laws of the Rule 23 States as to whether RGIS's standard pay statement meets the requirements of those states as to itemization of time and pay rates. *See* Lee Motion Decl., ¶ 9 & Ex. 7 (sample RGIS pay statements).

3. **Whether RGIS' policy relating to pay for travel time that exceeds two hours is unlawfully arbitrary**. Plaintiffs argue that RGIS violates the laws of the four states requiring that all time worked be compensated by unreasonably classifying the first hour of transportation to and from a work site as "commute" time, even though the average commute time for the nation as a whole and for each of the four states is significantly less than an hour. *See* Lee Rule 23 Decl., Ex. 2 (Auditor's Handbook) at 18-19. With respect to the data concerning commute times, Plaintiffs rely on the report of their expert, Marc Bendick, Jr.[12]

4. **Whether RGIS has engaged in a pattern or practice of failing to provide auditors with meal periods**. Plaintiffs point to Dr. Drogin's analysis of RGIS' wage and compensation data, in which Dr. Drogin found 75,317 instances of missed meal periods and 19,383 meal periods that were too short to comply with applicable law. *See* Drogin Decl., ¶¶ 11 & 12, Appendices 5 & 6. According to Plaintiffs, RGIS' own documents reflect that the missed meal periods were not waived. *Id.*

---

[11]Plaintiffs note that they have filed motions to compel production of the missing records and intend to submit a supplemental report by Dr. Drogin once he has had the opportunity to analyze any additional data produced by RGIS.

[12]RGIS objects to Dr. Bendick's expert report under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

**United States District Court**
For the Northern District of California

1      Plaintiffs assert that the class representatives also meet the typicality requirement because

2  their claims are "reasonably coextensive" with the claims of the absent class members.  In particular,

3  Plaintiffs assert that the claims of the proposed class representatives are typical of those of the

4  classes as a whole because: 1) as a factual matter, the claims of the class representatives and the

5  claims of the class are based on the same RGIS policies and procedures regarding compensation of

6  auditors; 2) the claims of the class representatives and the claims of the class are based on the same

7  legal theory, that is, that RGIS failed to pay them for all hours worked; and 3) the class

8  representatives and the class members suffered similar injury in that they were not compensated for

9  all hours worked.   Plaintiffs note that three of the proposed class representatives – Carol Molman

10  (Washington), Joan Johnson (Illinois) and Latonia Williams (Illinois) are not named plaintiffs.

11  Plaintiffs state that they will seek leave to amend to add these individuals to the complaint if the

12  Rule 23 Motion is granted.

13      Plaintiffs argue that they also satisfy the adequacy of representation requirement because the

14  proposed class representatives do not have conflicts of interest with the class as a whole and because

15  Plaintiffs are represented by qualified and competent counsel.

16      With respect to Rule 23(b)(2), allowing a class action to be maintained based on the

17  possibility that injunctive relief may be appropriate, Plaintiffs assert that a class action is allowable

18  because, in addition to damages, Plaintiffs seek meaningful declaratory and injunctive relief,

19  namely, an order  requiring that Defendant RGIS alter its policies to ensure that auditors are paid for

20  all hours worked.  Plaintiffs acknowledge that they also seek damages but argue that class

21  certification is appropriate under Rule 23 (b)(2) so long as damages are not the "predominant" relief

22  sought.

23      Plaintiffs argue that the requirements of Rule 23(b)(3) are met as well because common

24  questions of law and fact relating to RGIS' policies and procedures predominate over individual

25  questions of damages and a class action is "superior to other available methods for fairly and

26  efficiently adjudicating the controversy."  With regard to the former requirement, Plaintiffs point to

27  the common legal and factual questions discussed above.  As to the latter requirement, Plaintiffs

28  argue that a class action is superior because otherwise hundreds, or even thousands, of actions would

1   have to be brought, straining judicial resources and raising the possibility of conflicting legal and

2   factual findings.  Plaintiffs also argue that a class action is superior to individual actions because

3   individual employees often do not have the financial means to bring  legal action on their own and

4   may also refrain from doing so out of fear of retaliation.  Finally, Plaintiffs argue that the possibility

5   that there will need to be individualized inquiries regarding damages does not render the classes

6   unmanageable because the action can be bifurcated into a liability phases and a damages phase.

7                    **2.        Defendant's Opposition**

8          RGIS counters that *none* of the requirements of Rule 23(a) is met and further, that neither the

9   requirements of subsection (b)(2) nor (b)(3) is met.  With respect to Rule 23(a)(1), Defendant argues

10  that the numerosity requirement is not met because joinder of the class members is not

11  impracticable.  In support of this position, Defendant points to evidence that only 26,210 individuals

12  out of a total of 291,000 potential class members have expressed interest in joining the FLSA opt-in

13  class.  *See* Declaration of Heather M. Sager in Support of Defendant RGIS, LLC's Opposition to

14  Plaintiffs' Motion for Class Certification Pursuant to F.R.C.P. Rule 23 ("Sager Rule 23 Opposition

15  Decl."), ¶ 2.  RGIS also cites to *Thiebes v. Wal-Mart Stores, Inc.*, 2002 WL 479840 (D. Or., January

16  9, 2002), in which a district court in Oregon held that joinder under Rule 23 was not impracticable

17  where only 425 employees out a potential 15,000 class members opted in to a class asserting similar

18  claims under the FLSA.

19         Defendants argue further that Plaintiffs have not demonstrated the existence of common

20  questions of law and/or fact and therefore do not meet the commonality requirement of Rule

21  23(a)(2).  With respect to the main issues as to which Plaintiffs have asserted that there is a common

22  policy (or lack thereof) – unpaid off-the-clock work (donning and waiting time), inaccurate time and

23  payroll records, travel time and missed meal breaks – RGIS argues that the "vast majority" of RGIS

24  employees have been properly compensated, citing to declarations obtained by RGIS  from its

25  employees.  *See* Declaration of A. Sevilla in Support of Defendant RGIS, LLC's Opposition to

26  Plaintiffs' Motion for Class Certification ("Sevilla Rule 23 Opposition Decl.") (summarizing

27  declarations of RGIS employees).  In addition, RGIS makes the following specific arguments:

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1.    **Off-the-clock work (donning and waiting time)**: RGIS argues that Plaintiffs are incorrect that it has no policy prohibiting off-the-clock work.  It cites to language in the current version of the Field Policy Manual, which has been in effect since November 2005, stating that "[a]ll work time must be recorded on the time sheet" and explaining that where multiple employees are leaving the work-site in one vehicle, no employee should be clocked out until all of the employees riding in that vehicle have completed the inventory.  *See* Lee Rule 23 Decl., Ex. 5 at 15, 18.  RGIS also argues that other documents generated by its Human Resources Department show it has a policy against unpaid off-the-clock work.  For example, one email to "division vps" explains that if they tell an auditor "to arrive in time to start work at 7:00" they can clock the auditor in at 7:00 but if they instruct the auditor to arrive at a *specific* time that is earlier than the start time, the auditor must be clocked in at that time.  *See* Declaration of Cynthia Myers in Support of Defendant RGIS, LLC's Opposition to Plaintiffs' Motion for Class Certification ("Myers Rule 23 Opposition Decl."), Ex. A (May 24, 2002 email).  A subsequent instruction, dated October 19, 2006, states, "[n]ever instruct your employees to be at an inventory earlier than the scheduled start time.  However, you are free to have a scheduled start time earlier than the inventory start time as long as the employees' pay begins at the scheduled start time."  Myers Rule 23 Opposition Decl., Ex. A at DAV 0787; *see also* Myers Rule 23  Opposition Decl., Ex. A at WRN 2628 -2631 (908 Time Sheet for recording non-inventory hours worked); WRN 2625 (Time sheet instructions stating that where there is a long line of employees waiting to sign in at inventory start time, employees should be logged in at start-time even if they are unable to sign in until after the scheduled start time); DAV 782 (October 17, 2006 Inventory Supervisor's Time Collection Application Checklist, stating that auditors traveling in same vehicle do not have to log out as a group because the sign-out time will be adjust to reflect the time of the last auditor in the vehicle to sign out); DAV 786 (October 19, 2006 Time Collection Application Implementation 2006, stating same); WRN 3189 (October 26, 2006 RGIS Application Guide re Time Sheets, stating that "time in" is "the time auditor began any inventory-related work as instructed by the Supervisor"); WRN 3540 (January 26, 2007 email from corporate

headquarters, instructing, "always ensure all hourly employees record and turn in 908 time");
WRN 15373-15374 (January 26, 2007 email from corporate headquarters containing time
sheet guidance and reminders); WRN 3554-3555 (May 10, 2007 email from corporate
headquarters with time sheet guidance); WRN 4472-4473 (June 8, 2007 email stating that
supervisors and auditors who carry supplies or equipment must be paid for travel time);
WRN 4064 (July 2007 New Hire Training Packet, instructing employees to arrive at
scheduled start time, clock in and then put on audit and laser, sign out work sheet, obtain tags
and attend pre-inventory meeting).

RGIS also cites to the deposition testimony of Vice President of Training Paul
Landry that although he was unaware of any written policy instructing that auditors clock in
before donning equipment, this has always been one of RGIS' rules.  *See* Declaration of J.
Ko in Support of RGIS, LLC's Opposition to Plaintiff's Motion for Class Certification ("Ko
Opposition Decl."), Ex. 28 (Landry Depo.) at 202-203.  Further, RGIS argues that the
statements in the various policy documents are only vague, general statements and therefore,
that any variation in compensation practices must be due to local practices rather than any
one common policy.

RGIS challenges Plaintiffs' reliance on the auditor interrogatory responses to show
that off-the-clock time was not paid, citing to excerpts of two auditor depositions in which
RGIS says the auditors' testimony "changed dramatically."  *See* Rule 23 Opposition at 10;
Ko Decl., Ex. 40 (Colbert Depo.) at 100-101; Ex. 42 (Johnson Depo.) at 104.  As a result,
RGIS argues, the Court should view the auditor interrogatory responses with skepticism.

2.     **Inaccurate Time and Payroll Records:** RGIS argues that the statistical analysis of Dr.
Drogin that Plaintiffs' assert shows a pattern and practice of editing time records is a red
herring because it is impossible to determine the reason for these time adjustments or even if
they were improper.  To determine the significance of these adjustments would require
individualized inquiries as to each adjustment.  Thus, RGIS argues, this evidence does not
establish any common question that would be appropriate for class certification.

**United States District Court**
For the Northern District of California

3.   **Travel time:** With respect to RGIS' commute time policy, RGIS notes that Plaintiffs have only cited to the Auditor's Handbook and Field Policy Manual to show the existence of a uniform policy under which employees are compensated only for travel time that exceeds one hour each way.  RGIS asserts that Plaintiffs have not cited to any witness testimony showing that this policy was uniformly applied to the employees in the proposed classes.  In fact, RGIS argues, the experiences of the class members vary significantly because RGIS employees are not required to use company transportation and some districts do not even provide transportation to inventories.  *See* Sevilla Rule 23 Opposition Decl., Ex. A.  Further, RGIS argues, there is no evidence that RGIS employees are required to perform work during their commute to inventory locations and so this time does not constitute hours worked. With respect to the variations discussed above, RGIS offers the expert declaration of Daniel Slottje, who concludes that there are significant variations within the proposed class and over time with respect to whether RGIS offered transportation to inventories and whether employees used that transportation.  *See* Expert Report of Daniel J. Slottje ("Slottje Expert Report") [docket no. 458].

   RGIS further challenges Plaintiffs' assertion that the assumption of a one-hour commute time can never be reasonable, citing cases and anecdotal evidence that a one-hour commute can be reasonable.  In particular, RGIS asserts that two courts have approved of its one-hour commute policy, citing the courts' summary judgment orders in *Johnson v. RGIS*, Case No. 05-0389 (E.D. Tx., May 29, 2007) and *Worley v. RGIS*, Case No. 137454 (Butte County Super. Ct., Aug. 2, 2007).[13]

4.   **Missed or Shorted Meal Breaks**: RGIS argues that Plaintiffs have failed to meet their burden of showing a uniform policy as to meal breaks for two reasons.  First, RGIS argues, Plaintiffs have assumed that employers are required to ensure that meal breaks are taken when in fact, the law requires only that employers *offer* their employees meal breaks.

---

[13]RGIS requests that the Court take judicial notice of these orders.  *See* Request for Judicial Notice in Support of Opposition to Motion for Class Certification Pursuant to FRCP Rule 23 [docket no. 459].  The request, which Plaintiffs have not opposed, is granted.

Second, RGIS asserts that the statistical evidence showing missed and/or short meal breaks is insufficient to establish a common policy because these statistics don't explain the reason for the missed or short meal breaks.  In support of its assertion that such evidence does not provide a sufficient basis for class certification, Defendant relies on *Brinker Restaurant Corp. v. Superior Court*, 80 Cal. Rptr. 3d 781 (Ct. App. 4th Dist. July 22, 2008).  Third, RGIS challenges Dr. Drogin's statistical analysis regarding missed breaks, arguing that Dr. Drogin improperly included unpaid commute time for the purposes of determining when a break was due (and thus, whether a break was late).

Defendants assert that the typicality requirement is not met because the claims of the class members will turn on individualized determinations, particularly with respect to the defenses in this case.  For example, RGIS asserts that it will be entitled to raise individualized defenses demonstrating: 1) use of meet-sites was voluntary; 2) there was no waiting time associated with use of each meet site; 3) any unpaid donning time was *de minimis*; 4) hourly employees failed to take advantage of RGIS' system for reporting time; 5) each of the employees' claims are barred by the Portal to Portal Act, 29 U.S.C. § 254 to the extent they are based on activities that were preliminary or post-liminary to the employees' to their principal activities; 6) there were variances in travel pay policies over time and as applied by each supervisor; 7) time spent traveling to and from a meet site to an inventory was appropriately compensated; 8) the individual employees' claims are barred by statute of limitations or technical defaults; 9) each of the RGIS managers and supervisors acted in good faith and liquidated damages are not appropriate; 10) if there were violations due to mistakes by individuals running the inventories, there was no consistency or company knowledge or ratification of these mistakes.

Defendants further point out that the named plaintiffs for each of the Rule 23 States have not held each of the four positions encompassed by the classes, that is, Auditors, Assistant Team Leaders, Team Leaders and Associate area managers.  RGIS cites to evidence that these positions

United States District Court
For the Northern District of California

1  differ as to duties and supervisory responsibility arguing that as a result, the typicality requirement is

2  not met.  *See* Opposition at 3, 36.[14]

3       Defendant argues that Plaintiffs do not adequately represent the interests of the classes

4  because Plaintiffs' counsel do not have the experience necessary to handle a class action of this

5  magnitude and further, one of the firms that seeks appointment as class counsel – Bailey Pinney PC

6  – was disqualified by this court in another wage and hour action based on unethical conduct in that

7  action.  *See Moreno v. Autozone, Inc.*, Case No. 05-4432 CRB (N.D. Cal.,  Dec. 6, 2007), docket no.

8  212.  Defendant also argues that Plaintiffs do not adequately represent the proposed classes under

9  Rule 23 because they have an inherent conflict of interest arising from their simultaneous

10  participation in the FLSA class action.

11       With respect to Rule 23(b)(2), allowing a class action to be maintained based on the

12  possibility that injunctive relief may be appropriate, Defendant argues that it does not apply – at

13  least as to the Illinois, Oregon and Washington plaintiffs – because the named plaintiffs of those

14  states are no longer RGIS employees and therefore do not have standing to seek injunctive relief.

15  Even if they did, Defendant asserts, subsection (b)(2) does not apply because the primary relief

16  sought by Plaintiffs is monetary damages.  Defendant argues that Plaintiffs also don't satisfy the

17

---

18      [14]In support of its position, RGIS cites to deposition testimony by "Myers," "Brown,"

19  "Davidson," and "Manos" and to a declaration of "Appuzo." The deposition testimony was purportedly attached to the Ko Rule 23 Opposition Declaration. The Court found only the Manos deposition excerpt

20  attached to the Ko declaration (Exhibit 5).  Manos testified that she was hired as an auditor and that her job was to "go into stores and count merchandise."  Ko Rule 23 Opposition Decl., Ex. 5 at 41.  Although

21  there also is an excerpt from the September 27, 2007 Myers deposition attached to the Ko declaration as Exhibit 29, the cited page does not address the job descriptions of the various positions.  Rather,

22  Myers addressed that question at her March 14, 2006 deposition, an excerpt of which was provided by Plaintiffs as an attachment to the Lee Declaration at Exhibit 24.  Cynthia Myers testified in that

23  deposition as follows:

24      A district manager is responsible for the district office.  And that district manager has area managers that report to him or her.  And the number depends on the territory that they're

25      assigned.  They may have – and this varies by district.  They may have associate area managers that report to the district manager.  They have team leaders that report to the area managers.

26      And then we have our auditors, which is our hourly inventory taker position, that reports up through the area managers, as well as up to the district manager.

27  Lee Decl., Ex. 24 (Myers 3/14/ 2006 Depo) at 38.  The Court was unable to find the Brown and

28  Davidson deposition excerpts, which were not attached to the Ko Declaration.  Nor was it able to locate the Appuzo declaration, for which RGIS provided no citation.

1   requirement of subsection (b)(3), that common questions predominate, for the same reasons

2   discussed above with regard to Rule 23(a).

3                    **3.      Plaintiffs' Reply**

4            In their Reply, Plaintiffs make the following arguments:

5   1.     **Applicable legal standard re assessment of evidence under Rule 23:** Plaintiffs assert that

6            RGIS overstates the showing that is required to establish that certification under Rule 23 is

7            appropriate.  Whereas RGIS asserts that it is appropriate for the court to inquire into the

8            merits of the case, Plaintiffs argue that under Ninth Circuit case law, the court is not to weigh

9            evidence to assess the merits.  Rather, the Court need only have enough information to "form

10           a reasonable judgment on each requirement" and must accept as true the substantive

11           allegations of the representative plaintiffs' claims.  *See In re Live Concert Antitrust*

12           *Litigation*, 247 F.R.D. 98, 115 (C.D.Cal. 2007) (reviewing Ninth Circuit case law regarding

13           the question of whether courts may conduct merits assessment on Rule 23 motion).

14  2.     **Numerosity**: Plaintiffs reject RGIS' assertion that joinder is practicable because less than

15           10% of the potential class members opted in to the FLSA class.  Plaintiffs offer a declaration

16           by David Borgen, an attorney with experience in wage and hour litigation, in which Borgen

17           states that the opt-in rate for most FLSA collective actions is between 5% and 20%. *See*

18           Declaration of David Borgen in Support of Plaintiffs' Motion for Class Certification

19           ("Borgen Decl.")[docket no. 489], ¶ 21.[15]

20  3.     **Common Issues:** Plaintiffs argue that RGIS has mischaracterized the standard, which does

21           not require that issues be uniform; nor is it required that there must be a specific written

22           policy in order to establish a pattern and practice of wage violations.  Rather, Plaintiffs

23           argue, class certification may be justified not only where an explicit policy is challenged but

24           also where an employer has failed to act.  Further, even the question of *whether* RGIS has a

---

[15]Although Plaintiffs state in their Reply that the rate is between 5% and 30%, the Borgen Declaration states that the rate is between 5 and 20 %.  The Court assumes that the 30% figure used in the brief is a typographical error.  As discussed below, RGIS asks the Court to strike the Borgen Declaration, asserting that it should have been filed with the original motion and that it contains impermissible legal conclusions.

policy of not paying donning and waiting time is a common issue. *See Otsuka v. Polo Ralph Lauren Corp.*, 2008 WL 3285765, * 7 (N.D. Cal. July 8, 2008).

Here, Plaintiffs assert, RGIS has failed to address a uniform policy that is reflected in materials issued by corporate headquarters. In particular, RGIS policy and training materials require auditors to arrive ready to start counting, ie., with their equipment on, but also state that the start-time is the inventory start time. Read together, Plaintiff's assert, these materials indicate RGIS has a uniform policy of not paying pre-inventory donning time or waiting time. Plaintiffs cite to the expert report of Dr. Martell in which Dr. Martell concludes that these omissions invited unpaid donning and waiting time. In addition, Plaintiffs cite to a supplemental report by Dr. Martell submitted with the Reply, in which Dr. Martell concludes that the various emails and reminders cited by RGIS in its Opposition are consistent with the conclusion of his earlier report that RGIS' policies are deficient with respect to ensuring that waiting and donning time are paid. *See* Reply Declaration and Supplemental Report of Richard Martell, Ph.D [docket no. 488] ("Martell Supp. Report").

4.   **Pattern and practice violations based on representative testimony:** Plaintiffs assert that RGIS fails to acknowledge the extensive case law that allows a class to establish a pattern and practice of wage and hour violations based on representative testimony of class members. Where, as here, the testimony of numerous class members supports an inference that the employer has engaged in unlawful conduct, this is a proper basis for class certification.

5.   **Statistical evidence that RGIS failed to pay its employees for all hours and overtime worked:** Plaintiffs submit new statistical evidence, in the form of a reply declaration by Dr. Drogin, *see* Reply Declaration of Richard Drogin, Ph.D in Support of Plaintiffs' Motion for Class Certification [docket no. 486] ("Drogin Reply Decl."), which they argue shows that there is a significant discrepancy between the hours worked by putative class members in the Rule 23 States, as reported in RGIS' time records, and the amount paid for those hours, as reported in RGIS payroll records. This evidence, Plaintiffs assert, supports their claim that there is a pattern and practice of payroll violations by RGIS and that RGIS has failed to keep

1  accurate time and payroll records.  Plaintiffs explain that they did not include this statistical

2  evidence when they filed their opening brief because RGIS did not produce the pay field data

3  until July 3, 2008, seven days before the brief was due, even though this Court ordered RGIS

4  to produce this data by April  16, 2008.

5  6.  **Applicable legal standard re off-the-clock work and evidence that standard was met:**

6  Plaintiffs assert that RGIS mischaracterizes the legal standard regarding off-the-clock work

7  when it argues that it does not require such work; rather, the relevant question is whether an

8  employer suffers or permits such work.  Under that standard, policies that merely prohibit

9  managers from instructing employees to come to work early but allow them to passively

10  accept off-the-clock donning and waiting time by employees, do not comply with the law.

11  So long as RGIS knew, or with reasonable diligence should have known, that such off-the-

12  clock work was occurring, RGIS may be liable for wage and hour violations, Plaintiffs argue.

13

14  Further, Plaintiffs assert, there is evidence that RGIS *did* know that it was occurring.

15  Plaintiffs point to: a) a May 24, 2002 email from corporate headquarters to all RGIS vice

16  presidents acknowledging that there had been numerous complaints by auditors and

17  clarifying that although a manager can tell auditors to arrive in time for work, if the manager

18  instructs employees to come at a specific time that is before the scheduled start time, auditors

19  must be paid from that time; *see* Myers Rule 23 Opposition Decl., Ex. A; b) complaints by

20  auditors regarding off-the-clock work, including unpaid donning and waiting time prior to

21  inventories, *see* Appendix of Auditor Declarations [docket no. 418], Ex. 104 (Colbert Decl.),

22  ¶ 14, Ex. 29 (Y. Knight Decl.),  ¶ 18, Ex. 83 (Miles Decl.), ¶ 18, Ex. 110 (Mueller Decl.), ¶

23  17, Ex. 99 (L. Williams Decl.), ¶ 11, Ex. 100 (Zielinski Decl.), ¶ 16; c) Pay Inquiry Forms

24  submitted to RGIS management reflecting complaints about unpaid time; d) other lawsuits

25  filed against RGIS alleging wage and hour violations.  *See, e.g., Good v. RGIS*, Case No. 05-

26  0007 (D.W. Va.) (settled April 2005), *Pearson v. RGIS*, Case No. 06-0680 (N.D. Cal.)

27  (settled August 2006), *Cantrelle v. RGIS*, Case No. 06-1394 (E.D.Cal.) (settled July 2007),

28  *Murphy v. RGIS*, Case No. 07-89-Orl-28JGG (M.D. Fla.)(settled August 2007),

United States District Court
For the Northern District of California

*Scheidt/Dodge*, Nos. C03 -00067/BC 296361 (Super. Ct. Counties of Contra Costa and Los Angeles) (settled December 2004).

7. **Travel time**: Plaintiffs reject RGIS' reliance on *Worley* and *Johnson* in support of the assertion that courts have approved RGIS' commute time policy, arguing that neither of these cases involved state law claims of the sort that are at issue in this case.   Plaintiffs further assert that RGIS' arguments relating to prior court rulings are improper merits arguments that should not be considered on a Rule 23 motion.

With respect to RGIS' contention that the travel time claims require too many individualized inquiries, Plaintiffs assert that average commute times can be used to address these claims.  In support of this contention, Plaintiffs submit a second declaration by Marc Bendick and a declaration by Eric Seamon, who is a certified Geographic Information Systems Professional.  *See* Second Declaration of Marc Bendick ("Second Bendick Decl."), Declaration of Erich Seamon in Support of Plaintiffs' Motion for Class Certification ("Seamon Rule 23 Motion Decl.").[16]  In his second declaration, Bendick states that the empirical data based on average commute times from the U.S. Census can be used to assign appropriate commute times to auditor employees at the county level.  Second Bendick Decl., ¶ 7.  Seamon reports the results of his own analysis of commute times in the four Rule 23 states and concludes that the mean commute time within each of the four states is less than sixty minutes. Seamon Rule 23 Motion Decl. ¶¶ 12-13.

8. **Missed meal breaks**: Plaintiffs point out that *Brinker*, on which RGIS relies in arguing that statistics showing missed meal periods do not warrant class certification, does not apply to Oregon, Washington or Illinois.  Plaintiffs also assert that there is a split of authority among California courts, pointing to *Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949 (3d Dist. 2005).  Even as to the California claims, Plaintiffs argue, whether *Brinker* should be applied in this case is a common question that applies to all class members.  Similarly,

_____

[16]As discussed below, RGIS moves to strike these declarations.

United States District Court

For the Northern District of California

1    Defendant's criticism of Dr. Drogin's statistical analysis raises common issues on the

2    merits.[17]

3    9.    **Employee declarations offered by RGIS**: Plaintiffs argue that the declarations of RGIS

4    employees who say they were properly compensated do not defeat class certification because

5    it is well established that the existence of such potential class members does not preclude

6    certification.  Plaintiffs also assert that of the 68 potential class member declarations

7    submitted by RGIS, 42 are by current employees.  These declarations, Plaintiffs argue, have

8    little probative value because of the possibility the employees felt pressured to cooperate

9    with RGIS management.[18] Finally, in a declaration submitted a day after the Reply brief was

10   filed, attorney Nancy Park provides a "comprehensive compilation of testimony" of the

11   individuals whose declarations were offered in support of RGIS' Opposition, responding to

12   the specific points made in the Sevilla Declaration.  *See* Declaration of Nancy Park in

13   Support of Reply Memorandum of Points and Authorities in Support of Motion for Class

14   Certification (Park Reply Decl.").

15   10.   **Typicality**: Plaintiffs reject RGIS' assertion that they are required to have a class

16   representative from each job category in each of the proposed classes, citing, *inter alia*,

17   *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007).  Rather, Plaintiffs assert, the

18   class representatives claims need only be reasonably co-extensive with those of the absent

19   class members.  Plaintiffs argue that this requirement is met because Plaintiffs have a

20   proposed class representative for all states and all claims.  *See* Reply Memorandum of Points

21   and Authorities in Support of Motion for Class Certification, Ex. A (Appendix 1) (chart of

22   class representatives and claims).  Alternatively, Plaintiffs suggest that state classes can be

23   divided into subclasses consisting of: a) auditors; and b) assistant team leader and team

---

25   [17]On November 10, 2008, Plaintiffs filed a notice informing the Court that the court of appeal's
26   decision in *Brinker*, found at 165 Cal. App. 4th 25 (2008), was republished by the California Supreme
Court on October 22, 2008, when that court granted review of the decision.

27   [18]As discussed below, in a separate motion to strike [docket  no. 481], Plaintiffs ask the Court
28   to strike these declarations on the grounds that RGIS did not timely disclose the identities of these
witnesses and that RGIS acted unprofessionally in obtaining the declarations.

leader positions.  Plaintiffs note that if the Court were to create such subclasses, Plaintiffs would request 30 days in which to propose class representatives for the Illinois and Washington team leader subclasses.

11. **Adequate representation:**   On the question of whether there is a conflict of interest where an opt-in class under the FLSA seeks to represent a Rule 23 class on similar claims, Plaintiffs assert that most district courts in this circuit have found that it does not.  With respect to the qualifications of class counsel, Plaintiffs point to the extensive experience of David Borgen, whose declaration is offered in support of Plaintiffs' Reply brief, as well as that of the Schneider Wallace firm.  Plaintiffs note that Bailey Pinney was recently appointed as class counsel by Judge Armstrong in *In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 2008 WL 413749 (N.D. Cal. 2008).

12. **Injunctive Relief under Rule 23(b)(2):**  Plaintiffs reject RGIS' assertion that the primary relief they seek is damages rather than injunctive relief.  Rather, Plaintiffs argue, remedying the deficiencies of RGIS' policies and procedures is at the heart of this litigation.  Further, Plaintiffs assert, RGIS has conceded that Plaintiffs have proposed class representatives for the California class who are current employees, including Boze, Garcia, Pease, Pierson, Piper, Rosenthal and Saites.  With respect to the Illinois class, Plaintiffs have proposed that Joan Johnson, a current RGIS employee, be added as a plaintiff and classs representative.  As to Oregon and Washington, Plaintiffs submit, with their Reply, the declarations of Jewel Gatlin and Michele Zustak, who are current RGIS employees and are willing to serve as class representatives.  *See* Appendix of Declarations [docket no. 491], Exhs. N & S.

13. **Rule 23(b)(3) requirements:** Plaintiffs reiterate their arguments that common questions predominate and that the class mechanism is superior to requiring individual actions, which would potentially flood the courts while also precluding access for those who do not have the means to pursue an action or who fear employer retaliation.  *See Ostuka v. Polo Ralph Lauren*, 2008 WL 3285765 at * 8 (N.D. Cal. July 8, 2008).

        **4.**        **Defendant's Motion to Strike the Reply**

1    Defendants bring a motion to strike Plaintiffs' Reply brief, arguing that Plaintiffs have

2  improperly introduced new evidence and arguments that exceed the scope of the Reply.  Defendants

3  object, in particular, to new testimony by ten auditors and by witnesses Bendick, Seamon, Borgen

4  and Drogin.  Defendant also argues that the Reply should not be considered because Plaintiffs

5  exceeded the page limit in the local rules.  RGIS does not address the fact that at the time it filed the

6  motion to strike, the Court had already granted Plaintiffs' administrative request to exceed the page

7  limit set forth in the Local Rules, *see* docket no. 503.

8    Plaintiffs assert that the new evidence is permissible because it is offered in response to

9  arguments raised in the Opposition.  In addition, with respect to the Drogin supplemental report,

10  Plaintiffs point out that they did not receive the necessary data for Dr. Drogin to complete his

11  analysis until just before their motion was due and long after the Court had ordered this data

12  produced.

13         **5.    Plaintiffs' First Motion to Strike**

14    Plaintiffs move to strike the declarations of 20 RGIS salaried manager and 29 auditor

15  declarations under Fed. R. Civ. P. 37(c)(1) on the basis that the identities of these declarants were

16  not timely disclosed and RGIS' conduct in obtaining the declarations was unprofessional.  *See*

17  docket no. 481 ("Plaintiffs First Motion to Strike").  Plaintiffs also seek clarification as to whether

18  Daniel Slottje relied on any of these declarations in his expert report submitted in support of RGIS'

19  Opposition.  Plaintiffs note that Slottje states that he relied on declarations in preparing his report.

20  *Id; see also* Slottje Expert Report at 4.  If Slottje relied on any of the challenged declarations,

21  Plaintiffs ask that any portion of the report that is affected be stricken.  Plaintiffs also ask that the

22  court send corrective notices to the individuals RGIS contacted for declarations, citing statements by

23  those declarants Plaintiffs were able to reach that Plaintiffs assert show improper conduct on the part

24  of RGIS.

25         **6.    Defendant's Surreply**

26    With the Court's leave, *see* docket no. 515, Defendant filed a sur-reply in response to

27  Plaintiff's Reply.  Defendants raise the following arguments in their sur-reply:

28

United States District Court

For the Northern District of California

1.   **Applicable legal standard re assessment of evidence under Rule 23:** RGIS argues that Plaintiffs' reliance on *In re Live Concert Antitrust Litigation*, 247 F.R.D. 98 (C.D.Cal. 2007) for the proposition that the Court should not assess evidence on the merits is misplaced because that case relies on an opinion that has been withdrawn, *Dukes v. Wal-Mart*, 474 F.3d 1214 (9th Cir. 2007).  According to RGIS, the updated *Dukes* decision makes clear that the courts have a *duty* to assess the evidence in determining whether the requirements of Rule 23 have been met.  *See Dukes*, 509 F.3d 1168 (9th Cir. 2007).

2.   **New evidence**: RGIS argues that the new evidence submitted by Plaintiffs, namely, the supplemental declarations of Drs. Drogin and Martell and the new declarations by David Borgen and Erich Seamon, are unreliable and should be disregarded.[19]  With respect to Drogin's Reply Expert Report, RGIS submits a response by its own expert, Daniel Slottje, challenging Dr. Drogin's methodology and conclusions. *See* Rebuttal Report of Daniel J. Slottje: In Response to Reply Declaration of Richard Drogin, Ph.D., filed August 28, 2008 ("Slottje First Rebuttal Report").  For example, Dr. Slottje challenges Dr. Drogin's finding that actual compensation was 9 % less than it should have been based on RGIS' payroll and time records.  Slottje First Rebuttal Report, ¶¶ 6-7.  Dr. Slottje states that he conducted his own analysis and found there was a shortfall of only .10%.  *Id.*

3.   **Use of representative testimony:** RGIS disputes Plaintiffs' assertion that representative testimony can be used at the class certification stage, especially where, as here, there is so much variation among the experiences of the class members.  RGIS argues that the cases Plaintiffs cite on this question involved use of representative testimony at trial and involved a single location or only a small number of employees.  *See McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 588-589 (9th Cir. 1988); *Martin v. Selker Bros.*, 949 F.2d 1286, 1298 (3d Cir. 1991); *Donovan v. Bel-Loc Diner*, 780 F.2d 1113, 1115-1116 (4th Cir.1985); *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 86 (10th Cir. 1983); *Reich v. Brenaman Elec. Serv*., 1997 WL 164235, *7 (E.D.Pa. March 28, 1997).

_____

[19]RGIS also files separate objections to this evidence.  *See* Docket No. 540.

**United States District Court**

For the Northern District of California

4.   **Plaintiffs' reliance on authority related to common policy, including *Otsuka*:** RGIS argues that Plaintiffs err in relying on *Otsuka* for the proposition that RGIS' absence of a company-wide written policy on donning and waiting time constitutes a uniform policy. RGIS asserts that this case was decided before *Brinker* and notes that in a subsequent decision, Judge Illston limited the holding of *Otsuka* to the specific facts of that case in light of *Brinker*. *See Gabriella v. Wells Fargo Financial, Inc.*, 2008 WL 3200190 (N.D. Cal. August 4, 2008). RGIS further asserts that other cases that Plaintiffs cite to show a common policy are not on point. *See Frank v. Gold'n Plump Poultry, Inc.*, 2007 U.S. Dist. LEXIS 71179, 7-9 (D. Minn. Sept. 24, 2007); *Bates v. UPS*, 204 F.R.D. 440, 448 (N.D. Cal. 2001); *Jensen v. Eveleth Taconite Co.*, 139 F.R.D. 657, 666 (D. Minn. 1991); *Staley v. Wilson County*, 2006 WL 2401083, * 7 (M.D. Tenn. Aug. 18, 2006). Rather, RGIS argues, numerous district court cases in the Ninth Circuit indicate that whether and how managers have interpreted RGIS' mandate prohibiting off-the-clock work is not a common question that supports class certification under Rule 23. *See Brown v. Federal Express Corp*, 249 F.R.D. 580 (C.D. Cal. 2008); *Corln v. United Parcel Service, Inc.,* 2005 WL 2072091 (N.D. Cal. 2005); *White v. Starbucks*, 497 F. Supp. 2d 1080 (2007); *Kenny v. Supercuts*, 2008 WL 2265194 (N.D. Cal. June 2,  2008).

5.   **Proposed addition of new plaintiffs**: RGIS objects to Plaintiffs' request to add five new plaintiffs to serve as class representatives – three in their opening brief (Molmen, Johson and Williams) and two in their Reply brief (Gatlin and Zustak). RGIS asserts that these requests are untimely and that in the absence of adequate class representatives, Plaintiffs do not have standing to proceed on the class claims.

6.   **Conflict between Rule 23 claims and FLSA claims**: RGIS argues that in addressing the potential conflict that may arise where plaintiffs seek to proceed under both Rule 23 and the FLSA,  Plaintiffs fail to address cases in which the state law claims for which Rule 23 certification is sought are either numerous or novel and complex. *See Neary v. Metropolitan Property and Casualty Insurance*, 472 F. Supp. 2d 247, 253 (D. Conn. 2007); *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003); *Glewwe v. Eastman Kodak Co.*, 2006 WL

United States District Court

For the Northern District of California

1455476 (W.D.N.Y. May 25, 2006).  In those situations, RGIS argues, courts may decline

Rule 23 class certification on the ground that the state law claims are likely to overwhelm the

FLSA claims.  RGIS argues that in this case, where Plaintiffs have asserted 26 state law

claims, and where Plaintiffs themselves have acknowledged that the relevant state law on

some of the claims is sparse and in some cases, unresolved, the Court should deny class

certification under Rule 23.

### 7.    Plaintiffs' Second Motion to Strike

After RGIS filed its sur-reply, Plaintiffs filed a motion to strike, *see* docket no. 570

("Plaintiff's Second Motion to Strike"), requesting that the Court strike the following documents and

portions of documents:

1.    **Slottje First Rebuttal Report, ¶¶ 6-7**:   In paragraphs 6 and 7, Dr. Slottje addressed Dr.

Drogin's findings relating to an alleged shortfall in compensation.  Dr. Slottje concluded that

Dr. Drogin's methodology was flawed and stated that his own analysis revealed a much

smaller shortfall that Dr. Drogin had found.  Plaintiffs argue that these paragraphs should be

stricken because RGIS failed to comply with the requirement under Fed. R. Civ. P.

26(a)(2)(B) that experts must disclose the basis for the opinion and the data on which the

expert relied.  Even after the Slottje First Rebuttal Report was filed, Plaintiffs assert, RGIS

has refused to provide the underlying calculations and data supporting Dr. Slottje's

conclusions, despite Plaintiffs' requests for them.  Plaintiffs further assert that Dr. Slottje

should not be permitted to testify on this subject matter at trial.

2.    **Sager Opposition Declaration, ¶ 6 and Ex. V:** Paragraph 6 of the Sager Opposition

Declaration and Exhibit V contain "anecdotal" evidence that a one-hour commute might be

considered reasonable by some.  In the Notice of Motion, Plaintiffs ask that this evidence be

stricken because it is irrelevant and lacks foundation.  The request to strike this evidence,

however, is not addressed in the memorandum of points and authorities.

3.    **Myers Opposition Declaration, Non-Bates Stamped Documents**: RGIS included

numerous documents as exhibits to the Myers Opposition Declaration that did not carry

Bates numbers.  Plaintiffs assert that these documents were never produced to them in

**United States District Court**
For the Northern District of California

1   discovery, thus depriving them of the opportunity to depose Ms. Myers or other 30(b)(6)

2   witnesses as to their significance.  Therefore, Plaintiffs argue, these documents should be

3   stricken and RGIS should be precluded from introducing them at trial.

4        In response to Plaintiffs' Second Motion to Strike, RGIS asserts that the documents that it

5   failed to produce were listed on its privilege logs and that although it offered in May 2008 to

6   produce these documents if Plaintiffs agreed to a limited waiver of attorney-client privilege,

7   Plaintiffs did not respond to that request.  *See* Sager Rule 23 Opposition Decl., ¶ 4.  According to

8   RGIS, it was not until after Plaintiffs' Rule 23 Reply had been filed that Plaintiffs finally agreed to

9   the limited waiver.  *Id.*, Ex. 2.  With respect to the Slottje First Rebuttal Report, RGIS argues that

10  Dr. Slottje expressly references the same data cited by Dr. Drogin as the basis for his opinions in

11  paragraphs 6 and 7.  *See* Slottje First Rebuttal Report, ¶ 5; *see also* Rebuttal Report of Daniel J.

12  Slottje: In Reponse to Reply Declaration of Richard Drogin, Ph.D., Filed November 6, 2008

13  ("Slottje Second Rebuttal Report"), ¶ 6 & Appendices 1 and 2 (elaborating on methodology).

14       **B.      Motion to Bifurcate**

15       Plaintiffs bring a motion to bifurcate in which they ask that the Court to divide the trial into

16  two stages, the first addressing questions of class liability and injunctive relief and then, if liability is

17  found, a second stage addressing monetary damages.  Plaintiffs assert that courts frequently

18  bifurcate the damages phase in wage and hour class actions and that such an approach is warranted

19  in this case.  In particular, Plaintiffs argue that bifurcation makes sense because it is in the interest of

20  judicial economy, the issues of liability and damages are easily separable, the parties will not suffer

21  any prejudice from bifurcation and it will reduce the risk of jury confusion.

22       RGIS opposes the request to bifurcate, arguing that the questions relating to liability are

23  closely intertwined with questions of damages.  As a result, RGIS asserts, a great deal of evidence is

24  relevant to both liability and damages.  If as a result of bifurcation RGIS were limited to presenting

25  such evidence in either the liability or the damages phase, RGIS argues, it would be severely

26  prejudiced.

27       **C.      Motion to Decertify**

28

United States District Court

For the Northern District of California

1    In the Motion to Decertify, RGIS repeats many of the arguments raised in opposition to

2  Plaintiffs' Rule 23 Motion and relies on much of the same evidence.  RGIS also provides a summary

3  of declarations and deposition testimony – including both previously submitted and new testimony –

4  by RGIS employees whose experiences, they assert, show that the experiences of the opt-in

5  plaintiffs are anomalous.  *See* Declaration of A. Sevilla in Support of Defendant RGIS, LLC's

6  Motion to Decertify Class  [docket no. 566]  ("Sevilla Decertification Motion Decl.") (summarizing

7  testimony found in docket nos. 121, 455, 457, 565 and 568).  RGIS argues that because there is no

8  uniform policy as to donning and waiting time or travel time, and because individualized inquiries

9  predominate as to Plaintiffs' claims, the FLSA classes should be decertified.

10    Plaintiffs counter that their claims are based on uniform policies and that common issues of

11  law and fact justify class status, citing evidence discussed above in connection with Plaintiffs' Rule

12  23 Motion.  In support of their opposition, Plaintiffs filed another report by their expert, Richard

13  Drogin, addressing his findings as to both the state law claims and the FLSA claims, as well as

14  responding to Dr. Slottje's August 7, 2008 report, filed in support of RGIS' Decertification Motion.

15  *See* Declaration of Richard Drogin PhD in Opposition to Defendant's Motion for Decertification

16  [docket no. 607] ("Drogin Decertification Opposition Decl.").  Plaintiffs also filed a supplemental

17  declaration by David Borgen expanding on his prior declaration addressing opt-in rates in FLSA

18  actions and asserting that the opt-in rate here indicates that decertification of the FLSA class would

19  be improper.  *See* Supplemental Declaration of David Borgen in Opposition to Motion to Decertify

20  Collective Action [Docket No. 606 ] ("Borgen Supp. Decl.").

21    RGIS objects to both the Drogin Decertification Opposition Declaration and the Borgen

22  Supplemental Declaration as untimely and further object to the Borgen Supplemental Declaration on

23  the basis that it contains legal conclusions and therefore constitutes improper opinion evidence.  *See*

24  Defendant RGIS, LLC's Objections to Evidence Submitted in Support of Plaintiffs' Opposition to

25  RGIS' Motion to Decertify Class Action [Docket No. 633].

26    **D.      Plaintiffs' Third Motion to Strike**

27    Plaintiffs bring a motion to strike the declarations of 7 RGIS salaried manager and 20

28  auditors that RGIS relied upon in its Decertification Motion under Fed. R. Civ. P. 37(c)(1) on the

1   basis that the identities of these declarants were not timely disclosed and RGIS' conduct in obtaining

2   the declarations was unprofessional.  *See* Docket No. 614 ("Plaintiffs' Third Motion to Strike").

3   RGIS opposes the motion on the ground that it did not act improperly, either with respect to the

4   timing of the disclosure or as to its communications with potential class members.

5           **E.      Plaintiffs' Fourth Motion to Strike**

6           Plaintiffs bring a motion to strike the declarations of 90 RGIS salaried managers who

7   submitted declarations in support of Defendants Reply on its Motion to Decertify, *see* Docket No.

8   664 ("Plaintiffs' Fourth Motion to Strike"), on the basis that the identities of the declarants were

9   never previously disclosed to Plaintiffs.  Plaintiffs further request that the Declaration of Susan Burr,

10  docket no. 629, be excluded on the basis that it contains legal argument and lacks foundation.

11          Defendant opposes the Fourth Motion to Strike on the ground that the declarations were

12  offered as impeachment evidence in response to Plaintiffs' evidence.  With respect to the Burr

13  Declaration, Defendant asserts that it was proper because it was filed to rebut the declarations of

14  Nancy Parks and Andrew Lee.

15          **F.      Motion to Dismiss Invalid Opt-In Plaintiffs**

16          Defendants bring a Motion to Dismiss Invalid Opt-In Plaintiffs ("Motion to Dismiss") asking

17  that the Court dismiss the following categories of Plaintiffs who have filed opt-in consents:

18  •       **Opt-In Plaintiffs who have expressly withdrawn their consent**: RGIS has filed a list of 29

19          opt-in plaintiffs who have withdrawn their consent.  *See* Motion to Dismiss, Ex. B.

20  •       **Opt-In Plaintiffs whose consent forms were post-marked after the 90-day notice period**:

21          RGIS has filed a list of 491 opt-in plaintiffs whose consent forms were postmarked after the

22          90-day consent period.  *See* Motion to Dismiss, Ex. A.

23  •       **Opt-In Plaintiffs who have not responded to discovery requests even after the Court**

24          **issued an Order to Show Cause instructing them to comply and explaining that they**

25          **would be dismissed from the action if they failed to do so.**  RGIS has filed a list of 99 opt-

26          in plaintiffs who did not respond to discovery and did not comply with the Court's

27          subsequent Order to Show Cause. *See* Motion to Dismiss, Ex. C.

28

31

- **Opt-In Plaintiffs who did not work for RGIS during the statutory period**: RGIS identifies four specific opt-in Plaintiffs who apparently did not work for RGIS during the statutory period and asks that the Court rule, on the basis of this evidence, that employees who did not work for RGIS during the statutory period should be dismissed.  If the Court issues such a ruling, RGIS says, it will engage in a review of the employment histories of the opt-in plaintiffs to determine which ones should be dismissed on this basis.

- **Opt-In Plaintiffs who did not hold any of the positions that are at issue in this case**: RGIS does not identify any specific opt-in plaintiffs who fall into this category, but it says that if the Court rules that such opt-in Plaintiffs should be dismissed, it will review the employment histories of the opt-in plaintiffs to determine if any fall into this category.

   - **Opt-In Plaintiffs who filed Plaintiff's consent form rather than the form sent out by the third party administrator, RG/2**.  RGIS notes that some of the opt-in plaintiffs have submitted the consent form that was used by plaintiffs' counsel before the Court-approved notice was adopted and have not submitted the court-approved form.  RGIS suggest Plaintiffs' counsel have acted improperly and that these opt-in plaintiffs should be dismissed.

In their Opposition, Plaintiffs assert that the Motion to Dismiss is both unnecessary and premature.  In particular, Plaintiffs state that they do not oppose dismissal of the opt-in plaintiffs who have withdrawn their consent and therefore, that this issue could have been resolved by way of a stipulated order.  With respect to the request that the Court dismiss opt-in plaintiffs who did not work at RGIS during the relevant period or held positions that do not fall within the class, Plaintiffs assert that RGIS is essentially requesting an advisory opinion because it has failed to identify (and does not yet know) the specific plaintiffs whose dismissal it seeks.

With respect to the opt-in plaintiffs whose consent was post-marked after the 90 day period, Plaintiffs assert they should not be dismissed because allowing them to participate will not give rise to any prejudice to RGIS and will contribute to judicial economy to the extent these plaintiffs might bring separate actions if they are dismissed from this action.  As to the opt-in plaintiffs who have not

United States District Court

For the Northern District of California

1    responded to discovery, Plaintiffs assert that dismissal is too extreme, especially as it is unclear

2    whether these individuals even received the Court's order to show cause.

3         Finally, Plaintiffs deny RGIS' allegation that they have tried to circumvent the Court

4    authorized notice process.  They state that they have never sent out their own notices but that in

5    response to requests for information from potential plaintiffs they did send out a copy of the court-

6    authorized notice along with the consent-form they had used prior to creation of the court-authorized

7    consent form.  Plaintiffs counsel explain that they believed that they were not permitted to send out

8    the official consent forms used by RG/2, which carried bar codes, and further, that in denying RGIS'

9    previous motion to declare opt-ins invalid, the Court had found the consent forms used by Plaintiffs'

10   counsel to be adequate.

11   **IV.    ANALYSIS**

12        **A.    The Motions to Strike**[20]

13             **1.    Legal Standard**

14        Under Fed. R. Civ. P. 12(f), "the court may order stricken from any pleading any insufficient

15   defense or any redundant, immaterial, impertinent, or scandalous matter."  However, motions to

16   strike under Rule 12 are  generally disfavored.  *Chiron Corp. v. Abbott Labs.*, 156 F.R.D.  219, 220

17   (N.D. Cal. 1994).   In addition, Rule 37 of the Federal Rules of Civil Procedure allows the Court to

18   strike a pleading, or issue other "just orders" as a sanction for violating the court's discovery order.

19             **2.    Defendant's Motion to Strike**

20        RGIS asks the Court to strike Plaintiffs' Rule 23 Reply brief, as well as declarations, or parts

21   of declarations, cited in support of the Reply.  The motion is DENIED.

22        First, parties are permitted to file declarations in support of Reply briefs under the Local

23   Rules.  *See* Civ. L.R. 7-3(c).  Further, the district court has discretion to consider legal issues that are

24   raised for the first time on reply and may also consider new evidence, so long as the opposing party

25   is given an opportunity to respond.  *See Glen K. Jackson, Inc. v. Roe*, 273 F.3d 1192, 1202 (9th Cir.

26   2001) (district court has discretion to consider issue raised in reply brief); *Provenz v. Miller*, 102

27   _____

28        [20]The parties have raised a myriad of evidentiary objections. The Court rules on those objections only to the extent that it relies on the evidence that is challenged.

33

United States District Court

For the Northern District of California

F.3d 1478, 1483 (9th Cir. 1996) (where new evidence is introduced on reply, it should not be considered unless opposing party has a chance to respond).  Here, the new declarations, as well as the arguments raised in the Reply, were largely within the scope of the issues raised by RGIS' opposition.  To the extent Plaintiffs may have gone beyond the scope of the Opposition, RGIS was given an opportunity to submit a sur-reply, as well as additional rebuttal declarations of its own.  Under these circumstances, it would be inappropriate to grant the relief requested by RGIS.

The Court also notes that to the extent the Drogin reply declaration contains material that would ordinarily have been expected to have been filed in support of the motion, Plaintiffs have explained their late submission on the basis of the late production of the pay fields to Plaintiffs.  Whoever may or may not be at fault for this, RGIS does not dispute that this data was not provided to Plaintiffs until July 3, 2008, just eight days before their Rule 23 motion was due to be filed. Under these circumstances, the Court declines to strike the new material offered by Dr. Drogin in his reply declaration.

### 3.    Plaintiffs' Second Motion to Strike

Plaintiffs bring a motion to strike paragraphs 6 and 7 of the Slottje First Rebuttal Report, [a portion of the Sager  Opposition Declaration], as well as a related exhibit, and various documents that RGIS filed in support of its sur-reply on the Rule 23 Motion.  The motion is DENIED.

First, Slottje's First Rebuttal Report is in response to the Drogin reply declaration and the analysis that Plaintiffs challenge is based on the same data used by Drogin, that is, the two tables produced to Plaintiffs on July 3, 2008.  *See* Slottje First Rebuttal Report, ¶ 5.   Slottje also lists the assumptions he used in coming to his conclusions.  While it is true that Slottje does not provide a detailed explanation of his methodology, Plaintiffs have offered no authority suggesting that the report is so deficient as to fall below the requirements of Rule 26.

Second, the Court does not find that the late production of the documents attached to the Meyers Declaration have resulted in any meaningful prejudice to Plaintiffs.  Therefore, their exclusion is not warranted under Rule 37.

### 4.    Plaintiffs' First, Third and Fourth Motions to Strike

United States District Court
For the Northern District of California

1       In its First, Third and Fourth Motions to Strike, Plaintiffs ask the Court to exclude certain

2  salaried manager and auditor declarations on the grounds that: 1) RGIS allegedly concealed their

3  identity; and 2) Defendant has engaged in misleading practices in obtaining the declarations.

4  Because the Court does not rely on any of these declarations in determining the Rule 23 Motion or

5  the Decertification Motion, the Court declines to rule on the merits of these motions, which are

6  DENIED without prejudice.

7      **B.**    **The Rule 23 Motion for Class Certification**

8            **1.**    **Legal Standard**

9      A party seeking to certify a class must satisfy the four requirements set forth in Rule 23(a)

10  and at least one of the requirements of Rule 23(b).[21]  Before certifying a class, the court "must

11  _____

12       [21]Rule 23 provides, in relevant part, as follows:

13  (a) **Prerequisites.** One or more members of a class may sue or be sued as representative parties on
behalf of all members only if: (1) the class is so numerous that joinder of all members is

14  impracticable;(2) there are questions of law or fact common to the class; (3) the claims or defenses of
the representative parties are typical of the claims or defenses of the class; and (4) the representative

15  parties will fairly and adequately protect the interests of the class.

16  (b) **Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

17  (1) prosecuting separate actions by or against individual class members would create a risk of:

18  (A) inconsistent or varying adjudications with respect to individual class members that would establish
incompatible standards of conduct for the party opposing the class; or

19
20  (B) adjudications with respect to individual class members that, as a practical matter, would be
dispositive of the interests of the other members not parties to the individual adjudications or would
substantially impair or impede their ability to protect their interests;

21
22  (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class,
so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as
a whole; or

23
24  (3) the court finds that the questions of law or fact common to class members predominate over any
questions affecting only individual members, and that a class action is superior to other available
methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings

25  include:

26  (A) the class members' interests in individually controlling the prosecution or defense of separate
actions;

27  (B) the extent and nature of any litigation concerning the controversy already begun by or against class

28  members;

United States District Court

For the Northern District of California

1  conduct a 'rigorous analysis' into whether the prerequisites of Rule 23 are met." *Valentino v.*

2  *Carter-Wallace, Inc.*, 97 F.3d 1227, 1232 (9th Cir. 1996) (citing *In re American Medical Systems,*

3  *Inc.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996)).

4      While it is inappropriate for the court to consider the merits of the claims in determining

5  whether class certification is appropriate, the court "does require sufficient information to form a

6  reasonable judgment" that the requirements of Rule 23 are met.  *Blackie v. Barrack*, 524 F.2d 891,

7  901 n.17 (9th Cir. 1975).  Therefore, "the Court is at liberty to consider evidence which goes to the

8  requirements of Rule 23 even though the evidence may also relate to the underlying merits of the

9  case."  *In re Unioil Securities Litigation*, 107 F.R.D. 615, 618 (C.D. Cal. 1985) (cited with approval

10  in *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)); *see also Dukes v. Wal-Mart,*

11  *Inc.*, 509 F.3d 1168, 1177 n.2 (9th Cir. 2007)(noting that "courts are not only 'at liberty to' but must

12  'consider evidence which goes to the requirements of Rule 23 [at the class certification stage] even

13  [if] the evidence may also relate to the underlying merits of the case'" and holding that district court

14  acted properly in conducting "a 'rigorous analysis' of the conflicting evidence'" to determine

15  whether the commonality prerequisite was satisfied).

16          **2.      Numerosity**

17      Plaintiffs assert that each of the proposed classes satisfies the numerosity requirement,

18  pointing to evidence that there are at least 1,500 potential plaintiffs as to each of the Rule 23 classes.

19  *See* Drogin Decl., Docket No. 406, ¶ 4 (stating that there are inventory shifts for 17,167 RGIS

20  employees in California, 10,123 RGIS employees in Illinois, 1,548 employees in Oregon and 3,033

21  employees in Washington during the relevant class periods).  RGIS does not challenge Plaintiffs'

22  evidence relating the number of potential plaintiffs.  Rather, it asserts that joinder would not be

23  "impracticable," citing to evidence that out of a total of 291,000 potential class members, only

24  _____

25  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
   and

26

27  (D) the likely difficulties in managing a class action.

28  Fed. R. Civ. P. 23(a) and (b).

United States District Court

For the Northern District of California

26,210 individuals have expressed interest in joining the FLSA opt-in class.  *See* Sager Rule 23 Opposition Decl., ¶ 2.  RGIS notes that in *Thiebes v. Wal-Mart Stores, Inc.*, 2002 WL 479840 (D. Or., January 9, 2002), a district court in Oregon held that joinder under Rule 23 was not impracticable where only 2.7% of the potential class members opted in to the FLSA class asserting similar claims.  The Court finds that the numerosity requirement is met with respect to the proposed Rule 23 classes.

Rule 23(a)(1) requires that the size of the proposed class be so numerous that joinder of all the class members is impracticable.  There is no set number cut-off.  *See Welling v. Allexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994) (noting that courts have certified classes as small as 14 and have often certified classes with 50-60 members).  Here, the number of potential plaintiffs in each of the Rule 23 States is at least 1,548 (Oregon) and as high as 17,167 (California).  Further, even if the Court assumes that only approximately 10% of those potential plaintiffs would be likely to assert individual claims (that is, the percentage of RGIS employees who have opted in to the FLSA class action), the minimum number of individuals whose joinder would be at issue would be 150 (for Oregon).   At the other end of the spectrum, the claims of at least 1,700 individuals would have to be joined if the California class were not certified.  Whichever numbers are used, the Court concludes that they are sufficiently large to make joinder impracticable.

The district court's decision in *Thiebes* does not stand for a contrary result.  While it was within the discretion of the district court under the specific facts of that case to conclude that it was not impracticable to join 425 plaintiffs in a single action, nothing in that case requires such a result here.[22]

---

[22]The court in *Thiebes*  relied on the opt-in rate on the FLSA claims only to support its conclusion that the numerosity requirement was not met because joinder was not impracticable.  Other cases have cited to low opt-in rates in support of the conclusion that there is no uniform policy or practice of violating wage and hour laws.  *See, e.g., Smith v. T-Mobile USA, Inc.*, 2007 WL 2385131 *6 (C.D. Cal. Aug. 15, 2007).  This Court agrees with the district court in *Falcon v. Starbucks Corp.*, 2008 WL 155313 * 7 (S.D. Tex. Jan. 15, 2008) that the probative value of the opt-in rate with respect to the question of  whether a defendant has a uniform policy or practice is low because the decision of whether or not to opt in to an FLSA class involves a wide variety of factors.  Accordingly, the Court does not rely on the FLSA opt-in rate in assessing whether RGIS has uniform policies that justify certification under Rule 23.

United States District Court

For the Northern District of California

1    The Court finds that the numerosity requirement is met as to all of the proposed Rule 23

2  classes.

3                    **3.       Commonality and Predominance**

4    Rule 23(a)(2) requires Plaintiffs to demonstrate the existence of questions of law and fact

5  that are common to the class.  Fed. R. Civ. P. 23(a)(2).  Further, subsection (b)(3) of Rule 23

6  requires Plaintiffs to demonstrate that these common questions predominate over questions that

7  affect only individual plaintiffs.  The Ninth Circuit has explained that the commonality requirement

8  of subsection (a)(2) is construed permissively.  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th

9  Cir. 1998).  Under subsection (a)(2), "[t]he existence of shared legal issues with divergent factual

10 predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies

11 within the class."  *Id*.  The predominance test of Rule 23(b)(3) is "far more demanding" than the

12 commonality test under Rule 23(a)(1).  *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).

13 "To qualify for certification under [subsection (b)(3)], a class must satisfy two conditions in addition

14 to the Rule 23(a) prerequisites: common questions must 'predominate over any questions affecting

15 only individual members,' and class resolution must be 'superior to other available methods for the

16 fair and efficient adjudication of the controversy.'"  *Hanlon v. Chrysler Corp*., 150 F.3d at 1022.

17    "When the claim is that an employer's policy and practices violated labor law, the key

18 question for class certification is whether there is a consistent employer practice that could be a basis

19 for consistent liability."  *Kamar v. Radio Shack Corp.*, 2008 WL 4552953 *10  (C.D. Cal. October 8,

20 2008).   Thus, where the employer has a uniform policy that is uniformly applied, the

21 appropriateness of class certification is "easily established."  *Id*.  In cases where there are both

22 individualized inquiries and common questions, courts are more willing to certify classes where the

23 individualized inquiries relate to damages than where they relate to liability.  *Kurihara v. Best*

24 *BuyCo., Inc.*, 2007 WL 2501698 * 9 (N.D.Cal. Aug. 30, 2007).  However, the "mere existence of

25 individualized liability issues is not sufficient to warrant denial of class certification."  *Id*.  On the

26 other hand, where there is no common policy or practice on the part of the employer, class

27 certification is unavailable.  *See, e.g., Cornn v. United Parcel Service, Inc.*, 2005 WL 2072091

28 (August 26, 2005).

United States District Court

For the Northern District of California

Here, Plaintiffs assert that there are common questions of law and fact that satisfy both subsections (a)(2) and (b)(3) of Rule 23 based on RGIS' policies and practices relating to: 1) donning and waiting time; 2) travel time; and 3) meal breaks.  In addition, Plaintiffs cite to payroll records they assert shows that RGIS has a practice of failing to pay employees all wages earned.

### a.    Donning and Waiting Time

Plaintiffs argue that the state laws of all four Rule 23 States require employers to pay for work that an employer "suffers or permits" and that with respect to donning and waiting time, RGIS has not adopted a policy prohibiting such work.  Instead, Plaintiffs assert, the various policy handbooks and guidelines issued by corporate headquarters, which all RGIS employees are bound to follow, fail to require that donning and waiting time be paid and even implicitly suggest that auditors are not to be paid for time spent preparing for inventories prior to the inventory start time.  This lack of an adequate policy, Plaintiffs assert, has given rise to a widespread practice of failing to pay auditors for donning and waiting time, as evidenced by auditor and manager declarations and the expert report of Dr. Martell.  At oral argument, Plaintiffs clarified that the waiting time referred to in their motions is only waiting time that is associated with donning equipment and does not include any waiting time by employees *prior* to their receipt of equipment, such as waiting in line to be given the equipment before an inventory.[23]

RGIS argues that there is no common policy or practice that gives rise to common questions as to donning and waiting time.  Rather, it asserts that RGIS has a policy of fully compensating all work, including donning and waiting time.  In support of its position, RGIS  points to various documents issued by corporate headquarters, auditor and manager declarations of its own and the testimony of the vice president of training, Paul Landry.  While a close call, the Court concludes that Plaintiffs have established that there are common questions relating to donning and waiting time that satisfy both subsections (a)(2) and (b)(3).

As a preliminary matter, the Court notes that the parties have waged an all-out evidentiary war in connection with the Rule 23 Motion and the related Decertification Motion, with each side

---

[23]Hereinafter, the Court's references to "waiting and donning time" should be construed as incorporating the limitations set forth by Plaintiffs.

United States District Court

For the Northern District of California

1  filing literally hundreds of declarations and, in turn, objecting to or moving to strike the bulk of the

2  opposing parties' evidence.  Much of the evidence that has been filed goes more to the merits of

3  Plaintiffs' claims than it does to the Rule 23 inquiry, though there is admittedly a significant degree

4  of overlap.  It is not the role of the Court to make findings on the merits.  Nor has the Court

5  attempted to address each of the hundreds of evidentiary objections that have been raised.  Rather,

6  the Court rules only on those objections that relate to evidence it relies upon in support of its

7  decision.

8      On the question of whether there is a uniform policy or practice, Plaintiffs' have presented

9  evidence from which a finder of fact could conclude that RGIS' compensation policies are dictated

10 by corporate headquarters and that as a result of these policies, class members are not compensated

11 for donning and waiting time.  In particular, the Auditors's Handbook expressly requires auditors to

12 be "ready to start work" at the inventory start time but instructs auditors that their "time in" for time

13 sheet purposes is the inventory start time.  Lee Rule 23 Decl., Ex. 2 at 16, 18.  Similarly, an RGIS

14 training manual, under the heading "Policies and Procedures," instructs that auditors should "[a]rrive

15 at the inventory in time to be prepared to start counting at the designated start time." *Id*., Ex. 6.

16 Although it is not expressly stated in these policy directives, RGIS' 30(b)(6) witness, Cynthia Myers

17 testified that auditors are expected to have donned their equipment by the inventory start time.  Lee

18 Rule 23 Decl., Ex. 26 (9/07 Meyers Depo.) at 66.  Further, it is undisputed that prior to the issuance

19 of the July 2007 New Hire Training Packet, *see* Myers Rule 23  Opposition Decl., Ex. A at WRN

20 4064, there was no *written* policy expressly requiring that auditors be paid for their pre-inventory

21 donning and waiting time.

22     Although the documents cited by RGIS to show that its policy was not defective suggest that

23 its policy is to pay for donning and waiting time, these materials only highlight the fact that there is

24 a common issue: is it company policy to pay for donning and waiting.  Some even appear to support

25 Plaintiffs' position.  *See, e.g.,* Myers Rule 23 Opposition Decl., Ex. A at WRN 15439 (May 24, 2002

26 email stating that  managers can tell an auditor "to arrive in time to start work at 7:00" and clock

27 them in at 7:00 but if they instruct the auditor to arrive at a *specific* time that is earlier than the start

28 time, the auditor must be clocked in at that time). In sum, there is sufficient evidence to conclude

United States District Court

For the Northern District of California

1   that there are common questions relating donning and waiting time that arise from a centralized

2   policy or practice on the part of RGIS.

3          Having found that there is evidence of a common policy, the Court turns to whether the

4   questions that arise from this common policy predominate over individualized inquiries.  The

5   declarations provided by the parties show that the practices of RGIS managers with respect to

6   donning and waiting time have varied.  Many auditors apparently were not paid for donning and

7   waiting time whereas others were compensated for this time.  This is likely a result of the fact that

8   RGIS' policy was ambiguous.  Emails sent by corporate headquarters such as those cited above may

9   have added to the confusion.  The result is that although there are important common questions of

10   law and fact relating to Plaintiffs' donning and waiting time claims, it is a close call whether the

11   class action mechanism offers a superior mechanism for resolving the claims of the putative class.

12   In resolving this question, the Court finds the reasoning of the district court in *Frank v. Gold'n*

13   *Plump Poultry, Inc.*, 2007 U.S. Dist. LEXIS 71179 (D. Minn. September 24, 2007) to be instructive.

14          In *Frank*, the court addressed the question of whether a class should be decertified under the

15   FLSA with respect to the plaintiffs' donning time claims.  There, the employer, Gold'n Plump,

16   asserted that it had no overall policy at the corporate level about how (or whether) to pay for

17   donning and doffing time, instead leaving the question to individual supervisors to resolve.  *Id*. at *

18   8.  As a result, it argued, members of the class were subject to widely differing practices as to

19   payment for donning time.  *Id*.  The court, however, concluded that the class should not be

20   decertified, reasoning as follows:

21          [E]ven if Gold'n Plump is correct, it *does* have a policy – a policy not to have a policy. . .
            .The bottom line is that Gold'n Plump has, at a minimum, decided not to require that its
22          employees be paid for donning and doffing.  That no-policy policy has allegedly injured all
            members of the putative class and is properly challenged through a class action.  It is true . .
23          .that the payment practices of supervisors vary in some respects. . . . The varying practices of
            the supervisors may mean that some employees have less damages than others – or
24          conceivably that some employees have no damages at all.  But it does not detract from the
            point that Gold'n Plump has not adopted a corporate policy requiring that employees be paid
25          for donning and doffing time.

26   *Id*. at *9-10.  The court in *Frank* went on to note that the defenses that the employer asserted,

27   including the *de minimis* defense, raised common issues of fact that further supported the conclusion

28   that certification was appropriate.  *Id*. at * 10.

United States District Court
For the Northern District of California

1    The Court finds that the reasoning offered in *Frank* applies equally here. There is evidence,

2    in the form of policy documents issued by RGIS headquarters, that RGIS has decided not to require

3    that its employees be paid for donning and waiting time. There is also evidence from which a jury

4    conclude that this policy has resulted in a widespread practice on the part of RGIS of failing to

5    compensate class members for this time.  Under those circumstances, the Court concludes that both

6    the commonality requirement of (a)(2) and predominance requirement of (b)(3) of Rule 23 are

7    satisfied as to donning and waiting time, notwithstanding the individual issues that will have to be

8    addressed with respect to damages.

9    **b.       Travel Related Time**

10   Plaintiffs argue that common questions of law and fact predominate with respect to travel

11   time because RGIS has a uniform policy of paying for travel time only where it exceeds one hour in

12   each direction.  *See* Lee Rule 23 Decl., Ex. 2 (March 2004 Auditor's Handbook) at 18-19.  Plaintiffs

13   further point to declarations by their expert, Marc Bendick, concluding that the average commute

14   time for within virtually all of the RGIS districts in the Rule 23 States is less than one hour.

15   Defendants, on the other hand, point to evidence showing that RGIS employees are not required to

16   use the meet sites for which this policy applies and that in fact, many employees do not do so,

17   instead driving themselves to the inventory sites or taking public transportation.  They also argue

18   that there is no evidence employees perform any compensable work while traveling and therefore

19   that RGIS is not required to pay for this time.  In support of the assertion that its travel time policy is

20   lawful, RGIS also cites to *Worley* and *Johnson*, in which district courts in California and Texas have

21   found that RGIS' travel policy is lawful.

22   The Court finds that although the requirements of subsection (a)(2) are likely met, it is a

23   close call whether Plaintiffs have established that common questions predominate as to travel time

24   under subsection (b)(3).  As a preliminary matter, the Court notes that while RGIS has argued at

25   length that there is significant variation in the experiences of RGIS employees with respect to travel

26   time, RGIS focuses almost entirely on variations with respect to: 1) whether RGIS-sponsored

27   transportation is offered to particular inventories and within particular districts; 2) whether RGIS

28   employees have chosen to use it; and 3) the time that might be considered to be a reasonable

**United States District Court**
For the Northern District of California

1   commute time in different districts.  However, RGIS does not dispute that as to the employees who

2   use the company transportation, the vast majority of employees are not paid for the first hour of

3   travel time in each direction, consistent with RGIS' official policy. Conversely, Plaintiffs do not

4   dispute that employees are not required to use transportation offered by RGIS, or even to work at

5   inventories that are not local.  As a result, the claims of all plaintiffs who used RGIS transport will

6   turn on a common question, namely, does an employer who offers voluntary transportation to work

7   sites violate state wage laws by denying compensation for the first hour of travel time in each

8   direction.

9          To determine whether this common question is sufficient to justify certification, the Court

10   would ordinarily turn to the state laws of the Rule 23 States to gain a better understanding of the

11   contours of Plaintiffs' claims and the likely defenses that will arise. Unfortunately, Plaintiffs have

12   provided very little briefing addressing the legal requirements governing compensation for commute

13   time in the Rule 23 States.  Instead, the parties have devoted most of their briefing to the question of

14   whether an hour is a reasonable commute time without framing their discussion in terms of the

15   relevant states' laws.

16          The only discussion of the relevant state law the Court has found in the briefs is the

17   discussion of the California Superior Court's decision in *Worley*.  In *Worley*, the plaintiff was an

18   RGIS employee who worked in California and sued under state law, alleging that RGIS' travel time

19   policy was unlawful.  *Worley v. RGIS*, Case No. 137454 (Butte County Super. Ct., Aug. 2, 2007).

20   The court disagreed, granting summary judgment in favor of RGIS that "RGIS' policy of paying

21   only for travel time in excess of the first hour of travel time *en route* to and from a 'meet site' does

22   not violate California law in that it simply ensures that employees who choose to work more remote

23   travel sites receive additional monies in excess of their legally required compensation." *Id*. at 4.  In

24   reaching this conclusion, the court relied on cases that hold that non-compulsory  travel to and from

25   work sites is not compensable under California law.  *Id*. (citing *Overton v. Walt Disney Company*,

26   136 Cal. App. 4th 263, 274 (2006) and *Morillon v. Royal Packing co.*, 22 Cal. 4th 575, 594 (2000)).

27   The court expressly rejected the plaintiff's focus on what constituted a reasonable commute,

28   explaining that this was not the relevant inquiry:

United States District Court

For the Northern District of California

It is undisputed that RGIS offers its employees the option to use company-provided transportation but does not require that they do so.  Under circumstances such as these, and employer is not obligated to pay travel time, regardless of whether it is objectively or subjectively a "reasonable commute."  Neither an objective measure of the "reasonableness" of the travel time (the distance), nor a subjective measure (whether an employee could or would take alternate transportation), are determinative of the compensable nature of travel; rather, it is whether or not employees are "free to choose – rather than required – to ride their employer's buses."

*Id*. at 3-4.

In rejecting the result in *Worley*, Plaintiffs cite to an opinion letter issued by the California Division of Labor Standards in which it is stated that "travel involving a substantial distance from the assigned work place to a distant work site to report to work on a short-term basis is compensable travel time."  DLSE Opinion Letter, April 22, 2003 (2003 Cal. DLSE LEXIS 22).  The Court notes, however, that the DLSE Opinion Letter, like *Worley,* focuses on the question of whether or not travel time is compulsory under the *Morillon* analysis.

Both the *Worley* decision and the DLSE opinion letter persuade the Court that for the California Rule 23 proposed class, liability on the commute time claims of the auditors who use RGIS sponsored transportation will turn on the same issue for all:  whether use of that transportation is "compulsory" within the meaning of *Morillon.*  Defendants have not persuaded the Court that individualized inquiries will be required to address this question.  Therefore, the Court concludes that the California Rule 23 class satisfies the commonality and predominance requirements of subsections (a)(2) and (b)(3) of Rule 23.  As Plaintiffs have failed to address the relevant state laws of the other Rule 23 states, however, the Court concludes that the requirements of subsections (a)(2) and (b)(3) are not met as to those states.

### c.   Meal Breaks

Plaintiffs seek certification of the meal break claims based on the assertion that all of the Rule 23 States require that non-exempt employees be "afforded" meal periods of thirty minutes during which they are completely relieved of duty.  Rule 23 Motion at 36.  As evidence that  RGIS has a widespread practice of violating this requirement, Plaintiffs cite to the findings of Dr. Drogin that RGIS' own payroll data indicates that between 4% and 26.1% of the time, meal breaks were missed without any waiver noted.  *See* Drogin Rule 23 Decl., ¶ 11.  Defendant argues that because

United States District Court

For the Northern District of California

1   employers are required only to *offer* meal breaks and are not required to *ensure* that the breaks are

2   actually taken, Plaintiffs' statistical evidence, even if correct, does not support the conclusion that

3   common issues predominate.  In particular, they argue that the claims will turn largely on

4   individualized inquiries regarding the reason the meal break wasn't taken and whether or not it was

5   waived.

6        As a preliminary matter, the Court notes that once again, the briefs have focused almost

7   entirely on California law.  Plaintiffs have not offered a meaningful discussion of the requirements

8   of Illinois, Washington or Oregon with respect to meal breaks and particularly, whether those states

9   require that meal breaks be only *offered* or if employers must ensure that meal breaks are actually

10  taken.  Indeed, as to Illinois, Plaintiffs have not even cited the relevant authority in their Rule 23

11  Motion on which their claim is based.  For this reason alone, Plaintiffs have failed to meet their

12  burden as to the Rule 23 states other than California.

13       With respect to California, the parties dispute whether state law requires employers merely to

14  offer meal breaks or rather, to ensure the meal breaks are actually taken.  Plaintiffs cite to *Cicairos v.*

15  *Summit Logistics, Inc.*, in which a California court held that employers do not comply with

16  California law when they assume meal periods are taken because they have "an affirmative

17  obligation to ensure workers are actually relieved of all duty."  133 Cal. App. 4th 949, 962 (2005).

18  RGIS, however, points to at least two district courts that have refused to follow *Cicairos*, finding

19  that if faced with the issue, the California Supreme Court would "require only that an employer *offer*

20  meal breaks, without forcing employers actively to ensure that workers are taking these breaks."

21  *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1088 (N.D. Cal. 2007); *see also Brown v. Federal*

22  *Express Corp.,* 249 F.R.D.  580 (C.D. Cal. 2008).[24]  Both courts look to the language of the relevant

23  statutes and regulations, finding that they require only that employers offer meal breaks.  The two

24  courts also point out that *Cicairos* relied entirely on a non-binding opinion letter by the Department

25  of Industrial Relations and that even the language of that letter is consistent with the conclusion that

26

27       [24]RGIS also relied on *Brinker Restaurant Corp. v. Superior Court*, 2008 WL 2806613 (Cal. App.

28  4th Dist.).  That case may no longer be cited, however, as the California Supreme Court accepted review
    of the appellate court's decision on October 22, 2008.

United States District Court

For the Northern District of California

1   meal breaks must only be offered. The Court finds the reasoning in *White* and *Brown* to be

2   persuasive and concludes that under California law an employer must offer meal breaks but is not

3   required to force employees to take them.

4          Because the Court finds that employees must be offered, but need not be forced to take a

5   meal break, the Court also concludes that many individualized inquiries will be necessary, at least as

6   to the California class, to determine the reason meal breaks were missed and whether they were

7   waived.  Although Plaintiffs' expert states that he counted only missed meals where a waiver was

8   not expressly indicated in the payroll records, RGIS will, nonetheless, be entitled to present

9   individualized evidence that these meal periods were, in fact, offered and not taken.  In the absence

10  of any explicit policy on the part of RGIS to which the missed meals can be attributed and in light of

11  the individualized inquiries necessary to evaluate the practices of RGIS as to employee meal breaks,

12  the Court concludes that Plaintiffs' meal break claims do not meet the requirements of Rule

13  23(b)(3).[25]

14                 **d.    Inaccurate Payroll Records**

15         Plaintiffs argue that class certification is warranted on the basis of evidence that RGIS does

16  not keep accurate payroll records.  Plaintiffs cite to statistical analyses by their expert, Dr. Drogin,

17  which Plaintiffs assert show that RGIS has a pattern or practice of undercompensating its

18  employees.  Plaintiffs also cite to RGIS' standard wage statement, which they assert fails to comply

19  with the state laws of the Rule 23 States  requiring itemization of wage statements.  The Court

20  rejects Plaintiffs' assertions except as to their claim for failure to itemize under California law.

21         In his first declaration, Dr. Drogin cites statistical evidence regarding employee sign-out

22  times and vehicle return times that he concludes are implausible, as well as missing time records for

23  over 4,000 RGIS auditors, both of which lead Dr. Drogin to conclude that RGIS has engaged in a

24  widespread practice of falsifying time records.  In his reply declaration, Dr. Drogin analyzes pay

25  records that RGIS produced in July 2008, concluding that RGIS has significantly undercompensated

26

27         [25]The Court notes that its decision on this issue (as on class certification in general) may be
    revisited at a later time - - once the California Supreme Court has ruled on its review of the *Brinker*
28  decision.

United States District Court

For the Northern District of California

1   its auditors.  RGIS challenges the reliability of Dr. Drogin's reply declaration and argues that in any

2   event, it is insufficient to establish the existence of common questions of law or fact that justify class

3   certification.

4        The Court concludes that RGIS is correct.  Even assuming that all of Dr. Drogin's statistics

5   are correct, it is not possible to determine the reason for the undercompensation from the statistics

6   offered.  Indeed, there could be a multitude of explanations for the undercompensation.  As a result,

7   the Court is not persuaded that this data is sufficient to satisfy Rule 23(b)(3).

8        With respect to the assertion that there are common questions relating to Plaintiffs'

9   itemization claims, the Court notes that Plaintiffs asserted such a claim only under California law in

10  its complaint.  *See* First Amended Consolidated Complaint, Claim 7.  As Plaintiffs failed to assert

11  similar claims based on the laws of the other Rule 23 States, the Court declines to consider

12  Plaintiffs' request that Rule 23 classes be certified for those states based on the alleged failure to

13  itemize.  As to the California class members, however, there is a common question that

14  predominates, namely, does the standardized wage form that is used by RGIS for all of its

15  employees comply with the requirements of California Labor Code § 226 that employers must

16  provide properly itemized wage statements.  As to that claim, the commonality and predominance

17  requirements of (a)(2) and (b)(3) are met.

18            **4.    Typicality**

19       Plaintiffs must also establish that the "claims or defenses of the representative parties are

20  typical of the claims or defenses of the class."  Fed. R.Civ. P. 23(a)(2).  The standard is permissive:

21  "representative claims are 'typical' if they are reasonably co-extensive with those of absent class

22  members; they need not be substantially identical." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020

23  (9th Cir. 1998).  Having reviewed the declarations of the proposed class representatives, the Court

24  concludes that the typicality requirement is met as to the donning and waiting time claims and, for

25  the California class representatives, the travel and itemization claims.[26]  *See Dukes v. Wal-Mart*, 509

26  _____

27       [26]Plaintiffs shall be permitted to amend their complaint to add the proposed class representatives
    who have not been named as plaintiffs, that is Carol Molmen, Joan Johnson, Latonia Williams, Jewel
28  Gatlin and Michael Zustak.

United States District Court

For the Northern District of California

F.3d 1168, 1184 (9th Cir. 2007) (holding that the discrimination claims asserted by female employees of Wal-Mart were typical of the claims of the class even though "individual employees in different stores with different managers may have received different levels of pay or may have been denied promotion or promoted at different rates, because the discrimination they allegedly suffered occurred through an alleged common practice-e.g., excessively subjective decision-making in a corporate culture of uniformity and gender stereotyping").  The Court rejects RGIS' argument that the typicality required is not met because Plaintiffs do not have a class representative from each job category.  As the Ninth Circuit explained in *Dukes*, where employees are subject to a uniform wrongful policy, the lack of a class representative at each management level does not defeat certification.

### 5.        Adequacy of Representation

Rule 23(a)(2) requires that "the representative parties will fairly and adequately protect the interests of the class."  To satisfy this requirement, Plaintiffs must establish that: 1) the class representatives do not have a conflict of interest; and 2) class counsel will adequately represent the interests of the class.  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  Here, RGIS has asserted that the first requirement is not met because the named plaintiffs have a conflict of interest, specifically, they seek to represent both an opt-in class under Rule 23 and an opt-out class under the FLSA.  RGIS further challenges the qualifications and experience of Plaintiffs' counsel.  The Court rejects both arguments.

First, while concerns have been expressed by some courts regarding the propriety of allowing plaintiffs to prosecute both opt-in and opt-out claims in the same action, *see, e.g., Leuthold v. Destination America, Inc.*, 224 FRD 462, 469-71 (N.D. Cal. 2004), the majority of courts, including courts in this district, have concluded that the two types of actions are not inconsistent. *See, e.g., Ellison v. Autozone*, 2007 WL 2701923 * 2 (N.D. Cal. Sept. 13, 2007); *Baas v. Dollar Tree Stores, Inc.*, 2007 WL 2462150 (N.D. Cal. Aug. 29, 2007); *Lindsay v. Government Employees Ins.*

United States District Court
For the Northern District of California

*Co.*, 448 F.3d 416, 424 (D.C. Cir. 2006).   The Court finds the reasoning of these cases persuasive and finds no conflict of interest here.[27]

Second, the Court has reviewed the evidence presented by Plaintiffs regarding the qualifications and experience of class counsel.  The Court concludes that Plaintiffs' counsel is well-qualified to represent Plaintiffs' interests and will advocate vigorously for Plaintiffs.

Accordingly, the Court finds that Rule 23(a)(2) is satisfied.

### 6.      Superiority and Manageability

The Court also concludes that a class action is superior to the other available methods of resolving the claims of the class certified by this order.  The alternative – hundreds or even thousands of individual actions –  is not realistic.  Not only might they never be brought given the limited amount at stake for each individual, but the enormity of the resources required to adjudicate such claims, and the risk of inconsistent outcomes, counsels in favor of class treatment.  Based on the information currently before the Court, a class action is also manageable.  With the predominance of common issues, and the various methods available to the parties and to the court for proving and deciding these class claims, the Court concludes at this point that a class action is workable.  *See, e.g.*, *Dukes v. Wal-Mart, Inc*., *supra*, 509 F. 2d at 1190-1193.

### 7.      Whether Rule 23(b)(2) is Met

Plaintiffs argue that even if the requirements of Rule 23(b)(3) are not satisfied, the proposed classes should be certified because subsection (b)(2) is met.  That section provides that where the requirements of Rule 23(a) are met, a class action may be maintained where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The Court disagrees.

---

[27]In *Lindsay*, the court of appeals noted that while the FLSA claims were not inconsistent with the state law claims in that case, the district court could nonetheless choose to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) if it found, on remand, that the state law claims were either novel or complex or predominated over the FLSA claims. 448 F.3d at 424-425. The Court in this case does not find that either of these justifications for declining to exercise supplemental jurisdiction is present here.

United States District Court

For the Northern District of California

In *Molski v. Gleich*, the Ninth Circuit explained that a class may be certified under Rule 23(b)(2) where the plaintiffs seek both injunctive relief and monetary damages, so long as the monetary damages claim is secondary to the claim for injunctive relief.  318 F.3d 937, 947 (9th Cir. 2003).  In *Dukes*, the court of appeals explained that *Molski* does not set forth a bright line test for determining when the damages claims are incidental to the relief requested because such a test would conflict with the discretion vested in the district court.  509 F.3d at 1185.  The court continued:

> Instead, we examine the specific facts and circumstances of each case, focusing predominantly on the plaintiffs' intent in bringing the suit. . . At a minimum, however, we must satisfy ourselves that: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.

*Id.* (citations omitted).

Based on the specific facts and circumstances of this case, the Court concludes that the claim for damages is not incidental to the request for injunctive relief but rather, a driving force behind these consolidated actions.  Although Plaintiffs have now proposed class representatives who are current employees, the vast majority of the named plaintiffs in the Consolidated Complaint are not current employees and therefore are not entitled to injunctive relief.  This fact alone suggests that the injunctive relief sought in the complaint was not the primary relief sought in this action. The Court also notes that even as to donning and waiting time, the need for injunctive relief appears to have diminished as RGIS has recently clarified its policy to require that this time be paid.  The Court therefore finds that Rule 23(b)(2) is not satisfied.

### 8.    Certification

The Court therefore certifies, under Rule 23, the following classes:

1.    All hourly Auditors, Assistant Team Leaders, Team Leaders and Assistant Area Mangers employed by RGIS in California on or after January 1, 2005 with respect to the claims asserted in the Consolidated Complaint arising out of (1) donning and related waiting time from the time that equipment is made available for donning, (2) unpaid travel time on company provided travel for the first hour of travel to and the first hour of travel from an inventory site, and (3) the alleged failure to comply with

1           the requirements of California Labor Code section 226 that employers must provide

2           properly itemized wage statements.

3     2.     All hourly Auditors, Assistant Team Leaders, Team Leaders and Assistant Area

4           Mangers employed by RGIS in Oregon on or after September 20, 2000 with respect

5           to the claims asserted in the Consolidated Complaint arising out of donning and

6           related waiting time from the time that equipment is made available for donning.

7     3.     All hourly Auditors, Assistant Team Leaders, Team Leaders and Assistant Area

8           Mangers employed by RGIS in Washington on or after September 20, 2003 with

9           respect to the claims asserted in the Consolidated Complaint arising out of donning

10          and related waiting time from the time that equipment is made available for donning.

11     4.     All hourly Auditors, Assistant Team Leaders, Team Leaders and Assistant Area

12          Mangers employed by RGIS in Illinois on or after January 4, 2000 with respect to the

13          claims asserted in the Consolidated Complaint arising out of donning and related

14          waiting time from the time that equipment is made available for donning.

15   **C.**     **The Motion to Decertify**

16        **1.**     **Legal Standard**

17       Section 16 of the FLSA permits workers to sue their employers for unpaid wages on their

18 own behalf and on behalf of "other employees similarly situated."  29 U.S.C. § 216(b).  Any

19 employee who wishes to participate in such a collective action is required to give consent in writing

20 and file that consent in the court in which the action is brought.  *Id*.  District courts in the Ninth

21 Circuit have generally applied an "ad hoc two- tiered approach" in determining whether the

22 plaintiffs are similarly situated.  *Gerlach v. Wells Fargo & Co.*, 2006 WL 824652 (N.D. Cal. March

23 28, 2006) at * 2 (citing *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002)

24 (noting that majority of courts prefer this approach)).  Under this approach, the district court makes

25 two determinations.  *Id*.  First, the court determines whether a collective action should be certified

26 for the purpose of sending notice to potential class members ("the notice stage").  *Id*.  At this stage,

27 the standard is lenient, requiring "little more than substantial allegations, supported by declarations

28 or discovery, that 'the putative class members were together victims of a single decision, policy, or

United States District Court

For the Northern District of California

plan.'" *Id*. (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). Second, after discovery has concluded, the court revisits the question of whether the class meets the "similarly situated" requirement, this time applying a stricter standard. *Id*. This second determination involves a review of several factors, including "the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit." *Id*. If the court finds that the standard is not met, the class will be decertified. *Id*.

### 2.      The Court's Order Granting Motion to Facilitate Notice

On December 19, 2007, the Court conditionally certified two classes under the FLSA on the basis that Plaintiffs had made the necessary threshold showing of a uniform policy or practice with respect to: 1) donning time; 2) time spent waiting for inventories to begin at local inventories; 3) time spent waiting for transportation; and 4) time spent engaged in transportation to travel inventories. The classes were defined as follows:

> 1) All non-exempt hourly employees of RGIS Inventory Specialists, now operating as RGIS, LLC, who were, are, or will be employed as auditors during the period of three years prior to the commencement of this action through the date of judgment of this action.
>
> 2) All non-exempt hourly employees of RGIS Inventory Specialists, now operating as RGIS, LLC, who were, are, or will be employed as assistant [ ] team leaders, team leaders, and assistant or associate area managers of RGIS during the period of three years prior to the commencement of this action though the date of judgment of this action.

Order Granting Motion to Facilitate Notice Pursuant to 29 U.S.C. § 216(b), filed December 19, 2007 ("Order Facilitating Notice") at 3.

### 3.      Whether Plaintiffs are Similarly Situated Under the FLSA

The Court conditionally certified two nationwide classes under the FLSA as to claims based on alleged donning and waiting and travel time violations. In certifying these classes, the Court applied a lenient standard, relying on evidence that RGIS had failed to compensate numerous plaintiffs for donning time, time spent waiting for inventories at local inventory sites, time spent waiting for transportation to travel sites and time spent in transport. The Court now revisits the

United States District Court

For the Northern District of California

1    question of certification, applying a more stringent standard, to determine whether the claims of the

2    class members are sufficiently alike to allow the Court to efficiently manage the case.  The Court

3    concludes that only the specific claims discussed in connection with the Rule 23 Motion based on

4    pre-inventory donning and waiting time and travel time meet this requirement.[28]

5           As discussed above, the evidence reveals a variety of experiences, both as to donning and

6    waiting time and as to travel time.  As to donning time, however, there is evidence that violations

7    alleged by Plaintiffs are attributable to a uniform policy adopted by RGIS of requiring auditors to be

8    ready to start counting, with equipment already donned, at the inventory start time. This policy

9    allegedly has resulted in unpaid donning time and associated waiting time.  This common policy has

10   allegedly inflicted harm on all class members.  Further, RGIS asserts at least some common defenses

11   to the policy, for example, that donning time is *de minimis* and therefore not compensable.   On the

12   basis of this evidence of a common policy, the Court concludes that Plaintiffs are entitled to

13   maintain their class status as to the pre-inventory donning and waiting time claims attributable to

14   this policy under the FLSA.[29]

15          The Court also concludes that Plaintiffs may proceed on a class basis on the travel time claim

16   discussed above, namely, that the policy of considering the first hour of travel time as non-

17   compensable travel time is unlawful.   Under the FLSA, the crucial inquiry will be whether or not

18   time spent commuting to travel inventories falls under the Portal-to-Portal Act, 29 U.S.C. § 254(a),

19   which provides that activities that are "preliminary" or "postliminary" to an employee's principal

20   activities are not compensable under the FLSA.  The Supreme Court has held that an exception to

21   this rule exists where the travel is "integral and indispensible" to a "principal activity."  *IBP, Inc. v.*

22   *Alvarez*, 546 U.S. 21, 37 (2005).  This question will turn on common questions of fact relating to the

23   type of work that RGIS auditors perform, the expectations within the industry and the company and

24

25

26   [28]Although the Court has found that a class should be certified under Rule 23 as to the California
     plaintiffs based on alleged failure to itemize, no corresponding class has been certified under FLSA .
27   Therefore, the Court need not reach whether it should *decertify* such a claim under the FLSA.

28   [29]To the extent that Plaintiffs' claims under the FLSA relating to donning and waiting time
     purport to sweep more broadly than stated above, the Court GRANTS the Motion to Decertify.

1  whether auditors perform any work while in transit.   This common legal and factual question

2  justifies class certification under the FLSA.[30]

3      Accordingly, the Court declines to decertify the FLSA classes except to the extent that the

4  claims of the FLSA plaintiffs purported to sweep more broadly than the claims set forth above.

5      **D.      The Motion to Bifurcate**

6      Plaintiffs seek to bifurcate the liability and damages portions of the trial.  The Court

7  concludes that the motion is premature and therefore DENIES the motion without prejudice.

8      **E.      The Motion to Dismiss**

9      RGIS brings a motion to dismiss seeking to dismiss various opt-in plaintiffs on a variety of

10  grounds.  It is apparent that many of the issues raised in the motion are premature and others could

11  have been resolved by the parties without Court intervention.  The Motion to Dismiss is DENIED

12  without prejudice.  Prior to refiling the motion, lead counsel shall meet and confer, in person, to

13  attempt to resolve the issues raised in the motion.

14  **IV.   CONCLUSION**

15      The Rule 23 Motion [docket no. 403] is GRANTED in part and DENIED in part.  The

16  Motion to Decertify [docket no. 569]  is GRANTED in part and DENIED in part.  The Motion to

17  Bifurcate [docket no. 413] and the Motion to Dismiss [docket no. 586] are DENIED without

18  prejudice.  The Motions to Strike [docket nos. 528, 481, 570, 614 and 664] are DENIED.

19      The parties are instructed to meet and confer and submit to the Court within the next fourteen

20  (14) days a proposed schedule for the remainder of the case, including dates for submitting to the

21  Court a proposed notice to class members.

22      IT IS SO ORDERED.

23

24  Dated: February 6, 2009

25  _____

26  JOSEPH C. SPERO
    United States Magistrate Judge

27  ─────────────────

28      [30]Again, to the extent that Plaintiffs' claims under the FLSA relating to travel time purport to sweep more broadly than stated above, the Court GRANTS the Motion to Decertify.

*United States District Court*
For the Northern District of California