**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRISHA WREN, ET AL., | No. C-06-05778 JCS |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION OF DEFENDANT RGIS, LLC FOR PARTIAL SUMMARY JUDGMENT [Docket No. 648]** |
| v. | |
| RGIS INVENTORY SPECIALISTS, | |
| Defendant. | |
| _____/ | |

## I.    INTRODUCTION

In this consolidated action, Plaintiffs assert claims on behalf of employees of Defendant RGIS Inventory Specialists ("RGIS") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, as well as state law.  The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).  The Court has certified classes under the FLSA and Rule 23 of the Federal Rules of Civil Procedure.  RGIS now brings a motion for summary judgment ("the Motion") seeking an order granting partial summary judgment that: 1) RGIS' travel/commute policies comply with the requirements of the FLSA and the wage-and-hour laws of California, Washington, Oregon and Illinois because commuting time is not "work" and it is undisputed that employees are not required to use company-sponsored transportation to work sites; 2) RGIS' meal break policies comply with the wage-and-hour laws of California, Oregon, Washington and Illinois because there is no evidence that RGIS forces its employees to forego meal breaks and, as to the Oregon state law claim, there is no private right of action for failure to provide meal breaks; 3) RGIS' policy of not paying employees for donning and related waiting time does not violate the FLSA because these activities are not "work" under the FLSA and are, in any event, *de minimis*.  RGIS further asks the Court to strike from the Consolidated Complaint various claims that it asserts Plaintiffs have abandoned.  A hearing on the Motion was held on Friday, August 7, 2009.

1    For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

2    **II.      PROCEDURAL BACKGROUND**

3          This consolidated action began as two separate purported class actions: 1) *Wren v. RGIS*

4    *Inventory Specialists*, Case No. C-06-05778, initiated on September 20, 2006; and 2) *Piper v. RGIS*

5    *Inventory Specialists,* Case No. C-07-00032, filed January 4, 2007.  On June 6, 2007, the Court

6    consolidated the two actions, and a consolidated complaint was filed on June 26, 2007

7    ("Consolidated Complaint").   In the Consolidated Complaint, Plaintiffs assert twenty-six claims for

8    relief under the FLSA and various wage-and-hour laws of California, Oregon, Washington and

9    Illinois.[2]

10          On December 19, 2007, the Court conditionally certified two classes proposed by Plaintiffs:

11        1.      All non-exempt hourly employees of RGIS Inventory Specialists, now
                  operating as RGIS, LLC, who were, are, or will be employed as auditors
12                during the period of three years prior to the commencement of this action
                  through the date of judgment of this action.

13
          2.      All non-exempt hourly employees of RGIS Inventory Specialists, now operating as
14                RGIS, LLC, who were, are, or will be employed as assistant [ ] team leaders, team
                  leaders, and assistant or associate area managers of RGIS during the period of three
15                years prior to the commencement of this action though the date of judgment of this
                  action.

16

17   Order Granting Motion to Facilitate Notice Pursuant to 29 U.S.C. § 216(b) [Docket No. 216].  In

18   that Order, the Court found that Plaintiffs had met the requirements for conditional certification as to

19   the claims for: 1) time spent donning required RGIS equipment; 2) time spent "engaged to wait" for

20   inventories to begin; 3) time spent waiting for transportation to an inventory even after the workday

21   has begun; and 4) time spent in work-related transportation to and from inventory sites in a single

22   work day.  *Id.* at 9.

23          Subsequently, RGIS brought a motion to decertify the FLSA classes and Plaintiffs brought a

24   motion to certify under Rule 23 various classes asserting state law claims.  *See* Docket Nos. 403,

25   _____

26          [1]The Court rules on Defendant's Objections to Evidence [Docket No. 685] as stated below.

27          [2]A more detailed description of the allegations and claims contained in the Consolidated
     Complaint can be found in the Court's February 6, 2009 Order [Docket No. 694].
28

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1   569.  In its February 6, 2009 Order, the court certified the following classes under Rule 23:

2       1.  All hourly Auditors, Assistant Team Leaders, Team Leaders and Assistant Area
3           Managers employed by RGIS in California on or after January 1, 2005 with respect to
            the claims asserted in the Consolidated Complaint arising out of (1) donning and
4           related waiting time from the time that equipment is made available for donning, (2)
            unpaid travel time on company provided travel for the first hour of travel to and the
            first hour of travel from an inventory site, and (3) the alleged failure to comply with
5           the requirements of California Labor Code section 226 that employers must provide
            properly itemized wage statements.
6
        2.  All hourly Auditors, Assistant Team Leaders, Team Leaders and Assistant Area
7           Managers employed by RGIS in Oregon on or after September 20, 2000 with respect
            to the claims asserted in the Consolidated Complaint arising out of donning and
8           related waiting time from the time that equipment is made available for donning.

9       3.  All hourly Auditors, Assistant Team Leaders, Team Leaders and Assistant Area
            Managers employed by RGIS in Washington on or after September 20, 2003 with
10          respect to the claims asserted in the Consolidated Complaint arising out of donning
            and related waiting time from the time that equipment is made available for donning.
11
        4.  All hourly Auditors, Assistant Team Leaders, Team Leaders and Assistant Area
12          Managers employed by RGIS in Illinois on or after January 4, 2000 with respect to
            the claims asserted in the Consolidated Complaint arising out of donning and related
13          waiting time from the time that equipment is made available for donning.

14  Docket No. 694 at 50-51.  The Court denied RGIS' motion to decertify the FLSA classes "except to

15  the extent that the claims of the FLSA plaintiffs purported to sweep more broadly" than the claims of

16  the Rule 23 classes.  *Id.* at 53.

17  **III.    ANALYSIS**

18      **A.    Summary Judgment Standard**

19          Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

20  and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

21  any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ.

22  P. 56(c).  In order to prevail, a party moving for summary judgment must show the absence of a

23  genuine issue of material fact with respect to an essential element of the non-moving party's claim,

24  or to a defense on which the non-moving party will bear the burden of persuasion at trial.  *Celotex*

25  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Further, "*Celotex* requires that for issues on which the

26  movant would bear the burden of proof at trial, that party must show *affirmatively* the absence of a

27  genuine issue of material fact," that is, "that, on all the essential elements of its case on which it

28

3

**United States District Court**
For the Northern District of California

1    bears the burden of proof at trial, no reasonable jury could find for the non-moving party."

2    *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993) (emphasis in original).  Once the

3    movant has made this showing, the burden then shifts to the party opposing summary judgment to

4    designate "specific facts showing there is a genuine issue for trial."  *Celotex*, 477 U.S. at 323.  On

5    summary judgment, the court draws all reasonable factual inferences in favor of the non-movant.

6    *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255 (1986).

7               **B.      The Travel/Commute Time Claims**

8                        **1.      RGIS Travel Time Policy**

9          RGIS inventories are performed at its clients' retail stores.  Consolidated Complaint, ¶ 43;

10   *see also* Joint Statement of Undisputed Material Facts Regarding RGIS LLC's Motion for Partial

11   Summary Judgment ("Joint Statement"), No. 1 (providing that "[t]he location of Auditor work sites,

12   and the hours scheduled vary by client and assignment").  These inventories are classified as either

13   "local" or "travel." Consolidated Complaint, ¶ 43.   Plaintiffs' travel/commute time claims relate to

14   the "travel" inventories.  For travel inventories, RGIS designates a "meet site," where "employees

15   assemble at a specific time to be transported to the inventory site by vehicles owned and operated by

16   RGIS or carpools arranged by RGIS where designated auditors drive others to inventory sites."  *Id.*

17   The parties agree that "the use of company-provided transportation is optional [and that] employees

18   may opt to take alternate transportation to travel inventories."  Joint Statement, No. 3; *see also*

19   Declaration of Andrew P. Lee in Support of Plaintiff's Motion for Class Certification [Docket No.

20   408] ("Lee Rule 23 Decl."), Ex. 5 (November 2005 Field Policy Manual) at 17 ("Employees are

21   always free to provide their own transportation to an inventory").

22         In 2004, RGIS adopted a policy under which employees who use company transportation to

23   get to travel inventories are not paid for the first hour of travel to and from the inventory site and are

24   paid minimum wage for travel time that exceeds one hour in each direction.  Consolidated

25

26

27

28

United States District Court

For the Northern District of California

Complaint, ¶ 46;[3] *see also* Lee Rule 23 Decl., Ex. 5 (November 2005 Field Policy Manual) at 16-18.

This policy is described in RGIS' 2005 Field Policy Manual, which states as follows:

> "Commute time" is the first 1 hour of transportation for the employee from the "Meet Site" to the inventory and the first 1 hour of transportation from the inventory back to the "Meet Site." "Commute Time" is unpaid.

> "Travel Time" commences following the first unpaid 1 hour of "Commute Time" from the "Meet Site" and is paid to the employee for the remainder of the trip to the inventory. The same method applies to the return trip from the inventory back to the "Meet Site." "Travel Time" is paid at the prevailing minimum wage.

Lee Rule 23 Decl., Ex. 5 at 17.  "Commute Time" and "Travel Time" are defined as follows:

> Commute Time: Time that is not considered to be time worked.  RGIS hourly employees will not be compensated for "Commute Time."

> Travel Time: Time that is considered to be time worked.  RGIS hourly employees will be compensated for "Travel Time" at the prevailing minimum wage.

*Id*. at 16.

## 2. RGIS Recording of Travel Time

Plaintiffs assert that RGIS does not, in fact, compensate its auditor employees for all travel time after the first hour.  Plaintiffs point to declarations by the named plaintiffs ("Named Plaintiffs") as well as class members stating their travel time was determined based on estimates, some obtained from MapQuest.com, which did not take into account traffic conditions or other factors and therefore consistently underestimated the actual travel time to and from travel inventories.  *See* Declaration of Nancy Park in Support of Plaintiffs' Opposition to Defendant's Motion for Partial Summary Judgment [Docket No. 674] ("Park SJ Opp. Decl."), ¶¶ 87-88.  Plaintiffs also cite the conclusion of their expert, Dr. Richard Drogin, who compared actual earnings to expected earnings, based on time sheets provided by RGIS and found a shortfall in travel pay.  *See* Declaration of Richard Drogin Ph.D. in Opposition to Defendant's Motion for Decertification [Docket No. 607]("Drogin

---

[3]The Complaint also includes allegations regarding RGIS' policies prior to 2004, when RGIS allegedly paid either $4.00/hour for travel time or a per mile rate for travel over 20 miles.  *See* Consolidated Complaint, ¶ 46.  The Court did not certify for class treatment any travel time claims based on these earlier policies and therefore declines to address them here.  The Court does not reach whether RGIS is entitled to summary judgment as to the individual Named Plaintiffs on any such travel claims as this question has not been briefed by the parties.

United States District Court

For the Northern District of California

1   Decertification Opp. Decl."), Table 6 (state law) and Table 10 (FLSA); Declaration of Richard

2   Drogin Ph.D. in Support of Plaintiffs' Opposition to Defendant's Partial Summary Judgment

3   [Docket No. 672]("Drogin SJ Opp. Decl."), ¶ 9.[4]

4         **3.**     **FLSA Travel/Commute Time Claims**

5            **a.**     **Arguments**

6        In the Motion, RGIS argues that Plaintiffs' travel time claims fail under the FLSA because,

7   under the Portal-to-Portal Act, 29 U.S.C. § 254, an employer cannot be held liable for time spent

8   traveling to and from the work site, regardless of whether company-provided transportation is used,

9   unless there is an express contract or a custom or practice to the contrary.  Here, RGIS asserts,

10   "[t]here is absolutely no policy or practice making [use of company-provided transportation or use

11   of meet sites] a condition of employment at RGIS or a requirement to staff a travel inventory."

12   Rather, the use of company-provided transportation is entirely voluntary.  Therefore, RGIS asserts, it

13   is not required to pay its employees for *any* travel time, regardless of whether or not one hour in

14   each direction constitutes a "reasonable commute."   Even if RGIS is required to pay travel time that

15   exceeds reasonable commuting time, RGIS asserts, one hour in each direction constitutes a

16   "reasonable commute."

17        In their Opposition, Plaintiffs do not dispute that "ordinary, normal, or customary" time spent

18   commuting to travel inventories is not compensable.  Rather, they argue that RGIS "must accurately

19   and rationally measure compensable travel time."  Specifically, they argue that where, as here, an

20   employer agrees to pay for some portion of travel time, the Portal-to-Portal Act does not apply.

21   Therefore, they assert,  RGIS has an obligation to calculate accurately the amount of travel time that

22   constitutes "work" as opposed to arbitrarily excluding a full hour in each direction as "Commute

23   Time."   Plaintiffs argue further that the Portal-to-Portal Act includes exceptions where there is a

24

25        [4]Defendant objects to Dr. Drogin's most recent declaration, filed in support of Plaintiffs'
opposition to summary judgment, it its entirety, on the basis that it contains new analysis regarding

26   average donning time and calculation of overtime pay.  The only paragraph in the summary judgment
declaration that addresses travel time summarizes the findings of Dr. Drogin's earlier declaration, filed

27   November 6, 2008.   The parties expressly stipulated to the November 6 deadline. *See* Docket No. 534.
Therefore, as to paragraph 9 only of Dr. Drogin's summary judgment opposition declaration, the

28   objection is overruled.

United States District Court

For the Northern District of California

1  company custom or policy of paying for commute time or an express contract obligating the

2  employer to compensate the employee for this time.  *See* 29 U.S.C. § 254(b).  Plaintiffs argue that

3  RGIS' express policy of paying for Travel Time and defining that time as "work time" (see above)

4  falls within both exceptions.

5        In their Opposition, Plaintiffs also cite to evidence that: (1) RGIS sometimes requires

6  employees to perform tasks related to inventories while traveling to and from inventory sites,  *see*

7  Park SJ Opp. Decl., Ex. E; (2) RGIS uses estimates to calculate travel time, leading to under-

8  compensation of travel time, *see id.*, ¶¶ 86-88; Drogin SJ Opp. Decl., ¶ 9 (citing to Drogin

9  Decertification Opp. Decl.); and (3) for some auditors, the travel clock stops when they arrive at the

10  inventory site, not at the scheduled inventory start time and therefore, they are not paid for the gap

11  between their arrival and their start time, *see* Park SJ Opp. Decl., ¶¶ 91-93.

12        In its Reply, RGIS argues that Plaintiffs' reliance on the definition of "Travel Time" as work

13  in RGIS' Field Policy Manual is merely "clever semantics" that cannot give rise to a duty to

14  compensate for this time.  RGIS further asserts that the evidence that employees are asked to

15  perform activities related to inventories while traveling to and from inventories should be

16  disregarded because Plaintiffs have already dropped that claim.  In particular, RGIS points out that

17  in Plaintiffs' opposition to Defendant's motion to decertify under the FLSA, Plaintiffs stated as

18  follows:

19        The vast majority of "variation" referenced at pages 8-9 of Defendant's brief related to off-
         the-clock work that simply is not a class claim in this case.  Specifically, Plaintiffs do not
20       pursue any class claim for waiting time at the meet sites.  Thus, alleged variations in
         frequency regarding reporting to a meet site, or the number of instances of such waiting, or
21       the amount of time spent waiting, are irrelevant.  Similarly, at conditional certification, *this
         Court did not certify any class claim that auditors do additional inventory-related work
22       while traveling on company transportation.*

23  Docket No. 610 at 14 (emphasis added).

24        With respect to the declarations of auditors submitted by Plaintiffs to establish that RGIS

25  does not pay all Travel Time to which employees are entitled under its policy, either because travel

26  time is estimated or because they are not paid for the gap between their arrival time and the

27  inventory start time, RGIS argues that this evidence is not relevant to the Motion because: (1) RGIS'

28  policy comports with the FLSA; and (2) any claims based on this evidence are "incorporated into

7

United States District Court

For the Northern District of California

1  Plaintiffs' general claims for unpaid time."  Finally, RGIS argues that new expert opinions relating

2  to travel time must be disregarded as untimely.[5]  *Id.*

3                    **b.        The FLSA and the Portal-to-Portal Act**

4         The FLSA was enacted in 1938 "to give specific minimum protections to individual workers

5  and to ensure that each employee covered by the Act would receive a fair day's pay for a fair day's

6  work and would be protected from the evil of overwork as well as underpay. "  *Barrentine v.*

7  *Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981) (citations omitted).  It requires that

8  employers pay their employees an hourly minimum wage for time worked, *see* 29 U.S.C. § 206, and

9  further requires that employers pay overtime at a rate of one and a half the employees' regular rate

10  where employees work more than forty hours in a week.  29 U.S.C. § 207.

11         The Portal-to-Portal Act was enacted in 1947 to make clear that the FLSA did not cover

12  ordinary commuting time.  *See Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998).   In

13  particular, under the Portal-to-Portal Act, employers are not required to compensate employees for

14  "walking, riding, or traveling to and from the actual place of performance of the principal activity or

15  activities which such employee is employed to perform" or for "activities which are preliminary to

16  or postliminary to said principal activity or activities, which occur either prior to the time on any

17  particular workday at which such employee commences, or subsequent to the time on any particular

18  workday at which he ceases, such principal activity or activities."  29 U.S.C. § 254(a).  The Portal-

19  to-Portal Act carves out exceptions, however, where there is an express contract or a custom or

20  practice of paying for the activity on the part of the employer.  29 U.S.C. § 254(b).[6]

21

22            [5]Because the Court does not rely on these expert opinions in its decision relating to travel time,
    the Court declines to rule on Defendant's objections.

23
              [6]Section 254 provides, in relevant part,  as follows:
24
    (a) Activities not compensable
25
    Except as provided in subsection (b) of this section, no employer shall be subject to any liability or
26  punishment under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.] . . . on
    account of the failure of such employer to pay an employee minimum wages, or to pay an employee
27  overtime compensation, for or on account of any of the following activities of such employee engaged
    in on or after May 14, 1947--
28

The Supreme Court has held that under the FLSA and the Portal-to-Portal Act, "activities performed either before or after the regular work shift, on or off the production line, are compensable . . . if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded" under section

_____

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

(b) Compensability by contract or custom

Notwithstanding the provisions of subsection (a) of this section which relieve an employer from liability and punishment with respect to any activity, the employer shall not be so relieved if such activity is compensable by either--

(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

(c) Restriction on activities compensable under contract or custom

For the purposes of subsection (b) of this section, an activity shall be considered as compensable under such contract provision or such custom or practice only when it is engaged in during the portion of the day with respect to which it is so made compensable.

(d) Determination of time employed with respect to activities

In the application of the minimum wage and overtime compensation provisions of the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.] . . ., in determining the time for which an employer employs an employee with respect to walking, riding, traveling, or other preliminary or postliminary activities described in subsection (a) of this section, there shall be counted all that time, but only that time, during which the employee engages in any such activity which is compensable within the meaning of subsections (b) and (c) of this section.

29 U.S.C. § 254.

United States District Court

For the Northern District of California

1    254(a)(1).  *Steiner v. Mitchell*, 350 U.S. 247, 255 (1956).  For example, in *D A & S Oil Well*

2    *Servicing, Inc. v. Mitchell,* 262 F.2d 552, 554-555 (10th Cir. 1958), the court held that an oil and gas

3    well servicing company was required to compensate employees for time spent transporting

4    equipment to and from work sites because the equipment was required in order to repair wells and

5    therefore was an integral and indispensable part of the employees' principal activities.  Similarly, the

6    implementing regulations explain that "[w]here an employee is required to report at a meeting place

7    to receive instructions or to perform other work there, or to pick up and to carry tools, the travel

8    from the designated place to the work place is part of the day's work, and must be counted as hours

9    worked regardless of contract, custom, or practice."  29 C.F.R. § 785.38.  Further, "[a]ny work

10   which an employee is required to perform while traveling must, of course, be counted as hours

11   worked."  29 C.F.R. § 785.41.

12        On the other hand, federal regulations implementing the FLSA explain that under the Portal-

13   to-Portal Act, whether an employee works at a "fixed location" or "different job sites," "[a]n

14   employee who travels from home before his regular workday and returns to his home at the end of

15   the workday is engaged in ordinary home to work travel which is a normal incident of employment."

16   29 C.F.R. § 785.35.  Under this regulation, this time is not "worktime" and therefore, is not

17   compensable.  *Id.*  This rule applies even where employees travel together to a work site, either in an

18   employee's vehicle or a company-owned vehicle, unless the employees are performing activities that

19   are integral to their principal activities while *en route* to the work site.  *See, e.g., Smith v. Aztec Well*

20   *Servicing Company*, 462 F.3d 1274, 1288 (10th Cir. 2006)(holding that even where rig hands

21   employed by oil and gas well drilling company were required to travel together to well sites with

22   driller and that arrangement was beneficial to employer, rig hands were not entitled to compensation

23   for travel time where they were free to spend their time as they wished during the commute).  Nor

24   does the length of time spent traveling, by itself, render travel time compensable.  *See, e.g., Vega v.*

25   *Gasper*, 36 F.3d 417, 425 (5th Cir. 1994) (holding that employer was not required under the FLSA to

26   compensate farm workers for time spent traveling to and from the fields on a bus provided by the

27   employer where employees spent at least four hours a day traveling to and from the work site

28   because workers were not required to use company bus and did not engage in any activities on the

bus that were integral to their principal activities); *Kavanagh v. Grand Union Company, Inc.*, 192

F.3d 269, 272 (2d Cir. 1999) (holding that what is "normal travel" is based on a subjective standard

"defined by what is usual within the confines of a particular employment relationship" and therefore,

employee who spent up to eight hours a day commuting to and from different work sites was not

entitled to compensation for travel time).

The Portal-to-Portal Act includes exceptions for activities that are compensable under either

"custom and practice" or express contract. 29 U.S.C. § 259(b). The implementing regulations

explain the significance of the exceptions to the Portal-to-Portal Act as follows:

> Subsection (b) provides that the employer shall not be relieved from liability if the activity is
> compensable by express contract or by custom or practice not inconsistent with an express
> contract. Thus traveltime at the commencement or cessation of the workday which was
> originally considered as working time under the Fair Labor Standards Act (such as
> underground travel in mines or walking from time clock to work-bench) need not be counted
> as working time unless it is compensable by contract, custom or practice. If compensable by
> express contract or by custom or practice not inconsistent with an express contract, such
> travel time must be counted in computing hours worked. However, ordinary travel from
> home to work (see § 785.35 [cited above]) need not be counted as hours worked even if the
> employer agrees to pay for it.

29 C.F.R. § 785.34. Thus, the exceptions to the Portal-to-Portal Act do not render compensable

time that would not otherwise be compensable under the FLSA. FLSA. 29 C.F.R. § 790.7 ("even

where there is a contract, custom, or practice to pay for time spent in such a 'preliminary' or

'postliminary' activity, section 4(d) of the Portal Act does not make such time hours worked under

the Fair Labor Standards Act, if it would not be so counted under the latter act alone").

### c.  Analysis

Plaintiffs argue that RGIS' summary judgment motion should be denied as to their FLSA

travel time claims because RGIS is required to pay its employees for travel time that exceeds a

reasonable commute time and its policy of considering an hour in each direction "commute time" is

not reasonable. In addition, Plaintiffs claim that even if that policy comports with the FLSA, there is

evidence in the record that RGIS fails to adhere to it and therefore violates the FLSA on that ground.

The Court rejects both arguments.

First, the time spent by RGIS employees on company-provided transportation is "normal

travel from home to work" and thus, it is not considered "work time" under the FLSA and the Portal-

United States District Court

For the Northern District of California

1    to-Portal Act.  *See* 29 C.F.R. § 785.45.  This conclusion is supported by the undisputed fact that

2    RGIS employees are not required to use company-provided transportation.  Thus, this is not a

3    scenario in which employees are entitled to compensation under the FLSA because they are

4    "required to report at a meeting place to receive instructions or to perform other work there, or to

5    pick up and to carry tools."  *See* 29 C.F.R. § 785.38; *see also D A & S Oil Well Servicing, Inc. v.*

6    *Mitchell,* 262 F.2d 552, 554-555 (10th Cir. 1958).

7          Further, although Plaintiffs have presented evidence that managers of specific inventories

8    were encouraged to use paid travel time for inventory-related activities, *see* Park SJ Opp. Decl., Ex.

9    E, Plaintiffs have already expressly dropped any class claims based on the performance of work *en*

10   *route* to inventories – whether during paid Travel Time or unpaid Commute Time.  *See* Docket No.

11   610 at 14.  Therefore, the Court holds with respect to the FLSA class that RGIS employees who use

12   company-sponsored transportation, like the employees in *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir.

13   1994), are merely engaged in an extended commute.  *See Johnson v. RGIS Inventory Specialists,* 554

14   F.Supp.2d 693 (E.D.Tex., 2007) (holding that travel by RGIS employees on company-provided

15   transportation was "normal travel" under the regulation and therefore "the travel time from the meet

16   site to the inventory location and back was ordinary home-to-work-and-back travel and was not

17   compensable").[7]

18          The Court rejects Plaintiffs' assertion that RGIS, by defining  travel time as "work," has

19   somehow converted ordinary commute time into "work" as defined under the FLSA and relevant

20   case law.  There is no authority suggesting that a company policy can convert non-compensable time

21   into compensable time under the FLSA merely by defining it as  "work."  Moreover, as discussed

22   below, the Court concludes that the exceptions to the FLSA for "custom or practice" or for express

23   contracts do not entitle RGIS employees to compensation for any travel time.

24          RGIS does not dispute that it has a policy of paying some travel time.  This policy cannot,

25   _____

26          [7]The Court does not reach the question of whether any of the individual Named Plaintiffs may
     yet have claims under the FLSA based on evidence that they were required to perform work while *en*
27   *route* to inventories.  This question was not briefed by the parties in connection with Defendant's
     summary judgment motion and therefore, to the extent Defendant seeks summary judgment on those
28   claims, the Motion is denied without prejudice.

**United States District Court**
For the Northern District of California

1  however, give rise to an obligation to pay for time spent riding in company-provided transportation

2  that falls outside of that policy, such as the difference between the actual time Plaintiffs assert would

3  be a reasonable commute time for the various districts and the one hour in each direction that is

4  designated as a reasonable commute time by RGIS.  *See Johnson*, 554 F. Supp. at 707 (holding that

5  "it is clear that the employer maintains the discretion to determine the limits of its custom or

6  practice, thus making it permissible for RGIS to designate two hours of travel as unpaid commute

7  time," citing 29 C.F.R. § 785.9).

8  More importantly, RGIS' policy cannot give rise to *any* obligation under the FLSA to pay

9  travel time – even the time RGIS has defined as "Travel Time" –  because, as the regulations

10  explain, even where there is a custom or practice to pay for time spent in a "preliminary" or

11  "postliminary" activity, if that activity would not be considered "work" under the FLSA, the custom

12  or practice does not render that time compensable.  29 C.F.R.  § 790.7.  The court in *Johnson*

13  reached the same conclusion, explaining its reasoning as follows:

14  [B]ecause the travel at issue in this case was ordinary home-to-work travel, such travel did
   not qualify as hours worked, even if RGIS had a custom or practice of paying for it.

15  Specifically, the regulations acknowledge the distinction between ordinary home-to-work
   travel and other types of travel, such as an underground miner traveling from the portal of the

16  mine to the working face of the mine at the beginning and end of each workday. . . Taking
   the latter situation as an example, such travel was considered hours worked under the FLSA

17  prior to the enactment of the Portal-to-Portal Act in 1947. . . After the Portal-to-Portal Act's
   enactment, however, this travel was excluded from FLSA requirements unless a contract,

18  custom, or practice was in place to compensate the employee for the travel time. . . .  In
   contrast, ordinary home-to-work travel was not viewed as hours worked, even prior to the

19  enactment of the Portal-to-Portal Act. . .  This interpretation of § 254(d) also comports with §
   785.34 of the regulations . . . .

20

21  554 F. Supp. 2d at 707-708 (citations omitted).

22  Because the Court concludes that RGIS is not required to compensate its employees for time

23  spent on company-provided transportation, the evidence offered by Plaintiffs that RGIS uses

24  estimates to calculate travel time, or that it sometimes stops the clock on travel time when

25  employees arrive at an inventory rather than at the start time for the inventory does not give rise to a

26  material issue of fact that defeats summary judgment on the FLSA class claims seeking

27  compensation for travel time.  Rather, RGIS is entitled to summary judgment in its favor on those

28  claims.

13

United States District Court

For the Northern District of California

### 4.      State Law Travel/Commute Time Claims

#### a.      California Law

##### i.      Arguments

RGIS asserts that under the case law interpreting California wage laws, the dispositive question in cases involving employer-provided transportation to work sites is whether employees are required to use that transportation, citing *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 594 (2000) and *Overton v. Walt Disney Company*, 136 Cal. App. 4th 263, 274 (2006).  Because it is undisputed that RGIS employees are not required to use company-provided transportation for travel inventories, Defendant asserts, it is entitled to summary judgment on Plaintiffs' travel claims under California law.

Plaintiffs argue that while *Overton* and *Morillion* hold that compulsory travel is "time worked" and thus compensable under California law, these cases do not hold that time on employer-provided transportation *cannot* be "time worked" if it is not compulsory.  Rather, Plaintiffs assert, travel time may be compensable on other grounds as well.  In particular, they point to an Opinion Letter issued by California's Division of Labor Standards Enforcement ("DLSE") finding that travel involving long distances may be compensable:

> DLSE has taken the position that travel involving a substantial distance from the assigned work place to a distant work site to report to work on a short-term basis is compensable travel time.  The travel time is measured by the difference between the time it normally takes the employee to travel from his or her home to the assigned work place and the time it takes the employee to travel from home to the distant work site.

DLSE Opinion Letter, April 22, 2003.  Plaintiffs argue that this rule applies to travel by RGIS employees in the California class.

##### ii.      Analysis

The lead cases on compensation of travel time under California law are *Morillion* and *Overton*.  The Court concludes that under these cases, and in light of the undisputed fact that use of company-provided transportation is optional, as a class matter, RGIS is not required to compensate its California employees for time spent on company-provided transportation traveling to and from inventories.

In *Morillion*, the California Supreme Court addressed whether an employer was required to

United States District Court

For the Northern District of California

compensate field workers for time spent traveling to and from the fields on company buses, where use of the buses was compulsory.  22 Cal. 4th at 578.  Specifically, the court addressed whether this time constituted "hours worked" under the applicable Industrial Welfare Commission ("IWC") wage order.  *Id*. (citing Wage Order No. 14-80).  That wage order defines "hours worked" as "the time during which an employee is subject to the control of the employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  *Id*.  The court held that when employees are "subject to the control" of their employer, that time is compensable even if they are not actually working.  *Id*. at 583.

The court in *Morillion* further held that the employees in that case were subject to the control of their employer while they rode the company buses to and from the fields, rejecting the employer's contention that the employees were not under the employer's control because they could read or perform other personal activities while riding the bus.  *Id*. at 586.  The court noted that because employees were required to use the employer's buses, they were "foreclosed from numerous activities in which they might otherwise engage if they were permitted to travel to the fields by their own transportation."  *Id*.  It also found that the Fifth Circuit's holding in *Vega*, decided under the FLSA, was consistent with its own conclusion that the travel time was compensable under California law because "the *Vega* employees were free to choose – rather than required – to ride their employer's buses to and from work."  *Id*. at 589 n. 5.

The *Morillion* court rejected the employer's assertion that under the court's reasoning, even regular commute time would be compensable because that time is incurred due to the requirement that employees show up at a work site.  *Id*.  The court explained that "[t]he level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative."  *Id.*  Therefore, the court concluded, the employer was required to compensate its employees for the time spent on company buses, as well as time spent waiting for the buses.  *Id*.

The *Morillion* court described the limits of its holding as follows:

> This conclusion should not be construed as holding that all travel time to and from work, rather than compulsory travel time as defined above, is compensable. Therefore, while the time plaintiffs spent traveling on Royal's buses to and from the fields is compensable as

15

1   "hours worked" under subdivision 2(G), the time plaintiffs spent commuting from home to
2   the departure points and back again is not. Moreover, we emphasize that *employers do not
    risk paying employees for their travel time merely by providing them transportation*. Time
3   employees spend traveling on transportation that an employer provides but does not require
    its employees to use may not be compensable as "hours worked." . . . Instead, by requiring
4   employees to take certain transportation to a work site, employers thereby subject those
    employees to its control by determining when, where, and how they are to travel. Under the
5   definition of "hours worked," that travel time is compensable.

6   *Id*. at 587-588 (emphasis added).

7       In *Overton*, the California court of appeal applied the reasoning of *Morillion* to a claim for

8   travel time by an employee who was *not* required to use the transportation that was offered by the

9   employer for its employees. 136 Cal. App. 4th at 265. In that case, the plaintiff was an employee of

10  Disneyland who was assigned parking in an employee parking lot, the Katella Lot, that was one mile

11  away from the employee entrance. *Id*. Disney provided a shuttle from the lot to the park entrance,

12  but employees were not required to use it. *Id*. The plaintiff brought a putative class action on behalf

13  of hourly employees seeking compensation for time spent on the shuttle. *Id*. Citing *Morillion*, the

14  court explained that "the key factor is whether Disney *required* its employees who were assigned

15  parking in the Katella lot to park there and take the shuttle." *Id*. at 271. Because the plaintiff

16  conceded that 10 % of Disney employees did not drive to work and were permitted to use alternative

17  transportation, the court rejected the plaintiff's claim on summary judgment. *Id*.

18      The *Overton* court rejected the plaintiff's argument that under *Morillion*, Disney was

19  required to compensate at least those employees "who, as a practical matter, are required to use an

20  employer-provided shuttle because no alternative transportation is available or feasible." *Id* at 272.

21  The court explained its reasoning as follows:

22      We reject this argument, based on *Morillion's* discussion of *Vega*. The Supreme Court
        concluded the plaintiffs in *Vega* would not have been entitled to compensation for travel
23      on employer-provided buses under the standard adopted in *Morillion*, because the workers
        "were free to choose-rather than required-to ride their employer's buses." The Supreme
24      Court's analysis did not turn on whether the bulk of the *Vega* employees had any alternative
        transportation reasonably available. There was certainly no evidence that the workers who
25      used the employer-provided buses had alternative means of transportation readily available.

26  *Id*. at 272-273.

27      Based on *Overton* and *Morillion*, the Court concludes that RGIS is not required under

28  California law to compensate its employees for time spent on company-provided transportation to

16

1   travel inventories.  *See Worley v. RGIS Inventory Specialists, LLC,* Case No. 137454 (Ca. Super. Ct.,

2   County of Butte Aug. 2, 2007) (holding that under *Morillion* and *Overton*, RGIS is not required to

3   compensate its employees for time spent on company provided transportation because employees are

4   not required to use it and finding that whether one hour commute time in each direction represents a

5   "reasonable" commute is not the determinative issue).  As in *Overton*, it is undisputed that RGIS

6   employees are not required to use company-provided transportation.  Further, neither *Overton* nor

7   *Morillion* suggests that travel time that otherwise would not be compensable might be considered

8   "hours worked" under California law because the work site is distant from an employee's home.  To

9   the contrary, the California Supreme Court's discussion in *Morillion* of the *Vega* case– which

10  involved travel time of approximately four hours in each direction – indicates that even extended

11  travel on employer-provided transportation is not compensable under California law so long as

12  employees are not required to use it.  Further, the DLSE Opinion Letter on which Plaintiffs rely is

13  inapplicable on its face because it applies only to employees who have a regular work place.

14      Therefore, RGIS is entitled to summary judgment on the class travel time claims asserted

15  under California law.[8]

16                  **b.      Washington Law**

17                      **i.      Argument**

18      RGIS argues that its travel policy comports with Washington wage laws because under

19  Washington law, travel time is compensable only when employees are "on duty," which turns, in

20  part, on whether employees are under the employer's control.  Because RGIS employees have the

21  option of using other transportation, RGIS asserts, they are not "on duty" when they use

22  transportation provided by RGIS.  Plaintiffs counter that RGIS' own policy defines Travel Time as

23  hours worked and further, that there is evidence that RGIS employees are required to performed

24

25  _____

26      [8]As noted above in connection with the FLSA travel time claims, the Court did not certify a class
    as to any claims for compensation under California law based on the performance of inventory-related
    activities while *en route* to inventories.  Nor have the parties briefed the question of whether there is
27  evidence in the record that individual Named Plaintiffs who worked for RGIS in California were
    required to perform such work.  Therefore, the Court does not grant summary judgment as to any such
28  claims asserted by the individual Named Plaintiffs.

United States District Court

For the Northern District of California

1   inventory-related activities on the way to and from inventories.  Therefore, it argues, this time is

2   compensable under Washington law.

### ii.     Analysis

4   As a preliminary matter, the Court notes that it did not certify a class under Rule 23 with

5   respect to the travel time claims asserted by Plaintiffs under Washington law.  Therefore, its holding

6   applies only to the Named Plaintiffs.  Further, the parties did not brief the question of whether there

7   is evidence that any of the Washington Named Plaintiffs performed work-related activities while *en

8   route* to travel inventories.  Therefore, the only question the Court addresses here is whether the

9   travel time claims of the individual Named Plaintiffs asserted under Washington law fail to the

10  extent they are based on the theory that RGIS is required to compensate them for time spent on

11  company-provided transportation that exceeds a reasonable commute time even if they did not

12  engage in inventory-related activities *en route*.  The Court concludes that they do.

13  Under the Washington Minimum Wage Act ("MWA"), employees are entitled to

14  "compensation for regular hours worked and for any overtime hours worked."  *Stevens v. Brink's

15  Home Security, Inc.*, 162 Wash. 2d 42, 47 (2007) (citing RCW 49.46.020; *Bostain v. Food Express,

16  Inc.*, 159 Wash. 2d 700, 708-09 (2007)).  In *Stevens*, the Washington Supreme Court addressed

17  whether employers were required to compensate security system technicians for travel time from

18  home to the first work site of the day and to home from the last work site of the day where the

19  technicians were supplied with company trucks, outfitted with tools, to drive from their homes to the

20  work site and where technicians were required to adhere to certain rules, including prohibitions on

21  performing personal errands or transporting passengers while *en route* to and from work sites.  *Id*. at

22  45-46.  The court noted that the Washington legislature had not defined "hours worked or addressed

23  the compensability of travel time."  *Id*.  Therefore, it looked to the Washington Administrative Code

24  ("WAC"), which defines "hours worked" as "all hours during which the employee is authorized or

25  required . . . to be on duty on the employer's premises or at a prescribed work place."  WAC 296-

26  126-002(8).  The court concluded that the technicians were "on duty" while driving the company

27  trucks to and from home because of the strict control the company exercised over them during this

28  time.  *Id*. at 46.  The court further found that the trucks were a "prescribed workplace" because

United States District Court

For the Northern District of California

1    technicians often completed work-related activities in their trucks, including paperwork.  *Id.* at 47.

2         In *Anderson v. Department of Social and Health Services*, 115 Wash. App. 452 (2003),

3    which was expressly approved by the Washington Supreme Court in *Stevens*, the court reached the

4    opposite conclusion.  There, employees who worked at a corrections center on an island brought a

5    claim against their state employer seeking compensation for the time they spent on the ferry getting

6    to and from the island.  *Id.* at 453.  While *en route*, the employees were permitted to "engage in

7    various personal activities, such as reading, conversing, knitting, playing cards, playing hand-held

8    video games, listening to CD players and radios, and napping."  *Id.*  Citing WAC 296-126-002(8),

9    the court held that this travel time was not compensable, under Washington law, because employees

10   were not "on duty" and the ferry was not a "prescribed workplace."  *Id.* at 456.

11        In this case, it is undisputed that employees are not required to avail themselves of

12   transportation to travel inventories provided by RGIS.  Therefore, the Court concludes that RGIS

13   employees are not "on duty" when they ride to and from travel inventories in company-provided

14   transportation.  Accordingly, RGIS is entitled to summary judgment on the individual Named

15   Plaintiffs' travel-time claims under Washington law to the extent they are based on the theory that

16   RGIS is required to compensate them for time spent on company-provided transportation that

17   exceeds a reasonable commute time even if they did not engage in inventory-related activities *en

18   route*.

19                          c.        **Illinois Law**

20                                    i.        **Arguments**

21        RGIS argues that the Illinois Minimum Wage Law ("IMWL") parallels the FLSA and

22   provides no basis for awarding travel pay, citing *Ladegaard v. Hard Rock Concrete Cutters, Inc.*,

23   2004 WL 1882449 (N.D. Ill.).  Plaintiffs assert that they are entitled to travel time because Illinois

24   has not adopted the equivalent of the Portal-to-Portal Act and further, the Illinois administrative

25   regulations require employers to compensate employees for "hours worked," defined as "all the time

26   an employee is required to be on duty, or on the employers' premises, or at other prescribed places

27   of work, and any additional time he or she is required or permitted to work for the employer."

28   Ill.Admin.Code tit. 56, § 210.110.   They also argue that *Ladegaard* is distinguishable because in

1   that case, the employees were subject to a collective bargaining agreement.

2                              ii.      **Analysis**

3          Again, the Court notes, as a preliminary matter, that it did not certify a class under Rule 23

4   with respect to the travel time claims asserted by Plaintiffs under Illinois law.  Therefore, its holding

5   applies only to the Named Plaintiffs.  Further, the parties did not brief the question of whether there

6   is evidence that any of the Illinois Named Plaintiffs performed work-related activities while *en route*

7   to travel inventories.  Therefore, the only question the Court addresses here is whether the travel

8   time claims of the individual Named Plaintiffs asserted under Illinois law fail to the extent they are

9   based on the theory that RGIS is required to compensate them for time spent on company-provided

10  transportation that exceeds a reasonable commute time even if they did not engage in inventory-

11  related activities *en route*.  The Court concludes that they do.

12         The IMWL parallels the FLSA.  *Ladegaard*, 2004 WL 1882449 at * 4.  Further, the Illinois

13  Administrative Code provides that FLSA regulations may be looked to for guidance in interpreting

14  the IMWL.  *Id*.  As a result, "the same analysis generally applies to both the FLSA and the IMWL."

15  *Id*.  In *Ladegaard*, an Illinois court addressed whether employees who drove trucks from an

16  equipment yard to job sites – and who were permitted to take company trucks home at night and

17  drive straight to work sites from home the next day –  were entitled to compensation for that time.

18  *Id*.  The court held that they were not entitled to compensation for travel time between the yard and

19  the first job site except where employees performed work at the yard before going on to the first job

20  site, or where they performed work at the yard after leaving the last job site.  *Id*.  In reaching this

21  conclusion, the court cited to the Portal-to-Portal Act, 29 U.S.C. § 254(a).

22         As Plaintiffs have cited no Illinois case law suggesting that its travel time claims under

23  Illinois law should be treated any differently from its claims under the FLSA, the Court concludes

24  that RGIS is entitled to summary judgment on the claims of the individual Named Plaintiffs to the

25  extent these claims are based on the theory that RGIS is required to compensate them for time spent

26  on company-provided transportation that exceeds a reasonable commute time even if the did not

27  engage in inventory-related activities *en route*.

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

### d.    Oregon Law

Plaintiffs point out in their Opposition brief that RGIS did not address Oregon law as it relates to Plaintiffs' travel claims.  In response, RGIS states in a footnote that "Oregon law affords no specific protection for travel pay beyond that set forth in the FLSA [and therefore] there is nothing to preclude application of this Court's finding with respect to the legality of RGIS' policy under the FLSA to the Oregon subclass."  Reply 4 n. 4.  Because Plaintiffs were not given a chance to respond to RGIS' argument, the Court declines to grant summary judgment on this claim as to the Oregon Named Plaintiffs.[9]

### C.    The Meal Break Claims

#### 1.    RGIS' Meal Break Policies

RGIS' policies with respect to meal breaks are based on state law requirements in states that have specific meal break requirements.  *See* Lee Rule 23 Decl., Ex. 5 (2005 Field Policy Manual) at 18 ("Many states have requirements that define the Rest and Meal Break policy that must be adhered to for their particular state").  In states that do not have specific meal break requirements, RGIS' policy requires that a meal break be provided before the conclusion of seven hours of work.  *Id*. at 18-19.  Three of the four Rule 23 states in this action – California, Oregon, and Washington – have specific meal break requirements.[10]  *Id*. at 19.  Illinois does not and therefore, the RGIS policy applies for Illinois employees.  *Id*.  According to RGIS Vice President of Human Resources, Cynthia Myers, RGIS "has communicated policies ensuring that all field offices are aware of their local break requirements."  Declaration of Cynthia Myers [Docket No. 453] ("Myers Class Cert. Opp. Decl."), ¶ 3.

RGIS' policy requires that employees record their meal and rest breaks, as well as the starting and ending times for the inventory, using Oracle time sheets.  Lee Rule 23 Decl., Ex. 5 (2005 Field Policy Manual) at 79.  In 2005, RGIS adopted a policy under which employees of

---

[9]No class was certified as to the Oregon travel claims.

[10]According to the 2005 Field Policy Manual, California and Washington require that meal breaks be provided before the conclusion of five hours of work, while Oregon requires that meal breaks be provided before the conclusion of six hours of work.  *Id*.

California and Oregon are automatically paid an extra hour of pay at the employee's in-store rate whenever the Oracle timekeeping system "does not include a record reflecting that a break was taken within RGIS' guidelines for California and Oregon."   Myers Class Cert. Opp. Decl., ¶ 5. Myers explains that:

> The system does not have any mechanism that I am aware of . . . to track *why* the record does not show a break being taken or waived, and . . . I am not aware of any Company-driven process for investigating each such missing break record that appears on our system.  I do know, however, that the Company monitors penalty rates in each District and this is an area that managers are counseled on each year if they appear to have a recurring problem.

*Id.* (emphasis in original).

        In addition to the penalty policy, in states that follow the RGIS meal break policy, as well as in California and Washington, RGIS allows employees to waive meal breaks by signing a Meal Period Waiver Form for each work period in which a meal is waived, which is to be attached to the inventory Time Sheet.  Lee Rule 23 Decl., Ex. 5 (2005 Field Policy Manual) at 20.

        Both Plaintiffs' expert, Dr. Drogin, and Defendant's expert, Dr. Slottje, found that RGIS employees in the Rule 23 states missed meal breaks without signing waivers or being compensated for the missed meal breaks, though Dr. Drogin found almost twice as many missed meals as did Dr. Slottje.  See Expert Report of Daniel J. Slottje in Opposition to Plaintiffs' Motion for Class Certification [Docket No. 458] ("Slottje Rule 23 Opp. Rep."), ¶ 11 & Table 2 (reflecting that Dr. Drogin found 75,317 missed meal breaks while Dr. Slottje found 41,053 missed meal breaks based on review of same timesheets for employees of Rule 23 States).  Further, Plaintiffs present testimony by Named Plaintiffs in the Rule 23 States, as well as class members in those states, that RGIS managers sometimes did not give auditors meal breaks, denied requests for meal breaks in order to finish inventories more quickly and altered time sheets to reflect meal breaks that were not actually taken.  Park SJ Opp. Decl., ¶¶ 62-65, 67, 69.  Plaintiffs also presented testimony by RGIS managers that they were pressured by upper management not to give meal and rest breaks to auditors in order to complete inventories more quickly and that they, in fact, denied meal breaks to auditors.  *Id.*, ¶ 66. RGIS managers also testified that they altered time sheets to reflect that a meal break was taken, even though it was not.  *Id.* ¶ 70.

**United States District Court**
For the Northern District of California

### 2.   Arguments

RGIS argues that it is entitled to summary judgment with respect to its claims based on missed meal breaks under California and Washington law because the laws of both of those states require only that employees be permitted to take a meal break and do not impose an affirmative obligation to schedule meal breaks and/or ensure that the breaks are taken.  With respect to California law, RGIS relies on the reasoning set forth in a series of cases decided in federal district court, including one that was decided by this Court,  *White v. Starbucks*, 497 F. Supp. 2d 1080 (N.D. Cal. 2007), in which courts concluded that the use of the word "provide" in California Labor Code §§ 512(a) and 226.7 requires only that employers must make meal breaks available.  According to RGIS, Washington courts have taken a similar position with respect to Washington law, holding that employers are only required to "allow" employees to take meal breaks.  Because RGIS has a policy of offering meal breaks and does not force employees to forego meal breaks, RGIS asserts, it is entitled to summary judgment on these claims.

With respect to Plaintiffs' meal break claims under Oregon law, RGIS asserts that it is entitled to summary judgment because there is no private right of action under Oregon law for unpaid meal breaks, citing *Gafur v. Legacy Good Samaritan Hospital and Medical Center*, 344 Or. 525 (Or. 2008).  Finally, RGIS states that Plaintiffs do not assert a claim for missed meal breaks under Illinois law.

In their Opposition, Plaintiffs argue that California law requires more of employers than merely offering meal periods, noting that the California Supreme has depublished a case that reached that conclusion, *Brinker Restaurant Corp.v. Superior Court*, 2008 WL 2806613 (Cal. App. 4th Dist.), which is currently under review.  In *Brinker*, the California Court of Appeal relied on *White v. Starbucks* and other cases that have found that there is no affirmative duty on the part of employers to ensure that meal breaks are actually taken.

Even if employers are only required under California and Washington law to *offer* employees meal break, Plaintiffs assert, the evidence here is sufficient to give rise to material issues of fact on this question.  In particular, Plaintiffs cite to Dr. Drogin's findings that RGIS employees in both California and Washington have missed meal breaks without completing a waiver or receiving

1  penalty pay.  This evidence supports the conclusion that RGIS employees in these states have been

2  denied meal breaks, Plaintiffs argue.  Plaintiffs further cite to the testimony of auditors and managers

3  that RGIS employees were denied meal breaks so that inventories could be finished more quickly

4  and that time sheets were altered to reflect meal breaks that were not, in fact, taken.

5         Plaintiffs reject RGIS' assertion that there is no private right of action for meal break

6  violations under Oregon law, arguing that *Gafur* does not apply because Plaintiffs claims are not

7  statutory but rather, arise under common law, invoking a breach of contract theory.  Similarly,

8  Plaintiffs assert that their claims under Illinois law are based on common law, namely, the theory

9  that  RGIS failed to abide by its own policy with respect to meal breaks, thereby breaching its

10 employment contract with Plaintiffs.

11                     **3.      Analysis**

12        As a preliminary matter, the Court notes that it did not certify any Rule 23 classes based on

13 the alleged meal break violations.  Further, the parties did not address in their briefs whether the

14 evidence relating to the individual Named Plaintiffs is sufficient to defeat Defendant's summary

15 judgment motion.  Therefore, the Court considers only whether certain legal issues relating to the

16 Named Plaintiffs' meal break claims can be resolved on summary judgment.

17                     **a.      California Law**

18        In its February 6, 2009 Order regarding class certification, the Court held that "under

19 California law an employer must offer meal breaks but is not required to force employees to take

20 them."  February 6 Order at 45.  The question at summary judgment is whether RGIS has

21 demonstrated that there is no material issue of fact as to whether it has complied with this

22 requirement as to the Named Plaintiffs who work or have worked for RGIS in California.   As stated

23 above, because the Court has not had the benefit of briefing by the parties regarding the evidence in

24 the record supporting the claims of the individual Named Plaintiffs, it does not rule on those claims,

25 as to which the Motion is denied without prejudice.

26                     **b.      Washington Law**

27        Under Washington law, meal break requirements are set forth in WAC 296-126, which

28 implements the provisions of chapter 49.12.  WAC 296-126 provides, in relevant part, as follows:

United States District Court

For the Northern District of California

1) Employees shall be allowed a meal period of at least 30 minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.

2) No employee shall be required to work more than five consecutive hours without a meal period.

3) Employees working three or more hours longer than a normal work day shall be allowed at least one 30-minute meal period prior to or during the overtime period.

WAC 296-126.  In *White v. Salvation Army*, the Washington court of appeals held that the word "allowed" in this provision indicates that "[t]he employer cannot prevent an employee from taking their meal period, but there is no affirmative duty on the employer to schedule meal periods for a specific time." 118 Wash. App. 272, 279 (2003).  Thus, while the case law addressing the requirements under Washington law with respect to meal periods is less developed than the case law addressing the California statutory requirements, the standard appears to be similar.  In particular, the relevant question is whether the employer makes meal periods available in the specified time frame.

The parties have not briefed whether the evidence in the record as to the meal break claims of the individual Named Plaintiffs is sufficient to give rise to a fact question.  Therefore, the Motion is denied without prejudice as to these claims.

### c.    Oregon Law

RGIS asserts that under Oregon's wage and hour statutes, there is no individual right of action on the part of employees for failure to provide meal breaks.  Plaintiffs do not offer any authority that there is a private right of action under Oregon wage and hour laws for missed meal breaks, and the Court finds none.[11]  Instead, Plaintiffs assert that their claims arise under common law.  Plaintiffs appear to advance two theories in support of their contention.  First, in their Consolidated Complaint, they assert that there is an implied contract in every employment relationship whereby an employer agrees to abide by the wage and hour laws of the state.  *See*

---

[11]The Court agrees that under Oregon wage and hour statutes, there is no private right of action for missed meal breaks. *See Gafur v. Legacy Good Samaritan Hospital and Medical Center*, 213 Or. App. 343, 348 (2007), *rev'd, in part, on other grounds,* 344 Or. 525 (2008).

United States District Court

For the Northern District of California

1    Consolidated Complaint ¶¶ 195-203 (allegations supporting Claim Sixteen, entitled "Contract Claim

2    for Meal Periods").  Second, Plaintiffs argue that RGIS' own policies with respect to meal breaks

3    give rise to a contractual obligation under Oregon law.  The Court finds both arguments

4    unpersuasive.

5         First, Plaintiffs' suggestion that the requirements of Oregon's wage and hour laws –

6    including requirements for which there is no private right of action – may be enforced by employees

7    on a theory of implied contract is not supported by any authority.

8         A separate question is whether the policies set forth in the various documents provided to

9    RGIS employees may give rise to an express contractual obligation to offer meal breaks in

10   accordance with these policies.  An employment policy stated in an employee handbook *may* create

11   a contractual obligation on the part of an employer.  *See Yartzoff v. Democrat-Herald Publishing Co*,

12   281 Or. 651, 657 (1978) (holding that policy in employee handbook establishing probationary period

13   of between three and six months could be found by a jury to give rise to implied contract that limited

14   employer's right to terminate employee without cause less than three months after the employee was

15   hired).  Whether such a policy gives rise to a contractual obligation is governed by the general

16   principles of contract law.  *See Fleming v. Kids and Kin Head Start*, 71 Or. App. 718, 721 (1985)

17   (holding that plaintiff who alleged wrongful termination in violation of just-cause termination policy

18   in employee handbook stated a claim and noting that "a breach of contract is a breach of contract").

19        Here, RGIS has an explicit policy of providing meal breaks consistent with state law

20   requirements.  *See* Lee Rule 23 Decl., Ex. 2 (2004 Auditor's Handbook) at 3 ("RGIS complies with

21   all state regulations regarding Rest Breaks and Meal Breaks.  Notification will be conveyed to you

22   during each inventory as to when it is time to take a break and the length of the break being given,

23   when applicable under the law");  Ex. 5 (2005 Field Policy Manual) at 18-19 (incorporating state

24   law meal break requirements).  This policy, however, is contained in documents that clearly state

25   that they are not intended to create an employment contract with any employee.  In particular, the

26   Auditor's Handbook states that "[t]he contents and information found here should not be construed

27   to constitute a contract between the company and any employee."  *See id*., Ex. 2 (2004 Auditor's

28   Handbook) at 1.  Similarly, the Field Policy Manual (which is aimed at managerial employees rather

1   than auditors) requires recipients to sign an acknowledgment that "nothing contained in this Manual

2   or in any other RGIS policy, practice or procedure is intended to give rise to any contractual right to

3   continued employment, compensation or benefits." *Id*., Ex. 5 at 86-95 (acknowledgment forms).

4   Indeed, the introduction to the Field Policy Manual states that "[t]he policies stated in this Manual

5   may be amended or rescinded from time to time, at the Company's sole discretion." *Id*. at 1.

6          Plaintiffs have pointed to no evidence or case law suggesting that under these circumstances,

7   an employer may be found to have a *contractual* obligation to an employee to abide by the policies

8   set forth in an employee handbook.  Rather, under the general principles of contract law, which turns

9   on the intent of the parties, these disclaimers make clear that the policies set forth in RGIS' policy

10  documents were not intended to create a contractual obligation on the part of RGIS.  *See Aurajo v.*

11  *General Electric Information Service*s, 82 F. Supp. 2d 1161, 1168 (D. Or. 2000) (holding that "[i]n

12  the face of the disclaimers in the application, Handbook, and Manual  . . . the plaintiff could not have

13  reasonably believed that management policies constituted enforceable terms of an employment

14  agreement").

15         The Court finds that the Named Plaintiffs' meal break claims fail under Oregon law.

16                              **d.      Illinois Law**

17         RGIS argues that Plaintiffs have not asserted a meal break claim under Illinois law and that

18  even if they had, the claim would fail for the same reasons the Oregon claim fails.  The Court agrees.

19         First, the only claim asserted in the Consolidated Complaint under Illinois law does not refer

20  to meal break violations.  Nor does the Illinois claim, which asserts violations of various statutory

21  provisions, make any reference to a breach of contract.  Even construing the complaint liberally, the

22  Court finds that Plaintiffs did not include in their Consolidated Complaint a claim for breach of

23  contract based on failure to provide meal breaks under Illinois law.  Nor did the Court certify any

24  class with respect to such a claim.

25         Second, even if the Court were to permit Named Plaintiffs to amend the complaint to add

26  such a claim, the claim would fail for the same reasons stated above with respect to Oregon law.  In

27  particular, Illinois statutory law does not include a private right of action for meal break violations.

28  *See Wineland v. Casey's General Stores,* 554 F.Supp.2d 915, 921 (S.D.Iowa, 2008).  Further, for the

**United States District Court**
For the Northern District of California

1   reasons stated above, no reasonable jury could find that the policies set forth in RGIS' manuals and

2   handbooks with respect to meal breaks gave rise to an employment contract.

3          **D.      The Donning/Waiting Time Claims**

4                  **1.      Donning Practices at RGIS**

5          RGIS' auditors, team leaders and assistant team leaders perform their counting duties using

6   an audit machine, which the 2004 Auditor's Handbook describes as a "custom microcomputer

7   designed exclusively for RGIS."   Park SJ Opp. Decl. at ¶ 16 (quoting 2004 Auditor's Handbook,

8   WRN 03382); *see also* Lee Rule 23 Decl., Ex. 2 (2004 Auditor's Handbook) at 3.  The audit

9   machine is often connected by a cable to a laser scanner and kept in a pouch on the employee's belt.

10  *Id.* at ¶ 18 (quoting deposition of Cynthia Myers ("Myers Depo.") at 65-67); ¶¶ 19-20 (deposition

11  testimony of auditors describing equipment).  RGIS employees also use paper tags and a pen or

12  pencil to mark their progress through the inventory site.  *Id.*  Employees cannot perform their

13  counting duties without this equipment.  Park SJ Opp. Decl., ¶ 18 (quoting Myers Depo. at 65-67).

14  Named Plaintiffs and class members have testified that the time required to don this equipment,

15  including finding replacements for malfunctioning equipment, ranges from just a minute or two to

16  30 or 40 minutes.  *See* Park SJ Opp. Decl., ¶¶ 47- 51; Declaration of A. Sevilla in Support of

17  Defendant RGIS, LLC's Motion to Decertify Collective Action ("Sevilla Decert. Motion Decl."),

18  158-185.

19         There is conflicting evidence in the record regarding whether RGIS compensates hourly

20  employees for donning and associated waiting time at the start of inventories.  On one hand, RGIS'

21  November 2005 Field Policy Manual states that "RGIS pays hourly employees for all time worked."

22  Lee Rule 23 Decl., Ex. 5 at 15 (WRN 03414).  It further states that "[a]ll work time must be

23  recorded on the Time Sheet."  *Id.* (emphasis omitted).  The same Manual states that "[a]n hourly

24  employee's in-store hours are to begin at the time the employee was scheduled to work, assuming he

25  or she arrived to work at that time."  *Id.*  Another document, entitled "RGIS Application Guide re

26  Time Sheets" and dated October 26, 2006, states that an employee's "time in" is "the time auditor

27  began any inventory-related work as instructed by a Supervisor."  Declaration of Cynthia Myers in

28  Support of Opposition to Plaintiffs' Motion for Class Certification ("Myers Rule 23 Opp. Decl."),

United States District Court

For the Northern District of California

Ex. A at WRN 3189.  Two e-mails cited by RGIS, sent in 2002 and 2007, remind managers not to instruct employees to arrive at an inventory site prior to the scheduled start time, unless the employee is compensated for the additional time.  *See* Myers Rule 23 Opp. Decl., Ex. A at WRN 03554, 15439.

On the other hand, RGIS has no written policy that specifically requires employees to clock in before donning equipment and some policy and training documents appear to require that auditors don their equipment prior to clocking in.  For example, a document entitled "Team Leader Training/Policies and Procedures" states that employees are expected to "arrive at the inventory in time to be prepared to start counting at the designated start time."  Park SJ Opp. Decl. ¶ 30 (quoting WRN 02727).  Another document, entitled "Time Clocks, Version 2006," states that employees "should try to clock in as close to the start time as possible.  This should be after [employees] have been issued equipment and paperwork, and just prior to receiving instructions."  *Id.* (quoting WRN 80853).  A document entitled "Conditions of Employment" asks employees to "strive to be at least 10-15 minutes early for an assignment in order to receive paperwork and special instructions so that your team can begin work at the scheduled inventory time."  *Id.* (quoting WRN 19870).  A training document for RGIS district managers state that "[a]uditors arriving for an inventory at 8 am that starts at 8 am, will not be signed in for the store start time until they have begun counting their first area." *Id.* (quoting RGIS WRN 81813, entitled "Management Skills Training for the RGIS District Manager" ). In addition, Plaintiffs have presented testimony by numerous current and former RGIS auditors and managers that managers frequently instruct auditors to arrive at inventory sites 10 or 15 minutes before the inventory start time in order to be ready to count at the start time, but that auditors are not paid for this time.  *Id*., ¶¶ 31-43.

In its February 6, 2009 Order, the Court held that "Plaintiffs have presented evidence from which a finder of fact could conclude that RGIS' compensation policies are dictated by corporate headquarters and that as a result of these policies, class members are not compensated for donning and waiting time."  Docket No. 694 at 40.

### 2.    Arguments

RGIS asserts that Plaintiffs' FLSA claim for donning and associated waiting time fails for

United States District Court

For the Northern District of California

1    several reasons.[12]  First, it argues that donning equipment – and the activities associated with

2    donning, such as waiting in line to receive equipment and waiting to clock in – are not "work" under

3    the FLSA and Portal-to-Portal Act, but rather, are preliminary activities that are not compensable.

4    Second, RGIS argues that it is entitled to summary judgment on the donning time claims because the

5    time spent donning equipment is, as a matter of law, *de minimis.*  Third, RGIS argues that to the

6    extent the claim encompasses waiting time after auditors have arrived at a travel inventory but

7    before they begin donning equipment, Plaintiffs' claim fails because this time is paid under RGIS'

8    travel policy, under which auditors are paid travel time up to the start of the inventory.[13]

9          Plaintiffs argue that donning does not fall within the Portal-to-Portal Act's "preliminary"

10   activity exemption because the equipment used by RGIS auditors is essential to performing their

11   principal activity of conducting audits.  With respect to associated waiting time, Plaintiffs do not

12   dispute that time spent waiting to *receive* equipment is not compensable but argue that time spent

13   testing the equipment after it is received in order to make sure it is functional, as well as time spent

14   replacing any malfunctioning equipment, is compensable.

15         Plaintiffs argue further that RGIS is not entitled to summary judgment on the basis of its

16   defense that time spent donning is *de minimis*, citing the multi-factor test articulated by the Ninth

17   Circuit in *Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984) (holding that in

18   determining whether donning time is *de minimis*, courts should consider: 1) the amount of time per

19   _____

20         [12]In the Motion, RGIS does not request summary judgment on Plaintiffs' *state law* donning
     claims.  Nor does RGIS respond in its Reply brief to Plaintiffs' assertion, in their Opposition brief, that
21   RGIS is not entitled to summary judgment on either the FLSA *or* the state law donning time claims.
     Therefore, the Court does not address the state law donning claims in this order.  In any event, there is
22   no suggestion in the authorities presented by the parties that state law is *more* restrictive on this issue
     than the FLSA, as to which summary judgment is denied.

23

24         [13]In the Motion, RGIS also asserts that the undisputed evidence shows that "Plaintiffs were paid,
     or at least were afforded the opportunity under Defendant's policies and practices to be paid for donning
25   time."  Motion at 28.  In its Reply brief, RGIS states that it has "asked this Court to rule, as a matter of
     law, that RGIS does not *require* employees to don equipment before signing in."  Reply at 13.  The
26   Court has already ruled on this issue, in its February 6, 2009 Order, in which it found that Plaintiffs have
     presented evidence from which a reasonable fact-finder could conclude that RGIS has a policy pursuant
27   to which Plaintiffs are not paid for donning and associated waiting time.  Therefore, the Court declines
     to hold, as a matter of law, that RGIS does not require its auditors to don equipment before signing in.
28   Rather, a fact question remains on this issue, which therefore may not be decided on summary judgment.

United States District Court

For the Northern District of California

1   day as well as the aggregate amount of compensable time; 2) the practical administrative difficulty

2   of recording the extra time; and 3) the regularity of the additional work).  Here, Plaintiffs assert, the

3   evidence shows that the administrative difficulty of recording donning time is small, while the

4   aggregate time at issue is large and the additional work occurs regularly, all pointing away from the

5   application of the *de minimis* rule.

6          Finally, Plaintiffs reject RGIS' contention that waiting and donning time is paid by RGIS

7   under its travel compensation policy, pointing to testimony by Named Plaintiffs and class members,

8   *see* Park SJ Opp. Decl., ¶¶ 31-43, that their travel pay ends when they arrive at travel inventories

9   rather than at the start time of the inventory.  Plaintiffs also point out that even if RGIS compensated

10  auditors for donning time under its travel compensation policy, that would not take into account the

11  local inventories, for which auditors do not receive travel pay.

12          **3.**     **Analysis**

13                  **a.**     **Whether Donning and Associated Waiting is "Work" under the**
14                            **FLSA and Portal-to-Portal Act**

15          RGIS asserts that it is entitled to summary judgment on Plaintiffs' donning claim under the

16  FLSA because the activities for which Plaintiffs seek compensation, namely, donning and associated

17  waiting time, are not "work" but rather, fall within the Portal-to-Portal Act's exemption for

18  preliminary activities, as a matter of law.  With the exception of certain pre-donning waiting time

19  that the Court addresses below, the Court concludes that RGIS is not entitled to summary judgment

20  on this ground because the undisputed facts indicate that donning of special auditing equipment by

21  RGIS employees is integral and indispensible to Plaintiffs' principal activity of conducting audits.

22                              **i.**     **Legal Standard**

23          As discussed above, under the FLSA, employers must compensate employees for "hours

24  worked."  *Alvarez v. I.B.P., Inc.*, 339 F.3d 894, 902 (2003), *aff'd*, 546 U.S. 21 (2005), (citing 29

25  U.S.C. §§ 206, 207).  "'Work,' the Supreme Court has long noted, is 'physical or mental exertion

26  (whether burdensome or not) controlled or required by the employer and pursued necessarily and

27  primarily for the benefit of the employer.'"  *Id*. (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Local*

28  *No. 123*, 321 U.S. 590, 598 (1944)).  On the other hand, under the Portal-to-Portal Act, employers

United States District Court

For the Northern District of California

1    are not required to compensate employees for "walking, riding, or traveling to and from the actual

2    place of performance of the principal activity or activities which such employee is employed to

3    perform" or for "activities which are preliminary to or postliminary to said principal activity or

4    activities, which occur either prior to the time on any particular workday at which such employee

5    commences, or subsequent to the time on any particular workday at which he ceases, such principal

6    activity or activities."  29 U.S.C. § 254(a).

7        In *Steiner v. Mitchell*, the Supreme Court held that any activity that is "integral and

8    indispensable" to a principal activity is also considered to be a principal activity, even if it is

9    performed before an employee begins his or her primary productive activity. 350 U.S. 247, 256

10   U.S. (1956).  Further, the term "principal activities" must be "construed liberally . . . to include any

11   work of consequence performed for an employer, no matter when the work is performed." *Lindow v.*

12   *U.S.*, 738 F.2d 1057,1061 (9ᵗʰ Cir. 1984) (quoting 29 C.F.R. § 790.8(a)).  Where an activity is

13   required "by law, by rules of the employer, or by the nature of the work," that activity is considered

14   an integral and indispensable part of the employee's principal activity.  *Alvarez*, 339 F.3d at 903

15   (quoting 29 C.F.R. § 790.8(c) n.65).  By contrast, an activity performed "for [the employee's] own

16   benefit, rather than for the benefit of the company," is not considered "integral and indispensable to

17   the principal activity."  *Id.*  Ultimately, the question of whether an activity is "integral and

18   indispensable" is context-specific.  *Alvarez*, 339 F.3d at 902; *see also* 29 C.F.R. §790.7(h) ("An

19   activity which is a 'preliminary' or 'postliminary' activity under one set of circumstances may be a

20   principal activity under other conditions").   As a result, an examination of the facts of some of the

21   leading donning time cases is instructive.

22       One of the earliest decisions on this issue is *Steiner, supra*.  There, employees of a battery-

23   making plant sought compensation for time spent bathing and changing clothes before

24   (approximately ten minutes) and after (approximately twenty minutes) their shifts.  350 U.S. at 251.

25   The evidence showed that the process of making batteries was extremely risky because of the

26   pervasiveness of lead oxide throughout the workplace and the hazardous nature of the sulfuric acid

27   used in the battery making process.  *Id.*  To address this danger, the employer provided showers and

28   work clothes for employees to change into and out of.  *Id.*  Although the employer issued no written

instructions requiring employees to shower and change clothes at the beginning and end of each

work day, "the employees testified and the foreman declared in a signed statement that 'In the

afternoon the men are required by the company to take a bath because lead oxide might be absorbed

into the blood stream. It protects the company and the employee both.'" *Id*. Rejecting the

employer's argument that these activities fell under the "preliminary activity" exemption of the

Portal-to-Portal Act, the Court held that they constituted "work" within the meaning of the FLSA,

stating as follows:

> We, therefore, conclude that activities performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a) (1).

> We find no difficulty in fitting the facts of this case to that conclusion because it would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal activity of the employment than in the case of these employees.

*Id*. at 256.

The Ninth Circuit's decision in *Alzarez*, applying the test set forth in *Steiner*, also offers

insight as to the types of donning and waiting time that may be "integral and indispensible" to an

employee's principal activities. In *Alvarez*, employees of a meat processing plant brought a class

action under the FLSA seeking compensation for time spent donning safety and sanitary equipment

before the start of each work day at the defendant's meat packing plant. 339 F.3d at 901. Under the

defendant's policies, the plaintiffs were required to don the equipment before each shift commenced.

*Id*. at 898. Although the required protective gear differed depending on the employees' duties, all

employees had to don "a sanitary outer garment" provided by the defendant, "some form of plastic

hard hat, a hair net, and ear plugs . . . some sort of glove . . .liquid-repelling sleeves, aprons, and

leggings . . . [and] safety boots/shoes." *Id*. n.2. The Ninth Circuit held that donning this protective

gear was compensable work-time because the protective gear was required by U.S. Department of

Agriculture regulatory standards, by the defendant's rules, and by the nature of the work performed.

*Id*. at 903. It reasoned that donning the protective gear benefitted the defendant by allowing the

company to satisfy its requirements under health and safety laws, and also by preventing

United States District Court
For the Northern District of California

1    unnecessary workplace injuries and contamination.  *Id.*  With regard to "non-unique protective gear"

2    such as hard hats and safety goggles, the Court of Appeals disagreed with the district court's

3    conclusion that donning was not "integral and indispensible."  The Court of Appeals found that

4    donning of that equipment, like the equipment that was unique to the meat processing industry, was

5    "integral and indispensible" to the employees' principal activities.  *Id*.  The Court of Appeals made

6    clear that "ease of donning . . . [does] not make the donning of such equipment any less 'integral and

7    indispensable[.]'"  *Id.*  It held, however, that this latter time was not compensable because it fell

8    under the *de minimis* doctrine (discussed below).  *Id.*

9        On appeal, the Supreme Court left undisturbed the Ninth Circuit's holdings regarding the

10   donning time claims of the meat processing employees discussed above and affirmed the Ninth

11   Circuit's decision as to claims that are not at issue in this case.  *I.B.P., Inc. v. Alvarez*, 546 U.S. 21,

12   37 (2005).  In the same decision, the Supreme Court addressed an appeal in a separate case,

13   involving claims by employees of a poultry plant that they were entitled to compensation for time

14   spent *waiting* to receive required equipment.  The Court held that such time was not "integral and

15   indispensable" under the facts of that case, because there was no evidence that the employees had

16   been instructed to arrive at a specific time.  The Court noted that "the fact that certain preshift

17   activities are necessary for employees to engage in their principal activities does not mean that those

18   preshift activities are 'integral and indispensable' to a 'principal activity' under *Steiner*."  *Id*. at 40.

19   It made clear, however, that its "analysis would be different if [the employer] required its employees

20   to arrive at a particular time in order to begin waiting."  *Id*. n. 8.  The Court explained further that if

21   the employer "required its workers to report to the changing area at a specific time only to find that

22   no protective gear was available until after some time had elapsed," then 29 C.F.R. § 790.7(h) would

23   apply.  That regulation provides as follows:

24       As indicated above, an activity which is a "preliminary" or "postliminary" activity under one
         set of circumstances may be a principal activity under other conditions. . . .This may be
25       illustrated by the following example: Waiting before the time established for the
         commencement of work would be regarded as a preliminary activity when the employee
26       voluntarily arrives at his place of employment earlier than he is either required or expected to
         arrive. Where, however, an employee is required by his employer to report at a particular
27       hour at his workbench or other place where he performs his principal activity, if the
         employee is there at that hour ready and willing to work but for some reason beyond his
28       control there is no work for him to perform until some time has elapsed, waiting for work

                                                      34

United States District Court

For the Northern District of California

1    would be an integral part of the employee's principal activities. . . . The difference in the two
2    situations is that in the second the employee was engaged to wait while in the first the
     employee waited to be engaged.

3    29 C.F.R. § 790.7(h).

4                    **ii.    Application to Facts**

5           In this case, as in *Alvarez*, Plaintiffs' donning of audit machines, scanners and related

6    equipment is an activity "performed pursuant to [RGIS'] mandate for [RGIS'] benefit as an

7    employer."  339 F.3d at 902.  In particular, it is undisputed that RGIS requires its auditors to use the

8    equipment provided in order to perform inventories and further, that it would be impossible to

9    conduct the inventories without donning that equipment.  *See, e.g.,* Park SJ Opp. Decl. at ¶ 30

10   (quoting deposition testimony of Cynthia Myers that "they can't start work without the

11   microcomputer").  Indeed, RGIS' Team Members' Handbook describes the custom audit machines

12   as the "key to conducting successful inventories/events." Park SJ Opp. Decl. at ¶ 16 (quoting Team

13   Members Handbook at 8 (RGIS WRN 04439)).  Therefore, the Court concludes that the time spent

14   by Plaintiffs donning this equipment is "integral and indispensable" to their principal activity and

15   thus, compensable as "work."[14]

16          The Court also agrees with Plaintiff that the relevant donning time includes any waiting time

17   that occurred *after* Plaintiffs received the equipment and began donning.  Under the "continuous

18   workday" rule, waiting time that occurs after employees commence a principal activity is

19   compensable under the FLSA.  *See Alvarez*,  463 U.S. at 39-40.  As the Supreme Court explained in

20   *Alvarez*, the Portal-to-Portal Act's exemptions have no application during the workday, defined as

21   "the period between the commencement and completion on the same workday of an employee's

22   principal activity or activities." 463 U.S. at 29 (quoting 29 C.F.R. 790.6(b)).  Thus an activity that

23   _____

24          [14]Defendant's reliance on *Anderson v. Pilgrim's Pride*, 147 F. Supp. 2d 556 (E.D. Tex. 2001),
     to support a contrary result is misplaced.  *See* Motion at 28.  In *Anderson*, the court ruled that donning
25   certain protective gear "does not qualify as work within the meaning of the FLSA" because donning
     those items "does not involve physical or mental exertion."  147 F. Supp. 2d at 561.  In *Alvarez*,
26   however, the Ninth Circuit expressly rejected the proposition that pre-shift non-exertional activities fall
     within the "preliminary activity" exemption of the Portal-to-Portal Act, holding that compensable work
27   under the FLSA "includes even non-exertional acts."  *Alvarez*, 339 F.3d at 902 (citing *Armour & Co.
     v. Wantock*, 323 U.S. 126, 133 (1944)).  Therefore, the Court finds that *Anderson* is not in accord with
28   existing Ninth Circuit case law.

**United States District Court**

For the Northern District of California

1    would be considered "preliminary" if it occurred *before* an employee commenced a principal activity

2    must still be compensated if it occurs *after* the employee commences a principal activity.  *Id.* at 35-

3    37 (employer is not required to compensate walking time that preceded employees' principal

4    activity, but "any walking time that occurs after the beginning of the employee's first principal

5    activity and before the end of the employee's last principal activity" must be compensated).[15]

6        For the reasons stated above, the Court rejects RGIS' argument that it is entitled to summary

7    judgment on the FLSA donning time claims because the activities involved are not "work."

### b.    Whether Plaintiffs' Donning Time is *De Minimis* as a Matter of Law

10       RGIS argues that even if the Court finds that donning of equipment and associated waiting is

11   "work" that is compensable under the FLSA, it is nonetheless entitled to summary judgment on the

12   basis that the time at issue is *de minimis*, as a matter of law.  The Court disagrees.

### i.    Legal Standard

14       In *Anderson v. Mt. Clemens Pottery Co.*, the Supreme Court explained the *de minimis*

15   doctrine as follows:

> When the matter in issue concerns only a few seconds or minutes of work beyond the
> scheduled working hours, such trifles may be disregarded. Split-second absurdities are not
> justified by the actualities of working conditions or by the policy of the Fair Labor Standards
> Act. It is only when an employee is required to give up a substantial measure of his time and
> effort that compensable working time is involved.

19   328 U.S. 680, 692 (1946).  There is no fixed rule as to the amount of time that may be denied

20   compensation.  *Lindow*, 738 F.2d at 1062.  Rather, courts consider a number of factors to determine

---

22   [15]With respect to waiting time *prior* to receipt of equipment, there is evidence in the record that some RGIS employees were instructed to arrive at a specific time before work in order to don their equipment prior to the inventory start time.  While these employees may well be entitled under the FLSA to compensation for this time spent engaged to wait, this theory of recovery is outside of the scope of the donning time claims that were certified under Rule 23.  *See* Docket No. 694 at 50-51, 53. Because the Court *decertified* any FLSA claims that exceed the scope of the Rule 23 class claims, any FLSA donning time claims that were based on the "engaged to wait" theory were also decertified.  The Court notes that decertification of these FLSA claims is warranted in light of the individualized inquiries that would be necessary to litigate this claim because of the variation in practices associated with different managers and inventories. To the extent that the individual Named Plaintiffs may be entitled to compensation for time spent engaged to wait, the Court does not reach this question.  The parties did not brief the question of whether there is sufficient evidence in the record as to the individual Named Plaintiffs to show that these individuals were engaged to wait.

United States District Court

For the Northern District of California

whether otherwise compensable time is *de minimis*.   *Id*.  First, the amount of  time spent on the

activity each day is "an important factor."   *Id*.  With respect to this factor, the *Lindow* court noted

that "most courts have found daily periods of approximately 10 minutes *de minimis*."  *Id*.  Second,

courts consider the practical administrative difficulty of recording the additional time.  *Id*. at 1062-

63.  Third, courts consider the size of the aggregate claim.  *Id*.  Fourth, courts look to the regularity

with which employees perform the additional work.  *Id*. at 1063 (citing with approval 29 C.F.R. §

785.47).[16]

     In *Lindow*, the plaintiff employees regularly arrived to each work shift fifteen minutes early,

but typically only spent 7-8 minutes of this time performing compensable activities, spending the

rest of the time socializing and drinking coffee.  738 F.2d at 1059-60.  In other words, the plaintiffs

reported early on a regular basis, but "did not regularly engage in compensable activities."  *Id*. at

1064.  Noting "a wide variance in the amount of pre-shift time spent on compensable activities as

opposed to social activities," the court held, following a bench trial, that "[a]lthough the plaintiffs'

aggregate claim may be substantial," the additional time was *de minimis* "because of the

administrative difficulty of recording the time and the irregularity of the additional pre-shift work."

*Id*. at 1063-64.

---

[16]Section 785.47 provides as follows:

In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are *de minimis*. (*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)) This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities.  An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him. See *Glenn L. Martin Nebraska Co. v. Culkin*, 197 F. 2d 981, 987 (C.A. 8, 1952), cert. denied, 344 U.S. 866 (1952), rehearing denied, 344 U.S. 888 (1952), holding that working time amounting to $1 of additional compensation a week is "not a trivial matter to a workingman," and was not *de minimis*; *Addison v. Huron Stevedoring Corp.*, 204 F. 2d 88, 95 (C.A. 2, 1953), cert. denied 346 U.S. 877, holding that "To disregard workweeks for which less than a dollar is due will produce capricious and unfair results." *Hawkins v. E. I. du Pont de Nemours & Co.*, 12 W.H. Cases 448, 27 Labor Cases, para. 69,094 (E.D. Va., 1955), holding that 10 minutes a day is not *de minimis*.

29 U.S.C. § 785.47.

United States District Court

For the Northern District of California

1    Because the *de minimis* doctrine is an exception to the general rule that "hours worked" must

2    be compensated, the burden is on the defendant to established that it applies.  *See Spoerle v. Kraft*

3    *Foods Global, Inc.*, 527 F. Supp. 2d 860, 869 (W.D. Wis. 2007) (citing *Walling v. General*

4    *Industries Co.*, 330 U.S. 545, 547-48 (1947); *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505,

5    507 (7th Cir.2007)).  Where there are fact questions relating to the factors discussed above, summary

6    judgment on the basis that a particular amount of donning time is *de minimis* is not appropriate.  *See,*

7    *e.g., Spoerle*, 527 F. Supp. 2d at 869 (denying employer's request for summary judgment on basis

8    that donning time was *de minimis* where the employer had presented no evidence of the time

9    required to don equipment or that it would be administratively difficult to record the time);

10   *Alexander v. Wackenhut Corp.*, 2008 WL 2697163 at *6 (E.D. La. July 1, 2008) (denying

11   employer's request for summary judgment on basis that donning time was *de minimis* where there

12   was conflicting evidence relating to factors).  *See also Collins v. Sanderson Farms, Inc.*, 568 F.

13   Supp. 2d 714, 724 (E.D. La. 2008) (holding that settlement of FLSA class action was "fair and

14   reasonable resolution of a bona fida dispute" based, in part, on conclusion that employer would not

15   likely prevail on *de minimis* defense as to four to eight minutes employees spent donning equipment

16   each day "without an additional showing that there is a significant administrative burden on the

17   employer to count such time"); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d

18   954 (W.D. Wis. 2008) (rejecting employer's request for summary judgment on *de minimis* defense

19   and holding, as a matter of law, that donning time was not *de minimis* where employer conceded that

20   it would *not* be administratively difficult to record donning time).

21                          **ii.      Application to Facts**

22   Here, summary judgment under the *de minimis* doctrine is inappropriate because there are

23   material issues of fact with respect to the factors identified in *Lindow*.  In particular, there is

24   conflicting evidence as to the amount of time spent each day donning equipment.  Further, a

25   reasonable jury could find, based on the evidence in the record, that application of the *de minimis*

26   doctrine is not appropriate because Plaintiffs must don auditing equipment on a regular basis and the

27   size of the aggregate claim is large.  Finally, RGIS fails to establish that as a matter of law,  the

28   "practical administrative difficulty" in recording donning time renders that time *de minimis*.

38

1    Although RGIS contends that there is some administrative burden in "*isolating* donning time," it has

2    not pointed to undisputed facts showing that it would be administratively difficult to capture this

3    time by distributing the equipment after the inventory start time or permitting Plaintiffs to clock in at

4    the time Defendant distributed the equipment.  Rather, Defendant's argument that "Plaintiffs were

5    paid, or at least were afforded the opportunity under Defendant's policies and practice to be paid for

6    donning time,"  Motion at 30, supports the opposite conclusion, that is, that donning time could be

7    recorded with relative ease.  *See Kasten*, 556 F. Supp. at 954 (finding that employer conceded that it

8    would not be difficult to record donning time where employer argued that "'[w]ith today's

9    technology, one could argue that all time can be recorded to the minute,' which could effectively

10   eliminate the *de minimis* exception").

11       The Court also rejects RGIS' contention that donning time is, in fact, paid under its travel

12   policy.  This argument fails because: 1) it is undisputed that the policy does not apply to local

13   inventories, and even as to travel inventories, employees are not required to use company-provided

14   transportation and are not compensated for travel time if they provide their own transportation; and

15   2) the evidence in the record is conflicting as to whether Plaintiffs who used company-provided

16   transportation were paid for travel time up to the start time of the inventory.

17       The Court concludes that RGIS is not entitled to summary judgment under the *de minimis*

18   doctrine.[17]

19       **E.    The Abandoned Claims**

20       RGIS asserts that Plaintiffs have abandoned numerous claims during the course of litigation

21   and that on this basis, the Court should strike these claims from Plaintiffs' Consolidated Complaint.

22   In particular, RGIS asserts that Plaintiffs have dropped the following claims:

23       1)    Claims for hourly employees other than Auditors, Team Leaders or Assistant Team
               Leaders, e.g., Associate Area Managers (citing Docket No. 610, Plaintiffs'

24

25   _____

26       [17]The Court declines RGIS' invitation to establish some specific minimum amount of time that
     would be *de minimis* as a matter of law in this case.  The record on the actual amount of time involved

27   – individually or in the aggregate – and on the administrative inconvenience involved in capturing such
     time is inconclusive.  However, after the record on this issue has been fully developed at trial, the Court

28   may determine whether there is a period of time that is *de minimis* as a matter of law.

Opposition to Decertification Motion, n. 1);[18]

2)   Claims for unpaid waiting time at "meet sites" and after inventories (citing Docket No. 610, Plaintiffs' Opposition to Decertification Motion, n. 1);

3)   Claims for unpaid doffing time (citing Docket No. 610, Plaintiffs' Opposition to Decertification, 21: 1-2);[19]

4)   Claims for rest breaks (citing Docket No. 422, Motion for Class Certification, 2);[20]

5)   Claims for time spent loading and unloading vans at inventories (citing Docket No. 422, Motion for Class Certification, 2);

6)   Claims related to any work performed while traveling to and from inventories (citing

---

[18]In its Opposition to RGIS' motion for decertification, Plaintiffs state as follows:

Plaintiffs do not seek collective action treatment for Associate Area Managers. Plaintiffs also do not pursue a class claim for time spent waiting at the meet sites.

Docket No. 610, Plaintiffs' Opposition to Decertification Motion, n. 1.

[19]In its Opposition to RGIS' motion for decertification, Plaintiffs state as follows:

The only specific language [the November 2005 version of the Field Policy Manual] contains refers to ensuring the employees remain on the clock at the end of the workday *after* an inventory is complete, and the employees have doffed their equipment. But this is not one of the class claims in this case.

Docket No. 610, Plaintiffs' Opposition to Decertification Motion, 20-21.

[20]In its Motion for class certification under Rule 23, Plaintiffs state the following in their introduction:

Class certification is appropriate pursuant to F.R.C.P. 23(a) and 23(b)(2) or 23(b)(3). . . .The auditor employee classes are comprised of thousands of members. Common issues include, but are not limited to, whether donning time and waiting time constitute hours worked under state law; whether RGIS' corporate policies and corporate culture result in the denial of straight time and/or overtime pay in connection with waiting for and donning equipment prior to the inventory start times; whether RGIS knew or should have known, that its policies and procedures resulted in off-the-clock work; whether it is lawful for RGIS not to pay auditors for one hour of time spent on company transportation back to the meet site after the inventory; whether RGIS' standard wage statement form provides complete and accurate information; whether the pattern of inaccurate time and payroll records demonstrates a violation of applicable law; whether RGIS has a pattern or practice of failing to provide meal periods; and whether RGIS' violations were willful.

Docket No. 422, Motion for Class Certification, 2.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    Docket No. 610, Plaintiffs' Opposition to Decertification, 14: 18-20);[21]

2    7)    Claims that Area Managers are not properly classified as exempt under laws of the
     Rule 23 states (citing Docket No. 422, Motion for Class Certification, 2).

3

4    Plaintiffs respond that RGIS' request should be denied, in its entirety, because RGIS relies on

5    statements by Plaintiffs that relate only to whether they are pursuing certain claims on a class basis,

6    *not* whether they have dropped the claims altogether.  The Court agrees.

7        Rule 23(c)(4) of the Federal Rules of Civil Procedure gives courts the flexibility to treat on a

8    class basis only those distinct issues in a case that the court finds suitable for such treatment.  *See*

9    *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common

10   questions do not predominate over the individual questions so that class certification of the entire

11   action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common

12   issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues").  RGIS

13   does not cite any authority for the proposition that where plaintiffs in a purported class action

14   concede, in briefing related to class certification, that certain claims are not suitable for class

15   treatment, those claims should be dismissed as to the individual plaintiffs.  Nor has the Court found

16   such authority.  Therefore, RGIS' request is denied.

17   **IV.    CONCLUSION**

18       For the reasons stated above, the Motion is GRANTED in part and DENIED in part.

19       IT IS SO ORDERED.

20   Dated:   August 24, 2009

21

22                                                              JOSEPH C. SPERO
                                                                United States Magistrate Judge

23

24

25   [21]In its Opposition to RGIS' motion for decertification, Plaintiffs state as follows:

26       . . .Plaintiffs do not pursue any class claim for waiting time at the meet sites. . . .
         Similarly, at conditional certification, this Court did not certify any class claim that
27       auditors do additional inventory-related work while traveling on company transportation.

28   Docket No. 610, Plaintiffs' Opposition to Decertification, 14: 18-20.