1  Todd M. Schneider (SBN 158253)
   tschneider@schneiderwallace.com
2  Guy B. Wallace (SBN 176151)
   gwallace@schneiderwallace.com
3  Andrew P. Lee (SBN 245903)
   alee@schneiderwallace.com
4  SCHNEIDER, WALLACE,
   COTTRELL BRAYTON & KONECKY, LLP
5  180 Montgomery Street, Suite 2000
   San Francisco, CA  94104
6  Telephone: (415) 421-7100
   Facsimile: (415) 421-7105
7

8  Attorneys for Plaintiffs and Class
   [Additional counsel listed on next page]
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12  TRISHA WREN and CYNTHIA PIPER,        )  Case No.:  3:06-cv-05778 JCS, 3:07-cv-
    et al., individually and behalf of others  )  00032 JCS
13  similarly situated,                   )
                                          )  CLASS AND COLLECTIVE ACTION
14              Plaintiffs,               )
                                          )  **NOTICE OF MOTION AND MOTION
15  vs.                                   )  FOR ORDER (1) GRANTING
                                          )  PRELIMINARY APPROVAL TO
16  RGIS Inventory Specialists, LLC, RGIS,  )  PROPOSED CLASS ACTION
    LLC, Does 1-25 Inclusive,             )  SETTLEMENT, (2) CERTIFYING
17                                        )  PROPOSED SETTLEMENT
                Defendants.               )  CLASSES, (3) APPROVING AND
18                                        )  DIRECTING DISSEMINATION OF
                                          )  NOTICE TO THE CLASS, (4)
19                                        )  SETTING DATE FOR FAIRNESS
                                          )  HEARING AND RELATED DATES;
20                                        )  MEMORANDUM OF POINTS AND
                                          )  AUTHORITIES IN SUPPORT
21                                        )  THEREOF**
                                          )
22                                        )  Date:       July 29, 2010
                                          )  Time:       9:30 a.m.
23  _____)  Judge:      Hon. Joseph C. Spero

24

25

26

27

28

1    Additional counsel:
     David Borgen (SBN 09935)
2    dborgen@gdblegal.com
     Joseph E. Jaramillo (SNB 178566)
3    jjaramillo@gdblegal.com
     James Kan (SBN 240749)
4    jkan@gdblegal.com
     GOLDSTEIN, DEMCHAK, BALLER,
5    BORGEN & DARDARIAN
     300 Lakeside Drive, Suite 1000
6    Oakland, CA  94612
     Telephone: (510) 763-9800
7    Facsimile: (510) 835-1417

8    Peter Schneider (TX Bar No. 00791615), *pro hac vice*
     pschneider@gsnlaw.com
9    Keith Grady (TX Bar No. 00786853), *pro hac vice*
     kgrady@gsnlaw.com
10   GRADY, SCHNEIDER & NEWMAN, L.L.P.
     801 Congress, Suite 400
11   Houston, TX  77002
     Telephone: (713) 228-2200
12   Facsimile: (713) 228-2210

13   A.E. "Bud" Bailey (OR Bar No. 87157, WA Bar No. 33917), *pro hac vice*
     Bbailey@wagelawyer.com
14   J. Dana Pinney (OR Bar No. 75308, WA Bar No. 33919), *pro hac vice*
     JDPinney@wagelawyer.com
15   Jose R. Mata (SBN 83724, OR Bar No. 80305)
     jmata@wagelawyer.com
16   BAILY PINNEY, PC
     1498 SE Tech Center Place, Suite 290
17   Vancouver, WA  98683
     Telephone: (360) 567-2551
18   Facsimile: (360) 567-3331

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 29, 2010, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom A on the 15th Floor of the United States District Court of the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Trisha Wren and Cynthia Piper, *et al*. ("Plaintiffs") will move, and hereby do move, this Court for the relief set forth herein.

First, Plaintiffs move this Court for preliminary approval of a settlement of claims set forth in the Stipulation of Settlement ("Settlement Agreement," attached to the [Proposed] Order Granting Preliminary Approval as Exhibit 1).

Second, Plaintiffs move this Court to certify Settlement Classes to include the Court's previously certified classes of claims arising out of time spent donning equipment and waiting after donning under the FLSA and the laws of California, Oregon, Washington, and Illinois; California claims of unpaid time spent traveling to inventories on company vehicles and failures to comply with California Labor Code section 226; and to include meal and rest period claims under California, Oregon, Illinois, and Washington law for settlement purposes only. Plaintiffs also move the Court to appoint them as class representatives of and to appoint Plaintiffs' Counsel as Class Counsel for these Settlement Classes.

Third, Plaintiffs move this Court for approval to send to the Class Members a proposed Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Class Notice," attached to the [Proposed] Order Granting Preliminary Approval as Exhibit 2).

Fourth, Plaintiffs respectfully move this Court for an Order setting a Fairness Hearing for final approval of the Settlement Agreement and Settlement, consistent with the time frame set forth in this Motion.

///

133973-12

1    The Motion is based on this Notice of Motion and Motion, the attached

2    Memorandum of Points and Authorities, the proposed Order, the pleadings and papers

3    filed in this case, and any oral argument this Court permits.  Defendant RGIS – while

4    not waiving any defenses or conceding facts and solely for the purpose of seeking to

5    resolve this matter through settlement – does not oppose this Motion.

6    Dated:  July 9, 2010                    Respectfully submitted,

7

8                                        /s/
     DAVID BORGEN, SBN 099354
9    JOSEPH E. JARAMILLO (SNB 178566)
     JAMES KAN, SBN 240749
10   GOLDSTEIN, DEMCHAK, BALLER,
        BORGEN & DARDARIAN
11   300 Lakeside Drive, Suite 1000
     Oakland, CA  94612
12   Telephone:  (510) 763-9800
     Facsimile:  (510) 835-1417
13
     ATTORNEYS FOR PLAINTIFFS
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

133973-12

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................1

II.    FACTS ....................................................................................................1

       A.    The Parties' Claims and Defenses........................................1

       B.    The Settlement Classes.........................................................3

       C.    Class Counsel .......................................................................3

       D.    Status of the Litigation Prior to Settlement.........................3

       E.    Settlement Negotiations .......................................................7

       F.    Terms of the Proposed Settlement .......................................7

             1.    Monetary and Injunctive Relief to the Class ............7

             2.    Plan of Allocation .....................................................8

             3.    Attorneys' Fees and Costs .........................................9

             4.    Service Payments to Plaintiffs ................................10

             5.    Release of Claims ....................................................10

III.   CLASS CERTIFICATION AND COLLECTIVE ACTION
       DESIGNATION HAVE ALREADY BEEN GRANTED AND REMAIN
       APPROPRIATE ...................................................................................11

       A.    The Elements of Rule 23(a) are Satisfied ..........................12

             1.    Rule 23(a)(1) ...........................................................12

                   a.    Numerosity .....................................................12

                   b.    Rule 23(a)(2): Commonality .................13

                   c.    Rule 23(a)(3): Typicality......................13

                   d.    Rule 23(a)(4) Adequacy of Representation...........13

       B.    The Requirements of Rule 23(b)(3) Are Satisfied ...................14

             1.    Common Questions Predominate .........................14

             2.    A Class Action is Superior......................................15

             3.    The Court Should Use Its Discretion to Modify Its Previous
                   Meal Period Certification Ruling...........................16

                   a.    California ...............................................16

    b.  Washington, Oregon, and Illinois...........................................17

IV. LEGAL ANALYSIS SUPPORTING PRELIMINARY APPROVAL.................18

  A. Legal Standard.........................................................................................18

  B. The Settlement is Within the Range of Reasonableness............................19

  C. The Settlement is the Product of Non-Collusive, Arms Length, and Informed Negotiations..............................................................................20

  D. Payments to the Named Plaintiff are Fair and Reasonable and Routinely Approved ................................................................................21

  E. The Court Should Preliminarily Approve Class Counsel's Attorneys' Fees and Costs Allocation Because it is Reasonable and Fair...................23

  F. Other Factors Favor Preliminary Approval of the Settlement ...................24

V. THE COURT SHOULD PRELIMINARILY APPROVE THE FLSA SETTLEMENT AS FAIR AND REASONABLE. ...............................................25

VI. LEGAL ANALYSIS SUPPORTING THE NOTICE MATERIALS ...................26

VII. PROPOSED SCHEDULING ORDER ..........................................................28

VIII. CONCLUSION ..........................................................................................28

# **TABLE OF AUTHORITIES**

## FEDERAL CASES

*Amalgamated Transit Union Local 1309, ALF-CIO v. Laidlaw Transit Services, Inc.*, No. 05cv1199-IEG-CAB, 2009 WL 249888 (S.D. Cal. Feb. 2, 2009) ................................................................. 15

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................. 14, 16

*Barrentine v. Arkansas-Best Freight System*,
   450 U.S. 728 (1981) ................................................................. 25

*Browning v. Yahoo!, Inc,.*
   No. C04-01463 HRL, 2007 WL 4105971
   (N. D. Cal. Nov. 16, 2007) ................................................................. 17

*Churchill Village, L.L.C. v. General Electric*,
   361 F.3d 566 (9th Cir. 2004) ................................................................. 26

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................. 18

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ................................................................. 22

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................. 26

*Farrar v. Hobby*,
   506 U.S. 103 (1992) ................................................................. 23

*Fischer v. SJB-P.D. Inc.*,
   214 F.3d 1115 (9th Cir. 2000) ................................................................. 23

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ................................................................. 19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................. *passim*

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................. 23

*Hopson v. Hanesbrands, Inc.*,
   No. CV-08-0844 EDL, 2008 WL 3385452
   (N.D. Cal. Aug. 8, 2008) ................................................................. 17

*Ingram v. The Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ................................................................. 21, 22

*Johnson v. Big Lots Stores, Inc.*,
   561 F. Supp. 2d 567 (E.D. La. 2008) ................................................................. ?

iii

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978)...................................................13

*Leahy v. Chicago*,
  96 F.3d 228 (7th Cir. 1996).....................................................15

*Louie v. Kaiser Foundation Health Plan, Inc.*,
  No. 08cv0795 IEG RBB, 2008 WL 4473183
  (S.D. Cal. Oct. 6, 2008) .........................................................17

*Lynn's Food Stores, Inc. v. U.S.*,
  679 F.2d 1350 (11th Cir. 1982)..........................................25, 26

*Martin v. Fedex Ground Package System, Inc.*,
  No. C 06-6883 VRW, 2008 WL 5478576
  (N.D. Cal. Dec. 31, 2008)........................................................17

*McNamara v. Bre-X Minerals Ltd.*,
  214 F.R.D. 424 (E.D. Tex. 2002) ..........................................28

*Murillo v. Pacific Gas & Electric Co.*,
  266 F.R.D. 468 (E.D. Cal. 2010)...........................................19

*Murillo v. Texas A&M University System*,
  921 F. Supp. 443 (S.D. Tex. 1996) .......................................20

*Nadeau v. Helgemoe*,
  581 F.2d 275 (1st Cir. 1978) ..................................................23

*National Rural Telecomms. Cooperative v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...........................................18

*Officers for Justice v. Civil Service Commission*,
  688 F.2d 615 (9th Cir. 1990)..................................................20

*In re Oracle Securities Litigation*,
  829 F. Supp. at 1179..............................................................24

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) ...............................................................23

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997)..........................................21

*Sandoval v. Tharaldson Employee Management*,
  No. EDVC 08-00482-VAP (OPx), 2009 WL 3877203
  (C.D. Cal. Nov. 17, 2009) ......................................................17

*Singer v. Becton Dickinson & Co.*,
  No. 08-CV-821-IEG (BLM), 2009 WL 4809646
  (S.D. Cal. Dec. 9, 2009) .........................................................17

*Stalnaker v. Novar Corp.*,
  293 F. Supp. 2d 1260 (M.D. Ala. 2003)..................................25

iv

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..................................................................18

*Tex. State Teachers Association v. Garland Independent School District*,
   489 U.S. 782 (1989) ..............................................................................23

*Van Vranken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ........................................................22

*Welling v. Allexy*,
   155 F.R.D. 654 (N.D. Cal. 1994) ...........................................................12

*West v. Circle K Stores, Inc.*,
   No. CIV S-04-0438 WBS GGH, 2006 WL 1652598
   (E.D. Cal. June 13, 2006) .......................................................................17

*Wren v. RGIS Inventory Specialists*,
   2009 WL 2612307 (N.D. Cal. Aug. 24, 2009) ..........................................6

*Wren v. RGIS Inventory Specialists*,
   256 F.R.D. 180 (N.D. Cal. 2009) ..............................................................6

*Wright v. Linkus Enterprises, Inc.*,
   259 F.R.D. 468 (E.D. Cal. 2009) ............................................................17

*Yeagley v. Wells Fargo & Co.*,
   No. 08-15378, 2010 WL 601460 (9th Cir. Feb. 22, 2010) ......................23

STATE CASES

*Bell v. Farmers Insurance Exchange*,
   115 Cal. App. 4th 715 (2004) .................................................................21

*Brinker Restaurant Corp. v. Superior Court, (Hohmbaum)*,
   165 Cal. App. 4th 25, 80 Cal. Reptr. 3d 781 (Cal. Ct. App. 2008)..........14

DOCKETED CASES

*Birch v. Office Depot, Inc.*,
   No. 06cv1690 (S.D. Cal. Sept. 28, 2007) ................................................24

*Butler v. Home Depot, Inc.*.
   No. C 94-4335 SI (N.D. Cal. Jan. 14, 1998) ...........................................22

*Driscoll v. Granite Rock Co.*,
   No. 1-08-CV-103426 (Santa Clara Co. Super. Ct. July 8, 2009).............15

*Katsanos v. Central Concrete Supply*,
   No. HG07-319366 (Alameda Co. Super. Ct. July 24, 2009) ...................15

*Rippee v. Boston Market Corp.*,
   No. 05cv1359 (S.D. Cal. Oct. 10, 2006) ..................................................24

# FEDERAL STATUTES

28 U.S.C. § 1920 ...................................................................................23

29 U.S.C. § 216(b).......................................................................11, 23, 25

42 U.S.C.
   § 1981 .....................................................................................20
   § 1983 .....................................................................................20

Fed. R. Civ. P.
   23 .................................................................................*passim*
   23(a)(1) ........................................................................*passim*
   23(e) ..........................................................................................18

# STATE STATUTES

California Code of Civil Procedure § 1021.5 ..............................................23

California Labor Code
   § 218.5 ...................................................................................23
   § 218.6 ...................................................................................23
   § 226 .................................................................................1, 3, 5, 11
   § 226.7 ............................................................................15, 23
   § 1194 ...................................................................................23

820 Illinois Compiled Statues 105/12(a)). .................................................23

56 Illinois Administrative Code § 210.110 .................................................11

Oregon Revised Statutes § 652.200(2) ......................................................23

Oregon Revised Statutes § 653.055(4) ......................................................23

Oregon Administrative Code § 839-020-0050 ............................................15

Washington Administrative Code § 296-126-092........................................15

Revised Code of Washington § 49.52.070 ..................................................23

# OTHER AUTHORITIES

*Manual for Complex Litigation*,
Fourth (Fed. Judicial Center 2004)..............................................................18


Alba Conte and Herbert Newberg,
*Newberg on Class Actions* (4th Ed.) ..........................................................18

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL - CASE NO.: 3:06-CV-05778 JCS, 3:07-CV-00032 JCS

133973-12

MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Trisha Wren and Cynthia Piper, *et al*. ("Plaintiffs") seek preliminary approval of the proposed $27 million non-reversionary class action settlement of wage and hour claims with Defendant RGIS, LLC ("RGIS").  The Stipulation of Settlement ("Settlement Agreement"), and the Proposed Notice of Class Action Settlement are attached to the [Proposed] Order Granting Preliminary Approval of Class Action Settlement filed herewith.  RGIS concurs with plaintiffs' instant Motion.  The proposed Settlement Agreement satisfies all of the criteria for preliminary settlement approval under Federal Rule of Civil Procedure 23 and the Fair Labor Standards Act ("FLSA") and falls well within the range of reasonableness.  Accordingly, plaintiffs request that the Court grant preliminary approval of the proposed Settlement, certify their proposed settlement classes, approve the proposed notice plan, and schedule a final approval hearing, all as more specifically described below.

## II.   FACTS

A.   The Parties' Claims and Defenses

RGIS provides inventory services to retailers across the country.  To provide those services, defendant's employees travel to its customers' establishments to count the items to be inventoried.  Generally, prior to counting, employees are required to don certain equipment, including an audit machine, a laser scanner and connecting cable, a pouch, paper tags, pen or pencil, and a belt.

Plaintiffs represent several classes of current and former auditor employees[1] employed by RGIS who allege that RGIS has failed to compensate them for all hours worked.  Specifically, plaintiffs alleged that RGIS has failed to pay auditors for time spent on pre-inventory preparation tasks, including donning their counting equipment,

---

[1] "Auditor Employees" comprise the following job titles:  auditors, assistant team leaders, team leaders, and/or associate area managers.

receiving instructions, and time spent waiting for inventories to begin. Plaintiffs sought recovery for these unpaid wages under the FLSA, as well as the state laws of California, Oregon, Washington, and Illinois. In addition, plaintiffs also sought state law penalties (waiting time, Private Attorney General Act ("PAGA"), and inaccurate wage statement) and meal period and rest break claims.[2]

RGIS disputes plaintiffs' allegations in this lawsuit and has expressly denied liability for any of the claims that plaintiffs and their classes have raised. If litigation were to continue, RGIS would aggressively pursue a number of defenses, including but not limited to the following: (1) RGIS properly compensated auditors for all their hours worked; (2) there is no pattern or practice by RGIS of failing to compensate auditors for all time worked; (3) to the extent plaintiffs worked any unpaid time, it would be *de minimis* and therefore non-compensable; (4) all claims should be decertified based upon the record developed up to and at trial; and (5) plaintiffs' claims for state law penalties (*i.e.*, California waiting time penalties stopped accruing upon filing of the initial complaint and RGIS' actions were not willful and that it has a good faith defense) are without merit.

The parties agreed to settle the instant action to avoid the burden, expense, and uncertainty of continued litigation. Settlement Agreement at ¶ 1.3. RGIS denies that any employees were not compensated properly or that it would be found liable if this matter were to proceed to trial. *Id.* at ¶ 1.3.B. Plaintiffs believe that their claims are meritorious and that they would eventually prevail on the merits. Plaintiffs, however, have also considered factors such as the substantial risks of continued litigation and the possibility that the case, if not settled now, might not result in any recovery or might result in a recovery several years from now that is less favorable to class members than that offered

---

[2] Plaintiffs also alleged that RGIS failed to adequately compensate them for time spent traveling to and from inventories on company-provided transportation. However, these claims were dismissed when the Court granted RGIS' motion for summary judgment as to their travel time claims. Dkt. 775.

by the Settlement Agreement.  *Id.* at ¶ 1.3.A.  In light of such considerations, plaintiffs are satisfied that the terms and conditions of the Settlement are fair, reasonable, and adequate and that the Settlement is in the best interests of the settlement classes. Wallace Decl. at ¶ 38.

B.      The Settlement Classes

        Pursuant to the Settlement Agreement, the settlement classes include plaintiffs' previously certified four state classes and FLSA collective action for claims arising out of time spent donning equipment and waiting after donning and California classes for claims of unpaid time spent traveling to inventories on company vehicles and the alleged failure to comply with California Labor Code section 226.  <u>For purposes of settlement only, plaintiffs seek to modify the class definitions to include meal and rest period claims under the state laws of Illinois, Washington, California, and Oregon.</u>  The settlement classes are identifiable from RGIS' payroll records as well as the timely filed consent to join forms of the FLSA opt-in plaintiffs.  RGIS does not oppose certification of these settlement classes for settlement purposes only.

C.      Class Counsel

        Plaintiffs are represented by attorneys from the following law firms:  Todd M. Schneider, Guy B. Wallace, and Andrew P. Lee of Schneider Wallace Cottrell Brayton Konecky, LLP; David Borgen, Joseph E. Jaramillo, and James Kan of Goldstein, Demchak, Baller, Borgen and Dardarian; Peter Schneider and Keith Grady of Grady Schneider; and A.E. Bud Bailey, J. Dana Pinney, and Jose R. Mata of Bailey Pinney & Associates, LLC.

        The Court has already concluded that "Plaintiffs' Counsel is well-qualified to represent Plaintiffs' interests and will advocate vigorously for Plaintiffs."  Dkt. 694, p. 49.  Class counsel's qualifications have been adequately established.

D.      Status of the Litigation Prior to Settlement

        This consolidated action has been extensively litigated over the past four years. Initially, separate class actions (*Wren v. RGIS Inventory Specialists*, filed September 20,

133973-12

2006 and *Piper v. RGIS Inventory Specialists*, filed January 4, 2007), this action was eventually consolidated by the Court on June 6, 2007 and a First Amended Consolidated complaint was filed on June 26, 2007.  The First Amended Consolidated Complaint alleged violations of the overtime and minimum wage provisions of the FLSA, and violations of the straight time, minimum wage, overtime, meal and rest period, and various state penalty provisions (including inaccurate itemized wage statement, late payment of wages, and Private Attorney General Act ("PAGA")) under California, Washington, Oregon, and Illinois law.  Dkt. 88.  Plaintiffs also alleged in their First Amended Consolidated Complaint that such violations constituted unfair business practices under California's Unfair Competition Laws.  *Id.*

On July 21, 2007, plaintiffs moved for conditional certification of their FLSA claims.  On December 19, 2007, the Court granted plaintiffs' motion for conditional certification and certified two opt-in classes:

- "All non-exempt hourly employees of RGIS Inventory Specialists, now operating as RGIS, LLC, who were, are, or will be employed as [A]uditors during the period of three years prior to the commencement of this action through the date of judgment in this action;" and

- "All non-exempt hourly employees of RGIS Inventory Specialists, now operating as RGIS, LLC, who were, are, or will be employed as assistant [] team leaders, team leaders, and assistant or associate area managers of RGIS during the period of three years prior to the commencement of this action through the date of judgment in this action."

Dkt. 216.  Notice was issued to approximately 290,000 current and former employees of defendant and 26,855 individuals submitted consents to participate in the instant action as opt-in plaintiffs.  The Court subsequently dismissed 339 opt-in plaintiffs for a variety of reasons.  Dkt. 746.

From July 2007 through September 2008, the parties engaged in extensive discovery.  Plaintiffs responded to significant discovery.  The 19 named plaintiffs responded to one set of interrogatories and document requests and supplemented their responses at least once.  Moreover, RGIS propounded similar discovery on 390 opt-in

plaintiffs.  Plaintiffs responded to this discovery, producing 270 sets of responses to defendants' discovery requests.  RGIS responded to 15 sets of interrogatories and produced over 100,000 pages of documents in response to plaintiffs' discovery requests. The parties took approximately 50 depositions of the named plaintiffs, class member declarants, corporate designees, regional managers, and district managers, as well as expert witnesses (including depositions of statistical experts Dr. Drogin and Dr. Slottje) on both sides.

On July 10, 2008, plaintiffs filed their motion for class certification pursuant to Federal Rule of Civil Procedure 23.  Dkt. 403.  On October 9, 2008, RGIS filed its motion to decertify the FLSA collective action.  Dkt. 569.  This briefing by both sides included declaration testimony and verified interrogatory responses from over 600 opt-ins covering 280 of the 312 RGIS Districts, as well as policy-based evidence and expert declarations.  Wallace Decl. ¶ 15.

On January 9, 2009, the Court heard plaintiffs' motion for class certification, RGIS' motions to decertify the FLSA collective action and to dismiss various opt-ins, and five separate motions to strike evidence submitted by the parties in conjunction with the class briefing.  On February 6, 2009, the Court entered an order granting in part and denying in part plaintiffs' motion for class certification, certifying the following classes:

- California Class:  All hourly Auditors, Assistant Team Leaders, Team Leaders and Associate/ Assistant Area Managers employed by RGIS in California on or after January 1, 2005 with respect to claims asserted in the Consolidated Complaint arising out 1) donning and related waiting time from the time that equipment is made available for donning, 2) unpaid travel time on company provided transportation from the first hour of travel to and the first hour of travel from an inventory site, and 3) the alleged failure to comply with California Labor Code 226 that employers must provide properly itemized wage statements.

- Oregon Class:  All hourly Auditors, Assistant Team Leaders, Team Leaders and Associate/ Assistant Area Managers employed by RGIS in Oregon on or after September 20, 2000 with respect to claims asserted in the Consolidated Complaint arising out donning and related waiting time from the time that equipment is made available for donning.

133973-12

- ▪ Washington Class: This class consists of all hourly Auditors, Assistant Team Leaders, Team Leaders and Associate/Assistant Area Managers employed by RGIS in Washington on or after September 20, 2003 with respect to claims asserted in the Consolidated Complaint arising out donning and related waiting time from the time that equipment is made available for donning.

- ▪ Illinois Class: This class consists of all hourly Auditors, Assistant Team Leaders, Team Leaders and Associate/Assistant Area Managers employed by RGIS in Illinois on or after January 4, 2004 with respect to claims asserted in the Consolidated Complaint arising out donning and related waiting time from the time that equipment is made available for donning.

*Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 212 (N.D. Cal. 2009), Dkt. 694. The Court declined to decertify the FLSA action with respect to plaintiffs' donning and waiting time claim. *Id*. at 212-13. Pursuant to this decision, class notice was sent to approximately 47,000 current and former employees of defendant in California, Illinois, Oregon, and Washington. Thirty-one individuals timely opted out of the class action. Wallace Decl. ¶ 16.

On August 7, 2009, the Court heard RGIS' motion for partial summary judgment. The Court granted in part and denied in part RGIS' motion, granting summary judgment in favor of RGIS with respect to plaintiffs' claim that the Company's policy of denying compensation for the first hour of travel to and from inventories on company-provided transportation was unlawful, but denying the motion in all other respects on the class claims. *Wren v. RGIS Inventory Specialists*, 2009 WL 2612307, at *1, 24 (N.D. Cal. Aug. 24, 2009), Dkt. 775. Specifically, the Court rejected RGIS' argument that the pre-inventory preparation tasks were not compensable as a matter of law under the FLSA. *Id*. at *24. The Court also rejected RGIS' argument that the donning and waiting time was *de minimis* and therefore non-compensable. *Id*. at *25.

During recent pre-trial motions, the Court denied RGIS' motions to sever the case into five separate trials based on differences between the laws of the five states as well as the FLSA and to decertify plaintiffs' California and Oregon waiting time penalty claims and their California inaccurate wage statement penalty claims while it granted plaintiffs'

pre-trial motion by confirming that its prior holding that donning and waiting time was compensable work under the FLSA also resolved the compensability of donning and waiting time under the state laws of California, Washington, Oregon, and Illinois.  Dkt. 829.

A jury trial was set for August 30, 2010, when the parties reached the proposed settlement.

E.      Settlement Negotiations

The parties engaged in three separate full-day mediation sessions over the course of several months to reach the Settlement Agreement presented here.  The first full-day private mediation session between the parties occurred on October 5, 2009, before David Rotman, of the San Francisco firm of Gregorio, Haldeman, Piazza, Rotman, Frank & Feder.  The parties could not reach an agreement at that mediation session and therefore continued to litigate.  After several months of further litigation, another round of expert witness discovery, motions, and resulting orders, the parties agreed to conduct another private mediation session on April 22, 2010 – this time before retired United States Magistrate Judge Edward A. Infante of JAMS.  The mediation proved successful and after a second session before Judge Infante on May 7, 2010, the parties agreed to the basic terms that serve as the foundation of the instant Settlement Agreement.  Wallace Decl., ¶ 20.  The Agreement was finalized on July 9, 2010.  *See* Settlement Agreement.

F.      Terms of the Proposed Settlement

1.      Monetary and Injunctive Relief to the Class

Each class member who does not opt out is eligible to receive a pro-rata share of the $27 million settlement fund based upon a formula described below.  Wallace Decl. at ¶¶ 21, 24.  Distributions from the $27 million settlement shall be made after deductions for court-approved attorneys' fees, litigation expenses, court-approved service payments to plaintiffs and proposed class representatives, payment to California for recovery of PAGA penalties, and a reserve for the reasonable costs of settlement administration.  Settlement Agreement at ¶¶ 2.1.S, 2.12.A-E.  All settlement proceeds not paid out to

satisfy the foregoing and not distributed to class members (*i.e.*, any uncashed checks and unused reserves for claims administration) will be paid to two charitable organizations to be designated by the parties subject to approval by the Court.  *Id.* at ¶ 2.12.G.  In addition to the $27 million settlement fund, RGIS shall pay the employer's share of all state and federal payroll taxes imposed by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages.  *Id.* at ¶¶ 2.1.S, 2.6.A.

**The Settlement Agreement also includes substantial prospective relief to ensure that auditing employees are properly compensated for all time worked in the future by requiring changes to RGIS' corporate policies to make clear that donning of required audit equipment must occur after auditing employees have already scanned in for purposes of receiving pay.  These corporate changes will include changes to RGIS' employee handbook and field policy manual nationwide as well as training to RGIS' employees regarding these changed company policies.**

2. Plan of Allocation

The Settlement Agreement allows class counsel to develop a plan of allocation for the settlement fund.  Settlement Agreement at ¶ 2.8.  Thus, class counsel have devised an allocation plan, based on a formula carefully designed to fairly compensate all class members who are entitled to receive payments under the Settlement Agreement.

The Settlement Payments shall be calculated as follows: (1) All settlement class members will receive a pro-rata share of the estimated $13 million fund based on their individual wage loss and interest as calculated by Dr. Drogin and Dr. Kakigi from the records produced by RGIS; (2) However, regardless of the individual wage loss calculated by Dr. Drogin and Dr. Kakigi, settlement class members who worked more than 30 days will receive a Settlement Payment of no less than $50; (3) Similarly, regardless of their estimated individual wage loss, settlement class members who worked less than 30 days will receive Settlement Payments of no less than $25. Thus,

133973-12

distribution of the settlement proceeds to settlement class members will be accomplished in an equitable manner.  *See* Wallace Decl., ¶ 41.

The parties agree that $100,000 from the settlement amount will be allocated as penalties payable to the State of California under PAGA.  Settlement Agreement at ¶ 2.8; *see also* Cal. Lab. Code ¶ 2699.

### 3.   Attorneys' Fees and Costs

Prior to the fairness hearing, class counsel will petition the Court for an award of reasonable attorneys' fees in the amount of $11,380,000, which is substantially less than class counsel's current lodestar.  Settlement Agreement at ¶ 2.12.B; Wallace Decl. ¶ 34. Class counsel have litigated this complex and heavily disputed action for almost four years.  During this time, class counsel reviewed hundreds of thousands of pages of documents produced by RGIS; interviewed over 20,000 current and former employees; assisted over 600 class members in preparing sworn declarations or discovery responses; responded to written interrogatories and requests for production of documents; obtained conditional certification of a nationwide FLSA class; obtained Rule 23 class certification for four state classes; defeated a motion to decertify the FLSA collective action; partially defeated several motions for summary judgment filed by RGIS; used substantial expert testimony and conducted extensive expert discovery of both parties' experts; defeated several pre-trial motions that included renewed challenges to the class certification of various claims as well as motions to sever the action into separate trials; and otherwise aggressively pursued the case.  Wallace Decl. at ¶ 34.  The requested lodestar fee award is reasonable and should be preliminarily approved.  RGIS will not oppose such a fee application.  Settlement Agreement at ¶ 2.12.B.  In addition, plaintiffs will request approval of reimbursement of $2.2 million in costs and litigation expenses incurred on behalf of the settlement class members over the course of this litigation (including deposition transcripts, travel, expert witness fees, mediation expenses, etc.).  Any costs or attorneys fees not awarded by the Court, if any, would revert to the class fund and be distributed pro-rata to the settlement class members.

4.     Service Payments to Plaintiffs

Plaintiffs and class representatives Kevin Barnes, Margaret Cruz Boze, Kimberly Cassara, Lisa Cunningham-Gibson, Jewell Gatlin, Kathlene Feige, Norma Garcia, Joan Johnson, Margaret Martinez, Melanie Manos, Carol Molmen, Michelle Pease, Cheryl Pierson, Cynthia Piper, Sally Rosenthal, Tephine Saites, Tammy Schnars, Rabecka Sheldranti, Victoria Thompson, Nicole Verbick, Brent Whitman, Latonia Williams, Trisha Wren and Michele Zustak will apply to the Court to receive $5,000 each from the settlement fund for services rendered to the classes.  Settlement Agreement ¶¶ 2.1.B, 2.12.D; Wallace Decl., ¶¶ 27-28.  These amounts are separate from any other amount to which these plaintiffs might be entitled under the Settlement Agreement.  Wallace Decl., ¶ 27.  The above service payments are intended to recognize the time and effort these individuals expended on behalf of the classes and the risks they incurred during the course of this litigation.

5.     Release of Claims

In exchange for the $27 million settlement fund and other relief described above, this action will be dismissed with prejudice and class members who do not opt out will fully release and discharge RGIS from any and all claims asserted in the lawsuit or that arise from the facts alleged in the litigation and that accrued during any time that class members worked as an auditor employee from the maximum applicable limitations period for each claim through the date that the Court enters a final order granting final approval of the settlement.  Settlement Agreement, ¶ 2.9.

Specifically, the Settlement Agreement provides that:

A.     For and in consideration of the mutual promises contained herein, Plaintiffs and the Settlement Class Members fully and finally release Defendant from any and all liability for all claims that were asserted, or that could have been asserted, in the instant action.  This includes any and all claims, actions or causes of action, demands, obligations, guarantees, expenses, attorney's fees, damages, or costs, alleged in or based upon the First Amended Consolidated Complaint herein (dkt. no. 88) from the maximum applicable limitations period for each claim through the date that the Court enters a final order granting final approval of the settlement, including, but not limited to:  (1) the alleged failure to pay straight time

wages for all off-the-clock work and all on-the-clock work under any state, local, or federal law; (2) the alleged failure to pay the required minimum wage for all off-the-clock work and all on-the-clock work under any state, local, or federal law; (3) the alleged failure to pay overtime compensation for all off-the-clock work and all on-the-clock work under any state, local, or federal law; (4) the alleged failure to provide proper and adequate meal periods and rest breaks under any state, local or federal law; (5) the alleged failure to provide all wages, rest breaks, and meal periods required as a matter of contract; (6) the alleged breach of covenant of good faith and fair dealing by failing to provide all rest breaks and meal periods required as a matter of contract; (7) the alleged failure to pay all wages due upon termination under any state, local, or federal law; (8) the alleged failure to pay penalties under California Labor Code sections 203 and 2698 *et seq.* (Private Attorney General Act) and Oregon Revised Statutes section 652.150; (9) the alleged failure to issue proper itemized wage statements under California Labor Code section 226; (10) all claims for restitution and/or other relief under California Business and Professions Code section 17200 *et seq.* as a result of or based upon the foregoing alleged legal violations; (11) all claims for injunctive relief based upon the foregoing alleged legal violations; (12) all claims for liquidated damages based upon the foregoing alleged legal violations; (13) the alleged failure to pay pre-judgment interest on any unpaid wages, liquidated damages, penalties, or any other damages based on the foregoing alleged violations; (14) litigation costs and attorney's fees in connection with the instant action; and (15) any other claims of any kind alleged in the instant action.

B.    This waiver and release of claims encompasses both known and unknown claims as described above in section 2.9.A. of this Agreement. Specifically, Settlement Class Members are deemed to waive the provisions of section 1542 of the California Civil Code, which provides as follows:

> A general release does not extend to claims, which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Thus, if the facts relating to this settlement are found hereafter to be different from the facts now believed to be true, the release of claims set forth herein will remain fully effective.

III.    CLASS CERTIFICATION AND COLLECTIVE ACTION DESIGNATION HAVE ALREADY BEEN GRANTED AND REMAIN APPROPRIATE

The Court should certify plaintiffs' proposed settlement classes because it has

---

11

133973-12

already certified most of these classes and they all satisfy the requirements of Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b).  The Court has already certified plaintiffs' class claims arising out of unpaid donning of pre-shift audit equipment and associated waiting time under Rule 23 for the four state classes as well as class claims for unpaid travel time on company vehicles and the alleged failure to provide itemized wage statements under California law.  Dkt. 694, pp. 50-51.  In addition, the Court denied defendant's motion to decertify plaintiffs' nationwide collective action for these same donning and waiting time claims brought under the FLSA – reaffirming that the approximately 27,000 opt-in plaintiffs were similarly situated as to those claims.  Dkt. 694, pp. 52-54.  The Court should certify these claims as part of plaintiffs' proposed settlement classes.

In addition to the already certified claims, plaintiffs seek to modify the settlement classes to include state law claims for alleged meal period and rest break violations for settlement purposes only.  These settlement classes are appropriate because they satisfy the requirements of Rule 23(a) and 23(b)(3) in the settlement context.  When presented with a request for certification of a settlement class, the court's first step is to determine whether the proposed settlement class satisfies the requirements of Rule 23(a) and one of the subsections of Rule 23(b) – here Rule 23(b)(3).  Applying these standards, the Court should certify the proposed settlement classes.

A.   The Elements of Rule 23(a) are Satisfied

     1.   Rule 23(a)(1)

          a.   Numerosity

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be "impracticable."  *See* Fed. R. Civ. P. 23(a)(1).  Numerosity is satisfied with as few as fourteen class members.  *See Welling v. Allexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994).  Here, the Court has already held that the approximately 17,000 California class members, 3,000 Washington class members, 1,500 Oregon class

1    members, and 10,000 Illinois class members – all of whom are identifiable from RGIS'

2    payroll records – are sufficiently numerous to satisfy Rule 23(a)(1).  Dkt. 694, pp. 36-38.

3                    b.   Rule 23(a)(2):  Commonality

4          Rule 23(a) also requires "questions of law or fact common to the class."  Fed. R.

5    Civ. P. 23(a)(2).  The commonality requirement is permissively construed by the Ninth

6    Circuit such that the "existence of shared legal issues with divergent factual predicates is

7    sufficient, as is a common core of salient facts coupled with disparate legal remedies

8    within the class."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998).

9    Plaintiffs' proposed meal period and rest break settlement classes share a number of

10   common questions of law and fact, including, but not limited to, whether RGIS had a

11   policy of failing to provide meal and rest periods and what is the proper legal standard

12   for an employer's obligation to provide meal and rest periods.  These common questions

13   establish Rule 23(a) commonality.

14                   c.   Rule 23(a)(3):  Typicality

15         Plaintiffs must establish that the "claims or defense of the representative parties

16   are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23 (a)(3).  This is a

17   permissive standard that is met so long as the representative claims "are reasonably co-

18   extensive with those of absent class members."  *Hanlon*, 150 F.3d at 1020.  Here, the

19   named plaintiffs seeking to represent these meal period and rest break state law classes

20   satisfy the typicality requirement, because they have held the same positions as class

21   members and assert the same types of injury arising from the same conduct by RGIS.

22                   d.   Rule 23(a)(4) Adequacy of Representation

23         Rule 23 also requires that "the representative parties fairly and adequately protect

24   the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To satisfy this element, plaintiffs

25   must establish that:  (1) the class representatives do not have a conflict of interest; and

26   (2) class counsel will adequately represent the interests of the class.  *See Lerwill v.

27   Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  For the same reasons

28

13

1  that supported a finding of adequacy of representation for the certified California and

2  Washington donning and waiting time claims, there is no conflict of interest between the

3  class representatives and the proposed settlement classes as to the meal period and rest

4  break claims.  Furthermore, plaintiffs and class counsel are well qualified and willing to

5  vigorously prosecute the interests of the class as to these settlement class meal period

6  and rest break claims as previously held by this Court.  Dkt. 694, pp. 48-49.

7  B.     The Requirements of Rule 23(b)(3) Are Satisfied

8      Having met the four prerequisites for class certification in Rule 23(a), plaintiffs

9  submit that the settlement meal period and rest break classes also satisfy Rule 23(b)(3).

10  Rule 23(b)(3) certification is proper when common questions "predominate over any

11  questions affecting only individual members" and class resolution is "superior to other

12  available methods for the fair and efficient resolution of the controversy."  Fed. R. Civ.

13  P. 23(b)(3).  Plaintiffs contend that both Rule 23(b)(3)'s predominance and superiority

14  requirements are satisfied for purposes of certifying settlement classes.

15      1.     Common Questions Predominate

16      "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

17  sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. Inc. v.*

18  *Windsor,* 521 U.S. 591, 623 (1997).  In other words, a "common nucleus of facts and

19  potential legal remedies" must "dominate [ ] this litigation" to support a predominance

20  finding.  *Hanlon*, 150 F.3d at 1022.

21      For purposes of this settlement, the predominance requirement is satisfied if the

22  Supreme Court holds in *Brinker*[3] that employers are obligated to "ensure" that workers

23  take meal periods and rest breaks, rather than "provide" meal periods and rest breaks,

24  because the common question of whether RGIS fulfilled such an obligation is more

25  readily resolved on a class basis without the need for individualized inquiries.  Under

26

27  [3]  *Brinker Rest. Corp. v. Super. Ct.* (Hohmbaum), 165 Cal. App. 4th 25, 80 Cal. Rptr. 3d
781 (Cal. Ct. App. 2008), *review granted* 196 P.3d 216, 85 Cal. Rptr. 3d 688 (Cal. Sup.

28  Ct. Oct. 22, 2008) (S166350).

state laws, RGIS is required to "provide" or "allow" meal periods and rest breaks.  *See* Cal. Labor Code § 226.7; Wash. Admin. Code 296-126-092; and Or. Admin. Code § 839-020-0050.[4]

Moreover, this finding of predominance is consistent with recent decisions in which courts have certified similar meal period and rest break classes after finding that common issues predominated.  *See Amalgamated Transit Union Local 1309, ALF-CIO v. Laidlaw Transit Servs, Inc*., No. 05cv1199-IEG-CAB, 2009 WL 249888 (S.D. Cal. Feb. 2, 2009); *Driscoll v. Granite Rock Co*., No. 1-08-CV-103426, Order re:  Mot. for Class Certification (Santa Clara County Super. Ct. July 8, 2009); *Katsanos v. Cent. Concrete Supply Co.*, No. HG07-319366, Order Grant. Mot. of Pls' for Class Certification (Alameda County Super. Ct. July 24, 2009).[5]

Finally, since Illinois essentially follows federal wage and hour law, there is no obligation to provide meal periods under Illinois law.  However, if an unpaid meal period is provided, employees must receive the predominant benefit of the meal period for it properly to be unpaid.  *See Leahy v. Chicago*, 96 F.3d 228, 231 n.2 (7th Cir. 1996).  For purposes of settlement, this arguably presents a predominant common question of fact.

      2.   <u>A Class Action is Superior</u>

Rule 23(b)(3)'s final requirement is "that the class action be superior to other methods of adjudication."  Plaintiffs contend that this requirement is satisfied because there is no indication that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason. Fed. R. Civ. P. 23(b)(3)(A)-(D).  Furthermore, as the Court

---

[4] We understand that the Court has ruled that RGIS is required only to provide meal periods under California law.  Dkt. 694, p. 45-46; Dkt. 775, pp. 24-25.  But since the issue has not yet been decided by the Supreme Court, the parties believe that it is permissible for purposes of this settlement to assume that the "ensure" standard will prevail.

[5] Copies of all docketed orders can be found in Plaintiffs' Appendix of Unreported Authorities, filed herewith.

1   has previously recognized, class members may lack the resources to secure experienced

2   and qualified representation or to see litigation through to completion.  Dkt. 694, p. 49.

3   In addition, the "alternative – hundreds or even thousands of individual actions – is not

4   realistic."  *Id*.  Accordingly, plaintiffs contend that certification of a settlement class is

5   superior to any other method of resolving this matter, since it will promote economy,

6   expediency, and efficiency.

7           3.      The Court Should Use Its Discretion to Modify Its Previous Meal Period

8                   Certification Ruling

9                   a.      California

10          The Court's earlier denial of class certification for plaintiffs' California meal

11  period claims should be vacated because plaintiffs' proposed settlement class is based on

12  the assumption that the California Supreme Court will adopt the "ensure" standard for

13  meal periods.

14          Courts retain the authority to reconsider certification decisions throughout the

15  litigation of a case – even as late as after trial has concluded.  *See* Dkt. 694, p. 46, n. 25

16  (recognizing that its class certification decision as to the California meal period claims

17  "may be revisited at a later time").  The exercise of this discretion is appropriate here

18  because the parties have agreed for settlement purposes only to assume that the "ensure"

19  standard will be adopted by the Supreme Court, while at the same time recognizing the

20  significant risk that the Court will reject this standard in favor of the "provide" standard.

21  In addition, even if the parties assumed that the "provide" standard should apply to the

22  meal period claim for purposes of settlement, it is significant to note that many of the

23  Rule 23(b)(3) challenges that make certification improper for purposes of litigation do

24  not apply to certification solely for settlement purposes.  *Amchem*, 521 U.S. at 620.

25  "Confronted with a request for settlement-only class certification, a district court need

26  not inquire whether the case, if tried, would present intractable management problems,

27  [], for the proposal is that there be no trial."  *Id*.

28          Thus, it is not uncommon for courts to reverse denials of class certification based

16

133973-12

upon Rule 23(b) concerns or permissively grant class certification as a matter of first impression when presented with requests to certify settlement only classes due, in large part, to the unique circumstances raised by settlement. *See Browning v. Yahoo!, Inc*., No. C04-01463 HRL, 2007 WL 4105971, at *9 (N.D. Cal. Nov. 16, 2007) (certifying settlement class and reversing prior denial of class certification based on Rule 23(b)(3) factors).

Courts in the Ninth Circuit routinely grant conditional class certification under Rule 23(b)(3) for settled meal period and rest break class claims. *See Singer v. Becton Dickinson & Co*., No. 08-CV-821-IEG (BLM), 2009 WL 4809646, at *6 (S.D. Cal. Dec. 9, 2009) (certifying settlement meal and rest period classes); *Martin v. Fedex Ground Package Sys., Inc*., No. C 06-6883 VRW, 2008 WL 5478576, at *10 (N.D. Cal. Dec. 31, 2008) (meal period class for settlement only); *Sandoval v. Tharaldson Employee Mgmt.*, No. EDVC 08-00482-VAP (OPx), 2009 WL 3877203, at *5 (C.D. Cal. Nov. 17, 2009) (conditionally certifying meal period claims for settlement purposes); *Wright v. Linkus Enter., Inc*., 259 F.R.D. 468, 473-74 (E.D. Cal. 2009) (same); *West v. Circle K Stores, Inc*., No. CIV S-04-0438 WBS GGH, 2006 WL 1652598, at *9 (E.D. Cal. June 13, 2006) (same); *Louie v. Kaiser Found. Health Plan, Inc*., No. 08cv0795 IEG RBB, 2008 WL 4473183, at *5 (S.D. Cal. Oct. 6, 2008) (same); *Hopson v. Hanesbrands, Inc*., No. CV-08-0844 EDL, 2008 WL 3385452, at *2 (N.D. Cal. Aug. 8, 2008) (same).

For these reasons, the Court should exercise its discretion to rescind its earlier denial of certification and certify plaintiffs' proposed settlement class of California meal period and rest break claims.

### b.   Washington, Oregon, and Illinois

The Court should also reconsider its denial of class certification as to plaintiffs' Washington, Oregon, and Illinois meal period claims because this earlier decision was based upon a failure by plaintiffs to provide a "meaningful discussion" of the legal requirements surrounding the provision of meal periods under these state laws and not whether the elements of Rule 23(a) or (b)(3) were satisfied. Dkt. 694, p. 45. Because

1   the Court has since addressed the applicable legal standard under these state laws for

2   plaintiffs' individual meal period claims in its Motion for Summary Judgment Order

3   [Dkt. 775], it can and should assess the propriety of certifying plaintiffs' proposed

4   Washington, Oregon, and Illinois meal period settlement classes under Rule 23(a) and

5   (b).  As explained above, plaintiffs' meal period and rest break settlement classes for

6   these three states satisfy all the requirements of Rule 23 and thus, should be certified.[6]

7          IV.     LEGAL ANALYSIS SUPPORTING PRELIMINARY APPROVAL

8   A.     Legal Standard

9          A class action may not be compromised or settled without the approval of the

10  court.  *See* Fed. R. Civ. Proc. 23(e).  This process safeguards the procedural due process

11  rights of class members and enables the court to fulfill its role as the guardian of the

12  class' interests.  *See* Alba Conte and Herbert Newberg, *Newberg on Class Actions* (4th

13  Ed.) § 11:24, *et seq.* (2002) ("Newberg"); *Manual for Complex Litigation*, Fourth (Fed.

14  Judicial Center 2004) ("*Manual*") § 21.63.  The Ninth Circuit has declared that a strong

15  judicial policy favors settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955

16  F. 2d 1268, 1276 (9th Cir. 1992).  Moreover, approval of settlements negotiated after

17  class certification with court-designated class representatives, as here, is subject to less

18  stringent judicial scrutiny than those that involve settlement classes.  *See Hanlon*, 150 F.

19  3d at 1026.

20         Rule 23(e) requires the Court to determine whether the proposed class action

21  settlement is "fundamentally fair, adequate, and reasonable."  *Staton v. Boeing Co.*, 327

22  F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1026).  Such approval

23  "involves a two-step process in which the Court first determines whether a proposed

24  class action settlement deserves preliminary approval and then, after notice is given to

25

26  _____
    [6]  The parties note that the Court dismissed the named plaintiffs' meal and rest period
    claims under Illinois and Oregon law in its prior motion for summary judgment order.
27  Dkt. 775, pp. 25-28.  Nevertheless, for purposes of this settlement, the parties seek
    certification of these classes to permit the parties to conclusively resolve and obtain a
28  comprehensive release of these claims.

1   class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v.*

2   *DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also Manual* § 21.632.  At

3   the preliminary approval stage – the present stage in this matter – the court need only

4   "determine whether the proposed settlement is within the range of possible approval."

5   *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (quoting

6   *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982)); *see* Newberg § 11.41.  This

7   is a minimal standard.  Provided the preliminary evaluation of the settlement does not

8   "disclose[] grounds to doubt its fairness or other obvious deficiencies, such as unduly

9   preferential treatment of class representatives or of segments of the class, or excessive

10  compensation for attorneys," the court should preliminarily approve the settlement.

11  *Murillo*, 266 F.R.D. at 479 (citation omitted); *see* Newberg § 11.25; *Manual* § 21.632.

12  B.      The Settlement is Within the Range of Reasonableness

13          The Agreement allocates approximately $13 million for distribution to individual

14  class members (not including attorney's fees/costs, costs of the claims administrator and

15  notice, service awards, or payments for PAGA to the State of California).  Members of

16  the settlement classes will receive a fixed pro rata portion of the maximum settlement

17  amount based on their work as an auditor employee for RGIS during the relevant time

18  period for their respective class.  Settlement class members will receive a minimum

19  payment of $25 and an average recovery of over $200 per class member.  Payments will

20  be distributed to all FLSA opt ins and members of the Rule 23 settlement classes who do

21  not timely opt out of the settlement.  The settlement amount is non-reversionary.  Thus,

22  any unpaid claims will be allocated to *cy pres* funds.  Class members will receive their

23  designated share of the settlement so long as they do not submit a written request to opt-

24  out.  In addition, members of the settlement classes who are current RGIS employees

25  will receive the continuing benefit of prospective relief in the form of a clear written

26  company policy that donning and waiting time at inventories is compensable work time,

27  effective communication of this policy to all workers, training of all relevant managers

28  on this policy, and explicit inclusion of this policy in the RGIS employee handbook and

1  field policy manuals.  The parties have not attempted to monetize the value of this

2  prospective relief, but clearly there is substantial economic value to this component of

3  the settlement above the $27 million settlement amount.  The settlement is well within

4  the range of reasonableness.

5  C.   The Settlement is the Product of Non-Collusive, Arms Length, and Informed
     Negotiations

6

7       "There is an initial presumption of fairness when a proposed class settlement was

8  negotiated at arm's length by counsel for the class."  *Murillo v. Texas A&M Univ. Sys.*,

9  921 F. Supp. 443, 445 (S.D. Tex. 1996) (approving a class action settlement of claims

10 brought on behalf of farm workers for alleged violations of the FLSA, 42 U.S.C. § 1983,

11 and the Migrant and Seasonal Agricultural Worker Protection Act).  Further, courts must

12 give "proper deference to the private consensual decision of the parties."  *Hanlon*, 150

13 F.3d. at 1027.  Settlement is the preferred means of dispute resolution, particularly in

14 complex class litigation.  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

15 625 (9th Cir. 1990) (class action suit challenging allegedly discriminatory employment

16 practices by a police department under 42 U.S.C. §§ 1981 and 1983).  "[T]he court's

17 intrusion upon what is otherwise a private consensual agreement negotiated between the

18 parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment

19 that the agreement is not the product of fraud or overreaching by, or collusion between,

20 the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

21 adequate to all concerned."  *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice* at

22 625).

23       Here, counsel for both parties have conducted a thorough investigation into the

24 facts and diligently litigated the class members' claims against RGIS.  *See* Wallace Decl.

25 ¶¶ 12-18, 34, 40.  This matter has been the subject of prolonged continuous litigation.

26 *Id.*  As noted above, extensive discovery and motion practice has allowed class counsel –

27 who are very experienced wage and hour class action attorneys – to assess the strengths

28 and weaknesses of the claims against defendant and the benefits of the proposed

Settlement under the circumstances of this action.  *Id*. at ¶ 40.  The parties negotiated the proposed Settlement in good faith and at arms length.  *Id.* at ¶ 39.  The parties participated in multiple mediations, including two days supervised by retired federal magistrate judge Hon. Edward A. Infante.  *Id*.  The settlement amount and prospective relief provide a meaningful result for the settlement classes and individual class members.  *Id.* at ¶¶ 41-42.  The risk, expense, complexity, and likely duration of further litigation if the case is not settled further support settlement at this time.  *Id.* at ¶ 44.  Moreover, the Settlement was recommended by an experienced neutral mediator, the retired Honorable Edward A. Infante.  *Id*. at ¶ 45.

D.     Payments to the Named Plaintiff are Fair and Reasonable and Routinely Approved

From the maximum settlement amount of $27 million, service awards of $5,000 will be paid to plaintiffs Kevin Barnes, Margaret Cruz Boze, Kimberly Cassara, Lisa Cunningham-Gibson, Kathlene Feige, Norma Garcia, Margaret Martinez, Melanie Manos, Michelle Pease, Cheryl Pierson, Cynthia Piper, Sally Rosenthal, Tephine Saites, Tammy Schnars, Rabecka Sheldranti, Victoria Thompson, Nicole Verbick, Brent Whitman, and Trisha Wren, and class representatives Jewell Gatlin, Joan Johnson, Carol Molmen, Latonia Williams, and Michele Zustak, which is less than one percent of the maximum settlement amount.  Named plaintiffs in class action litigation are eligible for reasonable participation payments and the amount requested here is reasonable.  *See Staton*, 327 F.3d at 977.  "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation."  *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving $300,000 payment to each class representative in employment action settling before class certification) (quoting *In Re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) (approving incentive payments up to $85,000 for named plaintiffs in employment action settling prior to class certification); *see Bell v. Farmers Ins. Exch.*,

115 Cal. App. 4th 715, 726 (2004) (upholding "service payments" to named plaintiffs); *Manual* § 21.62 n. 971 (noting service awards are warranted); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action); *Butler v. Home Depot, Inc.*, No. C 94-4335 SI (N.D. Cal. Jan. 14, 1998) (named plaintiff Wilson received $31,155 in recognition of the risk and potential liability related to being plaintiff and in consideration of the time and effort expended in the litigation).

The factors courts use in determining the amount of service awards include (1) a comparison between the service awards and the range of monetary recovery available to the class; *see Ingram*, 200 F.R.D. at 694; *Roberts*, 979 F. Supp. at 204; (2) time and effort put into the litigation; *see Van Vranken*, 901 F. Supp. at 299; *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); (3) whether the litigation will further the public policy underlying the statutory scheme, *see Roberts*, 979 F. Supp. at 201 n.25; and (4) risks of retaliation, *see id.* at 202, *Cook*, 142 F.3d at 1016.

All of the above factors support the service award requested here. The relatively small service award of $5,000 to each plaintiff is intended to compensate them for the critical role they played in this case, the substantial time, effort, and risks undertaken in helping secure the result obtained on behalf of the settlement classes. In agreeing to serve as class representatives, they formally agreed to accept the responsibilities of representing the interests of all class members. Wallace Decl. ¶ 28. They answered discovery, provided documents, provided witnesses, assisted class counsel in preparing for depositions and in seeking discovery, and prepared for and sat for their depositions. *Id.* They assisted in preparing and evaluating the case for mediation, and evaluated and approved the proposed settlement on behalf of the settlement classes. *Id.* Finally, RGIS does not oppose payment of $5,000 as service awards to these individuals. *Id.* at ¶ 29.

1   E.     The Court Should Preliminarily Approve Class Counsel's Attorneys' Fees and
2          Costs Allocation Because it is Reasonable and Fair

3          Class counsel are entitled to a reasonable award of attorneys' fees and costs.  The

4   FLSA provides that "[t]he court in [an FLSA] action *shall*, in addition to any judgment

5   awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the

6   defendant, and costs of the action."  29 U.S.C. § 216(b) (emphasis added); 28 U.S.C. §

7   1920.  Similarly, plaintiffs are entitled to an award of reasonable attorneys' fees and

8   costs under California, Washington, Oregon, and Illinois laws.  *See* California (Cal. Lab.

9   Code §§ 218.5, 218.6, 226.7, 1194 and Cal. Civ. Proc Code § 1021.5); Washington

10  (Wash. Rev. Code § 49.52.070); Oregon (Oregon Rev. Stat. §§ 652.200(2), 653.055(4));

11  and Illinois (Ill. Comp. Stat. 105/12(a)).

12         A plaintiff prevails for purposes of a fee award, if she "has succeeded on 'any

13  significant issue in litigation which achieve[d] some of the benefit the parties sought in

14  bringing suit.'"  *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782,

15  791-792 (1989) (*quoting Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978));

16  *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (same).  A plaintiff is a prevailing

17  party where she obtains a successful settlement.  *See Farrar v. Hobby*, 506 U.S. 103, 111

18  (1992); *Yeagley v. Wells Fargo & Co*., No. 08-15378, 2010 WL 601460, at *1 (9th Cir.

19  Feb. 22, 2010).  Here, plaintiffs are entitled to recover their reasonable attorneys' fees

20  and costs because they obtained a successful settlement.

21         Traditionally, the lodestar method is used to determine an award of reasonable

22  fees.  *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).  Moreover, courts

23  routinely exercise their discretion to calculate attorneys' fees by applying the lodestar

24  method where the settlement does not use common-fund principles.  *See Yeagley*, 2010

25  WL 601460, at *1; *Staton*, 327 F.3d at 972; *Hanlon*, 150 F.3d at 1029.  To calculate the

26  lodestar, the court multiplies the number of hours reasonably expended on the litigation

27  by a reasonable hourly rate.  *Id*.  There is a strong presumption that the lodestar figure

28

1    represents the reasonable fee. *Pennsylvania v. Del. Valley Citizens' Council for Clean*

2    *Air*, 478 U.S. 546, 564 (1986).

3          Here, the class counsel seeks $11,380,000 for a reasonable award of attorneys'

4    fees and $2,200,000 for taxable and litigation related expenses advanced by class

5    counsel.  This fee amount is far less than class counsel's incurred lodestar to date and

6    therefore is presumptively reasonable.  Wallace Decl., ¶ 34.  Moreover, as a cross check,

7    the requested amount for attorneys' fees falls within the typical range of 25% to 50%

8    awarded in common fund cases, and is commensurate with other cases litigated by class

9    counsel. *See, e.g., Birch v. Office Depot, Inc.*, Case No. 06cv1690 DMS (WMC), Doc.

10   No. 48, ¶ 13 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million wage and

11   hour class action); *Rippee v. Boston Mkt. Corp.*, Case No. 05cv1359 BTM (JMA), Doc.

12   No. 70, at 7-8 (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million wage

13   and hour class action).  Accordingly, the Court should preliminarily approve class

14   counsel's requested fees.[7]

15   F.    Other Factors Favor Preliminary Approval of the Settlement

16         Other factors that courts consider in assessing a settlement proposal include:  (1)

17   the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration

18   of further litigation; (3) the risk of maintaining class status throughout the trial; (4) the

19   amount offered in settlement; (5) the extent of discovery completed and the stage of the

20   proceedings; (6) the experience and views of counsel; (7) the presence of a government

21   participant; and (8) the reaction of the class members to the proposed settlement. *See*

22   *Hanlon*, 150 F.3d at 1026; *see also In re Oracle Sec. Litig.*, 829 F. Supp. at 1179.  The

23   district court must explore these factors comprehensively, but "the decision to approve or

24   reject a settlement is committed to the sound discretion of the trial judge." *Hanlon*, 150

25   F.3d at 1026.

26   _____

27   [7]  Plaintiffs will more thoroughly brief the reasonableness of their requested attorneys'
     fees and costs award in a later fees and costs application to filed along with their motion
28   for final approval.

133973-12

The Court will find, after evaluating the settlement in light of the factors set forth above, that the settlement is fair and should be preliminarily approved.  Plaintiffs faced numerous obstacles to recovery, including anticipated litigation over jury instructions, challenges to their expert witnesses, threatened decertification motion's as to the state law classes and the federal collective action, and, if successful at trial, further risk and delay arising from likely appeals.  As proposed, the settlement provides prompt and certain payments to the classes at an average value calculated to equal their back pay, interest, and liquidated damages arising from 15 minutes of donning/ waiting time, but no additional penalties (other than $100,000 to the State of California for PAGA).  In addition, plaintiffs obtained prospective relief in the form of reformed policies.  The outcome of litigation is uncertain.  Plaintiff and the classes face certain risks in going forward.  As part of the settlement process, RGIS' counsel and class counsel reviewed voluminous documents to calculate with reasonable certainty RGIS' total exposure and evaluate whether the proposed settlement is fair and reasonable.  Further, approval of the settlement is proposed by experienced and reputable employment class action counsel.  Wallace Decl. ¶¶ 3-9.  Class counsel believe that the settlement is fair, reasonable, and adequate and is in the best interest of the class members in light of all known facts and circumstances, including the risk of significant delay and defendant's asserted defenses.  *Id*. at ¶ 43.  When considered together, these factors support preliminary approval of the proposed class action settlement under Rule 23(e).

## V.     THE COURT SHOULD PRELIMINARILY APPROVE THE FLSA SETTLEMENT AS FAIR AND REASONABLE.

The FLSA was enacted to protect workers from the poor wages and oppressive working hours that can result from unequal bargaining power between employers and employees.  *See Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 739 (1981); *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1262 (M.D. Ala. 2003).  When an employee brings a private action against an employer for back wages under 29 U.S.C. § 216(b), the parties must present any proposed settlement to the district court for

1    approval.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir.

2    1982).  If the district court concludes that the settlement is a "fair and reasonable

3    resolution of a *bona fide* dispute over FLSA provisions," it may enter a stipulated

4    judgment.  *Id.* at 1355; *Stalnaker*, 293 F. Supp. 2d at 1263.

5        Settlements of FLSA claims in the context of a suit brought by employees are

6    permissible because initiation of the action "provides some assurance of an adversarial

7    context."  *Lynn's Food Stores*, 679 F.2d at 1354.  In such instances, the employees are

8    likely to be represented by an attorney who can protect their rights under the statute, and

9    thus, "the settlement is more likely to reflect a reasonable compromise of disputed issues

10   than a mere waiver of statutory rights brought about by an employer's overreaching."  *Id.*

11   If the settlement reflects a reasonable compromise over issues, "such as FLSA coverage

12   or computation of back wages," that are actually in dispute, the district court can approve

13   the settlement in order to promote the policy of encouraging settlement of litigation.  *Id.*

14       As discussed above, this settlement, which includes settlement of FLSA claims, is

15   fair and reasonable and should be preliminarily approved by the Court.

16   VI.    LEGAL ANALYSIS SUPPORTING THE NOTICE MATERIALS

17       Under Rule 23(e), the court must "direct notice in a reasonable manner to all class

18   members who would be bound by the propos[al]."  Fed. R. Civ. P. 23(e)(1).  The notice

19   standard is satisfied here.  The notice provided to members of a class certified under

20   Rule 23(b)(3) must be the "best notice that is practicable under the circumstances."  Fed.

21   R. Civ. P. 23(c)(2)(B).  Notice is satisfactory "if it generally describes the terms of the

22   settlement in sufficient detail to alert those with adverse viewpoints to investigate and to

23   come forward and be heard."  *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575

24   (9th Cir. 2004) (internal citations omitted).  Moreover, notice that is mailed to each

25   member of a settlement class "who can be identified through reasonable effort"

26   constitutes reasonable notice.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

27   For any class certified under Rule 23(b)(3), the notice must inform class members that

28   the court will exclude from the class any member who requests exclusion, stating when

and how members may elect to be excluded.  Fed. R. Civ. P. 23(c)(2)(B).

Here, the form and manner of the class notice have been negotiated and agreed upon by the parties.  Settlement Agreement at ¶¶2.1.M, 2.11.C, ex. 1.  The notice will provide class members, among other things (1) appropriate information about the nature of this litigation, the settlement classes at issue, class counsel, and the essential terms of the Settlement Agreement; (2) appropriate information about class counsel's forthcoming application for attorneys' fees, the proposed service payments to certain plaintiffs, and other payments that will be deducted from the settlement fund; (3) appropriate information about how to participate in the settlement; (4) appropriate information about the Court's procedures for final approval of the Settlement Agreement; (5) appropriate information about how to challenge or opt out of the settlement, if they wish to do so; and (6) appropriate instructions as to how to obtain additional information regarding this litigation and the Settlement Agreement.

The parties propose that, upon entry of an Order Granting this Motion, the class notice shall issue.  *Id.* at ¶ 2.11.F.  A third-party claims administrator (Rust Consulting, Inc.) will mail the notice to the last known address of each class member as that name appears in RGIS' records.  *Id.*  Notice will be sent by first class mail, and the costs of sending notice will be paid from the $200,000 set aside for settlement administration costs.  *Id.* at ¶¶ 2.11.F, 2.12.E.  The claims administrator will take reasonable steps to obtain the correct address of any class member for whom notice is returned as undeliverable and otherwise to provide the class notice.  *Id.* at ¶ 2.11.G.  Due to the accuracy of RGIS' records and the obligations imposed on the claims administrator by the Settlement Agreement, the parties believe that there is no need for local newspaper advertisements or regional or national publications.  The parties propose that, under the notice plan outlined above, the class members will have 30 days after the notice is mailed to consider the proposed settlement and opt out of the settlement or submit objections.

The notice plan provides the best notice practical under the circumstances and will

provide class members a full and fair opportunity to consider the terms of the proposed Settlement Agreement and make a fully informed decision on whether to participate, to object, or to opt out of the settlement.

## VII.   PROPOSED SCHEDULING ORDER

Once a class action settlement is preliminarily approved, the court may schedule a noticed final fairness hearing "at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002); *see* 4 Newberg, § 11.25.  The following schedule sets forth a proposed sequence for the relevant dates and deadlines culminating in a final fairness hearing, assuming the Court preliminarily approves the settlement:

| | |
|---|---|
| Mailing to class by claims administrator | Within 45 days after date of Order granting preliminary approval |
| Deadline for submission of written requests for exclusion | Must received by claims administrator within 30 days after mailing of the notice |
| Deadline for submission of objections | Must be received by claims administrator within 30 days after mailing of the notice |
| Motion for Judgment and Final Approval | No later than 16 days prior to fairness hearing |
| Final fairness hearing and final approval | On November 8, 2010 or the first available date thereafter |

## VIII.   CONCLUSION

For the foregoing reasons, the Court should (1) grant preliminary approval to the Settlement Agreement; (2) certify plaintiffs' proposed settlement classes and appoint plaintiffs and their counsel as proper representatives of these settlement classes; (3) schedule a fairness hearing for final approval of the settlement; and (4) approve and direct the mailing of the class notice negotiated by the parties.

133973-12

1    Dated:  July 9, 2010                    Respectfully submitted,

2

3                                                    /s/ Guy Wallace
                                            TODD M. SCHNEIDER (SBN 158253)
4                                           GUY B. WALLACE (SBN 176151)
                                            ANDREW P. LEE (SBN 245903)
5                                           SCHNEIDER, WALLACE,
                                            COTTRELL BRAYTON & KONECKY, LLP
6
                                            180 Montgomery Street, Suite 2000
7                                           San Francisco, CA  94104
                                            Telephone: (415) 421-7100
8                                           Facsimile: (415) 421-7105
9

10
                                            ATTORNEYS FOR PLAINTIFFS AND THE
11                                          CLASS

12

13           I hereby attest that I have on file all holograph signatures for any signatures

14   indicated by a "conformed" signature (/s/) within this efiled document.

15

16   Dated:  July 9, 2010                         /s/ David A. Borgen
                                            DAVID BORGEN (SBN 09935)
17                                          JOSEPH E. JARAMILLO (SNB 178566)
                                            JAMES KAN (SBN 240749)
18                                          GOLDSTEIN, DEMCHAK, BALLER,
                                            BORGEN & DARDARIAN
19
                                            300 Lakeside Drive, Suite 1000
20                                          Oakland, CA  94612
                                            Telephone: (510) 763-9800
21                                          Facsimile: (510) 835-1417
22

23

24

25

26

27

28

133973-12