Todd M. Schneider (SBN 158253)
tschneider@schneiderwallace.com
Guy B. Wallace (SBN 176151)
gwallace@schneiderwallace.com
Andrew P. Lee (SBN 245903)
alee@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, CA  94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Peter Schneider, *pro hac vice*
pschneider@gsnlaw.com
Keith Grady, *pro hac vice*
kgrady@gsnlaw.com
GRADY SCHNEIDER, LLP
801 Congress, Suite 400
Houston, TX  77002
Telephone: (713) 228-2200
Facsimile:  (713) 228-2210

Attorneys for the Plaintiff Classes
[Additional counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRISHA WREN and CYNTHIA PIPER, et al., individually and behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>RGIS Inventory Specialists, LLC, RGIS, LLC, Does 1-25 Inclusive,<br><br>Defendants. | Case No.: 3:06-cv-05778 JCS, 3:07-cv-00032 JCS<br><br>**CLASS AND COLLECTIVE ACTION**<br><br>**DECLARATION OF PETER B. SCHNEIDER IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF REASONABLE ATTORNEYS' FEES, COSTS, AND EXPENSES**<br><br>Date:  January 28, 2011<br>Time:  9:30a.m.<br>Place:  Courtroom A, 15th Floor<br>Judge:  Hon. Joseph C. Spero |

Additional counsel:

David Borgen (SBN 099354)
dborgen@gdblegal.com
James Kan (SBN 240749)
jkan@gdblegal.com
GOLDSTEIN, DEMCHAK, BALLER, BORGEN & DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Telephone:  (510) 763-9800
Facsimile:   (510) 835-1417


Jose R. Mata (SBN 83724)
jmata@wagelawyer.com
BAILY PINNEY, PC
1498 SE Tech Center Place, Suite 290
Vancouver, WA  98683
Telephone: (360) 567-2551
Facsimile: (360) 567-3331

I, Peter Schneider, hereby declare as follows:

1. The statements set forth in this declaration are made of my own personal knowledge and if called as a witness, I could and would testify competently to the matters stated below.

2. I am co-lead counsel (on behalf of my firm) for Plaintiffs and Class Counsel in this case. I submit this Declaration in support of Plaintiffs' Motion for an Award of Reasonable Attorney's Fees, Costs and Expenses.

3. Plaintiffs' fee motion seeks an award of reasonable attorneys' fees, costs, and expenses for work and litigation-related expenses reasonably and necessarily incurred in this matter by Grady-Schneider.

### *Peter Schneider's Legal Education and Relevant Experience*

4. I graduated from South Texas College of Law in 1994 and have been a member of the State Bar of Texas since 1994. I am admitted to practice in the United States District Court for the Southern, Eastern, Northern, and Western Districts of Texas as well as the United States Court of Appeals for the 5th Circuit and the Texas Supreme Court. I am also admitted to and appeared before the United States Supreme Court. I have argued before the Supreme Court of Texas and was recognized as a "Top Lawyer for the People" in 2008 by H Texas magazine, after being nominated by my peers and H Texas readers. I have served as an attorney of record in each of the cases identified below.

5. In 1995, I co-founded Grady-Schneider with my law partner, Garland "Keith" Grady ("Keith Grady"). During my sixteen years of practice, I have had extensive experience in class actions and other complex litigation involving employee rights, pharmaceutical litigation, mass tort personal injury litigation, and commercial litigation. I have served as lead counsel, co-lead counsel, or class counsel in numerous collective action/class action/mass tort cases, and have done so through trial and on appeal. In addition to this case, these cases have included among others, the following:

- Carol Herring, on her own behalf, and on behalf of others similarly situated vs. Hewitt Associates, LLC; Case No. 3:06-CV-00267; In the United States District Court for the District of New Jersey. Co-lead counsel in collective action Fair Labor Standards Act case against employer for misclassifying hourly employees as exempt employees.

- In Re: Guidant Corp. Implantable Defibrillators Products Liability Litigation; MDL No. 05-1708; In the United States District Court for the District of Minnesota. Discovery counsel assisting Plaintiffs' Steering Committee in

1

DECLARATION OF PETER B. SCHNEIDER IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF REASONABLE ATTORNEYS' FEES, COSTS, AND EXPENSES - CASE NO.: 3:06-CV-05778 JCS, 3:07-CV-00032 JCS

pacemaker/defibrillator medical device litigation involving over 8,000 claimants.

- <u>In Re: Avandia Marketing, Sales Practices and Products Liability Litigation</u>; MDL No. 1871; In the United States District Court for the Eastern District of Pennsylvania.  Co-lead counsel for approximately 400 plaintiffs against pharmaceutical manufacturer for personal injuries sustained as a result of taking prescription drug.

- <u>In Re: Serzone Products Liability Litigation</u>; MDL No. 1477; In the United States District Court for the District of West Virginia, Charleston Division.  Co-lead counsel for approximately 2,000 plaintiffs against pharmaceutical manufacturer for personal injuries sustained as a result of taking prescription drug.  Awarded common benefit fees for contribution to corresponding class action lawsuit.

- <u>Lola Mae Douglas, Et Al., V. Nalco Chemical Company, et al</u>.; Case No. 1998-43922; In the 164th Judicial District Court, Harris County, Texas.  Lead Counsel representing approximately 2,100 plaintiffs in personal injury action against chemical company for personal injuries resulting from a chemical spill near a residential neighborhood.

- <u>In Re: Katrina Canal Breaches Consolidated Litigation</u>; Cause No. No. 05-4182 "K" (2) In the United States District Court Eastern District of Louisiana.; Assisted Plaintiffs lead class counsel and Levee Litigation Group in class actions seeking personal injury and property damages for New Orleans residents as a resulting of flooding caused by failures of the New Orleans' levee system and the dredging of the Mississippi River Gulf Outlet.

- <u>Bobby L. Leduff, et al., v. BOH Bros, et al.</u>; Case No.: 06-5260; In the United States District Court Eastern District of Louisiana.  Lead counsel representing approximately 150 New Orleans residents for personal injury and property damages as a resulting of flooding caused by failures of the New Orleans' levee system and the dredging of the Mississippi River Gulf Outlet.

- <u>Joseph Guillory, Jr., et al. vs. BP Amoco Chemical Company, et al</u>.; Case No. 05CV0337; <u>Miguel Arenzazas & Elizabeth Ramon vs. BP Amoco, et al</u>., Case No. 05CV0337; In the 212th Judicial District Court of Galveston County, Texas.  Lead counsel for approximately 200 plaintiffs seeking personal injury and property damages as a result of chemical plant explosion.

6.  I am also member of the Texas Trial Lawyers Association, the American Bar Association and the Houston Bar Association.  Our firm seeks the rate of $650 per hour for my work on this case.

### *Grady-Schneider's History and Areas of Expertise*

7.  The firm of Grady-Schneider has an extensive practice in class action and mass plaintiff litigation.  Keith Grady and I founded the firm in 1995.  Grady Schneider currently employs four attorneys and six legal staff, and has acted as counsel in all of the cases I have identified in my experience above.  The firm has represented plaintiffs in federal and state trial courts, Texas' Courts of

Appeals, the Texas Supreme Court, and the United States Fifth Circuit Court of Appeals.

8. Grady-Schneider has a national practice. We have litigated class and collective action lawsuits over the last twenty years in California, Florida, Louisiana, Minnesota, New Jersey, New York, Pennsylvania, West Virginia, as well as Texas, where our offices are located.

*Background and Experience of Grady-Schneider*
*Attorneys and Staff Who Worked On This Case*

9. My firm assigned other well-qualified attorneys and staff to work on this case.

10. Keith Grady co-founded of Grady-Schneider along with me in 1995. Mr. Grady graduated from South Texas College of Law in 1992, where he was a member of the school's nationally ranked mock trial program. Mr. Grady is a recipient of the National Member of the Order of the Barristers (1992), and the American Jurisprudence Award for Civil Trial Advocacy (1992). Mr. Grady has been an adjunct professor at South Texas College of Law teaching trial advocacy classes. He is a member of the State Bar of Texas, Texas Trial Lawyers Association, Houston Trial Lawyers Association, Houston Bar Association, and the Association of Trial Lawyers of America. Mr. Grady is admitted to practice in the United States District Court for the Southern and Eastern District of Texas, as well as before the United Stated Fifth Circuit Court of Appeals. In 2008, Mr. Grady was recognized as a "Top Lawyer for the People" by H Texas magazine, after being nominated by his peers and H Texas readers. Mr. Grady has served as an attorney of record in each of the cases identified above. Our firm seeks the rate of $650 per hour for Mr. Grady's work on this case.

11. William T. Jones graduated from South Texas College of Law in 2001, in the top fifteen percent of his class. He was a senior associate with Grady-Schneider from 2005-2009 and the primary associate for this matter until his departure in early 2009. Prior to joining Grady-Schneider, Mr. Jones worked as an associate attorney at a Plaintiffs' firm specializing in mass tort litigation, including asbestos exposure, benzene exposure, and pharmaceutical litigation. Mr. Jones' practice has also included representing plaintiffs in personal injury, consumer, commercial and environmental litigation. Mr. Jones was significantly involved in the following cases identified in detail above: *Carol Herring, on her own behalf, and on behalf of others similarly situated vs. Hewitt Associates, LLC; In Re:*

1  *Guidant Corp. Implantable Defibrillators Products Liability Litigation; In Re: Katrina Canal*
2  *Breaches Consolidated Litigation; Bobby L. Leduff, et al., v. BOH Bros, et al.*  Mr. Jones's work on
3  this matter was primarily in the areas of editing motions, briefs, and pleading; legal research;
4  deposition preparation; filing of opt in consent forms; preparing discovery responses; and preparing
5  declarations.  Our firm seeks the rate of $425 per hour for Mr. Jones' work on this case.

6      12.    Catherine Loving is a 2005 graduate of South Texas College of Law School.  Ms.
7  Loving joined the firm in 2007 as an associate and was the primary associate on this matter beginning
8  in 2009.  Prior to joining Grady-Schneider, Ms. Loving clerked for Judge Elrod in the 190th Civil
9  District Court of Texas.  Ms. Loving has been a member of the Texas State Bar since 2006, and is also
10 admitted to practice before the United States District Courts for the Southern and Eastern Districts of
11 Texas.  Ms. Loving was the lead associate on *Joseph Guillory, Jr., et al. vs. BP Amoco Chemical*
12 *Company, et al.* and has been significantly involved in the *In Re: Avandia Marketing, Sales Practices*
13 *and Products Liability Litigation*. Ms. Loving's work on this matter was primarily in the areas of filing
14 of opt in consent forms, preparing discovery responses, preparing declarations, and document review.
15 Our firm seeks the rate of $400 per hour for Ms. Loving's work on this case.

16     13.    Natalie White is a 2001 graduate of Thomas M. Cooley Law School.  Ms. White joined
17 Grady-Schneider in 2001 as a senior case manager.  Since joining the firm, Ms. White has overseen
18 case management for *In Re: Serzone Products Liability Litigation;  Lola Mae Douglas, Et Al., V.*
19 *Nalco Chemical Company, et al.; In Re: Katrina Canal Breaches Consolidated Litigation; Bobby L.*
20 *Leduff, et al., v. BOH Bros, et al.; and Joseph Guillory, Jr., et al. vs. BP Amoco Chemical Company, et*
21 *al.*   Our firm seeks the rate of $200 per hour for Ms. White's work on this case.

22     14.    Lisandro Cortez joined Grady-Schneider in 2004 and is currently a database
23 administrator and senior case manager, and his functions also include paralegal work and client
24 communication in our cases. Including his experience at Grady-Schneider, Mr. Cortez has over fifteen
25 years experience in database administration and case management.  Since joining the firm, Mr. Cortez
26 has created and managed over twenty-six databases used to manage client information.  Mr. Cortez has
27 overseen case management for *In Re: Serzone Products Liability Litigation; In Re: Avandia*
28

4
DECLARATION OF PETER B. SCHNEIDER IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF REASONABLE
ATTORNEYS' FEES, COSTS, AND EXPENSES - CASE NO.: 3:06-CV-05778 JCS, 3:07-CV-00032 JCS

*Marketing, Sales Practices and Products Liability Litigation; and Joseph Guillory, Jr., et al. vs. BP Amoco Chemical Company, et al.* Our firm seeks the rate of $175 per hour for Mr. Cortez' work on this case.

15. Lupina Paiz joined Grady-Schneider in 1997 as a paralegal. Since joining the firm, Ms. Paiz has worked on various collective action/class action/mass tort cases including *In Re: Avandia Marketing, Sales Practices and Products Liability Litigation; In Re: Serzone Products Liability Litigation; Lola Mae Douglas, Et Al., V. Nalco Chemical Company, et al.; In Re: Katrina Canal Breaches Consolidated Litigation; Joseph Guillory, Jr., et al. vs. BP Amoco Chemical Company, et al.* Our firm seeks the rate of $150 per hour for Ms. Paiz' work on this case.

16. Margie Fisch joined Grady-Schneider in 2006 as a paralegal. Since joining the firm Ms. Fisch has worked on various collective action/class action/mass tort cases including *In Re: Avandia Marketing, Sales Practices and Products Liability Litigation; In Re: Serzone Products Liability Litigation; In Re: Katrina Canal Breaches Consolidated Litigation; Joseph Guillory, Jr., et al. vs. BP Amoco Chemical Company, et al.* Our firm seeks the rate of $150 per hour for Ms. Fisch's work on this case.

17. Coy Elam, Brenda Vasquez, Johnny McCray, Stephanie Dawson, are all paralegals or legal assistants who were assigned to this case to assist with various aspects of litigation, including but not limited to, redacting opt in consent forms, declaration projections, assisting with discovery. Our firm seeks the rate of $100 per hour for their work on this case.

***Grady-Schneider Attorneys' Fees, Costs, and Expenses***

18. Grady-Schneider seeks payment of $3,391,147.50 for attorneys' fees through November 15, 2010 and $223,742.02 for reimbursement of all other litigation-related expenses advanced, for a total payment of $3,614,889.52.

19. Grady-Schneider actually expended somewhat over 15,400 attorney and staff hours prosecuting this case through November 15, 2010. I have asked Guy Wallace to adjust Grady-Schneider's lodestar hours to reflect billing judgment such that we seek payment for hours reasonably and necessarily expended. Mr. Wallace has discussed billing judgment deductions with me, including

deductions in the areas of duplication, the elimination of certain billing entries that were vague or lacked detail, and the elimination of entries reflecting work that was clerical in nature. (He also discussed with me the use of a "travel rate" that is half of the lawyer's regular billing rate, which we agree is appropriate.) Our firm participated in a mediation process regarding fee allocations amongst Class Counsel that was supervised by Judge Eugene F. Lynch (Ret.) at JAMS. In connection with that mediation, our firm sought to recover $4,570,635.00 in fees and costs. In this fee motion, our firm respectfully requests an award of reasonable attorneys' fees in the amount of $3,391,147.50, which is a 26% reduction in the exercise of billing judgment on the bases discussed above.

20. As the lead counsel from my firm in this case, I have reviewed Grady-Schneider's time records described above and certify to the Court that these records reflect work reasonably and necessarily performed by Grady-Schneider in connection with the litigation of this case.

### *Grady-Schneider's Role in the RGIS Litigation*

21. Grady-Schneider initiated litigation against RGIS in the United States District Court for the Eastern District of Texas - Beaumont Division in two cases. In 2005 we filed *Joelle Johnson, et al. vs. RGIS Inventory Specialist*, Civil Action No. 1:05-CV-00389-MC. In 2006 we filed *Susan Davidson et al.* vs. *RGIS Inventory Specialist*, Civil Action No. 1:06-CV-0681-MC. Those two actions were ultimately settled on an individual basis, and we do not seek compensation for any of our work on those two matters herein.

22. Grady-Schneider has participated in the above-captioned matter from its inception. Since the beginning of this case up to November 15, 2010, our firm billed over 12,171.4 hours (after the exercise of billing judgment). We participated in all aspects of litigation. As directed by Guy Wallace, our attorneys assisted with drafting and editing of specific briefs and pleadings. Our firm redacted and filed opt-in consent forms, assisted with declaration projects, responded to interrogatories for various FLSA opt-ins, and conducted legal research.

23. Additionally, as directed by lead counsel, we interviewed opt-ins and drafted declarations in support of the Federal Rule of Civil Procedure 23 class certification motion and in opposition to the Section 216(b) decertification motion.

24. Throughout the entire litigation, our firm had primary responsibility for communicating with the over 60,000 class members and for managing client data. With respect to the client data, Lisandro Cortez created the database utilized in managing the large quantity of clients. Additionally, he maintained all client contact information and kept the claims administrator informed of any changes. He processed all incoming emails along with website submissions. He sent emails and postcards to clients keeping them informed of the status of the case.

25. With respect to communicating with the class members, our firm was assigned the lead role. In this regard, a key function was to speak with the class members about RGIS practices in its 300 districts across the United States, and to develop information about the donning and pre-inventory preparation process, including how managers and teams leaders conducted the sign-in process for when auditors were put on the clock, the amount of time that pre-inventory preparation took for the auditors depending on the size of the inventory, and how RGIS applied its Auditors Handbook/Team Member Handbook policies in the field.

26. In addition to developing information about the pre-inventory preparation process and the application of RGIS policies in the real world, our firm had primary responsibility for communicating with the class members about their legal claims, the FLSA opt-in process and their opt-in forms, the status of the case, their possible remedies in the event of either settlement or trial, and for responding to their questions about other issues. In connection with those telephone conversations and email exchanges, our staff would update the database to make sure that the information about each class member was current and accurate. Our records show that our lawyers and paralegals spoke with over 8,800 different class members during the course of this litigation. We continue to receive such telephone calls everyday, and we now also advise class members regarding the proposed class settlement. In addition to the phone calls described above, we also reviewed and responded to over 30,000 email inquiries about these subjects. A review of our client database shows that we had over 217,000 telephone or email contacts with the class members. Our attorneys were available at all times to answer any client questions.

27. During the opt-in and opt-out periods for the federal and state law classes, during the class certification declaration projects, and during the period in which we responded to RGIS' discovery to the opt-ins, the time commitment required by our firm was a heavy burden. During these peak times the client calls were constant throughout the entire day, requiring our staff to alternate lunch times and to stay late or arrive early to ensure we addressed every client concern. The class members would call asking questions about the forms they had to sign. These calls were often lengthy as our staff and attorneys made sure the caller fully understood the documents and all questions were answered with clarity. During the peak times, our firm's staff spent the vast majority of their worktime addressing these inquiries, which had a negative impact on our other cases.

28. During a regular non-peak week, we also received calls and emails from the class members, typically about 10-20 per day, but often more. The RGIS employees were often angry about how they were treated at work, particularly the fact that most of them were not paid for all of their time. They raised many issues about RGIS employment practices which they believed to be either unlawful or unfair, and we had to explain to them the scope of the claims in this case and what was within our representation, and the areas where they might need to obtain other counsel or seek assistance from a federal or state agency. In our experience, many of the callers were quite upset about how they were treated at work, and they were not typically very educated or sophisticated. It usually took some time to explain the claims in this case and how the class action process works. They wanted to know what the schedule was for the case, why it was taking as long as it did, and when they might receive any relief. Many of them feared retaliation by RGIS if they opted in or submitted a declaration, so we had to provide advice on that subject as well. Conversations were often lengthy as we explained the nature of the claims and addressed concerns of retaliation, or many shorter conversations were required to go over the claims and issues. Oftentimes, even though staff members were available, employees would request to speak with an attorney about the case, and those callers would be given the opportunity to do so. Our firm does have a policy of responding promptly to client calls and inquiries (this must be done within no more than 24 hours), so that our clients will feel that we are responsive and diligent on their behalf.

29. While our firm did not have a central role in the preparation of the major motion practice events in this case, such as the class certification or summary judgment briefings, I do believe that our firm played a critical role. The class members are our clients, and we do have an ethical obligation to advise them regarding their rights and remedies. We tried hard to provide this service to the class members on behalf of the four firms representing the five classes.

30. Mr. Grady and I supervised all aspects of our firm's involvement in this litigation. During the opt-in and opt-out periods, the class certification declaration projects, and the efforts to respond to RGIS discovery, we supervised associate and paralegal staffing, monitored calls (which required analyzing reports generated by Lisandro Cortez from information in the database), spoke with angry clients ourselves, or spoke with clients who needed legal advice if one of the associates was not available to do so and the client felt that they needed attorney advice about their rights and remedies in this matter. We meet with our staff daily to discuss the types of calls they were receiving and assisted with problem solving such as finding out if a potential class member's claims were timely, whether the class member was working or had worked in a covered position, and whether the individual at issue had information that would support the class claims regarding how the donning and pre-inventory preparation process worked in a particular district, or for particular types of inventories. As new issues arose, which they did almost daily, we were on hand to ensure our staff provided the employees with correct information and advice. In the past few months we have continued to advise class members about the case, with a focus on the proposed settlement and what it means.

31. We assisted with the deposition preparation as well as attending depositions and regularly consulted with Schneider-Wallace regarding legal issues and overall strategy. At our firm, Mr. Grady was the partner who was primarily designated to work on this case, and he reviewed and analyzed many of the pleadings. Mr. Grady prepared for and took the deposition of RGIS Vice President and HR Director Cyndi Myers, which required substantial fact research and preparation. Mr. Grady also assisted with the preparation for mediation, and prepared a lengthy video and documentary presentation that was used regarding RGIS, its operations, its policies, the admissions in the depositions, as well as providing background on the inventory process and how it functions. Mr.

1  Grady was involved with trial preparation and had begun the process of considering potential auditor
2  witnesses from the FLSA class, as well as the preparation of themes for opening statement and
3  Plaintiffs' direct examinations. When Mr. Grady was not available to work on this case because of his
4  other cases, I would take the lead with respect to keeping informed about developments in the case,
5  and supervising our lawyers and paralegals in their work with the class members.

6        32. Mr. Grady and I attended the settlement conference, various court hearings including
7  the Class Certification Hearing, and mediations. This required preparation time and coordination with
8  co-counsel.

### *Reasonableness of Hourly Rates*

10        33. Grady-Schneider has a uniform set of current hourly rates which are based on prevailing
11  market rates for attorneys and paralegals of comparable levels of experience at law firms of
12  comparable reputation and experience. In addition, through the fee litigation matters in which Grady-
13  Schneider has participated, my firm has obtained information regarding billing rates and practices of
14  both plaintiff and defense-side attorneys and law firms who handle complex and class action litigation.
15  I have also reviewed the Declaration of Richard M. Pearl, and the information therein about rates in the
16  Bay Area and California more generally.

17        34. Grady-Schneider's customary hourly rates, which for the attorneys who worked on this
18  case currently range from $400-650 an hour and from $100-200 an hour for support staff, are
19  consistent with the market rates for law firms like mine that practice large complex and class action
20  litigation nationally, and in the San Francisco area. Based upon information and belief, they also are
21  consistent with rates of comparable firms in the Houston legal market.

22        35. I believe the rates Grady-Schneider seeks in this case are reasonable and are within the
23  range of rates charged for attorneys with similar backgrounds, skills and experience in the San
24  Francisco Area. In addition, my firm has been awarded attorneys' fees in other cases that are
25  consistent with the rates sought in this case.

*Grady-Schneider's Costs and Expenses Are Reasonable and Compensable.*

36. A summary detailing our $223,742.02 in additional litigation-related costs and expenses that my firm incurred, for which reimbursement is sought is attached. These expenses include RGIS Opt-In mailout ($60,000.00), expert fees for Richard Drogin ($90,000.00), copy job of opt-in consent forms ($13,442.50), mediation fees, travel expenses (parking, transportation, and hotel), postage for packages sent to or received from clients, print and copy jobs, supplies for redacting opt-in consent forms, PACER fees, and legal research fees. True and correct copies of the invoices and receipts supporting our request for reimbursement of costs and expenses are attached as Exhibit A.

## CONCLUSION

37. In light of all of the above, and based on the other supporting declarations Plaintiffs submit with their motion for an award of reasonable attorneys' fees, costs and expenses, the Grady-Schneider firm requests compensation in this matter in the amounts of $3,391,147.50 in attorneys' fees and $223,742.02 in costs and expenses, for a total payment of $3,614,889.52. These sums are reasonable and well supported by the record.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and accurate.

Executed this 6th day of December 2010 at Houston, Texas.

*/s/ Peter B. Schneider*

Peter B. Schneider