1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRISHA WREN, *et al.*,

Plaintiffs,

v.

RGIS INVENTORY SPECIALISTS,

Defendant.

_____/

No. C-06-05778 JCS

**ORDER RE: (1) PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [Docket No. 912]; (2) PLAINTIFFS' MOTION FOR AN AWARD OF REASONABLE ATTORNEYS' FEES, COSTS AND EXPENSES [Docket No. 909]; AND (3) PLAINTIFFS' MOTION FOR SERVICE AWARDS [Docket No. 869]**

## I. INTRODUCTION

Pending before the Court are: (1) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement [Docket No. 912]; (2) Plaintiffs' Motion for an Award of Reasonable Attorneys' Fees, Costs and Expenses [Docket No. 909]; and (3) Plaintiffs' Motion for Service Awards to Named Plaintiffs[1] and Opt-In Plaintiff Lund [Docket No. 869]. Defendant RGIS, LLC does not oppose the motions and therefore has not filed any briefs in response. On January 28, 2011, the Court held a tentative fairness hearing, during which time it addressed issues relating to these motions and objections from class members filed before the hearing. On March 25, 2011, the Court held a final fairness hearing, at which time it addressed all remaining issues relating to the settlement and Plaintiffs' Motions. Notice of both the January 28, 2011 and March 25, 2011 fairness hearings was provided to all class members. No class members appeared at either hearing.

After careful consideration of the pending Motions and a thorough review of the materials

---

[1] The Named Plaintiffs are: Trisha Wren; Kevin Barnes; Brent Whitman; Kathlene Feige; Lisa Cunningham-Gibson; Cynthia Piper; Tephine Saites; Margaret Cruz Boze; Michelle Pease; Kimberly Cassara; Rabecka Sheldranti; Victoria Thompson; Melanie Manos; Norma Garcia; Cheryl Pierson; Sally Rosenthal; Nicole Verbick; Tammy Schnars; Margaret Martinez; Carol Molmen; Joan Johnson; Latonia Williams; Jewell Gatlin; and Michele Zustak.

submitted in support, the Court now rules as follows.

The Court finds that the Settlement Agreement is fundamentally fair, adequate, and reasonable and therefore **GRANTS** Plaintiffs' Motion for Final Approval of Class Action Settlement.

As to Plaintiffs' request for an award of attorneys' fees and costs authorized under the Settlement Agreement, the Court **GRANTS** Plaintiffs' Motion and awards $11,307,449.62 in attorneys' fees, and awards $1,598,589.41 in costs and expenses incurred by Schneider Wallace. The Court **RESERVES** ruling on Plaintiffs' request for awards of costs incurred by Grady Schneider, Goldtsein Demchak, and Bailey Pinney pending Plaintiffs' submission of supplemental documentation from these firms substantiating the costs they incurred.

With respect to Plaintiffs' request for service awards to the Named Plaintiffs and opt-in Plaintiff Verne Lund, the Court **GRANTS** Plaintiffs' request for service awards to all Named Plaintiffs and Mr. Lund and awards the amounts specified in Section VI.D of this Order.

## II.  BACKGROUND

This consolidated action began as two separate putative class actions: (1) *Wren v. RGIS Inventory Specialists*, Case No. C-06-05778, filed on September 20, 2006; and (2) *Piper v. RGIS Inventory Specialists*, Case No. C-07-00032, filed on January 4, 2007.  On June 6, 2007, the Court consolidated the two actions.  *See* Docket No. 86.  Subsequently, on June 26, 2007, Plaintiffs filed their First Amended Consolidated Complaint, asserting twenty-six claims for relief under the Fair Labor Standards Act ("FLSA") and various wage-and-hour laws of California, Oregon, Washington, and Illinois.  Docket No. 88.

Thereafter, in July 2007, Plaintiffs filed a Motion to Facilitate Notice Pursuant to 29 U.S.C. § 216(b), which RGIS opposed.  *Piper*, C 07-00032, Docket No.125 (Motion); *Wren*, C 06-05778, Docket No. 121 (Opposition).  On December 19, 2007,the Court  issued its order on the motion, conditionally certifying two FLSA opt-in classes proposed by Plaintiffs:

> 1.  All non-exempt hourly employees of RGIS Inventory Specialists, now operating as RGIS, LLC, who were, are, or will be employed as auditors during the period of three years prior to the commencement of this action through the date of judgment of this action.

2.  All non-exempt hourly employees of RGIS Inventory Specialists, now operating as RGIS, LLC, who were, are, or will be employed as assistant [] team leaders, team leaders, and assistant or associate area managers of RGIS during the period of three years prior to the commencement of this action through the date of judgment of this action.

*See* Order Granting Motion to Facilitate Notice Pursuant to 29 U.S.C. § 216(b) [Docket No. 216].

Additionally, the Court found that Plaintiffs had met the requirements for conditional certification as to the claims for: (1) time spent donning required RGIS equipment; (2) time spent "engaged to wait" for inventories to begin; (3) time spent waiting for transportation to an inventory even after the work day has begun; and (4) time spent in work-related transportation to and from inventory sites in a single work day. *Id*. at 9.

In July 2008, Plaintiffs moved pursuant to Federal Rule of Civil Procedure 23(b)(3) to certify four classes of auditor employees asserting wage-and-hour claims under California, Oregon, Washington, and Illinois law, which RGIS also opposed. *See* Docket Nos. 403 (Motion to Certify), 451 (RGIS Opposition). Additionally, in October 2008, RGIS moved to decertify the FLSA collective action. *See* Docket No. 569. On February 6, 2009, the Court issued its order on Plaintiffs' Motion to Certify and RGIS's Motion to Decertify, granting the motions in part and denying them in part. In its Order, the Court certified the following classes under Rule 23:

1. California Class:  All hourly Auditors, Assistant Team Leaders, Team Leaders and Assistant Area Managers employed by RGIS in California on or after January 1, 2005 with respect to the claims asserted in the Consolidated Complaint arising out of (1) donning and related waiting time from the time that equipment is made available for donning, (2) unpaid travel time on company provided travel for the first hour of travel to and the first hour of travel from an inventory site, and (3) the alleged failure to comply with the requirements of California Labor Code section 226 that employers must provide properly itemized wage statements.

2. Oregon Class:  All hourly auditors, Assistant Team leaders, Team Leaders and Assistant Area Managers employed by RGIS in Oregon on or after September 20, 2000 with respect to the claims asserted in the Consolidated Complaint arising out of donning and related waiting time from the time that equipment is made available for donning.

3. Washington Class:  All hourly Auditors, Assistant Team Leaders, Team Leaders and Assistant Area Managers employed by RGIS in Washington on or after September 20, 2003 with respect to the claims asserted in the Consolidated Complaint arising out of donning and related waiting time from the time that equipment is made available for donning.

4. Illinois Class:  All hourly Auditors, Assistant Team Leaders, Team Leaders and Assistant Area Managers employed by RGIS in Illinois on or after January 4, 2000, with respect to the claims asserted in the Consolidated Complaint arising out of donning and related waiting time from the time that equipment is made available for donning.

Docket No. 694 at 50-51.  The Court further denied RGIS's motion to decertify the FLSA classes "except to the extent that claims of the FLSA plaintiffs purported to sweep more broadly" than the claims of the Rule 23 classes.  *Id.* at 23.  Following the Court's ruling, class notice was sent to approximately 47,000 current and former employees of RGIS in California, Oregon, Washington, and Illinois.

Subsequently, on November 21, 2008, RGIS moved for summary judgment with respect to Plaintiffs' travel/commute time claim under the FLSA and California and Illinois law; meal period claims under California, Oregon, and Washington law; and donning and waiting claim pursuant to the FLSA.  *See* Docket No. 648.  On August 24, 2009, the Court issued its Order granting RGIS's motion with respect to Plaintiffs' travel time claims, but denying RGIS's motion for summary judgment as to Plaintiffs' donning and waiting time claims.  Docket No. 775.  With respect to Plaintiffs' meal period claims, the Court noted that it did not certify any Rule 23 classes based on the alleged meal break violations, and accordingly, considered RGIS's motion for summary judgment on those claims only as they related to the Named Plaintiffs.  The Court then granted summary judgment in favor of RGIS on the Named Plaintiffs' claims under Oregon and Illinois law, but denied RGIS's motion without prejudice as to the meal claims asserted under California and Washington law.  *Id.*

On November 13, 2009, the Court held a further case management conference, at which time it addressed outstanding discovery, settlement status, pretrial filings, and the trial date.  *See* Further Case Management and Pretrial Order, Docket No. 805.  Pursuant to the Court's order, the parties filed a status report on November 25, 2009, informing the Court that they had agreed to appear before retired Judge Edward A. Infante for mediation, but had not agreed upon a date.  *See* Docket No. 806.  On April 2, 2010, the Court held a further case management conference, where it addressed several issues raised by the parties regarding the scope of the claims going to trial and denied RGIS's motion to sever trial on federal and state claims.  *See* Minute Entry, Docket No. 829.

**United States District Court**
For the Northern District of California

1   Thereafter, on April 28, 2010, the parties filed a joint mediation report indicating that on April 22,

2   2010, they participated in a full day of mediation with Judge Infante and had agreed to reconvene on

3   May 7, 2010 for further mediation.  *See* Docket No. 831.  On May 19, 2010, the parties filed a

4   Notice of Settlement, indicating that they had reached a settlement and were preparing a settlement

5   agreement.  Docket No. 833.

6           On July 9, 2010, Plaintiffs filed an unopposed Motion for Order Granting Preliminary

7   Approval of Class Action Settlement, seeking: (1) preliminary approval of the proposed class action

8   settlement; (2) certifying the proposed settlement classes; (3) approving and directing dissemination

9   of notice to the class; and (4) setting a date for a fairness hearing.  Docket No. 840.  On July 29,

10  2010, the Court held a hearing on the motion, at which time it directed Plaintiffs to file supplemental

11  briefing on the scope of the FLSA release and on the class certification of the state law meal and rest

12  period claims.  *See* July 10, 2010 Minute Entry, Docket No. 842.  Following further hearing on

13  September 3, 2010, the Court issued an order granting preliminary approval of the proposed

14  settlement, conditionally certifying the settlement class and subclasses, appointing class

15  representatives and class counsel, and approving the form and manner of distributing class notice.

16  Docket No. 851.  Additionally, the Court set a fairness hearing for January 28, 2011, and set

17  deadlines for class members to submit written and signed requests to opt out of the settlement to the

18  claims administrator, and deadlines for Class Counsel's petition for attorneys' fees and costs,

19  petition for approval of service payments to Plaintiffs, class members' objections to the settlement,

20  and Plaintiffs' motion for final approval of the settlement.  *Id*. at 10.

21          On December 6, 2010, Plaintiffs' filed the pending Motion for an Award of Reasonable

22  Attorneys' Fees, Costs and Expenses Pursuant to F.R.C.P. 23(h), and Motion for Service Awards to

23  Named Plaintiffs and Opt-In Plaintiff Lund.  Docket Nos. 869, 871, 909 (Amended Motion for

24  Attorneys' Fees).  Thereafter on January 18, 2010, Plaintiffs filed the pending Unopposed Motion

25  for Final Approval of Class Action Settlement and Response to Objections.  Docket No. 912.

26          In the interim, on December 27, 2010, the parties filed a joint motion requesting that the

27  Court convert the scheduled fairness hearing to a hearing for tentative final approval of the proposed

28  class action settlement because 1,872 individuals had been inadvertently omitted from the mailings

United States District Court

For the Northern District of California

notifying class members of the proposed settlement.  Docket No. 900.  Because the deadlines set in the order granting preliminary approval would not provide sufficient opportunity for these class members to request exclusion from the settlement, file objections, or indicate their intention to appear at the scheduled fairness hearing, the parties requested that the Court proceed with the hearing scheduled for January 28, 2011, but make any determinations based on that hearing tentative, and schedule a new hearing date to allow for consideration of any objections from the 1,872 omitted opt-ins received after the January 28, 2011 hearing.  *Id*. at 1-4.  On January 3, 2011, the Court granted the parties' joint motion, converting the January 28, 2011 hearing to one for tentative final approval of settlement, and setting a further hearing for final approval of settlement for March 25, 2011.  Docket No. 904.

On January 28, 2011, the Court held the tentative fairness hearing, at which time it addressed specific issues relating to the pending Motions with counsel and directed Plaintiffs to file supplemental materials documenting their requests for awards of service payments, attorneys' fees, and costs.  Following the hearing, the Court received only one additional request for exclusion from a class member.  *See* Docket No. 926.

### III.  OVERVIEW OF THE SETTLEMENT AGREEMENT

On July 9, 2010, the parties finalized and executed a Stipulation of Settlement (the "Settlement Agreement").  *See* Exhibit A to Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement [Docket No. 912-1].  The parties thereafter executed a Supplemental Agreement Regarding Stipulation of Settlement ("Supplemental Agreement") in September 2010, modifying certain provisions and deadlines set forth in the Settlement Agreement.  *See* Exhibit B to Mot. for Final Approval [Docket No. 912-2].  The key terms of the Settlement Agreement, as amended, are as follows.

In full settlement of the claims asserted in this lawsuit, RGIS has agreed to pay a gross settlement amount of $27,000,000 (the "Settlement Amount").  *See* Settlement Agreement ¶¶ 2.1.S, 2.2.  The Settlement Amount includes: (1) class damages to compensate class members for unpaid overtime and liquidated damages pursuant to the FLSA, unpaid straight-time, overtime, and prejudgment interest pursuant to the laws of California, Illinois, Oregon, and Washington, and

United States District Court

For the Northern District of California

1  Plaintiffs' California meal period claims; (2) service awards to the Named Plaintiffs and certain class

2  representatives; (3) Plaintiffs' attorneys' fees and expenses; and (4) expenses incurred in

3  administering the settlement.  *See* Settlement Agreement ¶ 2.1.S.  Pursuant to the Settlement

4  Agreement, the amount remaining after payment of attorneys' fees and expenses, service awards,

5  and tax withholdings is to be distributed to settlement class members who are deemed to be

6  Authorized Claimants according to a plan of allocation devised by Class Counsel  *Id.* ¶ 2.8.

7       Additionally, the Settlement Agreement provides for equitable relief in the form of RGIS's

8  agreement to revise its corporate policies, including its Team Member Handbook and Field Policy

9  Manual for the United States, to clearly indicate that employees are to put on required audit

10  equipment after scanning in for purposes of receiving pay.  *Id.* ¶ 2.6.B.  Concurrently, RGIS agreed

11  to provide training to its employees regarding these policies, including training for newly-hired

12  hourly auditing employees.  *Id.*

13       In exchange for the monetary damages and equitable relief, this action will be dismissed with

14  prejudice and class members who do not opt out will fully release RGIS from any and all claims

15  asserted in the lawsuit.[2]  Settlement Agreement ¶ 2.9; Supplemental Agreement ¶ 3.B.[3]

16  _____

17  [2]Specifically, the release provision, as modified by ¶ 3.B of the Supplemental Agreement,
provides

18  Release Of Claims By Named Plaintiffs and Settlement Class Members

19       For and in consideration of the mutual promises contained herein, Plaintiffs and the
Settlement Class Members fully and finally release Defendant from any and all liability
for all claims that were asserted, or that could have been asserted, in the instant action.

20  This includes any and all claims, actions or causes of action, demands, obligations,
guarantees, expenses, attorney's fees, damages, or costs, alleged in or based upon the

21  First Amended Consolidated Complaint in this action from the maximum applicable
limitations period for each claim through the date that the Court enters a final order

22  granting final approval of the settlement, including, but not limited to: (1) the alleged
failure to pay straight time wages for all off-the-clock work and all on-the-clock work

23  under any state, local, or federal law; (2) the alleged failure to pay the required minimum
wage for all off-the-clock work and all on-the-clock work under any state, local, or

24  federal law; (3) the alleged failure to pay overtime compensation for all off-the-clock
work and all on-the-clock work under any state, local, or federal law; (4) the alleged

25  failure to provide proper and adequate meal periods and rest breaks under California or
federal law; (5) the alleged failure to provide all wages required as a matter of contract;

26  (6) the alleged failure to pay all wages due upon termination under any state, local, or
federal law; (7) the alleged failure to pay penalties under California Labor Code sections

27  203 and 2698 *et seq.* (Private Attorney General Act) and Oregon Revised Statutes
section 652.150; (8) the alleged failure to issue proper itemized wage statements under

28  California Labor Code section 226; (9) all claims for restitution and/or other relief under

United States District Court

For the Northern District of California

1    The Settlement Agreement also sets forth procedures for notifying class members of the

2   settlement (¶ 2.11C-I), opting out of the settlement (¶ 2.10); allocation of settlement payments (¶

3   2.8), and submitting the Settlement Agreement to the Court for preliminary and final approval (¶¶

4   2.11A, K).

5                   **IV.  MOTION FOR FINAL APPROVAL OF SETTLEMENT**

6   **A.      Overview of Plaintiffs' Motion**

7           Following the Court's September 16, 2010 Order granting preliminary approval of the

8   Settlement Agreement and approving the proposed Notice of Class Settlement, Plaintiffs now move

9   for final approval of the Settlement Agreement and Supplemental Agreement.  Motion for Final

10  Approval [Docket No. 912].

11  **B.      Legal Standard**

12          Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a

13  certified class may be settled, voluntarily dismissed, or compromised only with the court's

14  approval."  As the Ninth Circuit explained, "[t]he purpose of Rule 23(e) is to protect the unnamed

15  members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA*

16  *Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Toward this end, before a court approves a settlement it

17  must conclude that the settlement is "fundamentally fair, adequate and reasonable."  *In re Heritage*

18  *Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).  To determine if a settlement satisfies these

19  criteria, the trial court examines: (1) the strength of the plaintiffs' case; (2) the risk, expense,

20  complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

21  throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and

22  _____

23          California Business and Professions Code section 17200 et seq. as a result of or based
        upon the foregoing alleged legal violations; (10) all claims for injunctive relief based
24          upon the foregoing alleged legal violations; (11) all claims for liquidated damages based
        upon the foregoing alleged legal violations; (12) the alleged failure to pay pre-judgment
25          interest on any unpaid wages, liquidated damages, penalties, or any other damages based
        on the foregoing alleged violations; (13) litigation costs and attorney's fees in connection
26          with the instant action; and (14) any other claims of any kind alleged in the instant
        action.

27          [3]  The Supplemental Settlement Agreement amended ¶ 2.9.A to limit the release of meal period
28  claims to those arising under California law and federal law.

**United States District Court**

For the Northern District of California

the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "This list is not exhaustive, and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citing *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). In addition to these factors, the Court may consider the procedure by which the parties arrived at the settlement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) (citing Manual for Complex Litig. (Fourth) § 21.6 (2004)).

The burden of establishing the fairness of a settlement is on its proponents. *See Riker v. Gibbons*, No. 3:08-cv-00115, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) (citing 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:42 (4th ed. 2002)). "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Id.* Further, the Ninth Circuit has recognized that underlying this analysis, "there is a strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d at 1101 (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). With the foregoing factors as guidance, the Court turns to Plaintiffs' request for final approval of the Settlement Agreement.

**C.      Analysis**

**1. The Strength of the Plaintiffs' Case**

The initial factor the Court takes into consideration is the strength of Plaintiffs' case. *See Churchill Village*, 361 F.3d at 575. In their Motion, Plaintiffs acknowledge that while their donning/waiting time claims survived RGIS's motion for summary judgment, they still face some challenges in establishing this claim, proving their damages, and overcoming RGIS's defenses. In its summary judgment order, the Court rejected RGIS's argument that the donning and associated work time for which Plaintiffs seek compensation are not "work," but are merely preliminary activities that are exempted from compensation under the Portal-to-Portal Act. *See* August 24, 2009 Summary Judgement Order at 36 [Docket No. 775]. Further, as to RGIS's argument that it is not

United States District Court

For the Northern District of California

required to compensate employees for time spent donning and waiting because the time is *de minimis*, the Court noted that the record contained conflicting evidence on the factors it must consider in determining whether the doctrine applied. *Id*. at 38-39. While RGIS bears the burden of establishing that the time Plaintiffs seek compensation for is *de minimis* as a matter of law, Plaintiffs acknowledge that they will have to defend against this argument at trial, which presents a potential risk of a verdict in RGIS's favor. In the Court's view, this risk is substantial. Thus, the first factor supports approval of the settlement.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The second factor focuses on the risks, expense, complexity, and projected duration of the litigation. *See Churchill Village*, 361 F.3d at 575. In their Motion, Plaintiffs recognize that even at this stage of the case, they face numerous obstacles to recovery, including challenges to their expert witnesses and damages calculations, defending against RGIS's assertion of the *de minimis* doctrine, and pursuing their claims against skilled defense attorneys who have significant trial experience in similar cases. Mot. for Final Approval at 8-9. Additionally, if this case was to proceed to trial, the time and expenses associated with trial preparation would mount. In the upcoming months, the parties would have to complete depositions of trial witnesses, prepare and defend against motions *in limine* and *Daubert* motions, draft trial briefs, prepare deposition designations and trial exhibits, appear for pre-trial conferences, and, ultimately, try the case to a jury in 19 days. The trial of a federal opt-in class and multiple state Rule 23 classes could be a complex, expensive, and difficult undertaking. Even if Plaintiffs obtain a favorable verdict on their claims, they acknowledge that they could potentially face additional expenses and delay if RGIS appeals. Taken together, these considerations support approval of the settlement.

### 3. The Risk of Maintaining Class Action Status

Under the third factor, the Court considers the risk of maintaining class action status through the trial of this case. *See Churchill Village*, 361 F.3d at 575. As the record demonstrates, the parties have vigorously litigated the issue of class action status, generally, and the types of claims certified for class treatment, specifically. *See* Docket Nos. 216 (Dec. 19, 2007 Order Granting Motion to Facilitate Notice Pursuant to 29 U.S.C. § 216(b)), 403 (RGIS's Motion to Decertify), 569 (Plaintiffs'

United States District Court

For the Northern District of California

1  Motion to Certify Under Rule 23), 694 (Feb. 6, 2009 Order Certifying Rule 23 Classes and Denying

2  Motion to Decertify).  Presently, there are no outstanding disputes regarding the classes and claims

3  that the Court has certified.  Plaintiffs, however, acknowledge that because they are asserting claims

4  pursuant to the FLSA and the laws of four states based on events occurring in over 300 RGIS

5  districts and thousands of inventory locations across the country, they may face renewed challenges

6  to class action status from RGIS.  Mot. for Final Approval at 9.  Thus, the risk of maintaining class

7  action status favors settlement.

8       **4.  The Settlement Amount**

9       Fourth, the Court must analyze the amount offered in settlement.  *See Churchill Village*, 361

10  F.3d at 575.  To assess whether the amount offered is fair, the Court may compare the settlement

11  amount to the parties' estimates of the maximum amount of damages recoverable in a successful

12  litigation.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459.  While settlement amounts that are

13  close to the plaintiffs' estimate of damages provide strong support for approval of the settlement,

14  settlement offers that constitute only a fraction of the potential recovery do not preclude a court from

15  finding that the settlement offer is fair.  *Id.* (finding settlement amount constituting one-sixth of the

16  potential recovery was fair and adequate); *see also Hanlon*, 150 F.3d at 1027 (holding that the

17  possibility that the settlement amount could have been greater "does not mean the settlement

18  presented was not fair, reasonable or adequate.").  "This is particularly true in cases . . . where

19  monetary relief is but one form of the relief requested by the plaintiffs."  *Officers for Justice v. Civil

20  Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982).  Thus, district courts have found that settlements

21  for substantially less than the plaintiffs' claimed damages were fair and reasonable, especially when

22  taking into account the uncertainties involved with litigation.  *See, e.g., Glass v. UBS Fin. Serv.,

23  Inc.*, No. C-06-4068 MMC, 2007 WL 2216862, at *4 (N.D. Cal. Jan. 26, 2007) (finding settlement

24  of wage and hour class action for 25 to 35% of the claimed damages to be reasonable); *Williams v.

25  Costco Wholesale Corp.*, No. CV-02-2003 IEG, 2010 WL 2721452, at *4 (S.D. Cal. July 7, 2010)

26  (finding settlement amount constituting approximately 75.6% of the plaintiffs' claimed losses from

27  unpaid overtime pay to be adequate).

28

United States District Court

For the Northern District of California

Here, under the terms of the Settlement Agreement RGIS will be required to pay a Settlement Amount of $27,000,000, with at least $12.43 million of that total being distributed *pro rata* to class members. *See* Settlement Agreement, ¶ 2.1(S) [Docket. No. 912-1 at 8]; Mot. for Final Approval at 10. Citing to the declaration of their expert statistician, Dr. Richard Drogin, Plaintiffs contend that $12.43 million represents an amount that is substantially equal to Plaintiffs' own estimate of the class members' compensatory damages arising from their pre-inventory donning and waiting claims. Mot. for Final Approval at 10; Declaration of Dr. Richard Drogin In Support of Plaintiffs' Motion for Final Approval ¶ 4 [Docket. No. 875 at 1]. They explain that this estimate includes unpaid overtime and liquidated damages pursuant to the FLSA, and unpaid straight-time, overtime, and pre-judgment interest pursuant to California, Illinois, Oregon, and Washington law. *Id.*; Drogin Decl. ¶ 5. The remainder of the damages Plaintiffs sought related to Plaintiffs' California meal period claims and the extension of the class period to September 16, 2010. *Id.* Thus, the $12.43 million that will be distributed to the class members secures a substantial recovery that corresponds to Plaintiffs' own damages assessment.[4]

Moreover, the Settlement Agreement also includes injunctive relief in the form of changes to RGIS's corporate policies regarding donning of required audit equipment to ensure that the donning occurs *after* hourly auditing employees have scanned-in for purposes of receiving pay. *See* Settlement Agreement, ¶ 2.6.B [Docket No. 912-1 at 13]. Significantly, because the FLSA does not authorize injunctive relief, Plaintiffs would not have been able to obtain this result on a class-wide basis even if they had prevailed at trial. *See* Declaration of the Honorable Edward A Infante (Ret.)

---

[4] In their prior Motion for Preliminary Approval, Plaintiffs explained that Class Counsel devised an allocation plan based on a formula designed to compensate all class members who are entitled to receive settlement payments. *See* Docket No. 840 at 8. Specifically, Plaintiffs explained that settlement payments will be calculated as follows: (1) all settlement class members will receive a pro rata share of the estimated $13 million fund based on their individual wage loss and interested as calculated by Plaintiffs' experts from records RGIS produced; (2) regardless of the individual wage loss calculated by Plaintiffs' experts, settlement class members who worked more than 30 days will receive a settlement payment of no less than $50; (3) regardless of their estimated individual wage loss, settlement class members who worked less than 30 days will receive a settlement payment of no less than $25. *Id.* Additionally, the parties have agreed that $100,000 from the settlement amount will be allocated as penalties payable to the State of California pursuant to California's Private Attorney General Act, California Labor Code section 2699. *Id.*; Settlement Agreement ¶ 2.8.

United States District Court

For the Northern District of California

1   in Support of Final Approval of Class Action Settlement ¶¶ 9-10, Ex. E to Motion for Final

2   Approval [Docket No. 912-5].

3       Taken together, the settlement award compensating the class for their backpay plus interest

4   and FLSA liquidated damages, in conjunction with changes to RGIS's national compensation

5   policies, support a finding that the relief obtained through the Settlement Agreement is fair and

6   reasonable.

7       **5. The Extent of Discovery Completed and the Stage of the Proceedings**

8       The fifth factor examines the extent of discovery the parties have completed and the current

9   stage of the litigation to evaluate whether "the parties have sufficient information to make an

10  informed decision about settlement." *Linner v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th

11  Cir. 1998).  As Plaintiffs point out in their Motion, both parties conducted extensive discovery in

12  this case.  With respect to written discovery, Plaintiffs propounded 11 sets of special interrogatories

13  and 17 sets of requests for production of documents, to which RGIS responded by producing

14  124,193 pages of documents, including policy-related  documents, internal handbooks and training

15  materials, and personnel files for over 400 opt-in plaintiffs.  Mot. for Final Approval at 10-11.

16  RGIS, in turn, propounded one set of approximately 25 special interrogatories on each of the Named

17  Plaintiffs and one set of approximately 65 requests for production of documents.  *Id*. at 11.  RGIS

18  also received responses to interrogatories and requests for production of documents from 390 of the

19  opt-in plaintiffs.  *Id*.  In addition to the written discovery, the parties took a total of 64 depositions

20  and had expert reports prepared.  *Id*.  Further, Plaintiffs indicate that during discovery they obtained

21  and conducted a statistical analysis of RGIS's time and payroll data for the FLSA opt-in and auditors

22  in the four states.  *Id*.

23      Given the scope and amount of discovery completed, the parties had ample information

24  about the strengths and weaknesses of their positions to enable them and their counsel to make

25  informed decisions about the settlement.  Thus, this factor supports final approval of the settlement.

26      **6. The Experience and Views of Counsel**

27      The sixth factor takes into account counsel's experience and their respective views of the

28  Settlement Agreement.  The Court has previously evaluated Class Counsel's qualifications and

**United States District Court**
For the Northern District of California

1   experience and concluded that counsel is well-qualified to represent Plaintiffs' interests in this

2   action. *See* Feb. 6, 2009 Order Re Plaintiffs' Motion for Class Certification at 49 [Docket No. 694];

3   *see also* Declaration of Guy Wallace in Support of Motion for Preliminary Approval ¶¶ 3-9 [Docket

4   No. 840-2]. Likewise, the Court is confident in defense counsel's competency and experience and

5   their ability to represent RGIS in this action.

6        With respect to counsel's views of the proposed Settlement Agreement, Mr. Wallace has

7   filed a declaration stating that he believes the settlement amount and prospective injunctive relief

8   provide an "exceptional result" for the class. Wallace Decl. ¶ 42 [Docket No. 840-2 at 14]. He also

9   opines that the settlement "is in the best interest of the Class Members in light of all known facts and

10  circumstances, including the risk of significant delay and Defendant's asserted defenses." *Id.* ¶ 43.

11  While defense counsel have not filed any declaration expressing their perspective on the Settlement

12  Agreement, RGIS has not opposed the instant motion.

13       Courts have taken divergent views on the amount of weight to accord counsel's opinions.

14  *Compare Carter v. Anderson Merch., LP*, No. EDCV 08-0025-VAP, 2010 WL 1946784, at *8 (C.D.

15  Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."); *Riker v. Gibbons*, No.

16  3:08-cv-00115-LRH, 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010) ("The recommendation of

17  experienced counsel in favor of settlement carries a great deal of weight in a court's determination of

18  the reasonableness of a settlement.") (internal quotation omitted); *with Chun-Hoon v. McKee Foods

19  Corp.*, No. C 05-620 VRW, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("[T]his court is reluctant to

20  put much stock in counsel's pronouncements, as parties to class actions and their counsel often have

21  pecuniary interests in seeing the settlement approved."). Here, given Class Counsel's extensive

22  experience with class actions, familiarity with the strengths and weaknesses of Plaintiffs' claims,

23  and assessment of the benefits of settlement and the risks associated with continued litigation, the

24  Court finds that Class Counsel's favorable opinion of the terms of the settlement supports approval

25  of the Settlement Agreement.

26       **7. The Presence of a Governmental Participant**

27       Because there is no governmental entity involved in this litigation, the seventh factor is

28  inapplicable.

**United States District Court**

For the Northern District of California

1    **8.  The Reaction of Class Members to the Proposed Settlement.**

2         The final factor examines the class members' response to the proposed settlement.  *See*

3    *Churchill Village*, 361 F.3d at 575.  Plaintiffs explain that notice was sent via first class mail to the

4    last-known addresses of 62,594 class members.  Mot. for Final Approval at 2 (citing Declaration of

5    Brendan McInerney, ¶ 10 [Docket No. 912-4 at 3]).  In response, only 33 class members,

6    representing approximately 0.05% , have opted-out.  Mot. for Final Approval at 2; McInerney Decl.

7    ¶ 16.  Thus, the 99.95% class member participation rate is strong indicia that the class supports the

8    proposed settlement.  *See Churchill Village*, 361 F.3d at 577 (affirming approval of settlement with

9    500 opt-outs from class of 90,000 class members, roughly .5%,); *Chun-Hoon*, 716 F. Supp. 2d at 852

10   (finding that 16 opt-outs in a class of roughly 329 members, amounting to 4.86%, strongly supported

11   settlement); *Glass*, 2007 WL 221862, at *5 (approving settlement with opt-out rate of 2%).

12        The number of class member objections also is relevant to gauging class member reaction.

13   Generally, "the absence of a large number of objections to a proposed class action settlement raises a

14   strong presumption that the terms of a proposed class action settlement are favorable to the class

15   members."  *Nat'l Rural Telecomm. Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal.

16   2004); *see also Garner v. State Farm Mut. Auto. Ins. Co.*, No. C 08-1365 CW, 2010 WL 1687832, at

17   *14 (N.D. Cal. April 22, 2010) (citing *Nat'l Rural Telecomm. Cooperative*); *Riker*, 2010 WL

18   4366012, at *5 ("The small number of objections is an indication that the settlement is fair,

19   adequate, and reasonable.").  Here, Plaintiffs proffer that only 16 class members – constituting

20   0.02% – have filed objections to the proposed settlement.  Mot. for Final Approval at 2.  In the

21   following section, the Court addresses the substance of each of the objections.  For purposes of

22   assessing the overall reaction of the class, however, the Court finds that the minimal number of

23   objections filed strongly supports approval of the settlement.

24        **9.  Class Members' Objections**

25        The following 16 class members have filed objections to the proposed settlement: (1) Bonita

26   Jones [Docket No. 868]; (2) Sharon Chysler [Docket No. 892]; (3) Kenneth Hobbs [Docket Nos.

27   893, 915]; (4) Emma Jean Jones [Docket No. 894]; (5) Mara Mary Kraguli [Docket No. 895]; (6)

28   Leslie T. King [Docket No. 896]; (7) Joyce Anderson [Docket No. 897]; (8) Dianne Roholt [Docket

No. 898]; (9) Delia Hauser [Docket No. 899]; (10) Ricky Covington [Docket No. 905]; (11) Carlton K. McRoberts [Docket No. 906]; (12) Marion Elizabeth Williams-Jerome [Docket No. 910]; (13) Denise Bundy [Docket No. 911, 913]; (14) Kenneth Pertile [Docket No. 928, Ex. A]; (15) Shaniqua Smith [Docket No. 928, Ex. B]; and (16) Thomell Smith [Docket No. 928, Ex. C].  Because many of the class members raise similar objections, the Court will address them according to the substance of the challenge.

### a. Objections to the Settlement Amount

Ms. Anderson, Ms. Crysler, Mr. Covington, Ms. King, Mr. Pertile, and Ms. Smith each object to the settlement on the ground that the $12.43 million that is to be distributed to the class members *pro rata* is inadequate.  However, as discussed above under the fourth factor, this amount is nearly equal to Plaintiffs' expert's calculation of damages associated with the class's pre-inventory donning claims.  *See* Drogin Decl. ¶ 4.  The $12.43 million is therefore meant to compensate the class for their unpaid overtime and liquidated damages under the FLSA and unpaid straight-time, overtime, and prejudgement interest under California, Illinois, Oregon, and Washington law.  While those objecting to the settlement may believe that a higher amount is justified, they must bear in mind that if the case proceeds to trial, they face significant risks, including the possibility that a jury will find in RGIS's favor and the class will not recover any damages.  Because the settlement agreement secures substantial monetary recovery for the class that roughly approximates their claimed damages for their donning time claims, the Court finds the objections to the settlement amount unpersuasive and declines to reject the settlement on this basis.

### b. Objections to the Amount of Individual Awards

Next, Ms. Anderson, Ms. Crysler, Mr. Covington, Ms. Jones, Ms. King, Mr. Pertile, and Ms. Smith each object to the settlement on the ground that their individual awards are insufficient. Plaintiffs, however, explain that their expert, Dr. Drogin calculated the estimated awards stated in the settlement notice according to the FLSA and hour laws of the class members' respective states. *See* Mot. for Final Approval at 14; *see also* Motion for Preliminary Approval at 8 [Docket No. 840]. Using RGIS's time and payroll records, Dr. Drogin credited each class member with 15 minutes of unpaid time for all local inventories, and all travel inventories for which the class member received

United States District Court

For the Northern District of California

1   less than 30 minutes of travel pay.  *See* Drogin Decl. ¶¶ 7-8 [Docket No. 875].  For state law class

2   members, Dr. Drogin calculated the resulting unpaid straight-time and overtime wages according to

3   the class members' respective state's wage and hour laws.  *Id*. ¶¶ 11-14.  For FLSA collective action

4   members, Dr. Drogin calculated the unpaid overtime wages, as well as any straight-time wages.  *Id*.

5   ¶ 10.  He then took the total for each class member and divided it by the total class damages to

6   determine a percentage, which he multiplied by the total settlement fund to determine each

7   individual's award.  *Id*. ¶ 16.  While the class members contend that their individual awards should

8   be greater, they have not proposed any alternative method for calculating individual awards that

9   would produce a more equitable result.  Moreover, if any of the class members believed that he or

10  she could obtain a greater recovery by individually asserting claims against RGIS, the Notice of

11  Settlement informed them that they had the option of opting-out of the Settlement Class.  *See*

12  Official Notice of Settlement of Class Action, Ex. A to McInerney Decl. at 11.  The Court therefore

13  finds that the class members' challenges to the amount of their individual awards do not provide any

14  grounds to reject the proposed settlement.

15  *c.  Objections Based on Lack of Compensation for Unpaid Travel Time*

16      The next category of objections concerns the scope of the settlement.  Specifically, Ms.

17  Crysler, Mr. Covington, Ms. Hauser, Ms. Jones, Ms. King, Mr. Pertile, and Ms. Smith each object to

18  the settlement because it does not compensate class members for RGIS's practice of not paying

19  auditor employees for the first hour of travel to and from travel inventories.  The Court previously

20  considered the class members' claim travel/commute time claims and granted summary judgment in

21  favor of RGIS.  *See* Aug. 24, 2009 Summary Judge Order at 13-21 [Docket No. 775].  Because any

22  claim for unpaid travel or commute time is no longer at issue, the class members' argument that the

23  settlement is deficient because it does not provide compensation for unpaid travel time lacks merit.

24  *d.  Objections to Service Awards for Named Plaintiffs*

25      Two class members – Ms. Hauser and Mr. Hobbs – object to the provision of service awards

26  to the Named Plaintiffs in the proposed settlement.  However, service awards, also known as

27  incentive payments, to named plaintiffs in a class action are permissible and do not render a

28  settlement unfair or unreasonable.  *See Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003);

17

United States District Court

For the Northern District of California

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  In section VI, below, the Court addresses Plaintiffs' request for service awards in detail and approves the awards.  Thus, for purposes of these objections, the Named Plaintiffs' request for such awards does not undermine the fairness or adequacy of the proposed settlement.

Additionally, in his objection Mr. Hobbs requests that he be named a class representative for the state of Ohio and requests a service award.  *See* Docket No. 893 at 2.  He further states that if his request cannot be granted, he wishes to opt-out of the settlement.  *Id.*  However, as Plaintiffs point out, because no claims arising under the laws of Ohio were at issue in this case, Mr. Hobbs cannot represent an Ohio state class.  Accordingly, the Court **GRANTS** Mr. Hobbs' request to opt-out of the Settlement Class.

### e.  Objections Based on Request for Attorneys' Fees and Costs

Two class members – Ms. Anderson and Ms. Crysler – object to the proposed settlement on the ground that the attorneys' fees sought by Class Counsel are too high.  In section V, below, the considers Plaintiffs' motion for an award of attorneys' fees and costs, and after a thorough review, concludes that the amount of fees and costs requested is reasonable.  The class members' objections therefore do not preclude approval of the settlement.

### f.  Objections to the Injunctive Relief Component

In her objection, Ms. Crysler contends that the proposed settlement is inadequate because the injunctive relief does not include any changes to RGIS's policy of not paying auditors for the first hour of travel to and from travel inventories.  *See* Docket No. 892.  However, as explained above, the Court granted summary judgment in RGIS's favor on the travel/commute time claims.  Thus, while Ms. Crysler may oppose RGIS's policy regarding payment for travel time, the absence of any injunctive relief requiring changes to RGIS's policy is consistent with the Court's summary judgment ruling.  This objection therefore does not provide any basis to deny approval of the proposed settlement.

### g.  Miscellaneous Objections

Finally, certain class members raise other, individual challenges to the settlement agreement that do not fall within the foregoing categories.

18

United States District Court

For the Northern District of California

In her letter, Ms. Roholt indicates that she experienced hostile treatment during her employment and was then wrongfully terminated from her position at RGIS. *See* Docket No. 898. She objects to the settlement because it does not address her concerns relating to these incidents. Similarly, in her letter, Ms. Kraguli contends that she was wrongfully terminated and denied unemployment benefits and objects to the settlement on these bases. *See* Docket No. 895. These objections, however, do not relate to the wage and hour claims that are at issue in this case and do not raise any issues calling the fairness or adequacy of the proposed settlement into question.

Mr. McRoberts has filed a letter indicating that he objects to the settlement, but does not set forth the basis for his objection. Likewise, Mr. Smith has filed a letter containing his contact information, but omitting the basis for his objection.

Ms. Bundy and Ms. Williams-Jerome have filed letter indicating that they object to the settlement because they were excluded from the settlement classes.[5] These objections thus do not go to the fairness of the settlement.

### 10. The Settlement Process

In addition to the foregoing factors, the Court may also consider the procedure by which the parties arrived at their settlement. *See Chun-Hoon*, 716 F. Supp. 2d at 852. The parties first participated in a full-day mediation session before David Rotman on October 5, 2009, but were unable to reach an agreement. *See* Declaration of Guy B. Wallace in Support of Plaintiffs' Motion for Attorneys' Fees ¶ 102 [Docket No. 882]. The parties thereafter continued to litigate the case and conducted additional expert discovery. *Id.* In April 22, 2010, the parties participated in a second private mediation session, this time before retired United States Magistrate Judge Edward A. Infante, during which the parties reached compromises on several key issues. *Id.* ¶ 103; Infante Decl. ¶ 4. The parties returned for a second mediation session before Judge Infante on May 7, 2010, at which time they agreed to the basic terms that formed the basis of the Settlement Agreement, which they finalized on July 9, 2010. Wallace Decl. ¶ 103; Infante Decl. ¶ 14. Thus, the Settlement Agreement is the result of arms-length negotiations supervised by Judge Infante. This supports a finding that

---

[5] In response, Plaintiffs explain that both individuals were excluded because they did not work for RGIS during the three years preceding their opt-in dates.

**United States District Court**
For the Northern District of California

the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel.  *See Hanlon*, 150 F.3d at 1027 (affirming trial court's approval of class action settlement where parties reached agreement after several months of negotiation and the record contained no evidence of collusion); *Chun-Hoon*, 716 F. Supp. 2d at 852; *see also Satchell v. Fed. Exp. Corp.*, No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Carter v. Anderson Mech., LP*, No. EDCV 07-0025-VAP, 2010 WL 1946784, at *7 (C.D. Cal. May 11, 2010) (citing *Satchell*).

**D.     Conclusion**

Taking the foregoing factors into consideration, the Court finds that the Settlement Agreement, as amended by the Supplemental Agreement, is fundamentally fair, adequate, and reasonable.  The parties reached the agreement after intensive negotiations led by an experienced mediator.  After years of litigation and extensive discovery, the parties have a clear understanding of the strengths and weaknesses of their respective positions and the risks and expenses inherent in taking the case to trial.  The Settlement Agreement provides compensation for the class members unpaid wages that equates with Plaintiffs' own damages estimate, and, further, provides injunctive relief from RGIS in the form of amending its policies to ensure that employees are paid for such time in the future.  Finally, the class member participation rate is extremely high and the few class member objections that have been filed do not raise meritorious challenges.  On balance, these factors all support approval of the Settlement Agreement.

Accordingly, the Court **GRANTS** Plaintiffs' Motion for Final Approval of the Settlement.

## V.  MOTION FOR ATTORNEYS' FEES AND COSTS

**A.     Overview of Plaintiffs' Motion**

As indicated above, the Settlement Agreement authorizes Plaintiffs to seek an award of attorneys' fees and costs incurred during this litigation.  Specifically, ¶ 2.12.B of the Settlement Agreement, as amended, provides in pertinent part:

> Application for approval of attorneys' fees and expenses.  Plaintiffs will submit an application to the Court by December 2, 2010, for approval of attorney's fees and litigation expenses.  Plaintiffs will request that the Court approve an award of

United States District Court

For the Northern District of California

$11,380,000 as attorney's fees and approximately $2,200,000 as litigation expenses, which does not include the costs of the Claims Administrator. Defendant will not oppose the amounts sought by Plaintiffs for attorney's fees and litigation expenses. Plaintiffs' Attorney's Fees will not exceed the amount of their calculated lodestar. Plaintiffs' Attorney's Fees and Litigation Expenses will be paid solely from the Settlement Amount. In no event will Defendant be required to pay more than the Settlement Amount in full satisfaction of all its obligations under this Agreement, with the single exception that, as provided herein, Defendant will pay its share of employer payroll taxes associated the payments of back pay to Authorized Claimants pursuant to this Agreement.

Supplemental Agreement ¶ 3.E [Docket No. 912-2 at 3-4].

Consistent with this provision, Plaintiffs now seek approval of an award of $11,321,849.62 in attorneys' fees and $2,113,792.81 in costs and litigation expenses. *See* Mot. for Attorneys' Fees at 20, 34, & Appendix B (setting forth itemization of attorneys' fees and costs requested) [Docket No. 909]. RGIS has not opposed Plaintiffs' request.

**B.    Legal Standard**

      **1.    Authority and Methodology for Awarding Attorneys' Fees, Expenses, and Costs**

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, in addition to the Settlement Agreement, Plaintiffs are eligible for an award of attorneys' fees under both federal and state law.

Pursuant to § 216(b) of the FLSA, the district court is authorized to award attorneys' fees and costs to plaintiffs prevailing in an overtime compensation action. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Concurrently, Plaintiffs' request for an award of attorneys' fees is authorized under California, Washington, Oregon, and Illinois law. *See* California (Cal. Lab. Code §§ 218.5, 218.6, 1194; Cal. Civ. Proc. Code § 1021.5); Washington (Wash. Rev. Code § 49.52.070); Oregon (Or. Rev. Stat. §§ 652.200(2), 653.055(4)); Illinois (820 Ill. Comp. Stat. 105/12(a)).

Having identified the authority for Plaintiffs' request, the Court must determine the proper methodology for assessing the reasonableness of the amount of fees Plaintiffs seek. While Class Counsel negotiated RGIS's payment of attorneys' fees and costs separately from the class damages,

United States District Court

For the Northern District of California

both figures were calculated into the $27,000,000 Settlement Amount RGIS agreed to pay and any

award of attorneys' fees will be paid from that general settlement fund.  Supplemental Agreement

¶3.E.  The Settlement Agreement also caps the attorneys' fees Plaintiffs may seek at $11,380,000

and provides that if the Court does not approve the full amount of Plaintiffs' attorneys' fees

requested, "the non-appropriated amounts will be distributed to all Authorized Claimants on a pro

rata basis."  Supplemental Agreement ¶ 3.E; Settlement Agreement ¶ 2.12.F.  Thus, the Settlement

Agreement created a common fund consisting of the $27,000,000 Settlement Amount from which

the settlement class will recover damages and Class Counsel will be paid for their services in

prosecuting the classes' claims.

In cases where settlement of a class action creates a common fund, the Court has discretion

to award attorneys' fees using either the lodestar method or the percentage of the fund approach.

*Vicaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Paul, Johnson, Alston & Hunt v.*

*Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (recognizing that, in the context of a specific case,  either

approach may "have its place in determining what would be reasonable compensation for creating a

common fund.").  Irrespective of which methodology the Court elects to employ, the court may not

apply it mechanically or formulaically, but must undertake an analysis that ensures that the fee

award is reasonable.  *In re Mercury Interactive Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010);

*Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

In the context of this case, the Court finds that application of the lodestar method allows for a

more accurate assessment of the reasonableness of Plaintiffs' fee request.  First, as detailed

throughout this Order, the parties intensely litigated this action for over four years.  RGIS mounted a

particularly aggressive defense which, in turn, greatly increased the amount of time and resources

counsel had to devote to discovery and litigating issues surrounded class action status.  Utilizing the

lodestar approach captures the time counsel spent litigating such issues while still allowing the Court

to trim any excess time.  Similarly, the amount of discovery collected and exchanged was

substantial.  Because the claims in this case concerned RGIS's compensation policies and practices

at 300 districts throughout the country, Class Counsel was faced with a tremendous task of

marshaling evidence from employees at these locations and piecing that evidence together to show a

United States District Court

For the Northern District of California

uniform practice by RGIS of denying employees compensation for their work.  Toward that end, Class Counsel obtained and submitted over 400 declarations and RGIS propounded written discovery on 390 opt-in Plaintiffs, which Class Counsel was responsible for organizing, tracking, and producing to RGIS.  *See* Wallace Decl. ¶¶ 38, 46, 47.  Again, by focusing on the amount of time actually billed on such tasks, the lodestar method allows the Court to account for the scale of discovery undertaken in this case.  Finally, as Plaintiffs point out, because the amount of individual damages in wage-and-hour actions such as the instant case are relatively small, gauging the amount of attorneys' fees on the size of the settlement fund may not lead to a reasonable fee determination. *See* Mot. for Attorneys' Fees at 33.  For these reasons, the Court will evaluate Plaintiffs' request for approval of attorneys' fees using the lodestar method.

### 2.      Calculating Fees Under the Lodestar Approach

The Court engages in a two-step process when determining the reasonable amount of attorneys' fees to award under the lodestar method.  First, the court calculates the presumptive fee award, also known as the "lodestar figure," by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *Grove v. Wells Fargo Financial Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010).  Second, "in appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975) . . . that are not subsumed into the initial lodestar calculation." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993).  Specifically, the *Kerr* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Kerr*, 526 F.2d at 70.  "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Intel Corp.*, 6 F.3d at 622; *see*

**United States District Court**
For the Northern District of California

1   *also Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673 (2010) (noting that the lodestar figure includes

2   "most if not all of the relevant factors constituting a reasonable attorney's fee") (internal quotations

3   omitted). Thus, in appropriate cases, the court may examine the remaining factors to determine

4   whether an enhancement or decrease in the lodestar figure is warranted. *Clark v. City of Los*

5   *Angeles*, 803 F.2d 987, 990 (9th Cir. 1986). However, there is a strong presumption that the lodestar

6   figure represents a reasonable fee and any upward or downward adjustment of that figure is proper

7   only in "rare and exceptional cases." *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th

8   Cir. 2000) (internal citation omitted); *see also Fischel v. Equitable Life Assur. Society of the United*

9   *States*, 307 F.3d 997, 1007 (9th Cir. 2002).

10  **C.      Analysis**

11         **1.       Plaintiffs' Lodestar Figure**

12         To determine the presumptive amount of attorneys' fees Plaintiffs may recover, the Court

13  must calculate the lodestar amount by multiplying the number of hours reasonably expended on the

14  litigation by a reasonable hourly rate. *Intel Corp.*, 6 F.3d at 622. The Court will first review

15  whether counsel's billing rates are reasonable and then will examine the reasonableness of the time

16  billed.

17                *a. Counsel's Reasonable Hourly Billing Rates*

18         In calculating the lodestar figure, the district court must determine a reasonable hourly rate

19  based on the experience, skill, and reputation of the attorneys requesting fees. *Chalmers v. City of*

20  *Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). As the Supreme Court has recognized,

21  determining a reasonable or prevailing rate of compensation is "inherently difficult." *Blum v.*

22  *Stenson*, 465 U.S. 886, 895 n.11 (1984). To set the reasonable rate, the court does not refer to the

23  rates counsel actually charged, but rather looks to the rate prevailing in the community for similar

24  work performed by attorneys of comparable skill, experience, and reputation. *Chalmers*, 796 F.3d at

25  1210-11. The relevant community is typically the community in which the district court sits.

26  *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). "To inform and

27  assist the district court" in making this assessment, "the burden is on the fee applicant to produce

28  satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in

line with those in the community.  *Blum*, 465 U.S. at 895 n.11*; see also Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998) (declarations of attorneys regarding the prevailing market rate in the community may be sufficient to establish reasonable hourly rate).  An attorney's declaration regarding the reasonableness of his or her own rate, standing alone, is insufficient to meet the fee applicant's burden.  *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987).

Here, Plaintiffs have submitted declarations from their attorneys regarding the bases for their hourly rates, citations from other decisions analyzing the reasonableness of counsel's hourly rates, and declarations from other attorneys regarding market rates in the Northern District of California and comparing counsel's requested rates against those in the market.  The Court has thoroughly reviewed the materials Plaintiffs submitted and will summarize the key points and its findings below.

i. Schneider Wallace Cottrell Brayton Konecky

Plaintiffs seek approval of the following hourly rates charged by the Schneider Wallace Cottrell Brayton Konecky LLP ("Schneider Wallace") attorneys and paralegals.

| Attorney | Hourly Rate |
|---|---|
| Guy Wallace | $650.00 |
| Josh Konecky | $625.00 |
| Amanda Hugh | $350.00 |
| Andrew Lee | $400.00 |
| Camilia Robertson | $450.00 |
| Christian Schreiber | $400.00 |
| Jin Kim | $400.00 |
| Kelly Knapp | $350.00 |
| Michael Thomas | $475.00 |
| Nancy Park | $450.00 |
| Naomi Sunshine | $450.00 |
| Purvi Patel | $350.00 |
| Erica Smith | $325.00 |

*United States District Court*
For the Northern District of California

| Paralegal/Legal Assistant | Hourly Rate |
|---|---|
| Erica Maloney | $150.00 |
| Jake Gould | $150.00 |
| Jennifer Hebard | $150.00 |
| Josie Marks | $150.00 |
| Kisha Charles | $150.00 |
| Nathan Koff | $125.00 |
| Sam Marks | $150.00 |

*See* Appendix B to Mot. for Attorneys' Fees at 1 [Docket No. 909-2].

With respect to Guy Wallace, who has served as lead Class Counsel, Plaintiffs contend that Mr. Wallace's hourly billing rate of $650 is reasonable. Mot. at 20. In his Declaration, Mr. Wallace states that graduated from Harvard Law School in 1993 and has been practicing law for 17 years. Wallace Decl. ¶¶ 4, 5 [Docket No. 882]. During this time, Mr. Wallace has gained substantial experience in complex litigation and has served as lead counsel, co-lead counsel, or class counsel in more than 20 class actions. *Id.* ¶ 5. Plaintiffs have also submitted declarations from several other attorneys who are familiar with both Mr. Wallace's experience and the hourly rates charged by attorneys in the San Francisco Bay Area. These attorneys attest that Mr. Wallace's hourly billing rate is consistent with those of attorneys with similar experience, skill, and reputation for comparable work in complex class actions in this community. *See* Declaration of Richard M. Pearl ¶¶ 7-9 [Docket No. 879]; Declaration of James M. Finberg ¶ 17 [876]; Declaration of Jonathan E. Gertler ¶¶ 15, 18 [Docket No. 877]. Additionally, Plaintiffs note that several other courts have approved Mr. Wallace's hourly rates, including his 2010 billing rate of $650 an hour. *See* Wallace Decl. ¶ 135 & Ex. F (Order Granting Final Approval of Class Action Settlement, *Rosa v. Morrison Homes, Inc.*, Case No. 373059, p. 6 (Cal. Sup. Ct. Oct. 27, 2010) (approving $650 hourly billing rate)) & Ex. G (Order Granting Final Approval of Class Action Settlement, *Chau v. CVS RX Servs., Inc.*, Case No. BC349224, p. 4 (Cal. Sup. Ct. Sept. 24, 2008) (approving 2008 hourly billing rate of $600)); *see also Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp. 2d 981, 991 (N.D. Cal. 2005) (approving 2005 rate of $435 an hour).

United States District Court

For the Northern District of California

Taken together, the Court finds that this evidence demonstrates that Mr. Wallace's hourly rate of $650 is reasonable.

As to the other Schneider Wallace attorneys and paralegals, Plaintiffs contend that each of their rates is in line with those of attorneys and paralegals of similar experience and skill in the Bay Area. Mot. for Attorneys' Fees at 21. In his initial and supplemental declarations, Mr. Wallace sets forth each of the attorneys' and paralegal's education and qualifications. *See* Wallace Decl. ¶¶ 138-146; Supplemental Declaration of Guy B. Wallace ¶ 2, 3-11 [Docket No. 925]. In support of the billing rates charged by each attorney, Plaintiffs proffer testimony from Kelly Dermody and Mr. Gertler, who have extensive experience in class actions and are familiar with the rates charged by firms representing plaintiffs in class actions. *See* Declaration of Kelly M. Dermody ¶¶ 7-9, 13-14 [Docket No. 874]; Gertler Decl. ¶¶ 7, 13; Supplemental Declaration of Jonathan E. Gertler ¶¶ 6-7 [Docket No. 927]. Both Ms. Dermody and Mr. Gertler state that, based on their review of the Schneider Wallace attorneys' qualifications, the Schneider Wallace attorneys' respective billing rates are consistent with those billed by attorneys with similar experience performing comparable work in the San Francisco Bay Area. *See* Dermody Decl. ¶ 15; Gertler Decl. ¶ 15; Gertler Suppl. Decl. ¶ 7.[6] Further, Mr. Gertler opines that, based on his review of the paralegals' educational background and experience, their hourly rates of $125 and $150 is within the market range for paralegals and legal assistants having similar qualifications and performing similar work in the San Francisco Bay Area. Gertler Suppl. Decl. ¶ 8. Based on the Court's review of these materials, it finds that the hourly rates charged by the Schneider Wallace attorneys and paralegals are reasonable.

ii.     Goldstein, Demchak, Baller, Borgen & Dardarian

Next, Plaintiffs contend that the hourly billing rates for the Goldstein, Demchak, Baller, Borgen & Dardarian ("Goldstein Demchak") attorneys are "eminently reasonable." Mot. for

---

[6]     Plaintiffs also contend that "[s]everal courts have approved the current hourly rates of [Schneider Wallace] associates," and cite to the final settlement approval orders in *Rosa* and *Chau*. Mot. for Attorneys' Fees at 21. While both orders expressly approve Mr. Wallace's hourly rate, they do not identify the other associates for which they were approving fees. As a result, those decisions do not support approval of the associate billing rates in this case.

United States District Court

For the Northern District of California

Attorneys' Fees at 21.  The hourly rates are as follows:

| Attorney | Hourly Rate |
|---|---|
| Barry Goldstein | $725.00 |
| David Borgen | $675.00 |
| Joseph Jaramillo | $500.00 |
| Holly Herndon | $465.00 |
| Enrique Martinez | $440.00 |
| James Kan | $365.00 |
| Gordon Kaupp | $375.00 |

| Paralegals/Legal Assistants | Hourly Rate |
|---|---|
| Hillary Baker | $195.00 |
| Jacqueline Thompson | $195.00 |
| Wendy Whitt | $195.00 |
| Jonathan Bolton | $125.00 |

*See* Appendix B to Mot. for Attorneys' Fees [Docket No. 909-2].

David Borgen's hourly rate of $675 is reasonable.  Mot. for Attorneys' Fees at 21.  In his Declaration, Mr. Borgen states that he graduated from University of California, Hastings College of the Law in 1981, and has been exclusively practicing in the area of labor and employment law since that time.  Declaration of David Borgen ¶¶ 4-5 [Docket No. 873].  He states that since joining Goldstein Demchak in 1990, he has worked on some of the nation's largest employment class actions and has served as lead or co-lead counsel in numerous wage and hour class and collective actions.  *Id*. ¶¶ 6-7.  Additionally, he states that he has authored several articles on employment, wage and hour, and class action issues, and frequently lectures on the subjects.  *Id*. ¶¶ 9-10.  In 2008, he co-wrote and appeared in a training video on the FLSA produced by the Federal Judicial Counsel for federal district court clerks.  *Id*. ¶ 11.  In support of Mr. Borgen's rate Plaintiffs also proffer statements from several attorneys familiar with Mr. Borgen's skills and experience, who opine that Mr. Borgen's hourly rate falls within the range of market rates charged by attorneys in the Bay Area with comparable qualifications for work in complex litigation and class actions.  *See* Pearl

**United States District Court**
For the Northern District of California

1  Declaration ¶¶ 7, 9; Finberg Decl. ¶ 17; Dermody Decl. ¶ 15; Gertler Decl. ¶ 29.  Additionally,

2  Plaintiffs point out that several state and federal district courts have approved Mr. Borgen's previous

3  hourly rates in other cases.  *See* Borgen Decl. ¶ 40.

4         Likewise, Plaintiffs contend that the other Goldstein Demchak attorneys' rates are also

5  justified by their experience and skill.  Mot. for Attorneys' Fees at 21.  In his initial and

6  supplemental declarations, Mr. Borgen sets forth each attorney's credentials and experience, as well

7  as his or her role in the litigation.  *See* Borgen Decl. ¶¶ 17- 25; Supplemental Declaration of David

8  Borgen ¶¶ 4-8 [Docket No. 924].  Mr. Borgen also describes the qualifications of the paralegals who

9  worked on this case.  *See* Borgen Decl. ¶ 25; Borgen Suppl. Decl. ¶¶ 2-8.  In support of the

10  reasonableness of the fees, he states that Goldstein Demchak examines its attorneys' hourly rates

11  annually to ensure that they are consistent with those of similar-sized Bay Area law firms that handle

12  complex and class action litigation and that its rates have been approved by several California trial

13  courts and federal district courts.  Borgen Decl. ¶¶ 37-40.  As additional support, Plaintiffs proffer

14  statements from Mr. Gertler and Ms. Dermody attesting that the rates charged by the Goldstein

15  Demchak attorneys and paralegals are consistent with those charged by attorneys and paralegals

16  with similar skill and experience in the Bay Area.  *See* Gertler Decl. ¶ 31; Gertler Suppl. Decl. ¶¶

17  11,12; Dermody Decl. ¶ 15.  Taking this evidence into consideration, the Court finds that the rate

18  charged by each of the Goldstein Demchak attorneys and paralegals to be reasonable.

19

20                    iii.   Grady Schneider

21         Next, Plaintiffs seek approval of the hourly rates charged by attorneys and paralegals of

22  Grady Schneider, LLP.  Mot. at 22.  Their hourly rates breakdown as follows:

23

| Attorney | Hourly Rate |
|---|---|
| Keith Grady | $650.00 |
| Peter Schneider | $650.00 |
| Bill Jones | $425.00 |
| Catherine Loving | $400.00 |

28

| Paralegals/Legal Assistants | Hourly Rate |
| --- | --- |
| Natalie White | $200.00 |
| Lisandro Cortez | $175.00 |
| Lupina Paiz | $150.00 |
| Margie Fisch | $$150.00 |
| Brenda Vasquez | $100.00 |
| Johnnie McCray | $100.00 |

*See* Appendix B to Mot. for Attorneys' Fees [Docket No. 909-2].

In support, Plaintiffs have submitted the Declaration of Peter Schneider, a founding partner of Grady Schneider, who sets forth the education, qualification, and experience of each of the attorneys, paralegals, and legal assistants from his firm who worked on this case. *See* Declaration of Peter R. Schneider ¶¶ 4-6, 10-17 [Docket No. 881]. Mr. Schneider further explains that the firm sets its hourly rates to be consistent with the market rates for comparable law firms that specialize in complex class actions litigation nationally, including those in the Bay Area. Schneider Decl. ¶¶ 33, 34. As evidence that the rates are reasonable, Plaintiffs have also proffered statements from Mr. Gertler, who opines that, based on his review of the attorneys' qualifications as set forth in Mr. Schneider's Declaration, the rates charged by Grady Schneider attorneys' fall with the range of prevailing hourly rates charged by attorneys with similar credentials in the Bay Area. *See* Gertler Decl. ¶ 32. Mr. Gertler further states that he reviewed the educational background and experience levels of each of the paralegals and legal assistants and that their hourly rates are within the market rate for paralegals and legal assistants with similar qualifications working in the Bay Area. Suppl. Gertler Decl. ¶¶ 13-14. The Court has carefully considered these materials and finds that the rates charged by Grady Schneider attorneys and support staff are reasonable.

iv.    Bailey Pinney

Finally, Plaintiffs request that the Court approve the hourly rates of the Bailey Pinney attorneys who worked on this matter. Mot. at 22. The attorneys and their hourly rates are as follows:

| Attorney | Hourly Rate |
|---|---|
| AE Bud Bailey | $495.00 |
| Angela Laidlaw | $350.00 |
| Bonnie MacFarlane | $400.00 |
| Gary Parks | $400.00 |
| J. Dana Pinney | $495.00 |
| Jacqueline Koch | $395.00 |
| Joele Farnham | $250.00 |
| Jose Mata | $480.00 |
| Karen Moore | $280.00 |
| Katie Maynard | $350.00 |
| Lisa Sloman | $300.00 |
| Meike Chase | $250.00 |
| Mikki Kelly | $300.00 |
| Samuel Epstein | $425.00 |
| Sara Eliot | $275.00 |
| Sharon Cousineau | $300.00 |
| Shelby Clark | $325.00 |
| Susan Nelson | $250.00 |
| Susan Seemiller | $480.00 |
| Valerie Inforzato | $425.00 |

| Paralegals/Legal Assistants | Hourly Rate |
|---|---|
| Aaron Coquet | $85.00 |
| Chelsey Embree | $85.00 |
| Gabe Tomko | $85.00 |
| Jessica Reynolds | $85.00 |
| Shari McBride | $85.00 |
| Sara Sawyer | $85.00 |

1    *See* Appendix B to Mot. for Attorneys' Fees [Docket No. 909-2].

2         In support, Plaintiffs have proffered declarations from J. Dana Pinney, the manager and a

3    shareholder of the Bailey Pinney law firm.[7]  Declaration of J. Dana Pinney [Docket No. 880];

4    Supplemental Decl. of J. Dana Pinney [Docket No. 918].  With one exception (addressed below),

5    Mr. Pinney sets forth the credentials and experience of all of but one of the attorneys from Bailey

6    Pinney who worked on this matter.  Pinney Decl. ¶¶ 11-16; Pinney Suppl. Decl. ¶¶ 4-23.  Plaintiffs

7    have also submitted a supplemental declaration from Mr. Gertler, who reviewed the Baily Pinney

8    attorneys' experience and backgrounds as set forth in Mr. Pinney's declarations.  Gertler Suppl.

9    Decl. ¶ 16. [Docket No. 927].  Mr. Gertler opines that the attorneys' hourly rates are within, or in

10   some instances below, the range of reasonable hourly rates charged by attorneys with similar

11   qualifications and experience in the San Francisco Bay Area for comparable work.  Gertler Suppl.

12   Decl. ¶ 16.  After consideration of these materials, the Court finds that the hourly rates charged by

13   Bailey Pinney attorneys are reasonable.

14        In reviewing Ms. Pinney's declarations, the Court notes that Mr. Pinney has failed to provide

15   information regarding the education and experience of Meike Chase.  Without such information, the

16   Court cannot make an assessment of the reasonableness of his $250 hourly billing rate, and

17   consequently, cannot award Plaintiffs fees for the 57.6 hours he billed, which amounted to $14,400.

18   *See* Appendix B to Plaintiffs' Motion for Attorneys' Fees.

19        Plaintiffs also seek approval of the $85 hourly rate charged by five Bailey Pinney paralegals

20   and legal assistants who worked on this case: (1) Aaron Croquet; (2) Chelsey Embree; (3) Gabe

21   Tomko; (4) Jessica Reynolds; and (5) Shari McBride.  *See* Docket No. 909-2 at 3.  Notably, Mr.

22   Pinney fails to provide any information regarding the qualifications and experience for these

23   individuals in either his initial or supplemental declaration.  Plaintiffs, however, have proffered

24   statements from Mr. Gertler in support of these rates.  Gertler Suppl. Decl. ¶ 17.  Recognizing the

25   lack of background information regarding for the five paralegals, Mr. Gertler nevertheless opines

26   _____

27        [7]  At the January 28, 2011 hearing, the Court noted that Mr. Pinney's declaration lacked
     information about several of the Bailey Pinney attorneys, inhibiting the Court from assessing the
28   reasonableness of their hourly rates.  Accordingly, the Court granted Plaintiffs leave to file a
     supplemental declaration from Mr. Pinney addressing those deficiencies.

United States District Court

For the Northern District of California

that the $85 hourly rate is near the bottom of the market rate for paralegals and legal assistants in the Bay Area, if not below market rate. *Id*. He further opines that this rate would be appropriate for the most junior paralegals and legal assistants in the Bay Area working on class action litigation in a reputable law firm. *Id*. The Court has considered Mr. Gertler's opinions and has reviewed the time entries for the five individuals to ascertain the type of tasks their were completing. Notwithstanding the lack of background information, the Court is satisfied that the $85 hourly rate is a reasonable rate for the support staff services that these individuals performed.

b. *Reasonableness of the Hours Expended in Litigating the Case*

Having assessed the reasonableness of the hourly billing rates for the attorneys and paralegals who worked on this case, the Court turns to the second component of the lodestar calculation: evaluating the number of hours reasonably expended litigating this case. Generally, the party seeking fees bears the initial burden of establishing that the fees and costs taxed were associated with the relief requested and were reasonably necessary to achieve the results obtained. *See McMillon v. Hawaii*, No. 08-00578, 2011 WL 744900, at *7 (D. Haw. Feb. 22, 2011). Toward that end, the fee applicant must provide detailed time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhard*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). "Where the documentation of hours in inadequate, the district court may reduce hours accordingly." *Hensley*, 461 U.S. at 433. The district court may also exclude any hours that are excessive, redundant, or otherwise unnecessary. *Id*. at 434. After the fee applicant makes this initial showing, "[t]he party opposing the fee application has the burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). Here, RGIS has agreed not to oppose Plaintiffs' fee request. *See* Settlement Agreement ¶¶ 2.3(C), 2.12(B). Nevertheless, even if there is no objection, "the district court may not uncritically accept a fee request," but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. *See Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002) (citing *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984));

1    *see also McGrath v. County of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting that a court may

2    not adopt a prevailing party's representations without conducting an independent review of the fee

3    application).

4          As indicated above, Plaintiffs seek to recover fees for 20,267.9 hours billed by attorneys, and

5    13,101.2 hours billed by paralegals and legal assistants.  *See* Appendix B to Motion for Attorneys'

6    Fees [Docket No. 902-2].  Plaintiffs have submitted declarations from lead counsel from each of the

7    law firms involved in this case attesting to the reasonableness of the number of hours billed and have

8    submitted detailed time records for the Court's *in camera* review.  Citing to this evidence, Plaintiffs

9    assert that the hours billed "are fully justified by the tremendous burdens of over four years of

10   intense, bitterly-contested litigation," as well as "RGIS's hyper-aggressive defense and refusal to

11   engage in any settlement discussions, counsel's heavy discovery/investigation burden, the time

12   requires to obtain and maintain class status in the face of adamant opposition and multiple motions

13   for decertification, and the demands of opposing summary judgment and preparing for trial . . ."

14   Mot. for Attorneys' Fees at 23.

15         Further, Plaintiffs explain that Class Counsel has exercised significant billing judgment by

16   deducting 5,082 hours of recorded time to eliminate inefficiencies and other time entries that should

17   not be claimed, thereby reducing the lodestar figure by $1,749,363.88, or 13.4%.  *See* Wallace Decl.

18   ¶¶ 149-164.  Specifically, in his Declaration, Mr. Wallace states that as lead Class Counsel, he

19   reviewed the billing records for all four firms that worked on this matter, and in the exercise of

20   billing judgment, excluded: (1) attorneys or paralegals who billed less than 50 hours on the case; (2)

21   time billed for clerical work that would not properly be billed by an attorney; (3) billing records

22   dated prior to December 2006; (4) vague or incomplete entries; (5) duplicative entries; (6) half of the

23   attorney travel time by using a "travel rate" of 50% of the attorney's regular billing rate.  Wallace

24   Decl. ¶¶ 150-55, 160.  Through this method, Mr. Wallace reduced the hours billed as follows:

25

26

27

28

United States District Court

For the Northern District of California

| Law Firm | Hours Originally Billed | Hours Reduced | Hours Submitted for Award | Resulting Reduction in Lodestar Amount | % |
|---|---|---|---|---|---|
| Schneider Wallace | 17,653 | 1,057 | 16,596 | $253,384.50 | 4% |
| Grady Schneider | 15,423 | 3,251.6 | 12,171.4 | $1,179,487.50 | 26% |
| Goldstein Demchak | 2,431.5 | 222.8 | 2,208.7 | $58,906.50 | 6% |
| Bailey Pinney | 2,944.5 | 551.5 | 2,393 | $226,763 | 23% |

Wallace Decl. ¶¶ 156, 161-163.  In light of these reductions, Plaintiffs contend that the resulting 33,369.1 total hours represents time that would be billed to a client of means in a comparable case and should therefore be approved by the Court.  Mot. for Attorneys' Fees at 23; Wallace Decl. ¶ 164.

Plaintiffs further contend that the total hours is justified when taking into account the history and nature of this case.  First, Plaintiffs argue that national wage-and-hour class actions under the FLSA are rare, and even fewer involve multiple parallel state class actions such as this case.  Mot. for Attorneys' Fees at 24-25.  Plaintiffs also point out the broad scope of this lawsuit, which challenged the employment practices of an employer that was structured with over 300 local districts across the United States and involved complicated legal and factual issues, including the application of wage-and-hour laws of four states.  *Id.*

Second, Plaintiffs argues that because the case focused on payment of wages to low-income workers, the stakes involved in the lawsuit were high.  *Id.* at 25.

Third, Plaintiffs argue that the amount of time billed was fair in light of the challenge of presenting proof of RGIS's systemic violations of federal and state wage and hour laws.  They assert that "RGIS's noncompliance with the FLSA and state laws was diffuse in nature and spread throughout its entire operations across the United States."  *Id.*  Counsel therefore had to investigate RGIS's national policies and training materials, as well as how RGIS applied those policies and materials at the local level in RGIS's 300 districts to deprive employees of their wages.  *Id.* Additionally, Plaintiffs contend that, in order for its experts to complete a statistical analysis for use in a damages model, counsel had to investigate RGIS's time and payroll records and its procedures regarding how they were developed and maintained.  *Id.* at 26.  Plaintiffs explain that, "[e]ach of

**United States District Court**
For the Northern District of California

these major subject areas required its own set of written discovery, depositions, and expert testimony," which resulted in 64 depositions, over 124,000 pages of documents being produced, and declaration and testimony from several hundred auditors and dozens of former managers.  *Id.*

Fourth, Plaintiffs contend that the amount of time billed was necessary in response to RGIS's aggressive litigation strategy.  *Id.*  According to Plaintiffs, RGIS opposed Plaintiffs' claims "in virtually every way short of trial, and were only willing to settle once trial was imminent."  *Id.*  Thus, Class Counsel not only had to respond to RGIS's motions, but given its resistance to settlement,  had to be fully prepared to proceed to trial.  *Id.* at 27.

Fifth, Plaintiffs assert that, although they were represented by multiple attorneys from four law firms, there was no unnecessary duplication of effort.  *Id.* at 27.  Citing to statements from Mr. Wallace, Mr. Borgen, and Mr. Schneider, Plaintiffs contend that the four firms had separate roles in litigating the case and coordinated their work effectively and efficiently.  *Id.* (citing Wallace Decl. ¶¶ 121-133; Borgen Decl. ¶ 32-36; Schneider Decl. ¶¶ 21-32).  Specifically, Schneider Wallace took the lead role in litigating the case and prepared the majority of Plaintiffs' motions and oppositions, including those relating to class certification and opposing RGIS's motion for summary judgment.  Mot. for Attorneys' Fees at 27; Wallace Decl. ¶¶ 121, 124.  Additionally, Schneider Wallace was responsible for taking and defending the majority of the depositions in the case and preparing for settlement and trial.  Wallace Decl. ¶ 121.

Beginning in January 2008, Goldstein Demchak handled the preparation of class certification declarations and discovery responses for class members in New York and New Jersey.  Mot. for Attorneys' Fees at 28; Borgen Decl. ¶ 32.  After the failed mediation in October 2009, Goldstein Demchak took and increased role in the case by drafting the opposition briefs to RGIS's various motions, conducting the second stage of expert discovery, and working on trial preparation.  *Id.*

Grady Schneider served as the primary contact for the opt-in class members following conditional certification of the national FLSA class and issuance of the notice.  Mot. for Attorneys' Fees at 28; Schneider Decl. ¶¶ 24-26.  Additionally, Grady Schneider took the deposition of RGIS's main Rule 30(b)(6) witness and prepared declarations and assisted with discovery responses of auditors who worked in the central and southern regions of the country.  Schneider Decl. ¶¶ 22, 31.

United States District Court

For the Northern District of California

1   Bailey Pinner was responsible for filing the initial complaint in the *Wren* matter.  Wallace

2   Decl. ¶ 133.  After consolidation of the actions, Bailey Pinney assisted with preparation of discovery

3   and auditor declarations for class members in the Pacific Northwest region.  *Id.*

4   Plaintiffs assert that by coordinating responsibilities amongst the four firms, counsel was

5   able to manage the extensive discovery and thoroughly investigate the facts needed to establish and

6   maintain class certification and pursue the classes' federal and state claims, while at the same time

7   minimizing duplication of efforts.  Mot. for Attorneys' Fees at 29.

8   Sixth, Plaintiffs argue that the results counsel obtained for the class support the amount of

9   time billed.  Mot. for Attorneys' Fees at 29.  As discussed above, the Settlement Agreement provides

10  for a monetary relief that closely approximates the class members' lost wages, overtime pay,

11  interest, and federal liquidated damages, as well as equitable relief.  Citing *Moreno v. City of*

12  *Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008), as support, Plaintiffs' argue that because this was

13  a contingency fee case, Class Counsel had little incentive to spend unnecessary time on tasks to

14  inflate their fees.  Mot. for Attorneys' Fees at 29.  Rather, Plaintiffs maintain that the hours Class

15  Counsel spent litigating the case were limited to that necessary to pursue Plaintiffs' claims and to

16  respond to RGIS's relentless opposition and motion practice.  *Id.* at 30.

17  Finally, Plaintiffs contend that the fee award in this case is comparable to fee awards in

18  similar class actions.  *Id.*  In support, Plaintiffs proffer two decisions from California state court and

19  two decisions from the Northern District as support: (1) *Duran v. U.S. Bank*, No. 2001-035537

20  (Alameda Sup. Ct. July 19, 2010) (granting plaintiffs $18.7 million in attorneys' fees in a wage-and-

21  hour class action resulting in a class judgment of $15 million); (2) *Savaglio v. Wal-Mart*, No. C-

22  835687-7 (Alameda Sup. Ct. Sept. 10, 2010) (awarding $52.5 million in fees in national wage-and-

23  hour class action); (3) *Rosenburg v. IBM*, 2007 WL 2043857, at *1 (N.D. Cal. July 12, 2007)

24  (awarding $16.25 million in fees and $250,000 in costs in wage-and-hour class action in which

25  plaintiffs obtained a $65 million common fund); *Satchell v. FedEx*, 2007 WL 2343904, at *1 (N.D.

26  Cal. Aug. 14, 2007) (finding $12,425,000 in attorneys' fees fair and reasonable under both lodestar

27  and common fund methods).

28  Taking the foregoing arguments into consideration, and after carefully reviewing counsel's

United States District Court

For the Northern District of California

1  timesheets submitted in conjunction with Plaintiffs' fee request, the Court finds that the 33,369.1

2  hours are a reasonable calculation of the time spent litigating this case.  As Plaintiffs point out, and

3  as the record in this case illustrates, the parties vigorously litigated this case for over four years.

4  From its initial stages, RGIS moved to dismiss the *Wren* action, opposed Plaintiffs' motions to

5  amend the First Amended Complaint and to consolidate the *Wren* and the *Piper* actions, opposed

6  certification of the FLSA collective action and the Rule 23 classes (and later moved to decertify

7  both), and repeatedly refused to produce discovery, necessitating numerous motions to compel by

8  Plaintiffs.  Thus, the amount of time Class Counsel billed is in large part a result of RGIS's

9  aggressive defense strategy.

10      Coupled with the legal battles between the parties, because this case involved both a national

11 FLSA class, as well as Rule 23 classes from four states, Class Counsel had to marshal and organize a

12 substantial amount of discovery from RGIS employees and potential class members around the

13 country.  Particularly, given the variations in RGIS's implementation of its policies, counsel had to

14 devote significant resources to investigating RGIS's practices in its local districts.  Thus, the

15 logistics of putting together evidence to support class certification, and later, to oppose RGIS's

16 summary judgment motion required substantial time from both attorneys and support staff.

17      It is against this backdrop that the Court has reviewed counsel's timesheets.  In undertaking

18 this review, the Court has found some instances of duplication of efforts among the firms, as well as

19 instances of overbilling for routine tasks.  Cognizant of these inefficiencies reflected in the

20 timesheets, and in the exercise of billing judgment, Class Counsel has reduced of the total amount of

21 time billed by 13.4%.  The Court finds that this reduction is not only warranted, but is commensurate

22 with the reduction the Court would have applied to bring the time billed in line with what would be

23 reasonable in this type of case.  Particularly, the significant reductions from Grady Schneider and

24 Pinney Bailey, both of which focused mainly on discovery, is consistent with the reductions the

25 Court finds are justified.  The only additional reduction the Court makes is to the 57.6 hours billed

26 by Bailey Pinney attorney Meike Chase.  With this exception, the Court finds that the hours billed

27 by the attorneys and paralegals in this case as itemized in Appendix B to Plaintiff's Motion [Docket

28 No. 909-2], which takes into account the 13.4% reductions, totaling 33,311.5 hours, are reasonable

United States District Court

For the Northern District of California

1   and will be used to calculate the lodestar amount.

2         *c.  Calculation of Lodestar Figure*

3         Having determined that counsel's hourly rates and the amount of time billed as set forth in

4   Appendix B to Plaintiffs' Motion are reasonable, the Court calculates Class Counsel's lodestar

5   figure to be $11,307,449.62.[8]

6         In the second stage of the lodestar analysis, the Court must decide whether to enhance or

7   reduce the lodestar figure based on an evaluation of the *Kerr* factors that are not already subsumed

8   in the initial lodestar calculation.  Here, Plaintiffs have not argued for an enhancement of the

9   baseline lodestar figure and the Court sees no basis to make such an enhancement.  Further, because

10  the Court finds that the lodestar figure yields a reasonable fee award, the Court sees no basis for a

11  reduction in the lodestar figure.  Accordingly, the Court concludes that Plaintiffs are entitled to an

12  award of attorneys fees in the amount of $11,307,449.62.

13        **2.        Comparison with Percentage of Fund Calculation**

14        Although the Court has chosen to analyze Plaintiffs' fee request using the lodestar method, it

15  would reach the same result regarding the amount of reasonable attorneys' fees Plaintiffs are entitled

16  to if it utilized the percentage of fund approach.  In cases where the district court analyzes a fee

17  request using the percentage of fund method, the Ninth Circuit has established 25% of the common

18  fund as a "benchmark" for attorneys' fee.  *Powers*, 229 F.3d at 1256; *Torrisi*, 8 F.3d at 1376.

19  However, this "benchmark percentage should be adjusted, or replaced by a lodestar calculation,

20  when special circumstances indicate that the percentage recovery would be either too small or too

21  large in light of the hours devoted to the case or other relevant factors."  *Six Mexican Workers v.*

22  *Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  In determining whether the standard

23  25% benchmark should be awarded or adjusted either upward or downward, courts may consider:

24  (1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4)

25  counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel;

26  (7) the reaction of the class; and (8) the comparison of the benchmark with counsel's lodestar.  *See*

27

28

---

[8]  The figure takes into account a deduction of $14,400 for time billed by Meike Chase.

1   *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1116-17 (C.D. Cal. 2008); *Fernandez v.*

2   *Victoria Secret Stores, LLC*, No. CV 06-04149, 2008 WL 8150856, at *11 (C.D. Cal. July 21, 2008).

3         Here, taking the total settlement amount of $27,000,000, the $11,321,849.62 in attorneys'

4   fees that Plaintiffs seek amount to 42% of the total settlement payment.  Thus, the amount Plaintiffs

5   seek exceeds the 25% benchmark.  The Court must therefore consider whether the factors

6   enumerated above support an upward departure from the benchmark.

7         The first factor focuses on the result counsel obtained for the class.  As discussed in detail

8   above, the settlement agreement provides for both a monetary payment to class members that

9   approximates Plaintiffs' calculation of damages, as well as injunctive relief in the form of RGIS

10  amending its policies to clearly indicate that employees are to put on required audit equipment after

11  scanning in for purposes of receiving pay and providing training to its employees regarding the

12  changes.  As Plaintiffs correctly note, because the FLSA does not provide for injunctive relief, this

13  concession from RGIS exceeds what Plaintiffs could have obtained even if they had prevailed at

14  trial.  Thus, this factor supports an increase from the benchmark.

15        The second factor the Court may consider is the effort expended by counsel in litigating this

16  case.  Again, as described above, Class Counsel dedicated significant time and resources in pursuing

17  Plaintiffs' claims, particularly in light of the aggressive defense presented by RGIS.  Counsel

18  conducted extensive discovery, took and/or defended 64 depositions, responded to and propounded

19  written discovery, successfully moved to compel discovery withheld by RGIS, defended against

20  RGIS's motion to dismiss, successfully moved to certify the national FLSA class and Rue 23 classes

21  in four states, successfully opposed RGIS's motions to decertify the classes, opposed RGIS's

22  summary judgment motion, and participated in mediation sessions that ultimately led to the

23  settlement of this case and relief for the classes.  While wide-scale discovery, certification motions,

24  and dispositive motions are routine in class actions, the complexity and novelty of the legal and

25  factual issues raised in this matter made each of these components especially demanding.  Thus, this

26  factor supports an increase from the standard benchmark.

27        The third and fourth factors examine counsel's experience and skill.  As detailed in the

28  declarations of Mr. Wallace, Mr. Schneider, Mr. Borgen, and Mr. Pinney, both lead counsel and the

United States District Court

For the Northern District of California

attorneys from each firm who staffed the case have significant experience litigating class actions and wage-and-hour claims.  Throughout the course of the litigation Class Counsel successfully defended against RGIS's attempts to dismiss Plaintiffs' claims and to decertify the classes and pursed Plaintiffs' claims until the point of settlement.  Accordingly, these factors support an increase from the standard fee award.

The fifth factor focuses on the complexity of the issues raised in the action.  Here, Plaintiffs asserted claims under both the FLSA and the laws of California, Washington, Oregon and Illinois regarding travel/ commute time and donning time and meal period breaks under California, Washington, and Oregon law.  Each of these claims required analysis of federal and state regulations and raised highly-contested factual issues regarding RGIS's payment practices and the amount of wages class members were owed.  Thus, this factor supports an increase from the benchmark.

The sixth factor evaluates the risks of non-payment counsel assumed in taking the case.  Here, counsel assumed significant risk when accepting this case on a contingency fee basis.  As counsel notes, few national FLSA collective actions and off-the-clock class actions have been certified.  Thus, Counsel's decision to represent Plaintiffs and pursue their claims on a class-wide basis despite the paucity of precedent supporting such class actions, supports an increase in the benchmark.

Under the seventh factor, the Court considers the reaction of the class.  As discussed above, to date only 33 class member have opted out of the settlement and only 16 class members have filed objections.  The overwhelming participation in the settlement and the minimal number of objections suggest that counsel obtained a favorable result for the class and support an increase from the standard award.

Finally, the eighth factor compares the 25% benchmark with counsel's lodestar.  Applying the standard 25% benchmark to the $27,000,000 settlement amount would result in an attorneys' fees award of $6,750,000.  The difference between the $11,307,449.62 fee award using the lodestar and the $6,750,000 benchmark is $4,557,449.62.  While the difference amounts to an approximate 17% increase in the benchmark, in light of the factors discussed above, the Court cannot say that this increase is unjustified.

United States District Court

For the Northern District of California

In sum, even if the Court were to analyze Plaintiffs' fee request under the percentage of fund analysis, there is ample support for adjusting the 25% presumptive benchmark upward to take into account the complexity and duration of the litigation, counsel's skill and experience, the results achieved that include both monetary and injunctive relief, and the positive reaction and low opt-out rate of the class.  The Court therefore finds that Plaintiffs' request for an award of $11,307,449.62 in attorneys' fees – amounting to just under 42% of the settlement amount – is appropriate and reasonable in this case.

**3.      Costs and Fees**

As indicated above, Rule 23(h) authorizes a court to award fees and nontaxable costs that are authorized by law or by the parties' agreement.  Fed. R. Civ. P. 23(h).  Pursuant to the Settlement Agreement, Plaintiffs may seek $2,200,000 in litigation expenses.  *See* Settlement Agreement ¶ 212B.  In their Motion, Plaintiff request that the Court award a combined total of $2,113,792.81 in costs and expenses incurred through November 1, 2010.  Mot. for Attorneys' Fees at 34.  Itemized by law firm, the costs are as follows:

| | |
|---|---|
| Schneider Wallace | $1,758,623.40 |
| Grady Schneider | $223,742.02 |
| Goldstein Demchak | $24,000 |
| Bailey Pinney | $107,427.39 |

*See* Appendix B. to Mot. for Attorneys' Fees [Docket No. 909-2].

In support their request for an award of $1,758,623.40 for costs incurred by Schneider Wallace, Plaintiffs have proffered testimony from Mr. Wallace setting forth a breakdown of the costs.  *See* Wallace Decl. ¶¶ 180-192.  Additionally, Plaintiffs have submitted an itemized list of the expenses, along with invoices and receipts.  *See* Declaration of Eugenia Gueorguieva, Ex. A - Q [Docket No. 872].  Notably, in his Declaration, Mr. Wallace states that Schneider Wallace advanced $1,598,589.41 in litigation costs and expenses.  He further states that, "[b]ecause of this extraordinary outlay of costs and expenses, [] Schneider Wallace respectfully requests that it be awarded 6% interest compounded annually . . . on the outlays that have been made," which would result in an additional $160,033.99.  Wallace Decl. ¶ 194.  In support of this request, Mr. Wallace

United States District Court
For the Northern District of California

1  cites to language in the Supreme Court's decision in *Perdue*, 130 S. Ct. at 1674-75.  The discussion

2  upon which Mr. Wallace relies pertains to enhancements of attorneys' fee awards; it does not discuss

3  whether a court should award interest on costs expended.  It is therefore inapposite.  Plaintiffs have

4  not cited any other authority or language from the Settlement Agreement indicating that an award of

5  interest on costs in available in this case.  Accordingly, the Court will exclude $160,033.99 from

6  Schneider Wallace's costs.

7       Reviewing the itemization of expenses attached to Ms. Gueorguieva's Declaration, Schneider

8  Wallace's costs and expenses amount to $1,598,589.41.  *See* Gueorguieva Decl. ¶ 4 & Ex. A.  The

9  Court has reviewed the expenses and costs Schneider Wallace advanced and finds that Schneider

10  Wallace is entitled to repayment of these expenses in the amount of $1,598,589.41.

11       Next, Plaintiffs seek an award of $223,742.02 for costs and expenses incurred by the Grady

12  Schneider law firm.  In support of this request, Plaintiffs have submitted Mr. Schneider's statement

13  that his firm incurred $223,742.02 in litigation-related costs and expenses.  Schneider Decl. ¶ 36.

14  While Mr. Schneider refers to an itemization of these expenses and copies of the receipts and

15  invoices as an exhibit to his Declaration, these documents are not currently in the record.  To enable

16  the Court to assess whether these expenses are compensable, the Court directs Plaintiffs to file the

17  itemization, along with receipts and invoices, within 10 days of the date of this Order.  The Court

18  will reserve $223,742.02 from the Settlement Amount, which it may award to Grady Schneider after

19  reviewing the supplemental documentation of its expenses.

20       As to Goldstein Demchak, Plaintiffs request that the Court approve an award of costs and

21  expenses in the amount of $24,000.  In support of this request, Mr. Borgen has submitted an

22  itemization of the expenses the firm advanced as an exhibit to his Declaration.  *See* Borgen Decl. ¶

23  52 & Ex. 4.  The itemization identifies both the categories of expenses incurred and the total

24  amounts paid.  *Id*.  However, there is currently no documentation of these expenses in the record for

25  the Court to review.[9]  The Court therefore directs Plaintiffs to file documentation of the expenses

26  outlined in Exhibit 4 to Mr. Borgen's Declaration within 10 days of the filing date of this Order.

---

     [9] Mr. Borgen indicates that he provided a more detailed itemization to Mr. Wallace for filing;
however, Mr. Borgen does not indicate the docket entry for that filing.  *See* Borgen Decl. ¶ 52.

1    Further, the Court will reserve $24,000 from the Settlement Amount which it may award to

2    Goldstein Demchak, after reviewing this documentation.

3           Finally, Plaintiffs seek an award of $107,427.39 for costs and expenses Bailey Pinney

4    incurred in this litigation.  In support of this request, Mr. Pinney has submitted a list of expenditures

5    and copies of receipts and invoices.  *See* Pinney Decl. ¶ 20 & Ex. B.  However, Exhibit B merely

6    lists expenses without explanation and does not include any categorical itemization of the expenses.

7    The Court therefore cannot assess the reasonableness of the costs.  To allow the Court to assess

8    whether the expenses are reasonable, it directs Plaintiffs to file an itemization listing the expenses by

9    category and the total amount advanced for each category within 10 days of the filing date of this

10   Order.  The Court will reserve $107,427.39 from the Settlement Amount which it may award to

11   Bailey Pinney after reviewing this supplemental material.

12          **4.      Fees for Settlement Administration**

13          Pursuant to the Settlement Agreement, Plaintiffs are authorized to seek approval of an award

14   of $11,380,000 in attorneys' fees and $2,200,00 in litigation expenses.  In their Motion, Plaintiffs

15   have sought $11,321,849.62 in fees and $2,113,792.81 in costs.  Thus, there is a difference of

16   $144,357.57 between the maximum fees and costs Plaintiffs were permitted to seek under the

17   Settlement Agreement, and those Plaintiffs actually sought in their Motion.  Plaintiffs have

18   requested that this amount be available to compensate counsel for the time and expenses necessary

19   to complete implementation of the settlement.  Specifically, Mr. Wallace estimates that

20   administration of the settlement will require at least $200,000 of attorney time to respond to class

21   member inquiries and to assist them in obtaining their damages payment.  Wallace Decl. ¶ 203.  The

22   Court has considered this request and finds that counsel has adequately demonstrated that they will

23   continue to oversee administration of the settlement and are therefore entitled to fees for such work.

24   To ensure that the remaining $144,357.57 is commensurate with the amount of additional time

25   counsel spends on this case, the Court **ORDERS** Class Counsel to file a declaration no later than

26   one year after final approval of the settlement indicating the hours billed in administering the

27   settlement and attach as exhibits all appropriate records documenting such time.

28

United States District Court

For the Northern District of California

**D.      Conclusion**

In sum, afer careful consideration of Plaintiffs' arguments in support of its request for an award of attorneys' fees, a thoroughly reviewing the evidence proffered substantiating both the reasonableness of counsel's hourly rates and the amount of time billed, the Court **GRANTS** Plaintiffs' request for an award of $11,307,449.62 in attorneys' fees.

The Court further **GRANTS** Plaintiffs' request for an award of costs and expenses as follows.  The Court awards Schneider Wallace $1,598,589.41 in costs.  With respect to the request for an award of costs incurred by Grady Schneider, Goldstein Demchak, and Bailey Pinney, the Court reserves its ruling on this request and further reserves $355,169.41 from the Settlement Amount, which represents the total amount of costs requested from these firms, pending Plaintiffs' filing supplemental materials itemizing and documenting their expenditures.  After its review of the supplemental materials, the Court will issue an order regarding their requests for costs.

With respect to the $160,033.99 requested by Schneider Wallace for interest on its expenses, the Court **ORDERS** that this money shall be included in the Settlement Payments distributed to Authorized Claimants.  *See* Settlement Agreement ¶ 2.12.F

## VI.  MOTION FOR SERVICE AWARDS

**A.      Overview of Plaintiffs' Motion**

As indicated above, the Settlement Agreement authorizes the Named Plaintiffs to seek Court approval of a service award for their work in this case.  Specifically, section 2.12.D of the Settlement Agreement provides in pertinent part:

> Service Awards.  Plaintiffs will request Service Awards of not more than $5,000 each.  Such Service Awards will be paid from the Settlement Amount as described in this Agreement.  Defendant will not object to amounts sought for such awards.  The parties recognize that the Court may decide that different amounts are appropriate Service Awards.  Any such alternative amounts will be acceptable to the parties, provided that all such amounts must be paid solely from the Settlement Amount.

Pursuant to this provision, Plaintiffs now request that the Court approve service awards of $5,000 for each of the Named Plaintiffs and a service award of $2,500 for opt-in Plaintiff Verne

**United States District Court**

For the Northern District of California

1   Lund.[10]  Motion for Service Awards at 4 [Docket No. 869].  Plaintiffs contend that they have been

2   actively involved in all stages of this litigation and that through their time and effort the class

3   members were able to secure a favorable settlement.  In the same vein, Plaintiffs assert that although

4   Mr. Lund is not a Named Plaintiff and the Settlement Agreement does not provide for such an

5   award, Mr. Lund made contributions to the prosecution of the class action that exceeded those of the

6   class members and therefore merit a service payment.

7   **B.      Legal Standard**

8          It is well-established in this circuit that named plaintiffs in a class action are eligible for

9   reasonable incentive payments, also known as service awards.  *See Stanton*, 327 F.3d at 977.  In fact,

10  the Ninth Circuit recently noted that incentive payments to named plaintiffs have become "fairly

11  typical" in class actions.  *Rodriguez*, 563 F.3d at 958 (citing 4 William B. Rubenstein *et al.*,

12  *Newberg on Class Actions* § 11:38 (4th ed.2008); Theodore Eisenberg & Geoffrey P. Miller,

13  *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L.Rev. 1303 (2006)

14  (finding that 28% of settled class actions between 1993 and 2002 included an incentive award to

15  class representatives)).  However, while incentive payments have become increasingly common,

16  there is no entitlement to an incentive payment.  Rather, "[s]uch awards are discretionary . . . and are

17  intended to compensate class representatives for work done on behalf of the class, to make up for

18  financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

19  willingness to act as a private attorney general."  *Id.* at 958-59 (analyzing *ex ante* incentive

20  agreements between certain named plaintiffs and class counsel); *see also In re Mego Fin. Corp. Sec.*

21  *Litig.*, 213 F.3d at 463.  When incentive payments are part of a settlement, the court must carefully

22  consider the disparity created by incentive payments to named plaintiffs because "excessive

23  payments to named class members can be an indication that the agreement was reached through

24  fraud or collusion."  *Stanton*, 327 F.3d at 975.  Particularly, the Ninth Circuit has cautioned that, "if

25  class representatives expect routinely to receive special awards in addition to their share of the

26  recovery, they may be tempted to accept suboptimal settlements at the expense of the class members

27  _____

28          [10]  In their Motion, Plaintiffs request conflicting award amounts for Mr. Lund.  At the January 28, 2011 hearing, counsel clarified that Plaintiffs are seeking an award of $2,500 for Mr. Lund.

United States District Court

For the Northern District of California

whose interests they are appointed to guard." *Id.* (quoting *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989)).

When considering a request for an incentive payment, the court must evaluate each request individually, taking into account the following factors: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in pursing it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks. *See id.* at 977 (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)); *see also In re Walmart Stores, Inc. Wage & Hour Litig.*, No. C 06-2069, 2010 WL 31266, at *3 (N.D. Cal. Jan. 5, 2011) (applying *Stanton* factors); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG, 2009 WL 4809646, at *9 (S.D. Cal. Dec. 9, 2009) (same).[11]  Additionally, to ensure that an incentive payment is not excessive, the court must balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Stanton*, 327 F.3d at 977; *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008).  With the foregoing factors as guidance, the Court turns to Plaintiffs' requests.

---

[11]  In assessing the reasonableness of an inventive award, several district courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995), which analyzes: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation.  *See, e.g., Carter v. Anderson Merch., LP*, No. EDCV 08-0025-VAP, 2010 WL 1946757, at *3 (C.D. Cal. May 11, 2010); *Williams v. CostCo Wholesale Corp.*, No. 02cv2003 IEG, 2010 WL 2721452, at *7 (S.D. Cal. July 7, 2010); *Fulford v. Logitech, Inc.*, No. C 08-2041 MMC, 2010 WL 807448, at *2 (N.D. Cal. Mar. 5, 2010).  While the five factors set forth in *Van Vranken* differ slightly from those articulated by the Ninth Circuit in *Stanton*, both sets of factors share the same aim: to thoroughly evaluate a named plaintiff's role in a class action to determine whether a proposed incentive payment is reasonable.  To the extent that the *Van Vranken* factors identify additional criteria that aids in the reasonableness inquiry, the Court has incorporated that criteria into its analysis applying the *Stanton* factors.

**United States District Court**
For the Northern District of California

**C.      Analysis**

**1.      Actions Taken to Protect Class Interests & the Amount of Time and Effort Expended**

The first and third factors set forth in *Stanton* respectively examine the actions each of the Named Plaintiffs took to protect the interests of the class, and the amount of time and effort they expended in pursuing the litigation. *Stanton*, 327 F.3d at 977. Because both factors focus on the Named Plaintiffs' (and, in this case, Mr. Lund's) individual contributions to the litigation, the Court will consider both factors together.

In their Motion, Plaintiffs state that they have each devoted a significant amount of time and effort to fulfilling their obligations as class representatives by working extensively with Class Counsel to explain and develop the facts and issues involved in this case, respond to RGIS's defenses and challenges, prepare for mediation and trial, and evaluate what is fair and reasonable for the class as a whole. Mot. for Service Awards at 5-6. Plaintiffs proffer the following account of their participation in this litigation.

In the early stages of the litigation, Plaintiffs state that they met with Class Counsel to discuss the facts that formed the basis for their claims and provided counsel with background information about the type of work they and the other class members performed for RGIS, the hours that they worked, and RGIS's pay practices and procedures. *Id.* at 2; Declaration of Andrew P. Lee ¶ 5 [Docket No. 870]. Each of the Named Plaintiffs also reviewed the initial Complaint and the First Amended Consolidated Complaint and signed an agreement to serve as class representatives. Mot. at 2; Lee Decl. ¶¶ 5, 7.

Thereafter, the Named Plaintiffs contend that they were actively involved in discovery and provided information used in pre-trial motions. Mot. for Service Awards at 3. They state that each Named Plaintiff responded to a set of twenty-five interrogatories and a set of sixty-three requests for production of documents, which required them to spend substantial time communicating with Class Counsel to assist in preparing the responses and to gather and produce the responsive documents. *Id.* at 3; Lee Decl. ¶¶ 10-11. According to Mr. Lee, "the drafting, reviewing, editing, and verification of each set of interrogatories required on average six hours or more on the part of the

1   Named Plaintiffs."  Lee Decl. ¶ 11.

2          Additionally, Plaintiffs proffer that, with the exception of Ms. Sheldranti, Ms. Zustak, and

3   Ms. Feige, all of the Named Plaintiffs and Mr. Lund were deposed, which required hours of

4   preparation and for Ms. Manos, Ms. Schnars, Ms. Gatlin, and Mr. Lund required travel to San

5   Francisco to sit for their depositions.  Mot. for Service Awards at 3; Lee Decl. ¶¶ 12, 14.  Mr. Lee

6   estimates that each deponent spent an average of 12 hours preparing for and sitting for his or her

7   deposition.  Lee Decl. ¶ 13.

8          With respect to the pre-trial motions filed, Plaintiffs state that each of them provided at least

9   one declaration in connection with Plaintiffs' motions or oppositions to RGIS's motions.  Mot. for

10  Service Awards at 3.  Particularly, Ms. Boze, Ms. Cunningham-Gibson, Ms. Garcia, Ms. Pease, Ms.

11  Pierson, Ms. Piper, Ms. Rosenthal, Ms. Saites, Ms. Verbick, and Ms. Wren, along with Mr. Lund,

12  submitted declarations in support of Plaintiff's Motion to Facilitate Notice and Motion for Class

13  Certification Pursuant to Rule 23.  Lee Decl. ¶ 8.  Likewise, Ms. Cassara, Ms. Manos, Ms. Martinez,

14  Ms. Schnars, and Ms. Thompson submitted declarations in support of Plaintiffs' Motion to Facilitate

15  Notice and Plaintiff's Opposition to RGIS's Motion for Decertification.  *Id*.  Plaintiffs contend that

16  "[t]hese declarations required additional time-consuming phone interviews, numerous follow-up

17  calls, and the exchange of drafts via facsimile and email."  Mot. for Service Awards at 3.  Mr. Lee

18  estimates that the drafting, reviewing, editing, and executing of the declarations took at least three

19  hours for each declarant.  Lee Decl. ¶ 9.

20          Plaintiffs further proffer that they each participated in the settlement process.  Mot. for

21  Service Awards at 4.  With respect to the parties' first mediation session on October 5, 2009, Ms.

22  Wren, Mr. Barnes, and Ms. Cunningham-Gibson took time off of work and traveled to San

23  Francisco from out of state to attend the six-hour mediation, while the other Named Plaintiffs were

24  available by phone.  Lee Decl. ¶ 16.  During the subsequent mediation sessions on April 22, 2010

25  and May 7, 2010, all of the Named Plaintiffs made themselves available by phone so that Class

26  Counsel could contact them to evaluate mediation proposals.  Lee Decl. ¶ 17.  Once the parties

27  reached a settlement, the Named Plaintiffs reviewed multiple drafts of the Settlement Agreement and

28  discussed the proposed settlement over the phone with Mr. Lee, during which time he addressed

1  their questions about the terms of the settlement, including the monetary and injunctive relief to the

2  class, the amount of attorneys' fees, the scope of the release, the settlement approval process, and the

3  timing for finalizing settlement.  Mot. for Service Awards at 4; Lee Decl. ¶ 20.

4      Plaintiffs also proffer that throughout the course of the lawsuit, each of them was in constant

5  communication with Class Counsel to discuss the progress of the case and to provide additional

6  factual information.  Mot. for Service Awards at 3.  Mr. Lee attests that his billing records indicate

7  that he spoke by phone with the Name Plaintiffs on numerous occasions, including 30 phone calls

8  with Ms, Piper, 20 phone calls with Ms. Martinez, 16 phone calls and 8 emails with Mr. Lund, 15

9  phone contacts with Ms. Boze, 7 phone contacts and seven emails with Mr. Barnes, and 11 phone

10  calls with Ms. Cassara.  Lee Decl. ¶ 15.

11      Finally, Plaintiffs submit that, prior to the settlement, each of the Named Plaintiffs was

12  involved in trial preparation.  Mot. for Service Awards at 5.  According to Mr. Lee, in late 2009

13  Class Counsel held a series meetings with the Named Plaintiffs to discuss trial preparation, their

14  ability to testify at trial, and settlement.  Lee Decl. ¶ 18.  He states that each of the meetings lasted

15  approximately thirty minutes and the Named Plaintiffs attended the meetings either in person or

16  through teleconference.  *Id*.  Additionally, Ms. Martinez, Ms. Wren, Ms. Boze, and Mr. Barnes met

17  in person with Plaintiffs' trial consultant in San Francisco, and Ms. Boze and Mr. Barnes provided

18  mock testimony that was recorded in preparation for trial.  Lee Decl. ¶ 19.

19      Based on the foregoing descriptions, Plaintiffs contend that throughout each stage of the

20  case, they actively participated in the prosecution of this action and dedicated substantial time and

21  effort toward fulfilling their roles as class representatives.  They maintain that, as a result of such

22  efforts, they were able to secure a significant financial recovery through the Settlement, which

23  benefits the class as a whole.  They therefore assert that in light of such efforts and recovery, the

24  $5,000 service awards to each of the Named Plaintiffs and $2,500 service award to Mr. Lund are

25  amply justified.

26      To assist the Court with assessing the role each of the Named Plaintiffs and Mr. Lund played

27  in this litigation, the Court requested that the Named Plaintiffs and Mr. Lund submit detailed

28  declarations describing the tasks they performed and the time expended.  In response, all of the

United States District Court

For the Northern District of California

1   Named Plaintiffs except Mr. Whitman, Ms. Molmen, and Ms. Williams filed declarations.  *See*

2   Appendix of Named Plaintiff and Class Representative Declarations [Docket No. 922]; Declaration

3   of Michele Zustak [Docket No. 931].  The Court has thoroughly reviewed Plaintiffs' and Mr. Lund's

4   declarations and finds that, with the exceptions discussed below, their individual accounts

5   substantiate their representation that they have been actively involved in prosecuting this lawsuit.

6   Working closely with Class Counsel, each of the Named Plaintiffs who filed declarations and Mr.

7   Lund have assisted with marshaling facts and evidence, reviewed pleadings, provided declarations

8   for motions and opposition briefs, responded to discovery, communicated with other class members,

9   and participated in the settlement process.  While the amount of time each Plaintiff invested in the

10  litigation ranges between 36 hours and over 100 hours,[12] each Plaintiff invested significant time

11  throughout each stage of this case which directly contributed to their ultimate recovery.  Thus, the

12  first and third *Stanton* factors support a service award to the Named Plaintiffs who filed declarations

13  and Mr. Lund.

14          However, with respect to Ms. Feige, the Court must address her involvement separately.  By

15  her account, Ms. Feige spent a total of 9 hours assisting counsel in this case.  Specifically, she states

16  that she spoke with counsel on eight occasions, during which she answered questions regarding

17  RGIS's wage and hour policies and practices and provided names of other auditor and team leader

18  employees.  Feige Decl. ¶¶ 10-11, Appendix, Ex. E.  In addition, she indicates that she spent one

19  hour reviewing the Settlement Agreement and discussing it with counsel.  During the March 25

20  hearing, the Court asked counsel about the assistance Ms. Feige provided.  Counsel indicated that

21  Mr. Feige did provide some assistance in this case in her role as a Named Plaintiff.  Thus, counsel's

22  representation, along with Ms. Feige's statements in her Declaration provide sufficient evidence that

23  _____

24          [12]  As stated in their declarations, the total amount of time each Named Plaintiff and Mr. Lund spent in this case is as follows: Barnes Decl. ¶ 18 (191.5 hours); Boze Decl. (71 hours); Cassara Decl.

25  ¶ 19 (49 hours); Cunningham-Gibson Decl. ¶ 15 (99 hours); Feige Decl. ¶ 14 (9 hours); Garcia Decl. ¶ 20 (77.5 hours); Gatlin Decl. ¶ 14 (47.5 hours); Johnson Decl. ¶ 16 (55 hours); Lund Decl. ¶ 16 (67

26  hours); Manos Decl. ¶ 19 (354 hours); Martinez Decl. ¶ 16 (113 hours); Pease Decl. ¶ 26 (99 hours); Pierson Decl. ¶ 20 (42 hours); Piper Decl. ¶¶ 9, 12, 13, 15-18, 22(78 hours); Rosenthal Decl. ¶ 20 (115

27  hours); Saites Decl. ¶ 17 (113.5 hours); Schnars Decl. ¶ 15 (86.5 hours); Sheldranti Decl. ¶ 13 (79 hours); Thompson Decl. ¶ 14 (40 hours); Verbick Decl. ¶ 12 (36 hours); Wren Decl. ¶ 19 (115 hours);

28  Zustak Decl. ¶ 12 [Docket No. 931]; Molmen (5 hours), Williams (10.5 hours) [Wallace Suppl. Decl. ¶¶ 13-15, 17-19].

United States District Court

For the Northern District of California

she expended some time and effort to assist the class meriting a service award. However, given her relatively limited involvement as compared to the other Named Plaintiffs, the Court will adjust the amount of her award commensurate with the time she expended.

With respect to Mr. Whitman, counsel indicates that Mr. Whitman passed away during the early stages of this case and had only minimal involvement with counsel. Wallace Suppl. Decl. ¶ 20. Plaintiffs therefore withdraw their request for a service award to Mr. Whitman. *Id.*

As to Ms. Molmen and Ms. Williams, Class Counsel states that despite numerous attempts, they have been unable to obtain declarations from these Plaintiffs. Wallace Suppl. Decl. ¶¶ 12, 16. Counsel, however, proffers descriptions of their involvement in the case and an estimate of the total hours they expended. Specifically, based on counsel's review of their billing records, Ms. Molmen spent 5 hours assisting counsel (Wallace Suppl. Decl. ¶¶ 13-15), and Ms. Williams spent 13.5 hours assisting counsel and sitting for her deposition (Wallace Suppl. Decl. ¶¶ 17-19). As with Ms. Feige, the Court finds that, while Ms. Molmen and Ms. Williams made contributions to this lawsuit beyond those of the general class members, their involvement was less than those of the other Named Plaintiffs. Accordingly, the Court will adjust the amount of their awards commensurate with the time they each expended.

### 2.      Benefit to the Class

The second factor that the Court must assess is the degree to which the class has benefitted from the Named Plaintiffs' and Mr. Lund's participation in this case. *Stanton*, 327 F.3d at 977. In their Motion, Plaintiffs contend that the time and effort they expended in this litigation provided significant benefits to the class. As detailed above, Mr. Lee has stated that in working with the Named Plaintiffs and Mr. Lund, counsel was able to file a complaint against RGIS asserting the class's claims, successfully defend against RGIS's motions to dismiss the case and to decertify the classes, gather critical documents and information, respond to RGIS's discovery requests, and ultimately reach a settlement with RGIS pursuant to which the class will recover millions of dollars. Thus, there is a sufficient basis to find that the services the Named Plaintiffs and Mr. Lund performed directly benefitted the class.

**United States District Court**
For the Northern District of California

### 3.   Risks Associated with Serving as Named Plaintiffs

Under the next factor, the Court must evaluate whether the Named Plaintiffs and Mr. Lund faced any risks in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, or financial risks. *Stanton*, 327 F.3d at 977.  In their Motion, Plaintiffs argue that they assumed "substantial" risks by serving as named plaintiffs and pursuing this action against RGIS.  Mot. at 8.  In particular, they point out that Ms. Boze, Ms. Garcia, Ms. Martinez, Ms. Pierson, Ms. Pease, Ms. Piper, Ms. Saites, and Ms. Sheldranti, as well as Mr. Lund, were employed by RGIS at the time this lawsuit was filed and thus faced the possibility of retaliation as a result of their participation in the lawsuit.  *Id.*  In fact, Mr. Lee attests that counsel wrote three letters to RGIS complaining of retaliatory conduct against the Plaintiffs generally, and against Ms. Boze and Ms. Garcia, specifically.  Lee Decl. ¶ 21; *see also* Boze Decl. ¶ 18, Appendix, Ex. B;  [Docket No. 922]; Garcia Decl. ¶ 18, Appendix, Ex. F [Docket No. 922].  Additionally, in her Declaration, Ms. Zustak states that shortly after she became involved in this lawsuit, RGIS stopped scheduling her to work and effectively fired her.  Zustak Decl. ¶ 11.

With respect to the Named Plaintiffs who were no longer employed by RGIS, Plaintiffs contend that it was possible that RGIS would retaliate against them by declining to rehire them for future employment or providing negative references to other potential employers.  Mot. for Service Awards at 8.  Finally, Plaintiffs contend that they faced the possibility that, if RGIS prevailed in this case, they would be liable for some portion of its litigation costs under both Federal Rule of Civil Procedure 54(c) and California Labor Code § 218.  *Id.* at 8.

The Court has considered Plaintiffs' arguments and finds that Plaintiffs have demonstrated that they faced potential risks as a result of pursuing this lawsuit against their employer.  Thus, this factor also supports an incentive award.

### 4.   Amount of Incentive Payments in Comparison to the Settlement Fund

In addition to the foregoing factors, to ensure that the requested incentive payments are not excessive, the Court must consider the amount and number of incentive payments in relation to the settlement amount.  *See Stanton*, 327 F.3d at 976; *Alberto*, 252 F.R.D. at 669; *Carter*, 2010 WL 1946757, at 4.  Here, Plaintiffs seek incentive payments of $5,000 for each for the 24 Named

**United States District Court**
For the Northern District of California

1   Plaintiffs and $2,500 for Mr. Lund.

2       As Plaintiffs correctly note, there is ample case law finding $5,000 to be a reasonable amount

3   for an incentive payment.  *See e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (approving

4   incentive payments of $5,000 to the two class representatives in a settlement of $1.725 million);

5   *Hopson v. Hanesbrands Inc.*, 2009 WL 928133, at *10 (N.D. Cal. April 3, 2009) (finding $5,000

6   incentive award to sole named plaintiff reasonable); *Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bur.*,

7   2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (noting that in the Northern District of

8   California, a $5,000 payment is "presumptively reasonable"); *Williams*, 2010 WL 2721452, at *7

9   (approving incentive award of $5,000 and finding the amount "well within the acceptable range

10  awarded in similar cases."); *Chun-Hoon*, 716 F. Supp. 2d at 855 (approving $5,000 incentive awards

11  to two named plaintiffs).  Thus, the $5,000 payments Plaintiffs request are in line with that found to

12  be reasonable in other class actions in this district.  The question then becomes whether the incentive

13  payments are proportional to the Settlement Amount.

14      On this point, Plaintiffs contend that awards are proportional to both the range of settlement

15  awards to class members and the total settlement amount.  Mot. for Service Awards at 6-7.  First,

16  Plaintiffs submit that while the average award to class members is $207.69, there are 258 class

17  members who will receive individual awards greater than $5,000, including one class member whose

18  award will be $19,189.  *Id*. at 7.  Thus, although the $5,000 incentive payment amount is greater

19  than the average class member award, it is nonetheless within the range of settlement awards.

20  Plaintiffs further proffer that the total amount of the service awards requested is $122,500, which

21  represents only 0.45% of the $27,000,000 gross Settlement Amount.  *Id*.  This percentage is also in

22  line with those found to be acceptable in other recent class actions.  *See In re Mego Fin. Corp Sec.*

23  *Litig*., 213 F.3d at 463 (approving incentive award of $5,000 to two plaintiff representatives in $1.75

24  million settlement, comprising only 0.56% of the total settlement amount); *Sandoval v. Tharaldson*

25  *Employee Mgmt, Inc.*., 2010 WL 2486346, at *10 (awarding $7,5000 incentive payment to named

26  plaintiff, comprising 1% of gross settlement amount); *Hopson*, 2009 WL 928133, at *10 (approving

27  $5,000 incentive award to one named plaintiff, comprising 1.25% of the settlement amount).

28      Taken together, the Court finds that the amount of the incentive payments is not excessive

1   when considered in context with the total Settlement Amount, the range of awards to class members,

2   and the average class member award.

3   **D.      Summary**

4          Based on the foregoing factors, the Court finds that the Named Plaintiffs and Mr. Lund have

5   sufficiently demonstrated that they expended considerable time throughout each stage of this

6   litigation providing information for pleadings and motions, communicating with counsel and class

7   members, responding to discovery, and participating in the settlement process, which not only

8   protected the class's interests but ultimately led to a settlement benefitting the class.  Additionally,

9   each of the Named Plaintiffs and Mr. Lund assumed potential risks in participating in this lawsuit,

10  and in some cases experienced actual retaliation for their involvement.  Plaintiffs have also shown

11  that the service awards are not disproportionate to the settlement amount or class recovery.  The

12  Court therefore **GRANTS** Plaintiffs' request for service awards as follows.

13         The Court **GRANTS** Plaintiffs' request for service awards in the amount of $5,000 each to

14  Trisha Wren; Kevin Barnes; Lisa Cunningham-Gibson; Cynthia Piper; Tephine Saites; Margaret

15  Cruz Boze; Michelle Pease; Kimberly Cassara; Rabecka Sheldranti; Victoria Thompson; Melanie

16  Manos; Norma Garcia; Cheryl Pierson; Sally Rosenthal; Nicole Verbick; Tammy Schnars; Margaret

17  Martinez; Joan Johnson; Jewell Gatlin, and Michele Zustak.

18         The Court **GRANTS** Plaintiffs' request for a service award to Kathleen Feige, Carol

19  Molmen, and Latonia Williams.  However, because of their relatively limited involvement in this

20  case as compared to the other Named Plaintiffs, the Court awards Ms. Feige and Ms. Williams

21  service payments of $1,000 each, and awards Ms. Molmen a service payment of $500.

22         The Court **GRANTS** Plaintiffs' request for a service payment in the amount of $2,500 to

23  Verne Lund.

**VII.  CONCLUSION**

25  For the reasons set forth above, the Court: (1) **GRANTS** Plaintiffs' Motion for Final

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  Approval of Class Action Settlement [Docket No. 912]; (2) **GRANTS** Plaintiffs' Motion for an

2  Award of Reasonable Attorneys' Fees, Costs and Expenses [Docket No. 909]; and **GRANTS**

3  Plaintiffs' Motion for Service Awards to Named Plaintiffs and Opt-In Plaintiff Lund [Docket No.

4  869].

5       IT IS SO ORDERED.

6  Dated: April 1, 2011

7

8  _____

9  JOSEPH C. SPERO
   United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28